## UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| DAVID P. NOAKES AND CYNTHIA M. NOAKES, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| MEGA LIFE AND HEALTH INSURANCE | ) | |
| COMPANY; UNITED INSURANCE COMPANIES, | ) | CASE NO. 2:05cv442-W |
| INC. (d/b/a THE INSURANCE | ) | |
| CENTER, UGA – ASSOCIATION FIELD | ) | |
| SERVICES); UNITED GROUP SERVICE | ) | |
| CENTERS, INC.; UICI MARKETING, INC.; | ) | |
| SPECIALIZED ASSOCIATION SERVICES, INC.; | ) | |
| NASE GROUP INSURANCE TRUST FUND; | ) | |
| NATIONAL ASSOCIATION FOR THE SELF- | ) | |
| EMPLOYED; STEPHANIE TRANCHINA and | ) | |
| FICTITIOUS DEFENDANTS 1-20, | ) | |
| | ) | |
| Defendants. | ) | |

### THE MEGA LIFE AND HEALTH INSURANCE COMPANY'S
### MOTION TO ADJOURN PENDING TRANSFER PURSUANT TO 28 U.S.C. § 1407
### OR, IN THE ALTERNATIVE, TO TRANSFER PURSUANT TO 28 U.S.C. § 1404

The MEGA Life and Health Insurance Company ("MEGA") hereby moves the Court to adjourn all proceedings in the above-styled action (the "Action") pending a decision by the Judicial Panel on Multidistrict Litigation (the "Panel") regarding the transfer of this Action, pursuant to 28 U.S.C. § 1407, to the Transferee Court (defined below) for consolidated or coordinated pretrial proceedings with the Association-Group Cases (defined below) and further order by the Transferee Court. In the alternative, MEGA hereby moves this Court to transfer this Action to the Transferee Court pursuant to 28 U.S.C. § 1404.

## I.    PRELIMINARY STATEMENT

This Action is subject to transfer to a Multidistrict litigation ("MDL") proceeding currently pending in the Northern District of Texas, and should be adjourned pending action by the Panel transferring this Action to the Northern District of Texas.  This is one of at least twenty-four similar cases pending in state and federal courts across the country against MEGA, Mid-West National Life Insurance Company of Tennessee ("Mid-West"), and/or UICI based on the marketing, sale, and/or administration of association-group health insurance[1] and memberships in certain associations (the "Association-Group Cases").  Because of the common questions of fact presented by the Association-Group Cases, the Panel granted a Motion to Transfer (defined below) and transferred the federal Association-Group Cases to the United States District Court for the Northern District of Texas (the "Transferee Court") for consolidated or coordinated pretrial proceedings.  Concurrent with filing this Motion to Adjourn, MEGA is notifying the Panel that this Action is a potential tag-along action to the Motion to Transfer.

This Action shares common questions with the Association-Group Cases pending in the Transferee Court — the crux of all of the cases centers on the alleged interrelationships between MEGA, UICI, and/or Mid-West, and certain associations and the alleged non-disclosure of these alleged interrelationships to the plaintiffs.  This Action and the Association-Group Cases further center upon similar allegations that these defendants initially charged artificially low "teaser rates" for purposes of inducing customers into purchasing insurance.

Adjournment of the proceedings in this Action will promote the goals of the MDL process by ensuring that pretrial matters (including discovery) can be effectively coordinated among this Action and the related Association-Group Cases.  Allowing pretrial activities to

---

[1] Association-group insurance is a particular type of health insurance available in certain states.  In simple terms, under certain state guidelines, association members are afforded an opportunity to purchase health insurance from a health insurance company.

proceed in this Action would likely result in duplicative discovery and briefing, as well as the danger of inconsistent pretrial rulings.  Accordingly, the Court should adjourn all proceedings in this Action pending a decision by the Panel regarding the transfer of this Action to the Transferee Court for consolidated or coordinated pretrial proceedings with the Association-Group Cases and further order by the Transferee Court.

In the alternative, rather than adjourn the Action pending transfer by the Panel, this Court should transfer the Action to the Transferee Court, pursuant to 28 U.S.C. § 1404, because, for the same reasons set forth above, such transfer would be for "the convenience of [the] parties and witness [and] in the interest of justice."  28 U.S.C. § 1404.

## II.     RELEVANT PROCEDURAL AND FACTUAL BACKGROUND

1.     The MDL Motion.  On September 22, 2003, Defendant MEGA moved to transfer eleven actions pending in federal courts across the country against MEGA and/or Mid-West, MEGA and Mid-West's parent company, UICI, and various other defendants to a single federal court for consolidated or coordinated pretrial proceedings (the "Motion to Transfer").[2]

2.     The MDL Order.  On February 23, 2004, the Panel granted the Motion to Transfer and transferred the Association-Group Cases to the Transferee Court for consolidated or coordinated pretrial proceedings.  (See Transfer Order, filed herewith as Exhibit "B.")  The Panel determined that the Association-Group Cases "involve common questions of fact" and that "centralization under Section 1407 in the Northern District of Texas will serve the convenience of the parties and witnesses and promote the just and efficient conduct of [the] litigation."  (Id. at 1.)  For the same reasons, the Panel subsequently transferred and/or conditionally transferred

---

[2] A true and correct copy of the Motion to Transfer is filed herewith as Exhibit "A."

twelve additional Association-Group Cases to the Transferee Court.  (<u>See</u> Conditional Transfer Orders 1-6, filed herewith as Exhibits "C"-"H.")

