

AUG 19 2003 12:55 PM FR MP&P,LLP#1        310 312 6546 TO ##573521#1214736 P.02



WILLIAM M. SHERNOFF, ESQ. #38856
EVANGELINE F. GARRIS, ESQ. #176014
SHERNOFF BIDART & DARRAS, LLP
600 South Indian Hill Boulevard
Claremont, California 91711
Telephone: (909) 621-4935
Facsimile: (909) 625-6915

RANDY D. CURRY, ESQ. #119636
LAW OFFICES OF RANDY D. CURRY
2424 S. E. Bristol Street, Suite 250
Newport Beach, California 92660
Telephone: (949) 863-1288
Facsimile: (949) 863-3333

Attorneys for Plaintiff,
 Debbie Correa

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DEBBIE CORREA,<br><br>    Plaintiff,<br><br>    vs.<br><br>UICI, MID-WEST NATIONAL LIFE INSURANCE COMPANY OF TENNESSEE, ALLIANCE FOR AFFORDABLE SERVICES, CORNERSTONE AMERICA, SPECIALIZED ASSOCIATION SERVICES, WILLIAM CALLAGHAN, JR., HOWARD SEGAL, PAUL PEVSNER, M.D., DANELLE NIXON, ACE LOOMIS,<br><br>    Defendants. | Case No. CV 03-4778 FMC (CTx)<br><br>**FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**<br><br>1. Breach of the Duty of Good Faith and Fair Dealing<br><br>2. Breach of Contract<br><br>3. False Advertising (Marketing Fraud)<br><br>4. Business and Professions Code Section 17200<br><br>5. Negligent Misrepresentation<br><br>6. Intentional Misrepresentation<br><br>**DEMAND FOR JURY TRIAL** |

- 1 -

FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

**EXHIBIT 1**

45

 

AUG 19 2003 12:56 PM FR MP&P,LLP#1    318 312 6546 TO ##573521#1214745 P.03

<div style="text-align:center"><strong>GENERAL ALLEGATIONS</strong></div>

1. Plaintiff, DEBBIE CORREA, ("CORREA"), is, and at all times herein mentioned was a resident and citizen of the State of California.

2. Defendant, UICI is, and at all relevant times was, a publicly traded corporation, a holding company whose assets include MID-WEST NATIONAL LIFE INSURANCE COMPANY OF TENNESSEE. UICI is, and at all relevant times was a corporation organized and existing by virtue of the laws of the State of Texas and authorized, through its wholly owned subsidiaries, including MID-WEST NATIONAL LIFE INSURANCE COMPANY OF TENNESSEE, to transact the business of insurance in this State.

3. Defendant, MID-WEST NATIONAL LIFE INSURANCE COMPANY OF TENNESSEE ("MID-WEST") is, and at all relevant times herein was, a corporation duly organized and existing under and by virtue of the laws of the State of Texas, authorized to transact and is transacting the business of insurance in this State.

4. Plaintiff is informed and believes and on such information and belief alleges, that Defendant MID-WEST is a wholly owned subsidiary of Defendant UICI. Upon such information and belief, Plaintiff alleges that there exists, and at all relevant times herein mentioned there existed, a unity of interest and ownership between Defendants, MID-WEST and UICI such that any individuality and separateness between Defendants have ceased, and Defendant UICI is the alter ego of Defendant MID-WEST. Plaintiff alleges that MID-WEST is, and at all relevant times herein mentioned was, a mere shell, instrumentality and conduit through which Defendant UICI carried on its business, exercising complete control and dominance of such business that any individuality or separateness of Defendants does not and did not exist.

5. Defendant, ALLIANCE FOR AFFORDABLE SERVICES

<div style="text-align:center">- 2 -</div>

<div style="text-align:center">FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL</div>

<div style="writing-mode:vertical-rl">SHERNOFF BIDART & DARRAS</div>

86

 

AUG 19 2003 12:56 PM FR MP&P.LLP#1          310 312 6546 TO ##573521#1214746 P.04

1    ("ALLIANCE") is, and at all relevant times was, a corporation duly organized and

2    existing under and by virtue of the laws of Texas and authorized to transact and

3    transacting the business of insurance in this State.

4        6.    Defendant, CORNERSTONE AMERICA ("CORNERSTONE") is,

5    and at all relevant times was, a nationwide insurance agency that markets

6    memberships in ALLIANCE and sells MID-WEST policies. CORNERSTONE is,

7    and at all relevant times was, a corporation duly organized and existing under and

8    by virtue of the laws of Texas, authorized to transact and is transacting the business

9    of insurance in this State.

10       7.    Defendant, SPECIALIZED ASSOCIATED SERVICES ("SAS") is,

11   and at all relevant times was, a corporation duly organized and existing under and

12   by virtue of the laws of Texas, which administers all insurance sold to members of

13   Defendant ALLIANCE.

14       8.    Defendants, WILLIAM CALLAGHAN, JR. ("CALLAGHAN"),

15   HOWARD SEGAL ("SEGAL"), PAUL PEVSNER, M.D. ("PEVSNER"),

16   DANELLE NIXON ("NIXON"), and ACE LOOMIS ("LOOMIS") are individuals

17   who are, and at all relevant times herein were, members of the board of directors of

18   ALLIANCE. CALLAGHAN is a resident of Florida. SEGAL and PEVSNER are

19   residents of New York. NIXON is a resident of Illinois. Loomis is a resident of .

20   New Mexico.

21       9.    Plaintiff hereby reserves the right to amend this complaint as a class

22   action complaint.

23       10.    This action is by individuals who are victims of Defendants' elaborate

24   and fraudulent nationwide marketing scheme developed by Defendants to sell

25   medical insurance. Defendants prey on individual insurance consumers and small

26   business owners who work hard to make ends meet and who cope with difficulties

27   in obtaining quality medical insurance at affordable prices.

28

· 3 ·

FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

87

AUG 19 2003 12:56 PM FR MP&P.LLP#1        310 312 6546 TO ##573521#1214746 P.05

11. On or about March 20, 2001, CORREA was solicited to join ALLIANCE which promised quality group health insurance at affordable group rates. ALLIANCE "enrollers" have a convincing sales pitch. By joining ALLIANCE, insurance consumers, including CORREA, are told they become members of a large group that enjoys true buying power. The major benefit promised by ALLIANCE is the ability to purchase ALLIANCE "endorsed" medical insurance at affordable group rates. ALLIANCE "endorses" MID-WEST medical insurance and promises ALLIANCE members that it has "negotiated" the medical insurance plans on behalf of ALLIANCE members.

12. Based on this solicitation and the sales pitch that took place in Whittier, California, CORREA agreed to join ALLIANCE and pay ALLIANCE membership fees in order to obtain MID-WEST medical insurance which promised $1,000,000 in coverage. On April 2, 2001, MID-WEST issued CORREA group policy number 00085, certificate number AM0401082.

13. The sales pitch that CORREA fell for is the same sales pitch more than 300,000 U.S. insurance consumers have fallen for in joining ALLIANCE, and paying membership fees, in order to obtain so-called affordable group rates on medical insurance.

This illegal and fraudulent marketing scheme works as follows:

ALLIANCE "enrollers" and "benefit consultants" receive leads resulting from a multi-million dollar marketing campaign paid for by CORNERSTONE, a nationwide insurance agency that exclusively sells ALLIANCE memberships to insurance consumers through a network of agency offices throughout the United States. CORNERSTONE is owned and controlled by defendant, UICI. Currently, there are more than 300,000 ALLIANCE members. ALLIANCE members are never told of the relationship between UICI, CORNERSTONE and the ALLIANCE "enrollers" and "benefits consultants" who receive UICI stock options

- 4 -

FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

SHERNOFF BIDART & DARRAS

88



AUG 19 2003 12:57 PM FR MP&P,LLP#1      310 312 5546 TO #=573521#1214746 P.06

1   as part of their compensation package as CORNERSTONE agents selling

2   ALLIANCE memberships.

3      CORREA, like the more than 300,000 other ALLIANCE members, were

4   promised affordable group rates for medical insurance. ALLIANCE members are

5   promised that ALLIANCE negotiates with various insurance companies on their

6   behalf and, based on those negotiations, endorses MID-WEST to its members.

7   ALLIANCE members are never told that the only medical insurance company

8   endorsed by ALLIANCE is MID-WEST. ALLIANCE members are also never

9   told that ALLIANCE does not negotiate medical insurance premiums on their

10   behalves, with MID-WEST or any other insurance company. ALLIANCE

11   members are never told there is no attempt to obtain affordable group rates.

12      ALLIANCE is controlled by UICI which benefits from a not for profit tax

13   status currently enjoyed by ALLIANCE in operating as a marketing conduit for

14   UICI. ALLIANCE has no physical office address and operates with only a post

15   office box and a toll free phone number. ALLIANCE has no employees.

16      Defendant SAS administers ALLIANCE memberships and answers the toll

17   free ALLIANCE phone number. SAS operates across the street from the UICI

18   building in Hurst, Texas. SAS is owned by Jeffrey Jensen. Jeffrey Jensen's father,

19   Ronald Jensen, is the founder and chairman of the board of UICI. Ronald Jensen is

20   the former owner of SAS.

21      In order to maintain an appearance of propriety, ALLIANCE has a board of

22   directors. The ALLIANCE board of directors includes defendants CALLAGHAN,

23   SEGAL, PEVSNER, NIXON and LOOMIS. These directors, despite having

24   fiduciary duties to ALLIANCE members, have no involvement in the day-to-day

25   operations of ALLIANCE and have no physical offices at ALLIANCE, because

26   ALLIANCE operates through a post office box and has no physical location.

27   These board members meet for the purpose of endorsing MID-WEST medical

28

SHERNOFF BIDART & DARRAS

- 5 -

FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

89



1   insurance policies to the ALLIANCE membership and rubberstamping business

2   decisions presented by Defendants. SAS representatives, including Jeffrey Jensen,

3   commonly attend ALLIANCE board of directors meetings. ALLIANCE board of

4   directors member Howard Segal is the custodian of records for the minutes of the

5   ALLIANCE board meetings. The minutes, however, are maintained at the SAS

6   building in Hurst, Texas. Howard Segal is an attorney in New York City.

7      Over 300,000 ALLIANCE members are never advised of these facts. The

8   ALLIANCE members are defrauded by Defendants in this elaborate and fraudulent

9   nationwide marketing scheme designed by Defendants to line their own pockets.

10     14.   At all relevant times, the MID-WEST insurance coverage was in full

11   force and effect.

12      15.   At no time did the Defendants ever advise CORREA of the following:

13         A.) ALLIANCE is an organization formed and incorporated to

14   maintain an association for the purpose of obtaining insurance in violation of

15   California law, including, but not limited to, *Insurance Code* Section 10270.97.

16         B.) UICI and its wholly-owned subsidiaries, including MID-WEST,

17   were aware of the ALLIANCE marketing scheme, supported the scheme and

18   profited by it.

19         C.) The ALLIANCE endorsement of MID-WEST and UICI was

20   designed to create monetary profits for Defendants.

21         The true standard between ALLIANCE and its ALLIANCE endorsed

22   insurance carriers including MID-WEST were that each would profit to the benefit

23   of all involved in the illegal marketing scheme.