       3.    <u>The Class Action Settlement of the Association-Group Cases</u>.  On October 15, 2004, the Transferee Court entered an order approving a national class settlement entered in two of the Association-Group Cases, <u>Golebiowski v. The MEGA Life and Health Insurance Company</u>, Case No. 3:04-cv-00831-G and <u>Lacy v. The MEGA Life and Health Insurance Company</u>, Case No. 3:04-cv-00470-G (the "Settlement").  (<u>See</u> Final Order and Judgment Approving Class Settlement (the "Final Order"), filed herewith as Exhibit "I"; Stipulation of Settlement and Release (the "Stipulation"), field herewith as Exhibit "J" (exhibits excluded).) The Settlement applies to all persons who had coverage issued by MEGA and/or persons who purchased an association membership from the National Association for the Self-Employed (the "NASE") during the period commencing August 1, 1998, and ending on May 14, 2004 (the "Settlement Class").  (Stip. (Ex. J) ¶¶ 1.21, 1.23, 1.45, and 1.47.)  The Settlement resolved, among other things, all claims arising out of the allegations that certain defendants, including the Defendants to this Action, engaged in a scheme to sell health insurance by fraudulently concealing the relationships between MEGA and UICI, and certain membership associations, including the NASE.  (<u>See</u> <u>id.</u> ¶¶ 1.42 and 2.1.)  The Settlement also resolved all claims against the defendants based upon allegations that "the initial premium charged for any of MEGA or Mid-West's health insurance products was *less than the amount that was necessary or actuarially recommended for the coverage provide.*" (<u>Id.</u> (emphasis added).)

       4.    <u>The Settlement Class Opt-Outs</u>.  The Settlement Class does not include those putative members that timely requested exclusion (the "Opt-Outs").  (<u>See</u> Stip. ¶ 9.)  Certain plaintiffs in Association-Group Cases pending prior to the Settlement requested exclusion, and

those cases remain consolidated in the Transferee Court for coordinated pretrial proceedings. Although this case was not pending prior to the Settlement, Plaintiffs David and Cynthia Noakes ("Plaintiffs") opted out of the Settlement and subsequently commenced this Action.[3]  (See Noakes Request for Exclusion, filed herewith as Exhibit "K.")

5.     The Complaint.  On or about April 6, 2005, Plaintiffs filed a complaint (the "Complaint") against MEGA, UICI, United Group Service Centers, Inc. ("UGSC"), UICI Marketing, Inc., Specialized Association Services, Inc. ("SAS"), the NASE Group Insurance Trust, the NASE, Stephanie Tranchina, and Fictitious Defendants 1-20 (collectively, "Defendants") in the Circuit Court of Barbour County, Alabama, Eufaula Division, alleging that Defendants had "incestuous relationships . . . as well as mutual ownership, establishment and control . . ." and that Defendants charged "teaser rates" to induce customers to purchase insurance."  (See Compl. ¶¶ 13, 37-39.)

6.     The Removal.  On May 11, 2005, MEGA timely and properly filed the Notice of Removal, removing this Action to this Court on the grounds of diversity of citizenship.  (See generally Not. of Removal.)  This Court has jurisdiction of this proceeding pursuant to 28 U.S.C. § 1332 because complete diversity exists between all parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.  (Id.)

7.     Notice of Tag-Along Action.  Pursuant to Rule 7.5(d) of the Rules of Procedure of the Panel (the "MDL Rules" as set forth at 199 F.R.D. 425 (2001)), MEGA is notifying the Panel of this Action as a potential tag-along action that should be transferred to the Transferee Court for coordinated or consolidated pretrial proceedings with the Association-Group Cases (the "Notice of Tag-Along").

---

[3] Counsel for Plaintiffs in this Action submitted a large group of Opt Outs, and has, thus far, commenced four separate cases in Alabama on behalf of those Opt-Outs (one case was subsequently transferred to new counsel).

8. <u>The Noakes Complaint Contains Questions Common to the Other Association-Group Pleadings</u>.  This Action contains common questions with the Association-Group Cases regarding the marketing and administration of association-group health insurance by MEGA, and membership in an association, the NASE.  Similar to the Association-Group Cases, Plaintiffs allege that MEGA fraudulently concealed its relationship with the NASE.[4]  (<u>Compare</u> Compl. ¶¶ 13, 15-24 <u>with</u> <u>Springer</u> Compl. ¶¶ 16-18, filed herewith as Exhibit "L"; <u>Valenzuela</u> Compl. ¶¶ 16-18, filed herewith as Exhibit "M"; <u>Montgomery</u> Compl. ¶ 15, filed herewith as Exhibit "N"; <u>Tremor</u> Compl. ¶¶ 27, 29-35, filed herewith as Exhibit "O"; <u>Powell</u> Compl. ¶¶ 26, 31, 33-35, field herewith as Exhibit "P"; <u>Joyce</u> Compl. ¶ 12, filed herewith as Exhibit "Q"; <u>Diaz</u> Compl. ¶¶ 20, 24-26, filed herewith as Exhibit "R.")  Also similar to the Association-Group Cases, Plaintiffs allege that MEGA induced consumers to purchase insurance by charging artificially low initial premiums.  (<u>Compare</u> Compl. ¶¶ 37-46 <u>with</u> <u>Tremor</u> Compl. (Ex. O) ¶ 45; <u>Powell</u> Compl. (Ex. P) ¶ 44; <u>Springer</u> Compl. (Ex. L) ¶¶ 20, 40(b), 45, 66(b); <u>Joyce</u> Compl. (Ex. Q) ¶¶ 21, 35(g), 56(g).)