24      16.   CORREA made medical claims under the MID-WEST policy. MID-

25   WEST has failed to pay CORREA's claims. CORREA filed a Chapter 7

26   bankruptcy petition, plaintiff received a discharge in that bankruptcy proceeding,

27   and the Court entered an Order Closing Case prior to plaintiff learning of the

28

SHERNOFF BIDART & DARRAS

- 6 -

FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

90

AUG 19 2003 12:58 PM FR MP&P.LLP#1        310 312 6546 TO ##5735213l2l47=5 P.03

1   wrongful conduct of the defendants alleged in this action.

2                    FIRST CAUSE OF ACTION

3          (Breach of the Duty of Good Faith and Fair Dealing)

4               (Against Defendants UICI and MID-WEST)

5          17.    Plaintiff refers to each and every paragraph of the General Allegations

6   and incorporates those paragraphs as though set forth in full in this cause of action.

7          18.    Defendants UICI and MID-WEST have breached their duty of good

8   faith and fair dealing owed to Plaintiff in the following respects:

9               A.)    Unreasonable and bad faith denial of medical, surgical and

10  hospital benefits at a time when Defendants knew that Plaintiff was entitled to

11  these benefits.

12              B.)    Failing to reasonably and promptly investigate and process

13  Plaintiff's claim for medical and hospital benefits in conformity with the

14  representations of Defendants.

15              C.)    Not attempting in good faith to effectuate a prompt, fair, and

16  equitable settlement of Plaintiff's claim for medical and hospital expense benefits

17  where Defendants' liability had become reasonably clear.

18              D.)    Maintaining an illegal marketing scheme in order to sell

19  medical insurance.

20              E.)    Plaintiff is informed and believes and thereon alleges that

21  Defendants, and each of them, have breached their duty of fair dealing and good

22  faith owed to Plaintiff by other acts or omissions of which Plaintiff is presently

23  unaware.  Plaintiff will seek leave of Court to amend this Complaint at such time

24  as Plaintiff discovers the other acts or omissions of Defendants constituting such

25  breach.

26         19.    As a proximate result of the aforementioned unreasonable and bad

27  faith conduct of Defendant, Plaintiff has suffered, and will continue to suffer in the

28

- 7 -

FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

SHERNOFF BIDART & DARRAS

91



1  future, damages under the Policy, plus interest, and other economic and

2  consequential damages, for a total amount to be shown at the time of trial.

3      20.    As a further proximate result of the unreasonable and bad faith

4  conduct of Defendants, and each of them, Plaintiff was compelled to retain legal

5  counsel to obtain the benefits due under the Policy. Therefore, Defendants, and

6  each of them, are liable to Plaintiff for those attorney fees reasonably necessary

7  and incurred in order to obtain these benefits in a sum to be determined at trial.

8      21.    As a further proximate result of the aforementioned wrongful conduct

9  of defendants, Plaintiff has suffered, and will continue to suffer, anxiety, worry,

10  mental and emotional distress, and other incidental damages and out-of-pocket

11  expenses, all to Plaintiff's general damage in a sum to be determined at the time of

12  trial.

13      22.    Defendants' business practices and conduct described herein were

14  intended by Defendants to cause injury to Plaintiff or was despicable conduct

15  carried on by Defendants with a willful and conscious disregard of the rights of

16  Plaintiff, subjecting Plaintiff to cruel and unjust hardship in conscious disregard of

17  Plaintiff's rights, and were intentional misrepresentations, deceit or concealment of

18  material facts known to Defendants with the intent to deprive Plaintiff of property,

19  legal rights, or to otherwise cause injury, such as to constitute malice, oppression,

20  or fraud under *California Civil Code* § 3294, thereby entitling Plaintiff to punitive

21  damages in an amount appropriate to punish or set an example of Defendants.

22      23.    Defendants' conduct described herein was undertaken by officers or

23  managing agents of the corporate Defendants who are responsible for marketing,

24  claims operations, communications and/or decisions. The afore-described conduct

25  of said managing agents and individuals were therefore undertaken on behalf of the

26  corporate Defendants. Said corporate Defendants further had advance knowledge

27  of the actions and conduct of said individuals whose actions and conduct were

28

- 8 -

FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

SHERNOFF BIDART & DARRAS

92

 

AUG 19 2003 12:58 PM FR MP&P.LLP#1        310 312 6546 TO #=573521#1214746 P.:0

1   ratified, authorized and approved by managing agents.

2   **SECOND CAUSE OF ACTION**

3   **(Breach of Contract)**

4   **(Against Defendants UICI and MID-WEST)**

5   24.   Plaintiff refers to each and every preceding paragraph and

6   incorporates those paragraphs as though set forth in full in this cause of action.

7   25.   At all relevant times CORREA was insured by MID-WEST under

8   group health insurance policy number 00085, certificate number AM 0401082 (the

9   Policy). The Policy promised that benefits would be paid if Plaintiff incurred

10   medical, surgical and/or hospital expenses due to injury or sickness.

11   26.   Plaintiff has performed all duties on her part to be performed under

12   the Policy, including the payment of premiums.

13   27.   CORREA incurred medical expenses properly payable in accordance

14   with the terms of the Policy.

15   28.   CORREA submitted claims for medical benefits to MID-WEST in

16   accordance with the terms and conditions of the Policy and applicable law.

17   29.   Plaintiff's claims were denied.

18   30.   As a direct and proximate result of MID-WEST's breach of the

19   subject insurance contract, Plaintiff suffered contractual damages under the Policy

20   and other, incidental damages and out-of-pocket expenses, all in a sum to be

21   determined at trial.

22   **THIRD CAUSE OF ACTION**

23   **(False Advertising – Marketing Fraud)**

24   **(Against Defendants UICI, MID-WEST, ALLIANCE,**

25   **CORNERSTONE, SAS, CALLAGHAN, SEGAL, PEVSNER, NIXON, and**

26   **LOOMIS)**

27   31.   Plaintiff refers to each and every preceding paragraph and

28

- 9 -

FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

SHERNOFF BIDART & DARRAS

93

AUG 19 2003 12:59 PM FR MP&P,LLP#1        310 312 6546 TO ##573521#1214746 P.11

1    incorporates those paragraphs as though set forth in full in this cause of action.

2       32.   Defendants represented that by joining the ALLIANCE, Plaintiff

3    would receive quality group health insurance without paying expensive individual

4    rates. Defendants represented that they selected UICI and MID-WEST to provide

5    group insurance through negotiations to avoid high individual rates. Defendants

6    failed to advise Plaintiff that ALLIANCE was organized to maintain an association

7    for the purpose of obtaining insurance in violation of California law, including, but

8    not limited to, *Insurance Code* Section 10270.97. Further, Defendants failed to

9    advise CORREA that UICI and its wholly-owned subsidiaries, including MID-

10   WEST, were aware of the ALLIANCE marketing scheme, supported the scheme

11   and profited by it.

12      33.   Plaintiff is informed and believes and thereon alleges that Defendants

13   made these representations with no reasonable grounds for believing them to be

14   true, or should have known them not to be true.

15      34.   These representations were made by Defendants with the intent to

16   induce Plaintiff to purchase the policy and to pay premiums thereon. Had Plaintiff

17   known the actual facts, Plaintiff would not have taken such actions.

18      35.   CORREA was justified in relying on the representations of

19   Defendants who represented themselves as a knowledgeable in the business of

20   insurance. In justifiably relying on the misrepresentations of Defendants,

21   CORREA joined ALLIANCE, purchased the policy, paid premiums thereon, and

22   did not seek coverage elsewhere.

23      36.   Plaintiff is informed and believes and thereon alleges that Defendants,

24   and each of them, fraudulently misrepresented other matters regarding the MID-

25   WEST policy by their acts or omissions of which Plaintiff is presently unaware,

26   but which may be determined through discovery in this action. Plaintiff will seek

27   leave of court to amend this complaint at such time as Plaintiff discovers the other

28

- 10 -

FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

SHERNOFF BIDART & DARRAS

94



AUG 19 2003 12:59 PM FR MP&P,LLP#1        310 312 6546 TO ##573521=1214716  P.:2

1   acts or omissions of Defendants, and each of them, which would constitute further

2   intentional misrepresentation on the part of these Defendants.

3      37.   As a proximate result of Defendants' conduct, Plaintiff has suffered,

4   and will continue to suffer the future, damages under the policy, plus interest, and

5   other economic and consequential damages, for a total amount to be shown at the

6   time of trial.

7      38.   As a further proximate result of the aforementioned wrongful conduct

8   of Defendants, Plaintiff has suffered anxiety, worry, mental and emotional distress,

9   all to Plaintiff's general damage in a sum to be determined that the time of trial.

10      39.   Defendants intended to cause injury to Plaintiff or this despicable

11   conduct was carried on with a willful and conscious disregard of Plaintiff's rights

12   and subjected Plaintiff to cruel and unjust hardship. This conduct constitutes an

13   intentional misrepresentation, deceit or concealment of a material fact known to

14   Defendants with the intention to deprive Plaintiff of property, legal rights or to

15   otherwise cause injury such as to constitute malice, oppression or fraud under

16   *California Civil Code* Section 3294. Therefore, Plaintiff is entitled to punitive

17   damages in an amount appropriate to punish or set an example of Defendants.

18      40.   Defendants' conduct described herein was undertaken by the

19   corporate Defendants' officers or managing agents who were responsible for

20   advertising, underwriting, claims operations, communications and/or decisions.

21   The aforementioned conduct of said managing agents and individuals was

22   therefore taken on behalf of the corporate Defendants. Said corporate Defendants

23   further had advance knowledge of the actions and conduct of said individuals

24   whose actions and conduct were ratified, authorized, and approved by managing

25   agents.

26   //

27   //

28

SHERNOFF BIDART & DARRAS

- 11 -

FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

95

AUG 19 2003 12:59 PM FR MP&P,LLP≡1    310 312 6546 TO ≡≡573521≡1314746 P.10

**FOURTH CAUSE OF ACTION**

(Business and Professions Code section 17200, et seq.)

(Against Defendants UICI, MID-WEST, ALLIANCE,
CORNERSTONE, SAS, CALLAGHAN, SEGAL, PEVSNER, NIXON, and
LOOMIS)

41.    Plaintiff refers to each and every preceding paragraph and
incorporates those paragraphs as though set forth in full in this cause of action.

42.    Defendants UICI, MID-WEST, ALLIANCE, CORNERSTONE, SAS,
CALLAGHAN, SEGAL, PEVSNER, NIXON, and LOOMIS by their conduct,
concealed from Plaintiff and failed to disclose to Plaintiff that they have the unfair
and illegal practice of requiring potential insurance to join ALLIANCE in order to
purchase health insurance coverage. Plaintiff believes and on that basis alleges
that Alliance is an unlawful group maintained for the purpose of selling insurance
and that this is done by Defendants for the purpose of wrongfully obtaining further
profits by obtaining membership fees from potential insureds, in addition to the
insurance premiums, to the detriment of the insureds.

43.    In order to purchase insurance from MID-WEST, Plaintiff and many
others were required to pay membership fees to join ALLIANCE even though they
have no desire to utilize the other services purportedly offered by the organization,
and the requirement of membership in this group is contrary to the law of
California.

44.    Defendants, and each of them, have committed acts of unfair
competition as defined under California law and by *Business and Professions Code*
Section 17200, *et. seq.*, by maintaining a group for the sale of insurance to Plaintiff
and many other persons in California and throughout the United States.