9. <u>Related Legal Issues</u>.  Additionally, there are several legal issues raised in the Association-Group Cases and other potential tag-along actions that are related to legal issues to be determined in this Action.  For example, this Action and the Association-Group Cases have common legal issues regarding removal.[5]

10. <u>Other Association-Group Cases Have Been Adjourned Pending Transfer</u>.  Prior to the Transfer Order, defendants requested that Judge Florence-Marie Cooper adjourn the <u>Correa</u>

---

[4] Some of the Association-Group Cases involve allegations regarding the marketing, sale, and/or administration of association-group insurance by Mid-West and memberships in the Alliance for Affordable Services, Inc. or American for Financial Security, Inc.

[5] Diversity Jurisdiction is at least one of the bases for removal in the <u>Tremor</u>, <u>Powell</u>, <u>Valenzuela</u>, <u>Montgomery</u>, <u>Springer</u>, and <u>Joyce</u> matters.

et al. v. UICI et al., matter pending a ruling on the Motion to Transfer.  Judge Cooper granted the

defendants' Motion finding "the interests of judicial economy favor[ed] the granting of a stay."

(Correa Order Granting Motion to Stay Pending MDL Determination, filed herewith as Exhibit

"S.")  Likewise, Judge Cooper also stayed three other Association-Group Cases, pending their

transfer pursuant to a notice of tag-along.  (See Armistead Order Staying Action, filed herewith

as Exhibit "T"; Joyce and Diaz Order Staying Actions, filed herewith as Exhibit "U.") [6]

## III.    ARGUMENTS AND AUTHORITIES

### A.    The Court Should Adjourn this Action Pending Transfer Pursuant to 28 U.S.C. § 1407.

Federal law provides a statutory mechanism for the transfer and consolidation for pretrial

proceedings of cases pending in different federal districts and involving one or more common

questions of fact.  See 28 U.S.C. § 1407 ("Section 1407").  The Panel determined that the

Association-Group Cases satisfied the requirements of Section 1407.  (See Transfer Order (Ex.

B) at 1-2.)  This Action is yet another Association-Group Case that should be transferred to the

Transferee Court for coordinated or consolidated pretrial proceedings.

The Panel determined that the Association-Group Cases "involve common questions of

fact" and that "centralization under Section 1407 in the Northern District of Texas will serve the

convenience of the parties and witnesses and promote the just and efficient conduct of [the]

litigation."  (Transfer Order (Ex. B) at 1.)  The Panel also found that "all [the] actions share

factual questions arising out of allegations that the moving defendants engaged in a scheme to

sell health insurance by fraudulently concealing the relationships between [MEGA, UICI, and

Mid-West] and the association defendants."  (Id.)  Thus, the Panel concluded that

"[c]entralization under Section 1407 . . . [was] . . . necessary in order to eliminate duplicative

---

[6] The Correa and Armistead matters were Association-Group Cases that were dismissed by the plaintiffs after the parties reached a settlement.

discovery; prevent inconsistent pretrial rulings; and conserve the resources of the parties, their counsel and the judiciary." (Id. at 1-2.) This Action, like the other Association-Group Cases, contains allegations that MEGA and UICI fraudulently concealed the purported relationships between themselves and a membership association, the NASE. (See Compl. ¶¶ 23, 29.)

     **1.**    **This Case and the Association-Group Cases Involve Common Questions of Fact.**

Allegations asserted by Plaintiffs in this Action and the plaintiffs in the Association-Group Cases include, *inter alia*, that MEGA, Mid-West, and/or UICI fraudulently concealed ownership interests between themselves and certain membership associations. (Compare Compl. ¶¶ 23-24, 27-29 with Springer Compl. (Ex. L) ¶ 16; Valenzuela Compl. (Ex. M) ¶ 18; Montgomery Compl. (Ex. N) ¶ 15; Tremor Compl. (Ex. O) ¶ 27; Powell Compl. (Ex. P) ¶ 26; Joyce Compl. (Ex. Q) ¶ 12; Diaz Compl. (Ex. R) ¶ 20; see also Transfer Order (Ex. B) at 1-2.) Therefore, the pretrial disposition of this Action and the Association-Group Cases will likely require the development of a similar, complex set of factual allegations made against defendants therein – including the alleged interrelationship between the current and/or former association member plaintiffs, on the one hand, and the defendant associations and defendant insurers, including MEGA, on the other hand. (See id.) Indeed, most of Plaintiffs' allegations have been lifted nearly verbatim from other Association-Group complaints. For example, Plaintiffs in this Action allege that:

> UICI, MEGA and the NASE are under common control and ownership and operate as a unified business argument [sic]. The arrangement is designed to create the impression that each entity operates independently. The NASE purports to be a non-profit association formed for the "self –employed" for the purpose of advancing the interests of the "entrepreneur" and small business owners. In fact, the NASE was formed, and is operated, by UICI and MEGA as a marketing tool and profit center for the insurance company defendants and their affiliated entities.