45.    Plaintiff is informed and believes and on that basis alleges that the
unlawful practices alleged above are continuing in nature and are a widespread

- 12 -

FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

SHERNOFF BIDART & DARRAS

96



AUG 19 2003  1:00 PM FP MP&P,LLP#1        310 312 6546 TO #=57352121#745 P.#3

1     practice engaged in by Defendants.

2          46.    On behalf of the general public, Plaintiff respectfully requests that an

3     injunction against Defendants, be issued to enjoin them from forming and

4     maintaining groups which require their insureds to join ALLIANCE and other

5     groups in order to obtain insurance coverage.  Plaintiff also respectfully requests

6     that an injunction against Defendants, be issued to enjoin Defendants from

7     requiring potential insureds to join such groups in order to purchase policies of

8     insurance.

9          47.    On behalf of the general public, Plaintiff respectfully requests that an

10    injunction against Defendants, be issued to enjoin them from using unfair,

11    deceptive for fraudulent representations in the marketing of their insurance

12    coverage.

13         48.    On behalf of the general public, Plaintiff respectfully requests that this

14    court order Defendants, to pay restitutionary relief requiring defendants to disgorge

15    and divest all money received from membership fees, all monies which were paid

16    to Defendants by insureds who were forced to join groups, and all profits gained by

17    Defendants as a result of the scheme of marketing fraud alleged in this complaint.

18         49.    Plaintiff respectfully requests an award of attorneys' fees upon

19    prevailing in her request for injunctive relief.

20                         FIFTH CAUSE OF ACTION

21                         (Negligent Misrepresentation)

22                    (Against Defendants UICI and MID-WEST)

23         50.    Plaintiff refers to each and every preceding paragraph and

24    incorporates said paragraphs as though set forth in full in this cause of action.

25         51.    Defendants represented that by joining the ALLIANCE, Plaintiff

26    would receive quality group health insurance without paying expensive individual

27    rates.  Defendants represented that they selected UICI and MID-WEST to provide

28                                         - 13 -

SHERNOFF BIDART & DARRAS

97

 

1   group insurance through negotiations to avoid high individual rates.  Defendants

2   failed to advise Plaintiff that ALLIANCE was organized to maintain an association

3   for the purpose of obtaining insurance in violation of California law, including, but

4   not limited to, *Insurance Code* Section 10270.97.  Further, Defendants failed to

5   advise plaintiff that UICI and its wholly-owned subsidiaries, including MID-

6   WEST, were aware of the ALLIANCE marketing scheme, supported the scheme

7   and profited by it.

8       52.    Plaintiff was justified in relying on the representations of MID-WEST

9   and ALLIANCE, as they represented themselves as a knowledgeable in insurance.

10  In justifiably relying on the misrepresentations of MID-WEST and ALLIANCE

11  and the other Defendants, Plaintiff purchased the policy, paid premiums thereon

12  and did not seek coverage elsewhere.

13      53.    Plaintiff is informed and believes and thereon alleges that Defendants,

14  and each of them, negligently misrepresented other matters regarding the MID-

15  WEST policy by their acts or omissions of which Plaintiff is presently unaware,

16  but which may be determined through discovery in this action.  Plaintiff will seek

17  leave of court to amend this complaint at such time as Plaintiff discovers other acts

18  or omissions of Defendants, and each of them, that would constitute further

19  intentional misrepresentation on the part of these Defendants.

20      54.    As a proximate result of defendants' conduct, Plaintiff has suffered,

21  and will continue to suffer the future, damages under the Policy, plus interest, and

22  other economic and consequential damages, for a total amount to be shown at the

23  time of trial.

24      55.    As a further proximate result of the aforementioned wrongful conduct

25  of Defendants, Plaintiff has suffered anxiety, worry, mental and emotional distress,

26  all to Plaintiff's general damage in a sum to be determined that the time of trial.

27

28

<div style="text-align:center">- 14 -</div>

<div style="text-align:center">FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL</div>

SHERNOFF BIDART & DARRAS

98

AUG 19 2003  1:00 PM FR MP&P,LLP#1        310 318 6546 TO ##573521#1214746 P.:5

**SIXTH CAUSE OF ACTION**

(Intentional Misrepresentation)

(Against Defendants UICI, MID-WEST, ALLIANCE,

CORNERSTONE, SAS, CALLAGHAN, SEGAL, PEVSNER, NIXON and

LOOMIS)

56.  Plaintiff refers to each and every preceding paragraph and incorporates said paragraphs as though set forth in full in this cause of action.

57.  Defendants represented that by joining the ALLIANCE, Plaintiff would receive quality group health insurance without paying expensive individual rates.  Defendants represented that they selected UICI and MID-WEST to provide group insurance through negotiations to avoid high individual rates.  Defendants failed to advise Plaintiff that ALLIANCE was organized to maintain an association for the purpose of obtaining insurance in violation of California law, including, but not limited to, *Insurance Code* Section 10270.97.  Further, Defendants failed to advise Plaintiff that UICI and its wholly-owned subsidiaries, including MID-WEST, were aware of the ALLIANCE marketing scheme, supported the scheme and profited by it.

58.  Plaintiff was justified in relying on the representations of Defendants who represented themselves as a knowledgeable in the business of insurance.  In justifiably relying on the misrepresentations of Defendants, Plaintiff joined ALLIANCE, purchased the policy, payed premiums thereon, and did not seek coverage elsewhere.

59.  Plaintiff is informed and believes and thereon alleges that Defendants, and each of them, negligently misrepresented other matters regarding the MID-WEST policy by their acts or omissions of which Plaintiff is presently unaware, but which may be determined through discovery in this action.  Plaintiff will seek leave of court to amend this complaint at such time as Plaintiff discovers the other

SHERNOFF BIDART & DARRAS

- 15 -

FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

99



AUG 19 2003  1:01 PM FR MP&P,LLP#1        310 312 6546 TO ##572521#1214746 P.17

1  acts or omissions of Defendants, and each of them, which would constitute further

2  intentional misrepresentation on the part of these Defendants.

3      60.   As a proximate result of Defendants' conduct, Plaintiff has suffered,

4  and will continue to suffer the future, damages under the policy, plus interest, and

5  other economic and consequential damages, for a total amount to be shown at the

6  time of trial.

7      61.   As a further proximate result of the aforementioned wrongful conduct

8  of Defendants, Plaintiff has suffered anxiety, worry, mental and emotional distress,

9  all to Plaintiff's general damage in a sum to be determined that the time of trial.

10      62.   Defendants' conduct described herein was intended by the Defendants

11  to cause injury to Plaintiff or was despicable conduct was carried on with a willful

12  and conscious disregard of the rights of Plaintiff and subjected the Plaintiff to cruel

13  and unjust hardship in conscious disregard of the her rights and was intentional

14  misrepresentation, deceit or concealment of a material fact known to Defendants

15  with the intention to deprive the Plaintiff of property, legal rights or to otherwise

16  cause injury such as to constitute malice, oppression or fraud under *California*

17  *Civil Code* Section 3294, thereby entitling the Plaintiff to punitive damages in an

18  amount appropriate to punish or set an example of Defendants.

19      63.   Defendants' conduct described herein was undertaken by the

20  corporate Defendant's officers or managing agents who were responsible for

21  advertising, underwriting, claims operations, communications and/or decisions.

22  The aforementioned conduct of said managing agents and individuals was

23  therefore taken on behalf of the corporate Defendants. Said corporate Defendants

24  further had advance knowledge of the actions and conduct of said individuals

25  whose actions and conduct were ratified, authorized, and approved by managing

26  agents .

27

28

SHERNOFF BIDART & DARRAS

600 SOUTH INDIAN HILL BLVD #300
CLAREMONT, CALIFORNIA 91711-5498
TELEPHONE (909) 621-4935

- 16 -

FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

100

AUG 19 2003  1:01 PM FR MP&P.LLP#1    310 312 6546 TO ##573521#1214746  P.:9

# PRAYER

WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them, as follows:

## FIRST CAUSE OF ACTION

1. Damages for delay and denial of policy benefits, and other economic and consequential damages, in a sum to be determined at the time of trial;

2. General damages for mental and emotional distress and other incidental damages in a sum to be determined at the time of trial;

3. Punitive and exemplary damages in an amount appropriate to punish or set an example of Defendants;

4. For pre-judgment interest at the appropriate legal rate;

5. For costs of suit incurred herein; and

6. For attorney fees incurred to obtain the benefits under the Policy in a sum to be determined at the time of trial.

## SECOND CAUSE OF ACTION

7. Damages for delay and denial of policy benefits and other economic and consequential damages, in a sum to be determined at the time of trial;

8. For pre-judgment interest at the appropriate legal rate; and

9. For costs of suit incurred herein.

## THIRD CAUSE OF ACTION

10. Damages for delay and denial of Policy benefits, plus interest, including prejudgment interest, and other economic and consequential damages, in a sum to be determined at the time of trial;

11. General damages for mental and emotional distress and other incidental damages in a sum to be determined at the time of trial;

12. Punitive and exemplary damages in an amount appropriate to punish or set an example of Defendants;

- 17 -

FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

101

 

AUG 19 2003  1:01 PM FR MP&P.LLP#1        310 312 6546 TO ##573521#1214746 P.:9

13. For pre-judgment interest at the appropriate legal rate;

14. For costs of suit incurred herein; and

15. For such other and further relief as the court deems just and proper.

### FOURTH CAUSE OF ACTION

16. For a preliminary and a permanent injunction against Defendants, and each of them, restraining, preventing and enjoining Defendants from selling insurance policies and accepting premiums from their insureds when Defendants engage in the illegal practice of setting up groups and preventing them from collecting membership fees from these potential insureds, before permitting the potential insureds to purchase health insurance;

17. For a preliminary and permanent injunction against Defendants, and each of them, restraining, preventing and enjoining defendants from selling insurance policies and accepting premiums from potential insureds when they do so as part of Defendant's fraudulent practice of misrepresenting the nature, extent and quality of that insurance through written and oral misrepresentation as alleged above;

18. For a preliminary and permanent injunction against Defendants, and each of them, restraining, preventing and enjoining defendants from requiring potential insured to join ALLIANCE or any other group and collecting membership fees from these potential insured in order that the potential insured be permitted to purchase health insurance from MID-WEST, UICI and its subsidiaries;

19. For a preliminary and permanent injunction against Defendants, and each of them, restraining, preventing and enjoining defendants from denying claims for insurance benefits by their insureds when to do so would contradict the written and oral representation made in the marketing of the relevant policies as alleged above;

- 18 -

FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

SHERNOFF BIDART & DARRAS

102

 

AUG 19 2003  1:02 PM FR MP&P,LLP#1        310 312 6546 TO ##57252#1214745 P.20

1    20.   For restitution and disgorgement of all monies received by Defendants

2    from fees paid by their insureds in order to join the groups as required by

3    Defendants before their insureds were allowed to purchase insurance coverage

4    from MID-WEST;

5    21.   For restitution and disgorgement of all profits obtained by Defendants

6    from their insureds respecting the insurance policies sold through the scheme of

7    marketing fraud as alleged in this complaint;

8    22.   For attorneys fee's incurred in prosecuting this action on behalf of the

9    general public;

10    23.   For costs of suit herein; and

11    24.   For such other and further relief as the court deems just and proper.

12              **FIFTH CAUSE OF ACTION**

13    25.   Damages under the policy in an amount to be determined according to

14    proof at the time of trial;

15    26.   General damages for mental and emotional distress and other

16    incidental damages in a sum to be determined at the time of trial;

17    27.   For costs of suit incurred herein; and

18    28.   For such other and further relief as the Court deems just and proper.