8

(Compl. ¶ 23.)  The plaintiffs in <u>Tremor</u> and <u>Powell</u>—which were transferred to the Transferee

Court – make almost *identical* allegations:

> Mega Life, UICI and NASE are under common control and
> ownership and operate as a unified business arrangement.  The
> arrangement is designed so as to create the impression that each
> entity operated independently.  NASE purports to be a "non-profit"
> association formed by the "self-employed" for the purpose of
> advancing the interests of small business owners.  In fact, NASE
> was formed, and is operated, by UICI and MEGA as a marketing
> tool and profit center for the insurance company defendants.

(<u>Tremor</u> Compl. (Ex. O) ¶ 25; <u>Powell</u> Compl. (Ex. P) ¶ 24; <u>see also</u> <u>Springer</u> Compl. (Ex. L) ¶¶

3, 18; <u>Joyce</u> Compl. (Ex. Q) ¶¶ 11-13; <u>Montgomery</u> Compl. (Ex. N) ¶¶ 13, 15; <u>Diaz</u> Compl. (Ex.

R) ¶ 20; <u>Valenzuela</u> Compl. (Ex. M) ¶¶ 1, 3.)

Similarly, allegations asserted by Plaintiffs in this Action and the plaintiffs in the

Association-Group Cases include, *inter alia*, that the same defendants induced consumers to

purchase insurance by charging artificially low premiums and implemented excessive price

increases.  (<u>Compare</u> Compl. ¶¶ 37-40 <u>with</u> <u>Tremor</u> Compl. (Ex. O) ¶ 45; <u>Powell</u> Compl. (Ex. P)

¶ 44; <u>Springer</u> Compl. (Ex. L) ¶¶ 20, 40(b), 45, 66(b); <u>Joyce</u> Compl. (Ex. Q) ¶¶ 21, 35(g), 56(g).)

Indeed, Plaintiffs' "teaser rate" allegations have also been lifted nearly verbatim from the other

Association-Group complaints.  For example, Plaintiffs allege that Defendants utilized

"association dues and fees" to offset premiums and costs of insurance, so that they could

> charge 'teaser rates' which were artificially low and set at an
> amount below that which would be actuarially recommended,"
> thereby "induc[ing] customers into believing that the offered
> insurance was actually bargain priced as a result of NASE's 'group
> negotiating power.'

(<u>Compl.</u> ¶ 38.)  The plaintiffs in <u>Tremor</u> and <u>Powell</u> make almost identical allegations:

> Defendants . . . charge[d] 'teasor [sic] rates" which were
> artificially low and set at an amount below that which would be
> actuarially recommended.  These 'teasor [sic] rates' were utilized
> by the Defendants to induce customers into believing that the

> offered insurance was actually bargains [sic] priced as a result of
> the Association's 'group buying power.'

(Tremor Compl. (Ex. O) ¶ 45; Powell Compl. (Ex. P) ¶ 44 (same); see also Springer Compl. (Ex. L) ¶¶ 20, 40(b), 45, 66(b); Joyce Compl. (Ex. Q) ¶¶ 21, 35(g), 56(g).)

As a result, anticipated discovery requests regarding these alleged interrelationships and "teaser rates" will likely be duplicative, requiring each Defendant to provide multiple responses to very similar requests.

### 2. This Court Has Discretion to Adjourn this Action Pending Transfer to the Transferee Court.

This Court has broad discretion to adjourn proceedings in this Action. See Clinton v. Jones, 520 U.S. 681, 706 (1997). Adjournment of these proceedings pending a decision by the Panel will further the purpose of Section 1407 through the efficient use of judicial resources by allowing one court to decide the common pretrial issues, through the prevention of duplicative discovery, and through the avoidance of inconsistent pretrial rulings. See In re Temporomandibular Joint (TMJ) Implants Prods. Liab. Litig., 844 F. Supp. 1553, 1554 (J.P.M.L. 1994) (centralization is "necessary in order to eliminate duplicative discovery, prevent inconsistent pretrial rulings . . . and conserve the resources of the parties, their counsel and the judiciary"); In re Silicone Gel Breast Implants Prods. Liab. Litig., 793 F. Supp. 1098, 1100 (J.P.M.L. 1992) (same); see also Weinke v. Microsoft Corp., 84 F. Supp. 2d 989, 990 (E.D. Wis. 2000).

In addition, absent an adjournment, Defendant MEGA will likely be required to litigate similar factual issues in this Action and the Transferee Court and thereby face the risk of inconsistent rulings.[7] See Namovicz v. Cooper Tire & Rubber Co., 225 F. Supp. 2d 582, 585 (D.

---

[7] For these reasons, the Portune, Armistead, Joyce and Diaz actions were adjourned or stayed pending a ruling on the Motion to Transfer. (See, e.g., Ex. S ("The interests of judicial economy favor the granting of a stay. Moreover,

Md. 2001) ("A stay is necessary to ensure that, in the event consolidation of all cases for pre-trial litigation is ordered, there is consistent treatment of the numerous lawsuits and that judicial resources are not wasted").