19              **SIXTH CAUSE OF ACTION**

20    29.   Damages for delay in providing benefits under the policy, plus

21    interest, including prejudgment interest, and other economic and consequential

22    damages, in a sum to be determined at the time of trial;

23    30.   General damages for mental and emotional distress and other

24    incidental damages in a sum to be determined at the time of trial;

25    31.   Punitive and exemplary damages in an amount appropriate to punish

26    or set an example of Defendants;

27    32.   For pre-judgment interest at the appropriate legal rate;

28

- 19 -

FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

SHERNOFF BIDART & DARRAS



AUG 19 2003  1:02 PM FR MP&P,LLP#1     310 312 6546 TO ##573521#1214745 P.2:

33.  For costs of suit incurred herein; and

34.  For such other and further relief as the Court deems just and proper.

Dated:  August 18, 2003                SHERNOFF, BIDART & DARRAS, LLP


                                  By _____
                                     EVANGELINE F. GARRIS
                                     Attorneys for Plaintiff


                         JURY DEMAND

   Plaintiff, CORREA, hereby demands a jury trial in this action.


Dated:  August 18, 2003                SHERNOFF, BIDART & DARRAS, LLP


                                  By _____
                                     EVANGELINE F. GARRIS
                                     Attorneys for Plaintiff

FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

104

 

## PROOF OF SERVICE

### STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the county of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is: 600 South Indian Hill Boulevard, Claremont, California 91711.

On August 18, 2003, I served the foregoing document described as: FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL , on all interested parties in this action by placing [ ] the original [ ] a true copy thereof enclosed in sealed envelopes addressed as follows:

(See Attached Service List)

[ X] BY MAIL
I caused such envelope to be deposited in the mail at Claremont, California. The envelope was mailed with postage thereon fully prepaid. I am "readily familiar" with this firm's practice of collection and processing correspondence for mailing. It is deposited with U.S. postal service on that same day in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than 1 day after date deposit for mailing in affidavit.

[ ]BY PERSONAL SERVICE
I caused to be delivered by hand to the above-listed addressees or to the addressees on the list attached hereto. A proof of service executed by the delivery person will be mailed under separate cover.

[ ]BY OVERNIGHT MAIL/COURIER
To expedite the delivery of the above-named document, said document was sent via overnight courier for next day delivery to the above-listed party.

[ ]BY FACSIMILE ("FAX")
In addition to the manner of proof of service indicated above, a copy was sent by FAX to the above-listed party.

[XX] (Federal) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made. I declare under penalty of perjury under the laws of California that the above is true and correct.

Executed on August 18, 2003, at Claremont, California.

_Susan F. Lacey_
Susan F. Lacey

## SERVICE LIST

Geoffrey T. Tong, Esq.
Alex M. Weingarten, Esq.
MANATT, PHELPS & PHILLIPS, LLP
11355 W. Olympic Boulevard
Los Angeles, California 90064
310-312-4000 ~ Fax-310-312-4224

Attys for Defendants, UICI, Mid-West National
Life Insurance Company of Tennessee and Eric C.
Mueller

Brian K. Mazen, Esq.
MESERVE, MUMPER & HUGHES, LLP
300 South Grand Avenue, 24th Floor
Los Angeles, California 90071-3185
213-620-0300 ~ Fax-213-625-1930

Attys for Defendants The Alliance for Affordable
Services

Randy D. Curry, Esq.
LAW OFFICES OF RANDY D. CURRY
2424 S. E. Bristol Street, Suite 250
Newport Beach, California 92660
Telephone: (949)-863-1288
Facsimile: (949)-863-3333

Co-Counsel for Plaintiff

105

 

```
 1   Law Offices of Reiser & Simone
     Michael J. Reiser, Esq. (Bar No. 133621)
 2   Edward J. Simone, Esq. (Bar No. 131038)
     1806 Bonanza Street
 3   Walnut Creek, California 94596
     Tel: (925) 256-0500
 4   FAX: (925) 256-0700

 5   Attorney for Plaintiff,
     Sandra Lacy
 6

 7

 8           SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA

 9
     SANDRA LACY,                    No. RG03-092881
10
               Plaintiff,
11                                   COMPLAINT FOR UNFAIR
     vs.                             BUSINESS PRACTICES and
12                                   INJUNCTIVE RELIEF
     MEGA LIFE AND HEALTH INSURANCE
13   COMPANY, an Oklahoma Insurance
     Company; MID-WEST                    BY FAX
14   NATIONAL LIFE INSURANCE COMPANY OF
     TENNESSEE, a Tennessee Insurance
15   Company;
     NASE GROUP INSURANCE TRUST;
16   NATIONAL ASSOCIATION FOR THE SELF
     EMPLOYED aka NASE, a Texas
17   Corporation; UNITED GROUP
     ASSOCIATION, INC.;
18   ALLIANCE FOR AFFORDABLE
     SERVICES; THE BUSINESS AND
19   PROFESSIONAL SERVICE INDUSTRY
     TRUST;
20   CORNERSTONE MARKETING OF AMERICA;
     UICI, INC., a Delaware
21   Corporation and Does 1 Through
     200,
22
               Defendants.
23

24      Plaintiff SANDRA LACY alleges against the Defendants MEGA

25   LIFE AND HEALTH INSURANCE COMPANY ("MEGA"), an Oklahoma Insurance

26   Company, MID-WEST NATIONAL LIFE INSURANCE COMPANY OF TENNESSEE

27   ("MID-WEST"), NASE GROUP INSURANCE TRUST ("NASE TRUST"), NATIONAL

28   ASSOCIATION FOR THE SELF EMPLOYED aka NASE ("NASE"), UNITED GROUP
```

ENDORSED
FILED
ALAMEDA COUNTY

APR 2 2 2003

CLERK OF THE SUPERIOR COURT
By Sharita Hasfield, Dep.

COMPLAINT FOR UNFAIR BUSINESS PRACTICES
AND INJUNCTIVE RELIEF

Filed By
Jus Legal

APR 22 2003 14:58          925 256 8700    PAGE.04

**EXHIBIT 2**

106

ASSOCIATION, INC., ("UGA"), ALLIANCE FOR AFFORDABLE SERVICES

("AAS"), THE BUSINESS AND PROFESSIONAL SERVICE INDUSTRY TRUST

("BAPSI TRUST"), CORNERSTONE MARKETING OF AMERICA

("CORNERSTONE"), UICI, INC. ("UICI"), a Delaware corporation, and

Does 1 Through 200, inclusive, and each of them:

                              I. PARTIES

    1.    Plaintiff Sandra Lacy (hereinafter "Plaintiff" or

"Lacy") is, and at all times herein mentioned was, a resident of

California, and is suing in her individual capacity and on behalf

of the general public.

    2.    Defendant Mega Life is an insurance company organized

and existing under the laws of the state of Oklahoma. At all

times alleged herein, Mega-life was registered to do and actually

doing business in the state of California.

    3.    Defendant Mid-West National Life Insurance Company of

Tennessee ("MID-WEST") is an Oklahoma corporation. At all times

alleged herein, MID-WEST was registered to do and actually doing

business in the state of California.

    4.    Defendant NASE Group Insurance Trust is a purported

"trust" organized and existing under the laws of a state as yet

undetermined.  At all times alleged herein, NASE Group was doing

business in the State of California.

    5.    Defendant National Association for the Self Employed

a/k/a NASE is a corporation organized and existing under the laws

of the state of Texas.  At all times alleged herein, NASE was

registered to do and actually doing business in the state of

California.

    6.    UNITED GROUP ASSOCIATION, INC., ("UGA"), is a

REISER & SIMONE
1806 BONANZA STREET
WALNUT CREEK, CA 94596
925-256-0400 TEL.
925-256-0700 FAX

COMPLAINT FOR UNFAIR BUSINESS PRACTICES
AND INJUNCTIVE RELIEF

PAGE 2

107

1  corporation organized and existing under the laws of a state as

2  yet undetermined.  At all times alleged herein, UGA was

3  registered to do and actually doing business in the state of

4  California.

5      7.    Defendant Alliance for Affordable Services', ("AAS") is

6  an association located in the District of Columbia. On

7  information and belief, AAS was registered to do and actually

8  doing business in the state of California.

9      8.    The Business and Professional Service Industry Trust

10 ("BAPSI TRUST") is a purported "trust" organized and existing

11 under the laws of a state as yet undetermined.  At all times

12 alleged herein, on information and belief, BAPSI TRUST was doing

13 business in the State of California.

14     9.    Cornerstone Marketing of America ("CORNERSTONE") is a

15 business entity, form unknown, organized and existing under the

16 laws of a state as yet undetermined.  At all times alleged

17 herein, on information and belief, CORNERSTONE was doing business

18 in the State of California.

19     10.   Defendant UICI is the parent of Defendants Mega Life

20 and MID-WEST.  UICI was set up by one Ron Jensen as a publicly-

21 traded entity.   Ron Jensen is one of the original developers of

22 the "association/group trust" method of marketing individually

23 underwritten health insurance.  UICI, a Delaware corporation

24 doing business in the State of California, was set up to take

25 Jensen's "association" health insurance concept public and

26

27 ¹

28 NASE, UGA, AAS, BAPSI TRUST and CORNERSTONE are referred to herein as "the associations"; Mega Life and Mid-West are referred to as "the insurance companies."

COMPLAINT FOR UNFAIR BUSINESS PRACTICES
AND INJUNCTIVE RELIEF                                                    PAGE 3

REIBER & SHMONE
1808 BONANZA STREET
WALNUT CREEK, CA 94596
925-256-0400 TEL
925-256-0700 FAX

108

1  generate significant funds for Jensen personally.

2      11.  Plaintiff is unaware of the true names and capacities

3  of defendants sued herein as Does 1-200, inclusive, and

4  therefore, Plaintiff sued such defendants by such fictitious

5  names.  When the true names and capacities of the Doe defendants

6  have been ascertained, this complaint will be amended

7  accordingly.  Plaintiff is informed and believes and thereupon

8  alleges that each of the defendants designated herein as a Doe is

9  responsible in some manner for the events alleged herein and

10 proximately and/or legally caused the damages herein alleged.

11     12.  Unless otherwise stated, whenever it is alleged in this

12 pleading that Defendants committed an act, made a representation

13 or statement, failed to perform an act, or failed to make a

14 statement, it means that Defendants were acting or failing to act

15 through their authorized agents, servants or employees acting

16 with either express, implied, apparent and/or ostensible

17 authority; or that Defendants subsequently ratified these acts,

18 failures to act, representations, statements or conduct.

19 Plaintiff further pleads that each Defendant acted as the

20 authorized agent of the other Defendant with either express,

21 implied, apparent and/or ostensible authority, or that each

22 Defendant subsequently ratified the acts, failures to act,

23 representations, statements or conduct of every other Defendant.

24 Plaintiff, therefore, alleges that each Defendant is jointly and

25 severally liable for all damages of Plaintiff alleged herein.