The adjournment also will not unreasonably delay this matter. MEGA is requesting a brief adjournment of the proceedings in this Action. Regardless, neither a delay in the proceedings nor a loss of preferred forum will prejudice Plaintiffs. See Bd. of Trs. of the Teachers' Ret. Sys. of the State of Ill. v. Worldcom, Inc., 244 F. Supp. 2d 900, 906 (N.D. Ill. 2002) ("while delay is always regrettable, the [plaintiffs] fail to explain how delay in this case will substantially affect their rights.").[8]

Finally, this adjournment is not sought for purposes of delay. MEGA requests adjournment to ensure that justice may be served. Adjournment of the proceedings will not prejudice the parties, but should benefit all parties, witnesses, and the Court through the more efficient and uniform resolution of the pretrial proceedings in this Action and the Association-Group Cases. Accordingly, MEGA respectfully requests that this Court adjourn all proceedings in this Action pending a ruling by the Panel regarding the transfer of this Action to the Transferee Court for consolidated or coordinated pretrial proceedings with the Association-Group Cases and further order by the Transferee Court.

**B.** **Alternatively, this Court Should Transfer the Action to the Transferee Court Pursuant to 28 U.S.C. § 1404.**

Alternatively, the Court should transfer this action under Section 1404. "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any

---

should the MDL grant the transfer, the granting of a stay will facilitate consistent rulings in all cases against these Defendants.").)

[8] Further, "it is inevitable in multidistrict litigation that a plaintiff's choice of forum will be overridden." Teachers' Ret. Sys., 244 F. Supp. 2d at 906 ("If these cases are in fact transferred . . . it will not be because the [defendants] prefer [the transfer] location but because the [Panel] determines that consolidation there serves the interests of convenience, justice, and efficiency.").

civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404 (a)  ("Section 1404").[9]  "The analysis under Section 1404(a) is a two-part inquiry."  <u>A.J. Taft Coal Co. v. Barnhart</u>, 291 F. Supp. 2d 1290, 1307 (N.D. Ala. 2003).  First, a court must consider if the action "might have been brought" in the transferee court.  <u>Id.</u>  If so, the court must then consider whether the balance of convenience to the parties and witnesses and the interest of justice weighs in favor of transfer.  <u>See id.</u>  The Court has "broad discretion" to transfer a case under Section 1404.  <u>Id.</u>

The Court should transfer this Action to the Transferee Court because all of these requirements are met in this case.

**1.    This Action Might Have Been Brought in the Transferee Court.**

Generally, where jurisdiction over a civil action is founded only on diversity of citizenship, venue is proper in "(1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought."  28 U.S.C. § 1391(a).  Venue is proper in the Transferee Court on all three grounds.

First, at least one of the properly served Defendants resides in the Northern District of Texas and all of the properly served Defendants reside in Texas.  Plaintiffs have properly served MEGA, UICI, and UICI Marketing, Inc.  (<u>See</u> Not. of Removal ¶¶ 3, 4, 6.)  Upon information

---

[9] MEGA's requests for transfer pursuant to Sections 1404 and 1407 are not in conflict, as the sections "are not mutually exclusive and, when appropriate, should be used in concert to effect the most expeditious disposition of multidistrict litigation."  <u>In re Yarn Processing Patent Validity Litig.</u>, 341 F. Supp. 376, 382 n.14 (J.P.M.L. 1972) (internal citations omitted).

and belief, Plaintiffs have also properly served the NASE and SAS.  (See Not. of Removal ¶¶ 7, 8.)  A defendant corporation is considered to reside in any judicial district in which it is subject to personal jurisdiction.  See 28 U.S.C. § 1391(c).  A corporation is subject to personal jurisdiction in its state of incorporation, or where its principal place of business is located.  See 28 U.S.C. § 1332(c)(1).  MEGA's principal place of business is located in North Richland Hills, Texas, which is in the Northern District of Texas.[10]  (See Aff. JoAnn Jones ¶ 3 (filed herewith as Exhibit "V").)  MEGA, UICI, UICI Marketing, Inc., the NASE, and SAS's principal places of business are all located in Texas.  (See Not. of Removal ¶¶ 17, 18, 19, 20, 21; Compl. ¶¶ 2, 3, 5, 6, 8.)  Accordingly, because at least one of the properly served Defendants resides in Northern District of Texas and all the properly served Defendants reside in Texas, the Transferee Court is the judicial district where venue is proper and *all* the Defendants reside.  See 28 U.S.C. § 1391(a).