26 ///

27 ///

28 ///

REUBEN & SHOKE
1808 Bonanza Street
Walnut Creek, CA 94596
925-256-0400 Tel
925-256-0700 Fax

COMPLAINT FOR UNFAIR BUSINESS PRACTICES
AND INJUNCTIVE RELIEF

PAGE 4

109



## II.

### JURISDICTION AND VENUE

13. There is no federal question jurisdiction and no diversity jurisdiction as no California Consumer has more than $10,000 in actual damages and Plaintiff states she will not ask for judgment of more than $20,000 (including treble damages) per California consumer nor more than $5,000 attorney's fees per California consumer. There is no aggregation of damages in the Ninth Circuit and therefore the minimum jurisdictional limits of the Federal courts are not met. Plaintiff unequivocally states she will not seek more than $25,000 per California Consumer inclusive of all damages of every nature, attorney's fees, cost, interest and any other amount which a California consumer may be entitled to recover under the applicable law. Further, Plaintiff unequivocally states she is not seeking to adjudicate the rights of any ERISA plan member.

14. Venue is proper in Alameda County pursuant to Business and Professions Code $17203.

### III.

### GENERAL ALLEGATIONS

15. All Defendants are under common control and ownership and operate as a unified business arrangement. However, the arrangement is designed to create the impression that each entity operates independently. The associations purport to be "non-profit" associations formed by the "self employed" or other common interest groups, for the purpose of advancing the interest of small business owners or others.

In reality, the associations are controlled by Ron Jensen,

FRIESEN & SIMONE
1808 BONANZA STREET
WALNUT CREEK, CA 94596
925-256-0400 TEL
925-256-0700 FAX

COMPLAINT FOR UNFAIR BUSINESS PRACTICES
AND INJUNCTIVE RELIEF

PAGE 5

1 operating through various organizations owned or controlled by

2 him or his family members. (Said organizations are hereafter

3 referred to as "the Jensen Group.") The Jensen Group

4 organizations control the "non-profit" associations, which

5 perform as marketing tools and profit centers for the Jensen

6 Group.

7      The "association" arrangement is used primarily for the

8 purpose of generating profits through "association dues" and

9 related provider and/or management agreements. The use of the

10 associations is also instrumental in bypassing state insurance

11 regulations by the use of "group trusts" and "association"

12 insurance certificates which Mega Life and Mid-West contend can

13 be altered, modified or canceled by an "agreement" between the

14 insurance companies and the associations. This arrangement

15 avoids state insurance regulation of the premiums charged for the

16 heath insurance coverage. Consumers are deceived by this

17 arrangement into believing that the associations are independent

18 entities which evaluate various insurance policies in order to

19 obtain the best available "group insurance" when, in fact, the

20 associations, trusts and the insurance companies are jointly

21 owned and/or controlled and the only insurance made available to

22 association members are insurance products issued by companies

23 wholly owned by UICI.

24      16. Defendants represent to the general public in

25 California through their marketing materials that the

26 associations are independent and not for profit organized for the

27 benefit of the self employed, small business owners and other

28 common interest groups, formed and operated for the specific

REUBER & SIMONE
1808 BONANZA STREET
WALNUT CREEK, CA 94596
925-256-0400 TEL
925-256-0700 FAX



purpose of providing various benefits to its members, the
principal benefit being "group insurance" at "group rates".
Defendants further intentionally conceal from the general public
in California many material facts including but not limited to:
1) all Defendants are under common ownership and control; 2) the
associations are merely marketing tools and profit centers for
all Defendants; 3) the association "benefits" primarily consist
of nothing more than discounts and "information services" of
negligible value which can commonly be obtained free of charge in
connection with many purchases and services such as credit card
ownership and travel club memberships; 4) the "benefits package"
is purchased by the associations from a fulfillment company
and/or companies owned and/or controlled by the Jensen Group for
a few dollars, or for highly inflated amounts designed solely to
funnel money out of the "non-profit" association and into the
pockets of the other Defendants or the Jensen Group; and 5) the
associations are controlled by the Jensen Group in a manner
designed to deprive the members of any participation in the
administration of the associations.

   17.  The insurance companies are solely owned by UICI, which
is principally owned by Ron Jensen, and/or his family, who is one
of the original developers of the "association/group trust"
method of marketing individually underwritten health insurance.
This marketing arrangement was developed for three principal
reasons: 1) by issuing a master "group policy" to a "trust" and
issuing only "certificates" to the individual insureds, the
insurance company seeks to insulate the insured/insurer
relationship from the "certificate holder" so that the insurance

COMPLAINT FOR UNFAIR BUSINESS PRACTICES
AND INJUNCTIVE RELIEF

112



1  company and the "trust" (which is an entity created by and under

2  the exclusive control of the insurance company) can modify the

3  policy and premiums at will without obtaining the consent of the

4  individual insureds or the state's department of insurance; 2)

5  designating insurance as "group insurance" bypasses the more

6  stringent regulations applicable in California to individually

7  underwritten health insurance; and, 3) the insurance company

8  insures the association will be "not for profit" because the

9  insurance companies and/or the Jensen Group has "management

10 agreements" and/or benefit provider agreements by which the

11 "profits" are all removed from the associations.  These

12 "management agreements" and provider agreements give the

13 insurance companies) complete control over the association's

14 accounts, either directly or through a management company or

15 provider under Jensen Group control.  The associations typically

16 generate millions of dollars in profits monthly and this money is

17 funneled to the insurance company and/or the Jensen Group under

18 the terms of the "management agreements" and provider agreements.

19 Consumers, such as Plaintiff, are never informed of the existence

20 of these agreements and the interrelationship and control of

21 these entities and never have occasion to discover them.

22      18.  By contrast, members of a *legitimate* association are

23 notified of, and given the opportunity to participate in,

24 regularly scheduled meetings where the membership votes to elect

25 officers and are informed of executive decisions.  However, in

26 sham arrangements, such as the one organized by the Defendants,

27 every effort is made to insure the association "members" never

28 have access to accurate information that would reveal the true

FERBER & SIMONE
1800 BONANZA STREET
WALNUT CREEK, CA 94506
925-256-0400 TEL
925-256-0700 FAX

113

1   nature of the arrangement.

2       19. NASE Group and BAPSI Trust were formed for the sole

3   purpose of being the "named insured" under a "group policy"

4   ultimately of Jensen's choosing.  These "trusts" are deceptively

5   named for the purpose of creating the impression that the

6   entities act in the capacity of "trustee" for the association

7   members in connection with the "group insurance policy".  In

8   fact, these "trusts" are nothing more than token entities formed

9   solely for the purpose of acting as the "insured" under the

10  "group policy" and thereby allowing Mega Life and Mid-West to

11  completely control the insurer/insured relationship.  20.  The

12  associations purport to be "independent" and "not for profit",

13  formed by and for the benefit of the self-employed, small

14  business owners and other common groups.  In fact though, the

15  associations originated as "shelf" corporations formed to be held

16  two years and then transformed into an "association".  For

17  example, NASE originated in Texas where state law prohibits the

18  formation of an association solely for the purpose of marketing

19  insurance, prohibits an association from marketing insurance

20  unless it has been in existence for two years and requires that

21  the consumer be informed of any relationships between the

22  association and any insurance company endorsed by the

23  association.  Because of these statutes, the corporate Defendants

24  and the Jensen Group devised the arrangement described above

25  solely for the purpose of circumventing the law.

26      21. California consumers purchase the Mega Life and Mid-

27  West policies based upon the misrepresentations made by

28  Defendants and by the corporate Defendants in the marketing and

REUBER & SIMONE
1 BOB BONHAM STREET
WALNUT CREEK, CA 94595
925-256-0400 TEL
925-256-0700 FAX

114



policy/membership information provided to Plaintiff which:

    a.   Represents the associations are independent, non-profit association of similarly interested self employed and other persons, the purpose of which is to obtain benefits for its members based on the objective criteria of cost/value when, in fact, the associations are solely marketing tools of the insurance companies, UICI and the Jensen Group and do not evaluate, compare or consider any other insurance for their members;

    b.   Fails to disclose the common ownership/control of the associations among the corporate Defendants and the Jensen Group and deceptively represents that the Defendants are separate and independent;

    c.   Fails to adequately and meaningfully disclose the cost of the association "benefits" and implies those benefits are unique to NASE and AAS when, in fact, they are commonly obtainable and of negligible value;

    d.   Fails to adequately and meaningfully disclose the amount and character of the "association dues", administrative fees and other costs of obtaining insurance from Mega Life and Mid-West;

    e.   Fails to disclose that the initial premium rates offered to consumers are below the amount actuarially calculated for the purpose of inducing purchases of the Mega Life and Mid-West policies(referred to in the industry as "teaser rates") when all Defendants know significant premium increases are routinely scheduled and implemented for the purpose of eliminating insureds

ROSEN & SIMONE
1806 BONANZA STREET
WALNUT CREEK, CA 94596
925-256-0400 TEL
925-256-0700 FAX

115

from the policyholder population over a predetermined time period so that insureds with health problems will remain in a consistently diminishing premium pool and as the premium rates are raised to exorbitant levels, these insureds will be eliminated from the insured population. Mega Life and Mid-West continually sift the insured population by issuing a "new" or reclassified policy after a predetermined number of policies are issued so that a block of policies can be "closed" and the rates raised to exorbitant levels which forces all the well policy holders into different policies and eliminates insureds with health problems when the premiums reach unaffordable levels.

22. The corporate Defendants maintain a nationwide sales force of solicitors who contact consumers by phone or mail and arrange appointments for Defendants' sales agents. The agents misrepresent the Mega Life and Mid-West policies as being "group insurance" available only to the associations' members and obtained by the associations at significant savings because of the associations' "group buying power". In fact, association "members" pay more for their insurance than they would have for comparable "non association" individually underwritten health insurance.

23. The marketing scheme implemented by the insurance companies is employed both in the presentation of its sales agents, the companies marketing materials and on its Internet sites. For example, NASE maintains a web page at  which contains links for "affordable health insurance for the self employed" and

FOLEY & SIMONE
1606 BONANZA STREET
WALNUT CREEK, CA 94596
925-256-0400 TEL.
925-256-0700 FAX

116

1   invites viewers to "click here to request a free quote." When
2   those links are highlighted, a page appears captioned "NASE -
3   Affordable Health Insurance" and states "the group negotiating
4   power of NASE makes it possible to offer valuable benefits to our
5   members. One of these benefits is access to health insurance
6   coverage.  The NASE endorses several financially strong insurance
7   carriers that offer a variety of products and plans customized to
8   meet the special needs of the self employed individual or small
9   business owners."  This is simply not true though as NASE only
10  endorses health insurance offered by Mega Life or another company
11  owned and/or controlled by UICI.
12      24.  Users of the web page are never informed that the only
13  insurance policies offered to NASE members are issued by Mega
14  Life which is a financially related insurance company and jointly
15  controlled with the association.  On this same page, there is a
16  link to "NASE's endorsement standards" and upon clicking that
17  link a page appears which lists several purported "criteria" for
18  endorsement of insurance.  Again, the web page viewers are never
19  informed that Mega Life is the only health insurance company
20  offered to NASE "members".  From the home page, there is a link
21  to a page captioned "member benefits" and, again, at the top of
22  this page is a banner link to "affordable health insurance for
23  the self employed".  Another link captioned "full listing of
24  benefits" contains a statement "Endorsed health coverage.  The
25  NASE is continually searching quality benefit programs for you.
26  Your membership in the NASE makes it possible for us to negotiate
27  valuable benefits and competitive rates".  It then states
28  "because of the different products available in each state across

REINER & SLOBODE
1809 BONANZA STREET
WALNUT CREEK, CA 94596
925-256-0400 TEL
925-256-0700 FAX

117

1  the Nation, and the unique needs of each individual, we are not

2  able to post general information about endorsed health coverage".