Second, a substantial part of the events giving rise to Plaintiffs' claims are alleged to have occurred in Texas.  Plaintiffs allege that the corporate Defendants engaged in a nationwide "scheme" to sell insurance relating to alleged "rating and pooling practices," and "mass marketing and administration" of MEGA's certificates of health insurance coverage.  (Compl. ¶¶ 25-29, 37-40.)  Plaintiffs allege that the corporate Defendants perpetrated the alleged scheme through mutual ownership, common officers, the exchange of monies, and "centralized" administration of the insurance certificates.  (See id.)  Plaintiffs further allege the principal place of business of each of the properly served corporate Defendants is located in Texas.  (Id. ¶¶ 2, 3, 5, 8.)  Thus, a substantial part of the events giving rise to Plaintiffs' claims must have occurred in Texas.  See Gould v. Nat'l Life Ins. Co., 990 F. Supp. 1354, 1358-59 (M.D. Ala. 1998) ("If there

---

[10] Additionally, upon information and belief, UICI, UICI Marketing, the NASE, and SAS are also located in the Northern District of Texas.

was a pattern of uniform fraud . . . such a fraud would have been devised at the defendant's headquarters."). In addition to Plaintiffs' allegations, the evidence shows that the certificate of insurance coverage central to all of Plaintiffs' allegations was issued and administrated at MEGA's administrative office in Texas. (See Aff. J. Jones ¶ 4.) Accordingly, because a substantial part of the events giving rise to Plaintiffs' claims occurred in Texas, venue is proper in the Transferee Court. 28 U.S.C. § 1391(a).

Finally, because MEGA, UICI, UICI Marketing, Inc., the NASE, and SAS were all subject to personal jurisdiction in Texas at the time this Action was commenced, venue is proper in the Transferee court. See 28 U.S.C. § 1391(a). In sum, because the above requirements have been satisfied, Plaintiffs "might have [] brought" this Action in the Transferee Court. Id.

### 2. Transfer of the Actions to the Transferee Court is Convenient for the Parties and Witnesses and in the Interest of Justice.

The Action should be transferred to the Transferee Court because it is convenient for the parties and witnesses and in the interest of justice. Although a court must give deference to a plaintiff's choice of forum when evaluating transfer under Section 1404, this deference is not absolute. See Irwin v. Zila, Inc., 168 F. Supp. 2d 1294, 1296 (M.D. Ala. 2001); Gould, 990 F. Supp. at 1358-59. For example, when the operative facts underlying a plaintiff's allegations did not occur therein, the plaintiff's choice of forum is automatically entitled to less deference. Id. Moreover, under any circumstances, a defendant moving for transfer can overcome deference by showing that the convenience of the parties and witnesses and interests of justice outweigh the plaintiff's right to choose the forum. Irwin, 168 F. Supp. 2d at 1296.

Here, both of these factors support transfer of the Action to the Transferee Court. First, Plaintiffs' choice of forum is entitled to less deference because they have alleged a nationwide sales scheme, the underlying facts of which inevitably occurred outside of their chosen forum.

Second, the convenience to the parties and witnesses and the furtherance of justice resulting from the transfer outweighs Plaintiffs' right to choose their forum.

        a.    <u>Plaintiffs' choice of forum is entitled to less deference because the underlying facts occurred elsewhere.</u>

Plaintiffs' choice of forum for the Action is entitled to less deference in determining whether the case should be transferred to the Transferee Court.  When a plaintiff alleges a defendant engaged in a nationwide scheme, the operative facts underlying the scheme inevitably occurred outside of the plaintiff's chosen forum, and thus, the choice of forum is entitled to less deference.  <u>See</u> <u>Gould</u>, 990 F. Supp. at 1358-63.[11]

Here, Plaintiffs allege that MEGA engaged in a nationwide scheme to fraudulently sell and administer insurance and that the nationwide scheme was operated at MEGA's headquarters, which is located in Texas and outside of Plaintiff's chosen forum.  (<u>See generally</u> Compl.) Accordingly, Plaintiffs' choice of forum is entitled to less deference in the Court's determination of whether to transfer the Action to the Transferee Court.  <u>Gould</u>, 990 F. Supp. at 1358-63.

        b.    <u>The convenience to the parties and witnesses resulting from a transfer of the Action to the Transferee Court outweighs Plaintiffs' right to choose their forum</u>.

A plaintiff's choice of forum can be overcome if it is outweighed by the convenience to the parties and witnesses resulting from a transfer.  When evaluating the convenience to parties and witness from a transfer, courts generally consider:

> [T]he relative ease of access to sources of proof; availability of compulsory process of unwilling, and the cost of obtaining attendance of willing, witnesses; . . . and all other practical problems that make trial of case easy, expeditious, and inexpensive . . . The court will weigh relative advantages and obstacles to [sic] a fair trial.

---

[11] Although the <u>Gould</u> plaintiffs' choice of forum was also entitled to less deference because they asserted a purported class action, the <u>Gould</u> court also held that the plaintiffs' assertions of a nationwide scheme was a separate and additional factor entitling their choice of forum to less deference.  <u>See</u> 990 F. Supp. at 1358-59.

Irwin, 168 F. Supp. 2d at 1296.

Analyzing these factors under circumstances nearly identical to those at issue in this Action, an Alabama district court recently found that the plaintiffs' right to choose the forum was outweighed by the convenience and justice factors. See Irwin, 168 F. Supp. 2d at 1298. In Irwin, the plaintiffs were Alabama residents who opted-out of a class action settlement pending in the District of Arizona. Id. at 1295. The plaintiffs waited until after the conclusion of the class action to file their complaint in Alabama. Id. at 1297. Defendants moved to transfer plaintiffs' action to the District of Arizona pursuant to Section 1404. Id. at 1295.

Considering the convenience of the parties and witnesses, the Irwin court found the fact that "most of the witnesses reside in Arizona [was] of considerable importance since 'the forum in which the majority of material principal witnesses reside is the most convenient forum.'" Id. at 1296-97. Moreover, the court found that most of the documentary evidence was located in Arizona, and thus transfer of the voluminous documentary evidence to Alabama presented a considerable burden on defendants. Id. Consequently, the Irwin court held that transfer of plaintiffs' action to the District of Arizona would be more convenient for the parties and witnesses. Id. at 1296-98.