3      25.  This statement is made so that the web page does not

4  conspicuously link to Mega Life in order to create the impression

5  that there is not a connection between Mega Life and NASE.  This

6  type of deception is typical of the Defendants' advertising

7  designed to create the false impression that Mega Life and NASE

8  are not jointly owned and commonly controlled.  Defendant's

9  brochure and outline of coverage provided to applicants fail to

10  disclose the Defendant's relationships and misrepresent that NASE

11  has no connection to Mega Life.  Defendants intend that the

12  California consumer act upon the representations in the manner

13  reasonably contemplated which is by purchasing association

14  membership and insurance, and thereby incurring unnecessary and

15  hidden expenses in the form of membership dues, administrative

16  fees, set up fees, and, ultimately, inflated health insurance

17  premiums.  Such conduct constitutes intentional

18  misrepresentation.

19      26.  At the time of the sale of the insurance and

20  association membership to California consumers, each Defendant

21  knew that the initial premium rate charged for the health

22  insurance was a "teaser rate" which was artificially low and set

23  at an amount below that which had been actuarially recommended.

24  These "teaser rates" were utilized to induce consumers into

25  believing that the offered insurance was actually bargain priced

26  as a result of the association's "group buying power".  However,

27  at the time of the sale, all Defendants knew that the premiums

28  were artificially low and would be exorbitantly raised over time.

REUBEN & SIMONE
1800 BONANZA STREET
WALNUT CREEK, CA 94596
925.256.0400 TEL
925.256.0700 FAX

118



1  At the time of the sale of the insurance and association
2  membership to the Plaintiff, each Defendant knew that Mega Life
3  and MID-WEST intended to engage in a scheduled series of premium
4  increases over a period of thirty-six to forty-eight months
5  designed to price the insurance at such an amount that no
6  ordinary consumer could afford to pay the premiums.  This is done
7  specifically for the purpose of putting the book of business into
8  a "death spiral" so that any insureds with health problems would
9  be isolated and eventually eliminated from the insured
10 population.  Defendants Mega Life and MID-WEST designs its
11 premiums so that they will escalate at a predetermined rate over
12 an approximate 36 month period so that the policy will become
13 uncompetitively expensive and the policyholder population will
14 continually sift to eliminate insureds who have had policies for
15 three years.  This insures a continual influx of insureds that
16 are subject to waiting and contestability periods.  .

17     27.  All misrepresentations complained of were made by the
18 Defendants knowingly and intentionally specifically for the
19 purpose of inducing California consumers to purchase the
20 association membership and the health insurance policy.  Such
21 conduct constitutes intentional fraud.

22     28.  Further, the Defendants made false and material
23 misrepresentations to California consumers with the intention
24 that each act upon the representations in the manner reasonably
25 contemplated and said California consumers were unaware that the
26 representations were false.  The California consumers had a right
27 to rely on the representations and the payment of money to
28 defendants was proximately caused by the false representations

REINER & SIMONE
1808 BONANZA STREET
WALNUT CREEK, CA 94596
925-280-0400 TEL.
925-280-0700 FAX

119

1   and their reliance thereon.  No reasonable person informed of all

2   the facts would purchase Defendant's insurance with the required

3   association membership.

4       29.  Defendants made material misrepresentations to the

5   California consumers with the willful intent of inducing them to

6   purchase and to maintain a policy of health insurance and

7   association membership through the associations and insurance

8   companies.  The California consumers relied upon the Defendants

9   misrepresentations in making the decision to purchase the

10  insurance and association membership and the conduct of

11  Defendants as herein described constitutes fraud, fraudulent

12  inducement and/or fraudulent misrepresentation.  Further, the

13  Defendants materially suppressed, concealed and failed to

14  disclose true and accurate information regarding the transactions

15  between the Defendants and the California consumers all as

16  described above and such conduct constitutes suppression,

17  concealment and/or failure to disclose.

18      30.  In this case, the associations are used and controlled

19  by Defendants and the Jensen Group solely for purposes of

20  marketing the insurance products of Mega life and MID-WEST and

21  generating monthly membership and administration fees.  In fact,

22  the associations were originally purchased as a shelf

23  corporation, or originally formed, specifically for the purpose

24  of forming an association to hold a "group" insurance policy.

25  The entire arrangement is calculated to defraud the insurance

26  buying public by (1) controlling modification, termination and

27  premiums of this "group" policy without notice to, or the consent

28  of, the policyholders or state regulatory agencies;

REIBER & SIMONE
1800 BONANZA STREET
WALNUT CREEK, CA 94596
925-256-0400 TEL
925-256-0700 FAX

120




(2) misrepresenting to policyholders the nature of the association and its "benefits;" (3) intentionally creating the impression that the association membership dues were necessary to obtain the "benefits" of association membership by representing the association was "non-profit" and actually run and administered by its members when, in fact, Defendants and/or the Jensen Group render the association "non-profit" by stripping the association of millions of dollars in profits monthly; and (4) structuring the arrangement to appear as though the "members" actually make nominations and vote on association directors when, in fact, the "members" are never adequately and meaningfully advised of their voting rights and the same are exercised solely by someone under the control of Defendants.

31.   Cornerstone and UGA are captive agencies which are wholly owned by Mid-West National Life Insurance Company of Tennessee and Mega Life and Health Insurance Company.  These insurance agencies recruit and contract with hundreds of independent insurance agents nationwide and train these agents to sell the insurance policies and association memberships which are the subject of this Complaint.

32.   Cornerstone and UGA are integral parts of the deceptive business arrangement described above.  These agencies take commissions from the sale of all insurance policies.  These two agencies are the principal conduit of deceptive information which disseminates from the parent through the insurance companies to the general agencies and finally to the independent contractors recruited by the agencies.  Both Cornerstone and UGA have received millions of dollars in commissions on the sale of the

PETER K. SIMONE
1606 BONANZA STREET
WALNUT CREEK, CA 94596
925-256-0400 TEL
925-256-0700 FAX

121




1  insurance policies and the association memberships complained of

2  herein. Both of these agencies are wholly owned by and under the

3  complete control of UICI.

4  **IV.**

5  **FIRST CAUSE OF ACTION**

6  33. Plaintiff incorporates by reference the allegations

7  contained in paragraphs 1 through 32, above, as though set forth

8  herein at length.

9  34. Beginning at an exact date unknown to Plaintiff but at

10  least since April 17, 1999, Defendants have committed acts of

11  unfair competition, as defined by Business and Professions Code

12  §17200, by engaging in the above-described acts and practices.

13  35. The acts and practices described above violate Business

14  & Professions Code §17200 in the following respects:

15  a.  The acts and practices described above are likely to

16  mislead the general public, and consequently,

17  constitute a fraudulent business act or practice within

18  the meaning of Business and Professions Code § 17200.

19  B.  The harm to the members of the general public outweighs

20  the utility of the Defendants' policies and practices

21  and, consequently, the Defendants policies and

22  practices, as described above, constitute an unfair

23  business act or practice within the meaning of Business

24  and Professions Code § 17200.

25  36. The fraudulent, unlawful and unfair business practices

26  and false and misleading advertising of the Defendants, as

27  described above, present a continuing threat to members of the

28  general public, and should be enjoined, as the general public

REIBER & SIMONE
1806 BONANZA STREET
WALNUT CREEK, CA 94596
925-256-0400 TEL
925-256-0700 FAX

122

1  have no other adequate remedy of law.

2      37.  As a direct and proximate result of the aforementioned

3  acts, the Defendants have received and continue to hold ill

4  gotten gains in the form of excessive charges, dues and premiums

5  belonging to the general public.

6      WHEREFORE, Plaintiff prays for relief as set forth below.

7                              V.

8                  SECOND CAUSE OF ACTION

9      38.  Plaintiff incorporates by reference the allegations

10  contained in paragraphs 1 through 37, above, as though set forth

11  herein at length.

12      39.  Beginning at an exact date unknown to Plaintiff but at

13  least since April 17, 1999, Defendants have committed acts of

14  untrue and misleading advertising, as defined by Business and

15  Professions Code §17500, by engaging in the above-described acts

16  and practices.

17      40.  The acts of untrue and misleading advertising by the

18  Defendants, as described above, present a continuing threat to

19  members of the general public, and should be enjoined, as the

20  general public has no other adequate remedy of law.

21      WHEREFORE, Plaintiff prays for relief as set forth below:

22      1.  Pursuant to Business and Professions Code §17203 and

23  §17535, and pursuant to the equitable powers of this Court,

24  Plaintiff prays that the Defendants be preliminarily and

25  permanently enjoined from the acts of unfair competition and

26  untrue and misleading advertising.

27      2.  Pursuant to Business and Professions Code §17203 and

28  §17535, and pursuant to the equitable powers of this Court,

REIBER & SIMONE
1800 BONANZA STREET
WALNUT CREEK, CA 94596
925-256-0400 TEL
925-256-0700 FAX

123



1  Plaintiff prays that Defendants be ordered to restore to the

2  general public all funds acquired by means of any act or practice

3  declared by this Court to be unlawful or fraudulent or to

4  constitute unfair competition under Business and Professions Code

5  § 17200 et seq., or untrue or misleading advertising under §17500

6  et. seq.

7      3.  For attorneys fees pursuant to Code of Civil Procedure

8  1021.5

9      4.  For costs of suit and for such further relief as the

10 Court may order.

11 Dated:    April 17, 2003.

12                              REISER & SIMONE

13

14                              Attorney for Plaintiff,
                                Sandra Lacy
15

16

17

18

19

20

21

22

23

24

25

26

27

28

REISER & SIMONE
1808 BONANZA STREET
WALNUT CREEK, CA 94596
925-256-0400 TEL
925-256-0700 FAX

124

ALTERNATIVE DISPUTE RESOLUTION
INFORMATION PACKAGE
Effective July 2, 2001

Instructions to Plaintiff / Cross-Complainant

In all general civil cases filed in the trial courts after June 30, 2001, the plaintiff
is required to serve a copy of this ADR information package on each defendant.

California Rules of Court, Rule 1590.1 (Excerpt)

(a) Each court shall make available to the plaintiff, at the time of filing of
the complaint, an ADR information package that includes, at a minimum, all
of the following:

(1) General information about the potential advantages and
disadvantages of ADR and descriptions of the principal ADR
processes . . .

(2) Information about the ADR programs available in that court . . .

(3) In counties that are participating in the Dispute Resolution
Programs Act (DRPA), information about the availability of local
dispute resolution programs funded under the DRPA . . .

(4) An ADR stipulation form that parties may use to stipulate to the
use of an ADR process.

**(b) The plaintiff shall serve a copy of the ADR information package on
each defendant along with the complaint. Cross-complainants shall
serve a copy of the ADR information package on any new parties to the
action along with the cross-complaint.**

125

 

## GENERAL INFORMATION ABOUT ADR

### Introduction to Alternative Dispute Resolution

Did you know that most civil lawsuits settle without a trial? And did you know that there are a number of ways to resolve civil disputes without having to sue somebody? These alternatives to a lawsuit are known as alternative dispute resolution (also called ADR). The most common forms of ADR are mediation, arbitration, and neutral evaluation. There are a number of other kinds of ADR as well.

In ADR, trained, impartial persons decide disputes or help parties decide disputes themselves. These persons are called neutrals. In mediation, for example, the neutral is the mediator. Neutrals normally are chosen by the disputing parties or by the court. Neutrals can help parties resolve disputes without having to go to court.