Similarly, in Gould, a plaintiff brought a class action against an insurance company relating to its nationwide sales practices. See 990 F. Supp. 2d at 1364. The defendants moved, pursuant to Section 1404, to transfer venue to the district court located near its headquarters and where at least three individual actions were pending against it based on nearly identical allegations. Id. at 1356-57. The Gould court held that transfer was appropriate under Section 1404 because (1) defendants' key officers were located near the transferee court; (2) many of the defendants' retired employees who could be called to testify resided near the transferee court and

the Alabama court would not be able to compel their attendance; and (3) most of the documents relevant to plaintiff's allegations were housed near the transferee court, and it would be difficult and disruptive to defendants' business to transport or copy the documents to Alabama.  Id. at 1359.  Consequently, the Gould court found transfer to the transferee court appropriate for the convenience of the parties and witnesses.  Id.

Here, Plaintiffs allege MEGA engaged in certain improper activities on a nationwide basis and that those activities generated at MEGA's corporate headquarters, which is located near the Transferee Court.  (See, e.g., Compl. ¶¶ 13, 17, 20.)  Specifically, Plaintiffs allege MEGA engaged in a nationwide scheme to fraudulently sell and administer insurance and that as part of this nationwide scheme, MEGA avoided the regulation of its sales by "various state departments of insurance *throughout the nation*."  (Id. ¶ 13; see also id. ¶¶ 37-40.)  Plaintiffs' further claim that all operational aspects of MEGA's sale and administration of this insurance occurred at its corporate headquarters near the Transferee Court.  (See id. ¶¶ 17, 20, 24.)

In addition, MEGA's key officers and employees and documents relevant to Plaintiffs' allegations are located in Texas near the Transferee Court.  (See Aff. J. Jones ¶¶ 4-6.)  Moreover, without transfer, MEGA's key officers and employees will most likely be called by Plaintiffs to testify regarding the identical issues upon which they testified in the coordinated Association-Group Cases in the Transferee Court.[12]  (Compare Compl. with Tremor Compl.; Powell Compl.; Valenzuela Compl.; Joyce Compl.; Diaz Compl.; Springer Compl.; Montgomery Compl.)  Finally, because Defendants' former employees are likely to reside in Texas, this Court cannot compel their appearance in Alabama.  See FED. R. CIV. P. 45(c)(3)(A)(ii).

---

[12] Any contention by Plaintiffs that Defendant Stephanie Tranchina resides in Alabama or that she has relevant documents in Alabama is without merit because Ms. Tranchina is not an Alabama resident.  (See Not. of Removal ¶ 22.)

Thus, because the majority of the witnesses and the documentary evidence relevant to the Action is located near the Transferee Court, litigation of Plaintiffs' claims in the Transferee Court would be more convenient for the parties and witnesses.  Accordingly, the convenience to the parties and witnesses resulting from a transfer of the Action to the Transferee Court outweighs Plaintiffs' right to choose their forum and the Action should be transferred to the Transferee Court.

          c.      <u>The interest of justice weighs in favor of transfer to the Transferee Court, outweighing Plaintiffs' choice of forum.</u>

The furtherance of justice resulting from a transfer of the Action to the Transferee Court further outweighs Plaintiffs' right to choose their forum.  In considering the interest of justice, courts must consider "the public interest factors of systematic integrity and fairness."  <u>Barnhart</u>, 291 F. Supp. 2d at 1312.  Moreover, a court looks to the forum where "trial of a case [is] easy, expeditious, and inexpensive. . . ."  <u>Irwin</u>, 168 F. Supp. 2d at 1296.

Again, under nearly identical circumstances to those presented here, the <u>Irwin</u> court found that the furtherance of justice resulting from transfer further outweighed the plaintiffs' choice of forum.  <u>See</u> 168 F. Supp. 2d at 1297.  The <u>Irwin</u> plaintiffs' raised facts and claims in their Alabama case identical to those that had just been resolved via the class action settlement in the Arizona Court.[13]  <u>Id.</u> at 1297-98.  Consequently, the <u>Irwin</u> court held that the interest of justice favored transfer of plaintiffs' claim to the District of Arizona.  <u>Id.</u> at 1297-98.  Specifically, the Alabama district court held that the trial of plaintiff's claims would be most

---

[13] Noteworthy, the <u>Irwin</u> court scrutinized the timing that plaintiffs filed their complaint because "it is important to consider that Plaintiffs would have already litigated in Arizona had they not opted out of the class action.  Had Plaintiffs filed during the pendency of the class action, there is good reason to believe the Court would have transferred their case to the District of Arizona."  168 F. Supp. 2d at 1297.  Analogous to <u>Irwin</u>, Plaintiffs waited to file the instant action until after the Settlement.  (<u>Compare</u> April 6, 2005 Compl. <u>with</u> October 15, 2004 Final Order.)  Had Plaintiffs filed during the pendency of the Settlement, there is good reason to believe the Court would have transferred the case to the Transferee Court.

easy, expeditious, and inexpensive in the Arizona court because the issues presented in plaintiffs'
complaint would have been familiar to the District of Arizona, and resolution of any novel
Alabama state claims would not impose an additional burden because the Arizona court would
merely have to apply the law to the facts.  Id. at 1297-98; see also Gould, 990 F. Supp. at 1363
("To the extent that state law will be relevant, the [transferee court] is as capable of determining
the law of all 50 states as is this court.").  Accordingly, the Irwin court transferred plaintiffs'
complaint because "[t]he mere fact that Plaintiffs waited until after the class action settled [to file
their complaint] does not negate the efficiency and considerations of justice favoring transfer to
Arizona."  168 F. Supp. 2d at 1297.