ADR is not new. ADR is available in many communities through court-connected and community dispute resolution programs and private neutrals.

### Advantages of Alternative Dispute Resolution

ADR can have a number of advantages over a lawsuit:

- ADR can be speedier. A dispute often can be resolved in a matter of months, even weeks, through ADR, while a lawsuit can take years.

- ADR can save money. Court costs, attorney fees, and expert witness fees can be saved.

- ADR can permit more participation. With ADR, the parties may have more chances to tell their side of the story than in court and may have more control over the outcome.

- ADR can be flexible. The parties can choose the ADR process that is best for them.

- ADR can be cooperative. In mediation, for example, the parties having a dispute may work together with the neutral to resolve the dispute and agree to a remedy that makes sense to them, rather than work against each other.

- ADR can reduce stress. There are fewer, if any, court appearances. And because ADR can be speedier, cheaper, and can create an atmosphere in which the parties are normally cooperative, ADR is easier on the nerves. The parties don't have a lawsuit hanging over their heads. For all the above reasons, many people have reported a high degree of satisfaction with ADR.

Because of these advantages, many parties choose ADR to resolve a dispute instead of filing a lawsuit. Even when a lawsuit has been filed, ADR can be used before the parties' positions harden and the lawsuit becomes costly. ADR has been used to resolve disputes even after a trial, when the result is appealed.

### Disadvantages of Alternative Dispute Resolution

ADR may not be suitable for every dispute.

If ADR is binding, the parties normally give up most court protections, including a decision by a judge or jury under formal rules of evidence and procedure and review for legal error by an appellate court.

There generally is less opportunity to find out about the other side's case with ADR than with litigation. ADR may not be effective if it takes place before the parties have sufficient information to resolve the dispute.

The neutral may charge a fee for his or her services.

If a dispute is not resolved through ADR, the parties may have to put time and money into both ADR and a lawsuit.

Lawsuits must be brought within specified periods of time, known as statutes of limitations. Parties must be careful not to let a statute of limitations run out while a dispute is in an ADR process.

126

 

## Three Common Types of Alternative Dispute Resolution

This section describes the forms of ADR most often found in the California state courts and discusses when each may be right for a dispute.

### Mediation

In mediation, a neutral (the mediator) assists the parties in reaching a mutually acceptable resolution of their dispute. Unlike lawsuits or some other types of ADR, the mediator does not decide how the dispute is to be resolved; the parties do.

Mediation is a cooperative process in which the parties work together toward a resolution that tries to meet everyone's interests, instead of working against each other where at least one party loses. Mediation normally leads to better relations between the parties and to resolutions that hold up. For example, mediation has been very successful in family disputes, particularly with child custody and visitation.

Mediation is particularly effective when the parties have a continuing relationship, like neighbors or business people. Mediation also is very effective where personal feelings are getting in the way of a resolution. This is because mediation normally gives the parties a chance to let out their feelings and find out how they each see things.

Mediation may not be a good idea when one party is unwilling to discuss a resolution or when one party has been a victim of the other or has unequal bargaining power in the mediation. However, mediation can be successful for victims seeking restitution from offenders. A mediator can meet with the parties separately when there has been violence between them.

### Arbitration

In arbitration, a neutral (the arbitrator) reviews evidence, hears arguments, and makes a decision (award) to resolve the dispute. Arbitration normally is more informal and much speedier and less expensive than a lawsuit. Often a case that may take a week to try in court can be heard by an arbitrator in a matter of hours, because evidence can be submitted by documents (like medical reports and bills and business records) rather than by testimony.

There are two kinds of arbitration in California: (1) Private arbitration, by agreement of the parties involved in the dispute, takes place outside of the courts and is normally binding. In most cases "binding" means that the arbitrator's decision (award) is final and there will not be a trial or an appeal of that decision. (2) "Judicial arbitration" takes place within the court process and is not binding unless the parties agree at the outset to be bound. A party to this kind of arbitration who does not like a judicial arbitration award may file a request for trial with the court within a specified time. However, if that party does not do better in the trial than in arbitration, he or she may have to pay a penalty.

Arbitration is best for cases where the parties want a decision without the expense of a trial. Arbitration may be better than mediation when the parties have no relationship except for the dispute.

Arbitration may not be a good idea when the parties want to decide on the outcome of their dispute themselves.

### Neutral Evaluation

In evaluation, a neutral (the evaluator) gives an opinion on the strengths and weaknesses of each party's evidence and arguments and makes an evaluation of the case. Each party gets a chance to present his or her side and hear the other side. This may lead to a settlement or at least help the parties prepare to resolve the dispute later on. If the neutral evaluation does not resolve the dispute, the parties may go to court or try another form of ADR.

Neutral evaluation, like mediation, can come early in the dispute and save time and money.

Neutral evaluation is most effective when a party has an unrealistic view of the dispute, when the only real issue is what the case is worth, or when there are technical or scientific questions to be worked out.

Neutral evaluation may not be a good idea when it is too soon to tell what the case is worth or if the dispute is about something besides money, like a neighbor playing loud music late at night.

127




## Other Types of Alternative Dispute Resolution

There are several other types of ADR besides mediation, arbitration, and neutral evaluation. Some of these are conciliation, settlement conferences, fact-finding, mini-trials, and summary jury trials. Sometimes parties will try a combination of ADR methods. The important thing is to try to find the type or types of ADR that are most likely to resolve your dispute.

The selection of a neutral is an important decision. There is no legal requirement that the neutral be licensed or hold any particular certificate. However, some programs have established qualification requirements for neutrals. You may wish to inquire about the qualifications of any neutral you are considering.

Agreements reached through ADR normally are put in writing by the neutral and, if the parties wish, may become binding contracts that can be enforced by a judge.

You may wish to seek the advice of an attorney about your legal rights and other matters relating to the dispute.

## Help Finding an Alternative Dispute Resolution Program (Mediation) in Your Community

To locate a dispute resolution program or private neutral in your community:

- **Visit the California Department of Consumer Affairs' Web site.** The Department of Consumer Affairs (also called the DCA) has posted a list of conflict resolution programs throughout the state. The list can be found at http://www.dca.ca.gov/r_r/mediatn1.htm

  You can also call the Department of Consumer Affairs, Consumer Information Center, at 800-952-5210.

- **Contact your county's small claims court legal adviser.** You can find a list of small claims legal advisors for most counties in this Small Claims Court section of this Self-Help Center.

- **Contact your local bar association.** You can find a list of local bar associations in California on the State Bar Web site at http://www.calbar.org/2lin/2bar.htm.

  If you cannot find a bar association for your area on the State Bar Web site, check the yellow pages of your telephone book under "Associations."

- **Look in the yellow pages** of your telephone book under "Arbitrators" or "Mediators."

- **Automotive Repair, Smog Check:** The California Bureau of Automotive Repair (also known as BAR) offers a free mediation service for consumers who are dissatisfied with an auto repair or a smog check, or who dispute an invoice for such services. BAR registers and regulates California automotive repair facilities and licenses smog, lamp, and brake inspection stations. Learn more at http://smogcheck.ca.gov/smogweb/geninfo/otherinfo/mediation.htm or call 800-952-5210.

- **Burglar Alarm Companies, Cemetery/Funeral, Electronic and Appliance Repair, Firearms/Baton Training Facilities/Instructors, Home Furnishings and Thermal Insulation, Locksmith Companies, Private Investigators, Private Patrol Operators, Repossession Agencies, Security Guards:** The California Department of Consumer Affairs offers a complaint mediation program for all consumer complaints filed against California businesses regulated in the areas of: cemetery and funeral, electronic and appliance repair, home furnishings and thermal insulation, and security and investigative services. Learn more at http://www.complainthelp.dca.ca.gov or call 800-952-5210.

- **Attorney Fees:** The State Bar of California administers a mandatory fee arbitration program to resolve attorney fee disputes between lawyers and their clients. The program is an informal, low-cost forum and is mandatory for a lawyer if a client requests it. Mediation of attorney fees disputes may also be available in some areas of California. Learn more at http://www.calbar.org/2bar/3arb/3arbndx.htm or call 415-538-2020.

In recent years, a number of California courts have established programs for ADR. Your court clerk can tell you whether your local court offers an ADR program.

 

## DISPUTE RESOLUTION PROGRAMS IN ALAMEDA COUNTY

**Alameda County Bar Association, ADR Placement Service**
**360 22nd Street, Suite 800, Oakland, CA 94612**
Phone: 893-7160
Provides civil dispute resolution alternatives countywide, offering disputants the opportunity to select an alternative dispute resolution (ADR) provider from a pool of experienced professionals. Program recruits, trains, and evaluates qualified ADR providers, places civil cases with ADR providers for resolution and settlement, and educates local citizens, consumer groups, businesses, schools, lawyers, and judges on the benefits of ADR.

**Mediation Resolution Services**
**22237 Redwood Road, Castro Valley, CA 94546**
Phone: 733-4940
Provides mediation for neighbor-to-neighbor disputes in Central and South County, receiving and responding to referrals from the courts, schools, organizations and public protection providers to help resolve disputes between neighbors, students, tenants and landlords, merchants and consumers, and employers and employees.

**Berkeley Dispute Resolution Service**
**1769 Alcatraz Avenue, Berkeley, CA 94703**
Phone: 428-1811
Services the Berkeley-Albany area. Provides mediation between neighbors, roommates, family members, business partners, etc.. Mediates construction permit disputes referred from administrative hearings and works collaboratively with law enforcement, schools and the judicial system.

**Conciliation Forums of Oakland**
**1222 Preservation Park Way, Oakland, CA 94612**
Phone: 763-2117
Provides services in Oakland-Piedmont-Emeryville, Alameda, Berkeley-Albany, San Leandro, Hayward and Castro Valley. Services include educating the public about the fundamentals of conflict resolution, referring individuals to other social service agencies, and distributing a training manual on conflict resolution. Multi-lingual services provided.

**Catholic Charities, Victim Offender Reconciliation Program (VORP)**
**433 Jefferson Street, Oakland, CA 94607**
Phone: 768-3100
Program mediators facilitate an intensive intervention for victims and juvenile offenders referred by the Probation Department. Mediators are responsible for mediation sessions involving the youth, victim and family members to work towards a mutually agreeable restitution agreement. Also provide free workshops in anger management and mediation.

**Center for Community Dispute Settlement**
**291 McLeod Street, Livermore, CA 94550**
Phone: (925)373-1035
Provides services in Tri-Valley for all of Alameda County. Program goals are to increase the number of court cases resolved, mediating small claims cases four days per week, and training youth in listening and conflict resolution skills.

**Arts Arbitration and Mediation Services**
**Fort Mason Center C-255, San Francisco, CA 94123**
Phone: (415)775-7200 x764
This program increases the resolution of arts related disputes such as artistic control, ownership of intellectual property, credit for work performed or produced and contract issues, through the use of alternative dispute resolution. It also increases the capacity to provide services for counseling, conciliation and administration of mediation, arbitration and meeting facilitation.

129



## ALAMEDA COUNTY SUPERIOR COURT
## ADR PROGRAM

### ADR Program Administrator

Pursuant to California Rule of Court 1580.3, the presiding judge of the Superior Court of California, County of Alameda has designated Arthur Sims, Clerk-Executive Officer, to serve as ADR program administrator.