       Likewise, transfer of Plaintiffs' Action to the Transferee Court would promote the
interest of justice and would be the "most easy, expeditious, and inexpensive."  First, Plaintiffs'
in this Action and the plaintiffs in the Association-Group Cases allege that MEGA, Mid-West,
and/or UICI fraudulently concealed ownership interests between themselves and certain
membership associations, and that the same Defendants charged artificially low premiums and
implemented excessive price increases.  (Compare Compl. ¶¶ 28-29, 37-40 with Tremor Compl.
(Ex. O) ¶¶ 25, 45; Powell Compl. (Ex. P) ¶¶ 24, 44; Valenzuela Compl. (Ex. M) ¶¶ 1,3; Joyce
Compl. (Ex. Q) ¶¶ 11-13, 21, 35(g), 56(g); Diaz Compl. (Ex. R) ¶ 20; Springer Compl. (Ex. L)
¶¶ 3, 18, 20, 40(b), 45, 66(b); Montgomery Compl. (Ex. N) ¶¶ 13, 15.)  Consequently, pre-trial
discovery will inevitably involve the same issues, which should be adjudicated uniformly by the
Transferee Court.  (Id.)  Second, the Transferee Court is still intimately familiar with the issues
presented in Plaintiffs' Complaint because it only recently approved the Settlement.  (See
generally Final Order.)  Finally, the Transferee Court still has seven other Association-Group
Cases pending that involve identical factual issues to Plaintiffs' Complaint.  (Compare Compl.

with <u>Tremor</u> Compl.; <u>Powell</u> Compl.; <u>Valenzuela</u> Compl.; <u>Joyce</u> Compl.; <u>Diaz</u> Compl.; <u>Springer</u> Compl.; <u>Montgomery</u> Compl.); <u>see also</u> <u>Gould</u>, 990 F. Supp. at 1361 (granting transfer due to several other pending cases in transferee court). Accordingly, "judicial economy and fairness militate in favor of transfer to a venue with acute familiarity with the underlying cause of action." <u>Irwin</u>, 168 F. Supp. 2d at 1298.

In sum, Plaintiffs' choice of forum is entitled to less deference because they allege a nationwide scheme, the underlying facts of which inevitably occurred outside of their chosen forum. Moreover, the convenience and justice resulting from a transfer outweigh Plaintiffs' right to choose their forum. Transfer of the Action to the Transferee Court is more convenient to the parties and witness and is in the interest of justice because: (1) Plaintiffs opted out of the class Settlement adjudicated in the Transferee Court; (2) the majority of the witness and evidence are located near the Transferee Court; and (3) the Transferee Court is not only familiar with the Settlement, but is still adjudicating other opt-out cases. Accordingly, pursuant to Section 1404, the Court should transfer the Action to the Transferee Court.

## IV.    CONCLUSION AND REQUESTED RELIEF

For all of these reasons, MEGA respectfully requests that this Court adjourn all proceedings in this Action pending a decision by the Panel regarding the transfer of this Action to the Transferee Court for consolidated or coordinated pretrial proceedings with the Association-Group Cases and further order by the Transferee Court. Alternatively, MEGA requests that this Court transfer this Action to the Transferee Court. MEGA further requests that the Court grant MEGA any other relief to which it is justly entitled.

```
                                    /s/ E. Luckett Robinson, II
                                    HENRY A. CALLAWAY, III  (CALLH4748)
                                    E. LUCKETT ROBINSON, II  (ROBIE6110)
                                    LISA DARNLEY COOPER  (COOPL8509)
                                    Attorneys for Defendants UICI, UICI Marketing,
                                    Inc., and The MEGA Life and Health Insurance
                                    Company
```

OF COUNSEL:

Hand Arendall, LLC
Post Office Box 123
Mobile, AL 36601
Telephone:  (251) 432-5511
Facsimile:  (251) 694-6375

## CERTIFICATE OF SERVICE

I hereby certify that on , I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Phillip W. McCallum, Esq.
pwm@mmlaw.net

Robert G. Methvin, Jr., Esq.
rgm@mmlaw.net

James M. Terrell, Esq.
jterrell@mmlaw.net

John N. Bolus, Esq.
jbolus@mcglaw.com

## CERTIFICATE OF SERVICE

I hereby certify that I have on this day, May 12, 2005, served a copy of the foregoing pleading on all counsel of record by placing a copy of same in United States Mail, properly addressed and first class postage prepaid, as follows:

James B. Pittman, Jr., Esq.
Davis & Fields, P.C.
27180 Pollard Road
Daphne, AL 36526

```
                                    /s/ E. Luckett Robinson, II
```