A Plaintiff may elect, the parties may stipulate or a judge may refer a case to Judicial Arbitration. The Judicial Arbitration Program Coordinator may be contacted at (510) 670-6646.

### The Judicial Arbitration Process

**Appointment of Arbitrator (must be appointed within 30 days after referral per CRC 1605):**
⇒ Parties mailed list of five names from which to select. (List mailed within 5-10 business days after receipt of referral).

⇒ Each party may reject one of the names listed (10 calendar days per CRC 1605a)

⇒ The administrator randomly appoints the arbitrators from the names remaining on the list. If only one remains then is deemed appointed.

**Assignment of Case (CRC 1605a(4))**
⇒ Within 15 days of notice of the appointment, the arbitrator shall contact parties in writing about time, date, and place of the hearing. The parties shall receive at least 30 days notice prior to the hearing.

**Hearings (CRC 1611)**
⇒ Shall be scheduled so as to be completed not less than 35 days nor more than 90 days from the date the arbitrator was assigned. For good cause shown, the case may be continued an additional 90 days by the Case Management Judge.

**Award of Arbitrator (CRC 1615b & c)**
⇒ Arbitrator must file an award within 10 days after conclusion of the arbitration hearing. The court may allow 20 additional days upon application of arbitrator in cases of unusual length or complexity.

⇒ Within 30 days of the filing of the award the parties may file a Request for Trial de Novo. The clerk shall enter the award as a judgment after 30 days provided a Trial de Novo has not been filed.

**Return of Case to Court**
⇒ Upon Filing of Trial de Novo the action is returned to Case Management Judge for further proceedings. *(CRC 1616 & Local Rule 6.4)*

⇒ If Trial de Novo is not filed then judgment is entered and the Case Management Judge is notified *(CRC 1615c & Local Rule 6.6)*

⇒ If parties indicate a settlement then case is returned to Case Management Judge and case is continued 45 days for an Order to Show Cause RE filing a dismissal. *(Local Rule 6.6)*

13D

 

**PROOF OF SERVICE - SUMMONS**
*(Use separate proof of service for each person served)*

1. I served the

   a. : X : summons : X : complaint : : amended summons : : amended complaint

       : : completed and blank Case Questionnaires       : X : Other *(specify):*ADR Information
   b. on defendant *(name):* NATIONAL ASSOCIATION FOR THE            Package
                SELF EMPLOYED AKA NASE

   c. by serving   : : defendant   X : other *(name and title or relationship to person served):*CT Corporation
                                         System, Agent for Service of Process

   d.       by delivery       at home   : at business

             (1) date:

             (2) time:

             (3) address:

   e. . X : by mailing

             (1) date: 05/14/03

             (2) place: Walnut Creek, CA

2. Manner of service *(check proper box):*

   a. ☐ Personal service. By personally delivering copies. (CCP 415.10).

   b. ☐ Substituted service on corporation, unincorporated association (including partnership), or public entity. By leaving, during usual office hours copies in the office of the person served with the person who apparently was in charge and thereafter mailing (by first-class mail, postage prepaid) copies to the person served at the place where the copies were left. (CCP 415.20(a))

   c. ☐ Substituted service on natural person, minor, conservatee, or candidate. By leaving copies at the dwelling house, usual place of abode, or usual place of business of the person served in the presence of a competent member of the household or a person apparently in charge of the office or place of business, at least 18 years of age, who was informed of the general nature of the papers, and thereafter mailing (by first-class mail, postage prepaid) copies to the person served at the place where the copies were left. (CCP 415.20(b)) *(Attach separate declaration or affidavit stating acts relied on to establish reasonable diligence in first attempting personal service.)*

   d. ☒ Mail and acknowledgment service. By mailing (by first-class mail or airmail, postage prepaid) copies to the person served, together with two copies of the form of notice and acknowledgment and a return envelope, postage prepaid, addressed to the sender. (CCP 415.30) *(Attach completed acknowledgment of receipt.)*

   e. ☐ Certified or registered mail service. By mailing to an address outside California (by first-class mail, postage prepaid, requiring a return receipt) copies to the person served. (CCP 415.40) *(Attach signed return receipt or other evidence of actual delivery to the person served.)*

   f. ☐ Other *(specify code section):*

       ☐ additional page is attached.

3. The "Notice to the Person Served" (on the summons) was completed as follows (CCP 412.30, 415.10, and 474):

   a. ☐ as an individual defendant.

   b. ☐ as the person sued under the fictitious name of *(specify):*

   c. ☒ on behalf of *(specify):*

          under:     ☒ CCP 416.10 (corporation)       ☐ CCP 416.60 (minor)       ☐ other:

                     ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)

                     ☐ CCP 416.40 (association or partnership)   ☐ CCP 416.90 (individual)

   d. ☐ by personal delivery on *(date):*

4. At the time of service I was at least 18 years of age and not a party to this action.

5. Fee for service: $ 0.00

6. Person serving:

   a. ☐ California sheriff, marshal, or constable.

   b. ☐ Registered California process server.

   c. ☐ Employee or independent contractor of a registered California process server.

   d. ☒ Not a registered California process server.

   e. ☐ Exempt from registration under Bus. & Prof. Code 22350(b).

   f. Name, address and telephone number and, if applicable, country of registration and number:

       Michael J. Reiser
       1806 Bonanza Street
       Walnut Creek, CA 94596
       (925) 256-0400

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

*(For California sheriff, marshal, or constable use only)*
I certify that the foregoing is true and correct.

Date:                                                Date:

▶ _____       ▶ _____

             *(SIGNATURE)*                                         *(SIGNATURE)*

982(a)(23) [Rev. January 1, 1984]

131

 

| NAME AND ADDRESS OF SENDER: | TELEPHONE NO (925)256-0400 | For Court use Only |
|---|---|---|
| Law Offices of Reiser & Simone<br>Michael J. Reiser, Esq.<br>1806 Bonanza Street<br>Walnut Creek, CA 94596 | | |

Insert name of court, judicial district or branch court, if any, and Post Office and Street Address

Superior Court of California, County of Alameda
1225 Fallon Street
Oakland, CA 94612

PLAINTIFF: SANDRA LACY

DEFENDANT: MEGA LIFE AND HEALTH INSURANCE COMPANY, et al.

| NOTICE AND ACKNOWLEDGMENT OF RECEIPT | Case Number:<br>RG03-092881 |
|---|---|

TO: NATIONAL ASSOCIATION FOR THE SELF EMPLOYED AKA NASE

(Insert name of individual being served)

This summons and other document(s) indicated below are being served pursuant to Section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it to me within 20 days may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. Section 415.30 provides that this summons and other document(s) are deemed served on the date you sign the Acknowledgment of Receipt below. If you return this form to me.

MICHAEL J. REISER, ESQ.

Dated: May 14, 2003

(Signature of sender)

### ACKNOWLEDGMENT OF RECEIPT

This acknowledges receipt of: (To be completed by sender before mailing)

1. [X] A copy of the summons and of the complaint.    Alternate Dispute Resolution Information Package
2. [ ] A copy of the summons and of the Petition (Marriage) and:
   - [ ] Blank Confidential Counseling Statement (Marriage)
   - [ ] Order to Show Cause (Marriage)
   - [ ] Blank Responsive Declaration
   - [ ] Blank Financial Declaration
   - [ ] Other: (Specify)

(To be completed by recipient)

Date of receipt: . . . . . . . . . . . . . . .

(Signature of person acknowledging receipt, with title if acknowledgment is made on behalf of another person)

Date this form is signed: . . . . . . . . . . . . . . .

(Type or print your name and name of entity, if any, on whose behalf this form is signed)

| Form Adopted by the<br>Judicial Council of California<br>Revised Effective January 1, 1975<br>[982(a)(4)]<br>Mandatory Form | NOTICE AND ACKNOWLEDGMENT OF RECEIPT | Legal<br>Solutions<br>Plus | CCP 415.30 417.10<br>Cal. Rules of Court,<br>Rule 1216 |
|---|---|---|---|

132

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA

|  |  |  |
|---|---|---|

Plaintiff

Case No.: _____

vs.

**STIPULATION FOR ALTERNATIVE**
**DISPUTE RESOLUTION (ADR)**

Defendant

The parties by and through their attorneys of record hereby stipulate to submit the within

controversy to the following Alternative Dispute Resolution process:

_____

_____

_____

**ORDER**

The foregoing stipulation having been read and considered, and good cause appearing, now therefore,

IT IS SO ORDERED.

IT IS FURTHER ORDERED that the matter be set for Order to Show Cause Hearing RE:

Dismissal on _____ at _____ a.m./p.m. in Department _____

Dated: _____

_____
JUDGE OF THE SUPERIOR COURT

(SEAL)

133

 

APR 22 2003 17:10 FR LAW LEGAL          5102575044 TO 19252560700          P.10
Apr 22 03 02:47p    Law Offices          925-256-0700          p.10

# SUMMONS
## (CITACION JUDICIAL)

**NOTICE TO DEFENDANT:** *(Aviso a Acusado)*
NATIONAL ASSOCIATION FOR THE SELF EMPLOYED aka NASE

**YOU ARE BEING SUED BY PLAINTIFF:** SANDRA LACY
*(A Ud. le está demandando)*

You have 30 CALENDAR DAYS after this summons is served on you to file a typewritten response at this court.

A letter or phone call will not protect you; your typewritten response must be in proper legal form if you want the court to hear your case.

If you do not file your response on time, you may lose the case, and your wages, money and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may call an attorney referral service or a legal aid office (listed in the phone book).

Después de que le entreguen esta citación judicial usted tiene un plazo de 30 DIAS CALENDARIOS para presentar una respuesta escrita a máquina en esta corte.

Una carta o una llamada telefónica no le ofrecerá protección; su respuesta escrita a máquina tiene que cumplir con las formalidades legales apropiadas si usted quiere que la corte escuche su caso.

Si usted no presenta su respuesta a tiempo, puede perder el caso, y le pueden quitar su salario, su dinero y otras cosas de su propiedad sin aviso adicional por parte de la corte.

Existen otros requisitos legales. Puede que usted quiera llamar a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de referencia de abogados o a una oficina de ayuda legal (vea el directorio telefónico).

The name and address of the court is: *(El nombre y dirección de la corte es)*
SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA
1225 FALLON STREET
OAKLAND, CA 94612

CASE NUMBER *(Número del Caso)*
RG03-092831

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es)*
Law Offices of Reiser & Simone    (925) 256-0400
Michael J. Reiser, Esq. (Bar No. 133621)
Edward J. Simone, Esq. (Bar No. 131038)
1906 Bonanza Street
Walnut Creek, CA 94596

DATE:  APR 22 2003     ARTHUR SIMS     Clerk, by _____, Deputy
*(Fecha)*     EXECUTIVE OFFICER/CLERK     *(Secretario)*     *(Delegado)*

NOTICE TO THE PERSON SERVED: You are served
1. [ ] as an individual defendant.
2. [ ] as the person sued under the fictitious name of *(specify)*:

3. [ ] on behalf of *(specify)*:
   under: [ ] CCP 416.10 (corporation)     [ ] CCP 416.60 (minor)
          [ ] CCP 416.20 (defunct corporation)     [ ] CCP 416.70 (conservatee)
          [ ] CCP 416.40 (association or partnership)     [ ] CCP 416.90 (individual)
          [ ] other:
4. [ ] by personal delivery on *(date)*

*(See reverse for Proof of Service)*
**SUMMONS**     CCP 412.20

135