


WILLIAM M. SHERNOFF #38856
EVANGELINE F. GARRIS #176014
SHERNOFF, BIDART & DARRAS, LLP
600 South Indian Hill Boulevard
Claremont, California 91711
Telephone: 909-621-4935
Facsimile: 909-625-6915

RANDY D. CURRY #119636
LAW OFFICES OF RANDY D. CURRY
2424 S.E. Bristol Avenue, Suite 250
Newport Beach, California 92660
Telephone: 949-863-1288
Facsimile: 949-863-3333

Attorneys for Plaintiffs

FILED
SUPERIOR COURT
COUNTY OF SAN BERNARDINO
RANCHO CUCAMONGA DISTRICT
JUL 25 2003
BY ______ DEPUTY

SHERNOFF | BIDART | DARRAS

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF SAN BERNARDINO

ALBERT J. PORTUNE and LESLIE PORTUNE,

Plaintiffs,

vs.

UICI; MID-WEST NATIONAL LIFE INSURANCE COMPANY OF TENNESSEE, ALLIANCE FOR AFFORDABLE SERVICES, CORNERSTONE AMERICA, SPECIALIZED ASSOCIATION SERVICES, WILLIAM CALLAGHAN, JR., HOWARD SEGAL, PAUL PEVSNER, M.D., DANELLE NIXON, ACE LOOMIS, MICHAEL DAVIS, and DOES 1 through 100, inclusive,

Defendants.

Case No.: RCV 074062

COMPLAINT

1. Breach of the Duty of Good Faith and Fair Dealing
2. Breach of Contract
3. False Advertising (Marketing Fraud)
4. Relief Under Business and Professions Code Section 17200
5. Negligent Misrepresentation
6. Intentional Misrepresentation

DEMAND FOR JURY TRIAL

EXHIBIT 3

136

THE LAW OFFICES OF
SHERNOFF | BIDART | DARRAS

## GENERAL ALLEGATIONS

1. Plaintiffs, ALBERT J. PORTUNE and LESLIE PORTUNE ("The Portunes"), are, and at all times herein mentioned were, residents and citizens of the State of California.

2. Defendant, UNITED INSURANCE COMPANIES, INC. ("UICI") is, and at all relevant times was, a publicly traded corporation, a holding company whose assets included MID-WEST NATIONAL LIFE INSURANCE COMPANY OF TENNESSEE, and a corporation organized and existing under entity and by virtue of the laws of the State of Texas and authorized through its wholly owned subsidiaries, including MID-WEST NATIONAL LIFE INSURANCE COMPANY OF TENNESSEE, to transact and transacting the business of insurance in this state.

3. Defendant, MID-WEST NATIONAL LIFE INSURANCE COMPANY OF TENNESSEE ("MID-WEST") is, and at all relevant times herein was, a corporation duly organized and existing under and by virtue of the laws of the State of Texas and authorized to transact and transacting the business of insurance in this state.

4. Plaintiffs are informed and believe and on such information and belief allege, that Defendant MID-WEST is a wholly owned subsidiary of Defendant UICI. Upon such information and belief, plaintiffs allege that there exists, and at all relevant times herein mentioned there existed, a unity of interest and ownership between Defendants, MID-WEST and UICI such that any individuality and separateness between Defendants have ceased, and Defendant UICI is the later ego of Defendant MID-WEST. Plaintiffs allege that MID-WEST is, and at all relevant times herein mentioned was, a mere shell, instrumentality and conduit through which Defendant UICI carried on its business, exercising complete control and dominance of such business that any individuality of separateness of Defendants does not and did not exist.

5. Defendant, Alliance for Affordable Services ("ALLIANCE") is, and at all relevant times was, a corporation duly organized and existing under and by virtue of the

laws of Texas and authorized to transact and transacting the business of insurance in this state.

6. Defendant, CORNERSTONE AMERICA ("CORNERSTONE") is, and at all relevant times was, a nationwide insurance agency that markets memberships in ALLIANCE and sells MID-WEST policies. CORNERSTONE is, and at all relevant times was, a corporation duly organized and existing under and by virtue of the laws of Texas, authorized to transact and is transacting the business of insurance in this state.

7. Defendant, SPECIALIZED ASSOCIATED SERVICES ("SAS") is, and at all relevant times was, a corporation duly organized and existing under and by virtue of the laws of Texas, which administers all insurance sold to members of Defendant ALLIANCE.

8. Defendants, WILLIAM CALLAGHAN, JR. ("CALLAGHAN"), HOWARD SEGAL ("SEGAL"), PAUL PEVSNER, M.D. ("PEVSNER"), DANELLE NIXON ("NIXON"), and ACE LOOMIS ("LOOMIS") are individuals who are, and at all relevant times were, members of the board of directors of ALLIANCE. CALLAGHAN is a resident of Florida. SEGAL and PEVSNER are residents of New York. NIXON is a resident of Illinois. LOOMIS is a resident of New Mexico.

9. Defendant, MICHAEL DAVIS ("DAVIS") is, and at all relevant times was, a resident and citizen of the state of California, County of San Bernardino.

10. The true names and capacities, whether individual, corporate, associate, or otherwise, of Defendants Does 1 through 100, inclusive, are unknown to Plaintiffs, who therefore sue said Defendants by such fictitious names. Plaintiffs are informed and believe and thereon allege that each of Defendants designated herein as a Doe is legally responsible in some manner for the events and happenings referred to herein and legally caused injury and damages proximately thereby to Plaintiffs. Plaintiffs will seek leave of this Court to amend this Complaint to insert their true names and capacities in place and instead of the fictitious names when they become known to Plaintiffs.

THE LAW OFFICES OF SHERNOFF | BIDART | DARRAS

11. Plaintiffs hereby reserve the right to amend this complaint as a class action complaint.

12. This action is by individuals who are victims of Defendants' elaborate and fraudulent nationwide marketing scheme developed by Defendants to sell medical insurance. Defendants prey on individual insurance consumers and small business owners who work hard to make ends meet and who cope with difficulties in obtaining quality medical insurance at affordable prices.

13. On or about June 18, 2001, THE PORTUNES were solicited to join Alliance, which promised quality group health insurance at affordable group rates. ALLIANCE "enrollers", in this case Defendant DAVIS, have a convincing sales pitch. By joining ALLIANCE, insurance consumers, including THE PORTUNES, are told they become members of a large group that enjoys true buying power. The major benefit promised by ALLIANCE is the ability to purchase ALLIANCE "endorsed" medical insurance at affordable group rates. ALLIANCE "endorses" MID-WEST medical insurance plans on behalf of ALLIANCE members.

14. Based on this solicitation and the sales pitch, THE PORTUNES agreed to join ALLIANCE and pay ALLIANCE membership fees in order to obtain MID-WEST medical insurance which promised $1,000,000 in coverage. On July 17, 2001, MID-WEST issued THE PORTUNES' group policy number 00401, certificate number AM0436171, covering THE PORTUNES.

15. The sales pitch that THE PORTUNES fell for is the same sales pitch more than 300,000 U.S. insurance consumers have fallen for in joining ALLIANCE, and paying membership fees, in order to obtain so-called negotiated affordable group rates on medical insurance.

This illegal and fraudulent marketing scheme works as follows:

ALLIANCE "enrollers" and "benefit consultants", in this case Defendant DAVIS, receive leads resulting from a multi-million dollar marketing campaign paid for by CORNERSTONE, a nationwide insurance agency that exclusively sells ALLIANCE

THE LAW OFFICES OF SHERNOFF | BIDART | DARRAS

139

memberships to insurance consumers through a network of agency offices throughout the United States. CORNERSTONE is owned and controlled by Defendant UICI. Currently, there are more than 300,000 ALLIANCE members. ALLIANCE members are never told of the relationship between UICI, CORNERSTONE and the ALLIANCE "enrollers" and "benefits consultants" like Defendant DAVIS, who receive UICI stock options as part of their compensation package as CORNERSTONE agents selling ALLIANCE memberships.

THE PORTUNES, like more than 300,000 other ALLIANCE members, were promised affordable group rates for medical insurance. ALLIANCE members are promised that ALLIANCE negotiates with various insurance companies on their behalf and, based on those negotiations, endorses MID-WEST to its members. ALLIANCE members are never told that the only medical insurance company endorsed by ALLIANCE is MID-WEST. ALLIANCE members are also never told that ALLIANCE does not negotiate medical insurance premiums on their behalves, with MID-WEST or any other insurance company. ALLIANCE members are never told there is no attempt to obtain affordable group rates. .

ALLIANCE is controlled by UICI which benefits from a not for profit tax status currently enjoyed by ALLIANCE in operating as a marketing conduit for UICI. ALLIANCE has no physical office address and operates with only a post office box and a toll-free phone number. ALLIANCE has no employees.

Defendant SAS administers ALLIANCE memberships and answers the toll-free ALLIANCE phone number. SAS operates across the street from the UICI building in Hurst, Texas. SAS is owned by Jeffrey Jensen. Jeffrey Jensen's father, Ronald Jensen, is the founder and chairman of the board of UICI. Ronald Jensen is the former owner of SAS.

In order to maintain an appearance of propriety, ALLIANCE has a board of directors. The ALLIANCE board of directors includes defendants CALLAGHAN, SEGAL, PEVSNER, NIXON and LOOMIS. These directors have no involvement in the

THE LAW OFFICES OF SHERNOFF | BIDART | DARRAS

day-to-day operations of ALLIANCE and have no physical offices at ALLIANCE, because ALLIANCE operates through a post office box and has no physical location. These board members meet for the purpose of endorsing MID-WEST medical insurance policies to the ALLIANCE membership and rubberstamping business decisions presented by Defendants. SAS representatives, including Jeffrey Jensen, commonly attend ALLIANCE board of directors meetings. ALLIANCE board of directors member Howard Segal is the custodian of records for the minutes of the ALLIANCE board meetings. The minutes, however, are maintained at the SAS building in Hurst, Texas. Howard Segal is an attorney in New York City.

Over 300,000 ALLIANCE members are never advised of these facts. The ALLIANCE members are defrauded by Defendants in this elaborate and fraudulent nationwide marketing scheme designed by Defendants to line their own pockets.

THE LAW OFFICES OF
SHERNOFF | BIDART | DARRAS

16. At all relevant times, the MID-WEST insurance coverage was in full force and effect.

17. At no time did the Defendants ever advise THE PORTUNES of the following:

a). ALLIANCE is an organization formed and incorporated to maintain an association for the purpose of obtaining insurance in violation of California law, including, but not limited to, *Insurance Code* §10270.97.

b). UICI and its wholly-owned subsidiaries, including MID-WEST, were aware of the ALLIANCE marketing scheme, supported the scheme and profited by it.

c). The ALLIANCE endorsement of MID-WEST and UICI was designed to create monetary profits for Defendants.

The true standard between ALLIANCE and its ALLIANCE endorsed insurance carriers including MID-WEST were that each would profit to the benefit of all involved in the illegal marketing scheme.

18. THE PORTUNES made medical claims under the MID-WEST policy. MID-WEST has failed to ay their claims. Leslie Portune's claims related to a

141

hysterectomy were denied on and after July 31, 2001, on the basis that "a condition treated in the first 30 days of coverage is ineligible for 12 months from the insured's effective date." The exclusion relied upon violates *California Code of Regulations* §2220.10.

**FIRST CAUSE OF ACTION**

**(Breach of the Duty of Good Faith and Fair Dealing)**

**(Against Defendants UICI, MID-WEST and DOES 1 through 100)**

19. Plaintiffs refer to each and every paragraph of the General Allegations and incorporate those paragraphs as though set forth in full in this cause of action.

20. Defendants, UICI, MID-WEST and DOES 1 through 100, inclusive, have breached their duty of good faith and fair dealing owed to Plaintiffs in the following respects:

A. Unreasonable and bad faith denial of medical, surgical and hospital benefits at a time when defendants knew that Plaintiffs were entitled to these benefits.

B. Failing to reasonably and promptly investigate and process Plaintiffs' claim for medical and hospital benefits in conformity with the representations of Defendants.

C. Not attempting in good faith to effectuate a prompt, fair, and equitable settlement of Plaintiffs' claim for medical and hospital expense benefits where defendants' liability had become reasonably clear.

D. Maintaining an illegal marketing scheme in order to sell medical insurance.

E. Violating *Insurance Code* §10270.97 and *California Code of Regulations* §2220.10.

F. Plaintiffs are informed and believe and thereon allege that Defendants, and each of them, have breached their duty of fair dealing and good faith owed to Plaintiffs by other acts or omissions of which Plaintiffs are presently unaware.

THE LAW OFFICES OF SHERNOFF | BIDART | DARRAS




Plaintiffs will seek leave of Court to amend this Complaint at such time as Plaintiffs discover the other acts or omissions of defendants constituting such breach.

21. As a proximate result of the aforementioned unreasonable and bad faith conduct of Defendants, Plaintiffs have suffered, and will continue to suffer in the future, damages under the Policy, plus interest, and other economic and consequential damages, for a total amount to be shown at the time of trial.

22. As a further proximate result of the unreasonable and bad faith conduct of Defendants, and each of them, Plaintiffs were compelled to retain legal counsel to obtain the benefits due under the Policy. Therefore, Defendants, and each of them, are liable to Plaintiffs for those attorney fees reasonably necessary and incurred in order to obtain these benefits in a sum to be determined at trial.

23. As a further proximate result of the aforementioned wrongful conduct of defendants, Plaintiffs have suffered, and will continue to suffer, anxiety, worry, mental and emotional distress, and other incidental damages and out-of-pocket expenses, all to Plaintiffs' general damage in a sum to be determined at the time of trial.

24. Defendants' business practices and conduct described herein were intended by Defendants to cause injury to Plaintiffs or was despicable conduct carried on by Defendants with a willful and conscious disregard of the rights of Plaintiffs, subjecting Plaintiffs to cruel and unjust hardship in conscious disregard of Plaintiffs' rights, and were intentional misrepresentations, deceit or concealment of material facts known to Defendants with the intent to deprive Plaintiffs of property, legal rights, or to otherwise cause injury, such as to constitute malice, oppression, or fraud under California *Civil Code* §3294, thereby entitling Plaintiffs to punitive damages in an amount appropriate to punish or set an example of Defendants.

25. Defendants' conduct described herein was undertaken by officers or managing agents of the corporate defendants identified herein as Does 1 through 100, inclusive, who are responsible for marketing, claims operations, communications and/or decisions. The afore-described conduct of said managing agents and individuals were

THE LAW OFFICES OF SHERNOFF | BIDART | DARRAS 600 SOUTH INDIAN HILL BOULEVARD CLAREMONT, CALIFORNIA 91711-5498 TELEPHONE (909) 621-4935

 

therefore undertaken on behalf of the corporate defendants. Said corporate defendants further advance knowledge of the actions and conduct of said individuals whose actions and conduct were ratified, authorized and approved by managing agents whose precise identities were unknown to Plaintiffs at this time and are therefore identified and designated herein as Does 1 through 100, inclusive.

**SECOND CAUSE OF ACTION**

**(Breach of Contract)**

**(Against Defendants UICI, MID-WEST and DOES 1 through 100)**

26. Plaintiffs refer to each and every preceding paragraph and incorporate those paragraphs as though set forth in full in this cause of action.

27. At all relevant times THE PORTUNES were insured by MID-WEST under group health insurance policy number 00401, certificate number AM0436171 (the policy). The Policy promised that benefits would be paid if Plaintiffs incurred medical, surgical and/or hospital expenses due to injury or sickness.

28. Plaintiffs have performed all duties on their part to e performed under the Policy, including the payment of premiums.

29. THE PORTUNES incurred medical expenses properly payable in accordance with the terms of the Policy.

30. THE PORTUNES submitted claims for medical benefits to MID-WEST in accordance with the terms and conditions of the Policy and applicable law.

31. Plaintiffs' claims were denied.

32. As a direct and proximate result of MID-WEST's breach of the subject insurance contract, Plaintiffs have suffered contractual damages under the Policy and other, incidental damages and out-of-pocket expenses, all in a sum to be determined at trial.

///

///

THE LAW OFFICES OF SHERNOFF | BIDART | DARRAS

THE LAW OFFICES OF SHERNOFF | BIDART | DARRAS
600 SOUTH INDIAN HILL BOULEVARD
CLAREMONT, CALIFORNIA 91711-5498
TELEPHONE (909) 621-4935

THIRD CAUSE OF ACTION

(False Advertising – Marketing Fraud)

(Against Defendants UICI, MID-WEST, ALLIANCE, CORNERSTONE, SAS, CALLAGHAN, SEGAL, PEVSNER, NIXON, LOOMIS, DAVIS and DOES 1 through 100)

33. Plaintiffs refer to each and every preceding paragraph and incorporate those paragraphs as though set forth in full in this cause of action.

34. Defendants represented that by joining ALLIANCE, Plaintiffs would receive quality group health insurance without paying expensive individual rates. Defendants represented that they selected UICI and Mid-West to provide group insurance through negotiations to avoid high individual rates. Defendants failed to advise Plaintiffs that ALLIANCE was organized to maintain an association for the purpose of obtaining insurance in violation of California law, including, but not limited to, *Insurance Code* §10270.97. Further, Defendants failed to advise THE PORTUNES that UICI and its wholly-owned subsidiaries, including MID-WEST, were aware of ALLIANCE marketing scheme, supported the scheme and profited by it.

35. Plaintiffs are informed and believe and thereon allege that defendants made these representations with no reasonable grounds for believing them to be true, or should have known them not to be true.

36. These representations were made by defendants with the intent to induce Plaintiffs to purchase the policy and to pay premiums thereon. Had Plaintiffs known the actual facts, plaintiffs would not have taken such actions.

37. THE PORTUNES were justified in relying on the representations of DAVIS as an agent of MID-WEST and ALLIANCE, as DAVIS represented himself as a knowledgeable agent licensed in this state to transact the business of insurance. In justifiably relying on the misrepresentations of DAVIS and misrepresentations of the other Defendants, THE PORTUNES purchased the policy, pay premiums thereon, and did not seek coverage elsewhere.

38. Plaintiffs are informed and believe and thereon allege that Defendants, and each of them, fraudulently misrepresented other matters regarding the MID-WEST policy by their acts or omissions of which Plaintiffs are presently unaware, but which may be determined through discovery in this action. Plaintiffs will seek leave of court to amend this complaint at such time as plaintiffs discover the other acts or omissions of Defendants, and each of them, which would constitute further intentional misrepresentation on the part of these Defendants.

39. As a proximate result of Defendants' conduct, Plaintiffs have suffered, and will continue to suffer the future, damages under the policy, plus interest, and other economic and consequential damages, for a total amount to be shown at the time of trial.

40. As a further proximate result of the aforementioned wrongful conduct of Defendants, Plaintiffs have suffered anxiety, worry, mental and emotional distress, all to plaintiffs' general damage in a sum to be determined that the time of trial.

41. Defendants intended to cause injury to Plaintiffs or this despicable conduct was carried on with a willful and conscious disregard of Plaintiffs' rights and subjected Plaintiffs to cruel and unjust hardship. This conduct constitutes an intentional misrepresentation, deceit or concealment of a material fact known to Defendants and Does 1 through 100 with the intention to deprive Plaintiffs of property, legal rights or to otherwise cause injury such as to constitute malice, oppression or fraud under *California Civil Code* §3294. Therefore, Plaintiffs are entitled to punitive damages in an amount appropriate to punish or set an example of defendants.

42. Defendants' conduct described herein was undertaken by the corporate Defendant's officers or managing agents, identified herein as DOES 1 through 100, inclusive, who were responsible for advertising, underwriting, claims operations, communications and/or decisions. The aforementioned conduct of said managing agents and individuals was therefore taken on behalf of the corporate defendants. Said corporate defendants had advance knowledge of the actions and conduct of said

THE LAW OFFICES OF SHERNOFF | BIDART | DARRAS

individuals whose actions and conduct were ratified, authorized, and approved by managing agents and by other corporate officers, directors or managing agents whose precise identities are unknown to Plaintiffs at this time and are therefore identified and designated herein as DOES 1 through 100, inclusive.

**FOURTH CAUSE OF ACTION**

**(Business & Professions Code §17200, et seq.)**

**(Against Defendants UICI, MID-WEST, ALLIANCE, CORNERSTONE, SAS, CALLAGHAN, SEGAL, PEVSNER, NIXON, LOOMIS, DAVIS and DOES 1 through 100)**

43. Plaintiffs refers to each and every preceding paragraph and incorporate said paragraphs as though set forth in full in this cause of action.

44. Defendants UICI, MID-WEST, ALLIANCE, CORNERSTONE, SAS, CALLAGHAN, SEGAL, PEVSNER, NIXON, LOOMIS, DAVIS, and Does 1 through 100, inclusive, by their conduct, concealed from Plaintiffs and failed to disclose to Plaintiffs that they have the unfair and illegal practice of requiring potential insurance to join ALLIANCE in order to purchase health insurance coverage. Plaintiffs believe and on that basis allege that ALLIANCE is an unlawful "group" set up for the sole purpose of selling insurance and that this is done by UICI, MID-WEST and ALLIANCE for the purpose of wrongfully obtaining further profits by obtaining membership fees from potential insureds, in addition to the insurance premiums, to the detriment of the insureds.

45. In order to purchase insurance from MID-WEST, Plaintiffs and many others were required to pay membership fees to join ALLIANCE even though they have no desire to utilize the other services purportedly offered by the organization, and the requirement of membership in this group is contrary to the law of California.

46. Defendants, and each of them, have committed acts of unfair competition as defined under California law and by *Business and Professions Code* §17200, *et.*

THE LAW OFFICES OF SHERNOFF | BIDART | DARRAS

147

seq., by setting up a "group" for the sale of insurance to plaintiffs and many other persons in California and throughout the United States.

47. Furthermore, the Policy contains an exclusion that states:

"We will not provide any benefits for Charles resulting from or in connection with:

...

34. A sickness which first manifests itself within 30 days after the insured person's coverage becomes effective, until coverage has been in force for a period of one year."

This exclusion violates *California Code of Regulations* §2220.10, and is also an act of unfair competition as defined under California Law and by *Business and Professions Code* §17200, *et seq.*

THE LAW OFFICES OF SHERNOFF | BIDART | DARRAS 600 SOUTH INDIAN HILL BOULEVARD CLAREMONT, CALIFORNIA 91711-5498 TELEPHONE (909) 621-4935

48. Plaintiffs are informed and believe and on that basis allege that the unlawful practices alleged above are continuing in nature and are a widespread practice engaged in by Defendants.

49. On behalf of the general public, plaintiffs respectfully request that an injunction against Defendants be issued to enjoin them from forming and maintaining "groups" which require their insureds to join ALLIANCE and other groups in order to obtain insurance coverage. Plaintiffs also respectfully request that an injunction against Defendants be issued to enjoin Defendants from requiring potential insureds to join such "groups" in order to purchase policies of insurance. Plaintiffs also respectfully request an injunction against Defendants be issued to enjoin them from violating *California Code of Regulations* §2220.10.

50. On behalf of the general public, Plaintiffs respectfully request that an injunction against defendants be issued to enjoin them from using unfair, deceptive for fraudulent representations in the marketing of their insurance coverage.

51. On behalf of the general public, Plaintiffs respectfully request that this court order Defendants to pay restitutionary relief requiring Defendant's to disgorge and

divest all money received from membership fees, all monies which were paid to Defendants by insureds who were forced to join "groups," all profits gained by defendants as a result of the scheme of marketing fraud alleged in this complaint, and all monies not paid to insured due to violations of *California Code of Regulations* §2220.10.

52. Plaintiffs respectfully request an award of attorneys' fees upon prevailing in her request for injunctive relief.

**FIFTH CAUSE OF ACTION**

**(Negligent Misrepresentation)**

**(Against Defendants UICI, MID-WEST, DAVIS and DOES 1 through 100)**

53. Plaintiffs refer to each and every preceding paragraph as though set forth in full in this cause of action.

54. Defendants represented in writing and orally that: Defendants represented that by joining the ALLIANCE, Plaintiffs would receive quality group health insurance without paying expensive individual rates. Defendants represented that they selected UICI and MID-WEST to provide group insurance through negotiations to avoid high individual rates. Defendants failed to advise Plaintiffs that ALLIANCE was organized to maintain an association for the purpose of obtaining insurance in violation of California law, including, but not limited to, *Insurance Code* §10270.97. Further, Defendant failed to advise Plaintiffs that UICI and its wholly-owned subsidiaries, including MID-WEST, were aware of the ALLIANCE marketing scheme, supported the scheme and profited by it.

55. Plaintiffs were justified in relying on the representations of DAVIS as an agent of MID-WEST and ALLIANCE, as he represented himself as a knowledgeable agent licensed in this state to transact the business of insurance. In justifiably relying on the misrepresentations of DAVIS and the other defendants, Plaintiffs purchased the policy, pay premiums thereon, and did not seek coverage elsewhere.

THE LAW OFFICES OF SHERNOFF | BIDART | DARRAS

THE LAW OFFICES OF
SHERNOFF | BIDART | DARRAS
600 SOUTH INDIAN HILL BOULEVARD
CLAREMONT, CALIFORNIA 91711-5498
TELEPHONE (909) 621-4935

56. Plaintiffs are informed and believe and thereon allege that Defendants, and each of them, negligently misrepresented other matters regarding the MID-WEST policy by their acts or omissions of which Plaintiffs are presently unaware, but which may be determined through discovery in this action. Plaintiffs will seek leave of court to amend this complaint at such time as plaintiffs discover the acts or omissions of defendants, and each of them, which would constitute further intentional misrepresentation on the part of these Defendants.

57. As a proximate result of Defendants' conduct, Plaintiffs have suffered, and will continue to suffer the future, damages under the policy, plus interest, and other economic and consequential damages, for a total amount to be shown at the time of trial.

58. As a further proximate result of the aforementioned wrongful conduct of Defendants, Plaintiffs have suffered anxiety, worry, mental and emotional distress, all to Plaintiffs' general damage in a sum to be determined that the time of trial.

## SIXTH CAUSE OF ACTION

### (Intentional Misrepresentation)

### (Against Defendants UICI, MID-WEST, ALLIANCE, CORNERSTONE, SAS, CALLAGHAN, SEGAL, PEVSNER, NIXON, LOOMIS, DAVIS AND DOES 1 though 100)

59. Plaintiffs refer to each and every preceding paragraph and incorporates said paragraphs as though set forth in full in this cause of action.

60. Defendants represented that by joining ALLIANCE, Plaintiffs would receive quality group health insurance without paying expensive individual rates. Defendants represented that they selected UICI and MID-WEST to provide group insurance through negotiations to avoid high individual rates. Defendants failed to advise Plaintiffs that ALLIANCE was organized to maintain an association for the purpose of obtaining insurance in violation of California law, including, but not limited to,

150

*Insurance Code* §10270.97. Further, Defendants failed to advise Plaintiffs that UICI and its wholly-owned subsidiaries, including MID-WEST, were aware of the ALLIANCE marketing scheme, supported the scheme and profited by it.

61. Plaintiffs were justified in relying on the representations of DAVIS as an agent of MID-WEST and ALLIANCE, as he represented himself as a knowledgeable agent licensed in this state to transact the business of insurance. In justifiably relying on the misrepresentations of DAVIS and the other defendants, Plaintiffs purchased the policy, pay premiums thereon, and did not seek coverage elsewhere.

62. Plaintiffs are informed and believe and thereon allege that Defendants, and each of them, negligently misrepresented other matters regarding the MID-WEST policy by their acts or omissions of which Plaintiffs are presently unaware, but which may be determined through discovery in this action. Plaintiffs will seek leave of court to amend this complaint at such time as plaintiffs discover the other acts or omissions of Defendants, and each of them, which would constitute further intentional misrepresentation on the part of these Defendants.

63. As a proximate result of defendants' conduct, Plaintiffs have suffered, and will continue to suffer the future, damages under the policy, plus interest, and other economic and consequential damages, for a total amount to be shown at the time of trial.

64. As a further proximate result of the aforementioned wrongful conduct of Defendants, Plaintiffs have suffered anxiety, worry, mental and emotional distress, all to Plaintiffs' general damage in a sum to be determined that the time of trial.

65. Defendants' conduct described herein was intended by the Defendants to cause injury to Plaintiffs or was despicable conduct was carried on with a willful and conscious disregard of the rights of Plaintiffs and subjected the Plaintiffs to cruel and unjust hardship in conscious disregard of the her rights and was intentional misrepresentation, deceit or concealment of a material fact known to defendants and Does 1 through 100 with the intention to deprive the Plaintiffs of property, legal rights or

THE LAW OFFICES OF SHERNOFF | BIDART | DARRAS 600 SOUTH INDIAN HILL BOULEVARD CLAREMONT, CALIFORNIA 91711-5498 TELEPHONE (909) 621-4935

to otherwise cause injury such as to constitute malice, oppression or fraud under *California Civil Code* §3294, thereby entitling the Plaintiffs to punitive damages in an amount appropriate to punish or set an example of Defendants.

66. Defendants' conduct described herein was undertaken by the corporate Defendant's officers or managing agents, identified herein as DOES 1 through 100, inclusive, who were responsible for advertising, underwriting, claims operations, communications and/or decisions. The aforementioned conduct of said managing agents and individuals was therefore taken on behalf of the corporate defendants. Said corporate defendants had advance knowledge of the actions and conduct of said individuals whose actions and conduct were ratified, authorized, and approved by managing agents and by other corporate officers, directors or managing agents whose precise identities are unknown to Plaintiffs at this time and are therefore identified and designated herein as DOES 1 through 100, inclusive.

## PRAYER

WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as follows:

### FIRST CAUSE OF ACTION

1. Damages for delay and denial of policy benefits, including policy benefits, and other economic and consequential damages, in a sum to be determined at the time of trial;

2. General damages for mental and emotional distress and other incidental damages in a sum to be determined at the time of trial;

3. Punitive and exemplary damages in an amount appropriate to punish or set an example of Defendants;

4. For pre-judgment interest at the appropriate legal rate;

LAW OFFICES OF SHERNOFF | BIDART | DARRAS 600 SOUTH INDIAN HILL BOULEVARD CLAREMONT, CALIFORNIA 91711-5498 TELEPHONE (909) 621-4935

5. For costs of suit incurred herein;

6. For attorney fees incurred to obtain the benefits under the Policy in a sum to be determined at the time of trial.

SECOND CAUSE OF ACTION

7. Damages for delay and denial of policy benefits including policy benefits and other economic and consequential damages, in a sum to be determined at the time of trial;

8. For pre-judgment interest at the appropriate legal rate; and

9. For costs of suit incurred herein.

THIRD CAUSE OF ACTION

10. Damages for delay and denial of Policy benefits, plus interest, including prejudgment interest, and other economic and consequential damages, in a sum to be determined at the time of trial;

11. General damages for mental and emotional distress and other incidental damages in a sum to be determined at the time of trial;

12. Punitive and exemplary damages in an amount appropriate to punish or set an example of Defendants;

13. For prejudgment interest at the appropriate legal rate;

14. For costs of suit incurred herein; and

15. For such other and further relief as the Court deems just and proper.

FOURTH CAUSE OF ACTION

16. For a preliminary and a permanent injunction against defendants, and each of them, restraining, preventing and enjoining defendants from selling insurance policies and accepting premiums from their insureds when defendants engage in the

SHERNOFF | BIDART | DARRAS

illegal practice of setting up "groups" and preventing them from collecting membership fees from these potential insureds, before permitting the potential insureds to purchase health insurance;

17. For a preliminary and permanent injunction against Defendants, and each of them, restraining, preventing and enjoining Defendants from selling insurance policies and accepting premiums from potential insureds when they do so as part of Defendant's fraudulent practice of misrepresenting the nature, extent and quality of that insurance through written and oral misrepresentation as alleged above;

18. For a preliminary and permanent injunction against Defendants, and each of them, restraining, preventing and enjoining Defendants from requiring potential insureds to join ALLIANCE or any other "group" and collecting membership fees from these potential insureds in order that the potential insureds be permitted to purchase health insurance from MID-WEST, UICI and its subsidiaries;

19. For a preliminary and permanent injunction against Defendants, and each of them, restraining, preventing and enjoining Defendants from denying claims for insurance benefits by their insureds when to do so would contradict the written and oral representation made in the marketing of the relevant policies as alleged above and when to do so would violate *California Code of Regulations* §2220.10;

20. For restitution and disgorgement of all monies received by Defendants from feels paid by their insureds in order to join the "groups" as required by Defendants before their insureds were allowed to purchase insurance coverage from MID-WEST;

21. For restitution and disgorgement of all profits obtained by Defendants from their insureds respecting the insurance policies sold through the scheme of marketing

THE LAW OFFICES OF SHERNOFF | BIDART | DARRAS

154

fraud as alleged in this complaint, and all monies not paid to insured due to violations of *California Code of Regulations* §2220.10;

22. For attorneys fee's incurred in prosecuting this action on behalf of the general public;

23. For costs of suit herein; and

24. For such other and further relief as the Court deems just and proper.

FIFTH CAUSE OF ACTION

25. Damages under the policy in an amount to be determined according to proof at the time of trial;

26. For costs of suit incurred herein, and

27. For such other and further relief as the Court deems just and proper.

SIXTH CAUSE OF ACTION

28. Damages for delay in providing benefits under the Policy, plus interest, including prejudgment interest, and other economic and consequential damages, in a sum to be determined at the time of trial;

29. General damages for mental and emotional distress and other incidental damages in a sum to be determined at the time of trial;

30. Punitive and exemplary damages in an amount appropriate to punish or set an example of Defendants;

31. For pre-judgment interest at the appropriate legal rate;

32. For costs of suit incurred herein; and

33. For such other and further relief as the Court deems just and proper.

///

THE LAW OFFICES OF SHERNOFF | BIDART | DARRAS

Dated: July 24, 2003

SHERNOFF, BIDART & DARRAS, LLP

EVANGELINE F. GARRIS
WILLIAM M. SHERNOFF
Attorneys for Plaintiffs

## JURY DEMAND

Plaintiffs, ALBERT J. PORTUNE and LESLIE PORTUNE, hereby demand a jury trial in this action.

Dated: July 24, 2003

SHERNOFF, BIDART & DARRAS, LLP

EVANGELINE F. GARRIS
WILLIAM M. SHERNOFF
Attorneys for Plaintiffs

THE LAW OFFICES OF
SHERNOFF | BIDART | DARRAS
600 SOUTH INDIAN HILL BOULEVARD
CLAREMONT, CALIFORNIA 91711-5498
TELEPHONE (909) 621-4935

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN BERNARDINO

Albert J. Fortune & Leslie Fortune

Case No. ______

vs.

CERTIFICATE OF ASSIGNMENT

UICI, Mid-West National Life Insurance, et al

**A civil action or proceeding presented for filing must be accompanied by this certificate. If the ground is the residence of a party, name and residence shall be stated.**

The undersigned declares that the above-entitled matter is filed for proceedings in the Rancho Cucamonga District of the Superior Court under Rule 153.1 of this court for the checked reason:

☐ General ☐ Collection

| | | Nature of Action | Ground |
|---|---|---|---|
| ☐ | 1 | Adoption | Petitioner resides within the district. |
| ☐ | 2 | Conservator | Petitioner or conservatee resides within the district. |
| ☒ | 3 | Contract | Performance in the district is expressly provided for. |
| ☐ | 4 | Equity | The cause of action arose within the district. |
| ☐ | 5 | Eminent Domain | The property is located within the district. |
| ☐ | 6 | Family Law | Plaintiff, defendant, petitioner or respondent resides within the district. |
| ☐ | 7 | Guardianship | Petitioner or ward resides within the district or has property within the district. |
| ☐ | 8 | Harassment | Plaintiff, defendant, petitioner or respondent resides within the district. |
| ☐ | 9 | Mandate | The defendant functions wholly within the district. |
| ☐ | 10 | Name Change | The petitioner resides within the district. |
| ☐ | 11 | Personal Injury | The injury occurred within the district. |
| ☐ | 12 | Personal Property | The property is located within the district. |
| ☐ | 13 | Probate | Decedent resided or resides within the district or had property within the district. |
| ☐ | 14 | Prohibition | The defendant functions wholly within the district. |
| ☐ | 15 | Review | The defendant functions wholly within the district. |
| ☐ | 16 | Title to Real Property | The property is located within the district. |
| ☐ | 17 | Transferred Action | The lower court is located within the district. |
| ☐ | 18 | Unlawful Detainer | The property is located within the district. |
| ☐ | 19 | Domestic Violence | The petitioner, defendant, plaintiff or respondent resides within the district. |
| ☐ | 20 | Other ______ | |
| ☐ | 21 | THIS FILING WOULD NORMALLY FALL WITHIN JURISDICTION OF SUPERIOR COURT. | |

The address of the accident, performance, party, detention, place of business, or other factor which qualifies this case for filing in the above-designated district is:

Defendant Michael Davis — 3233 Grand Ave. #290, Chino Hills 91709
(NAME - INDICATE TITLE OR OTHER QUALIFYING FACTOR) (ADDRESS)

(CITY) (STATE) (ZIP CODE)

I declare, under penalty of perjury, that the foregoing is true and correct and that this declaration was executed on July 24, 2003 at Claremont, California

EVANGELINE F. CARRIS
Signature of Attorney/Party

13-16503-360 Rev. 10/94

2001 © American LegalNet, Inc.

AUG 18 2003 09:40

157

IN THE CIRCUIT COURT OF MONROE COUNTY, MISSISSIPPI

HERMAN TOMLIN and GARY HARRISON PLAINTIFFS

VS. CAUSE NO. CV03-029-PFM

MEGA LIFE AND HEALTH INSURANCE COMPANY, NASE GROUP INSURANCE TRUST, NATIONAL ASSOCIATION FOR THE SELF-EMPLOYED aka NASE WILLIAM L. PHELPS, AND JOHN DOES 1-20 DEFENDANTS

COMPLAINT

(JURY TRIAL REQUESTED)

COME NOW Plaintiffs, Herman Tomlin and Gary Harrison, by and through their attorneys, and bring this civil complaint against Defendants, Mega Life and Health Insurance Company (hereinafter "Mega Life"), NASE Group Insurance Trust (hereinafter "NASE Group") and National Association for the Self Employed a/k/a NASE (hereinafter "NASE"), William L. Phelps, (hereinafter "Agent"), and John Does 1-20, and in support of the same would show the following:

I.

INTRODUCTION

1. The Plaintiffs are, or at the time of the sale giving rise to this cause of action were, adult resident citizens of the State of Mississippi. The Defendant Mega Life is an insurance company licensed to do business, and actually doing business, in the State of Mississippi. The Plaintiffs, Herman Tomlin and Gary Harrison, were sold what was represented to be a health insurance policy in the State of Mississippi, Monroe and Tippah Counties respectively, by the Defendant Mega Life through Defendants' agent, William L. Phelps,

Filed
Judy K. Butler
JAN 2 8 2003
Circuit Clerk
By

EXHIBIT 4

158.

pursuant to a scheme of deceptive sales practices developed by, supported by, and conducted with the knowledge of and to the benefit of the Defendants Mega Life, NASE Group and NASE.

2. Mega Life, NASE Group and NASE are under common control and ownership and operate as a unified business arrangement. However, the arrangement is designed to create the impression that each entity operates independently. NASE purports to be a "non-profit" association formed by the "self employed" for the purpose of advancing the interest of small business owners. In fact, though, it was formed, and is operated, by Mega Life Insurance Company as a marketing tool and profit center. The "association" arrangement is used solely for the purpose of generating profits through "association dues" and avoiding state insurance regulations by the use of "group trust" and "association" insurance certificates which Mega Life contends can be altered, modified or cancelled by an "agreement" between Mega Life and NASE Group. Consumers are deceived by this arrangement into believing that NASE is an independent entity which evaluates various insurance policies in order to obtain the best available "group insurance" when, in fact, the association, trust and insurance company are jointly owned and controlled and the only insurance made available to NASE members are Mega Life products.

3. John Does 1-20 are insurance agents who may have aided to some degree in the sale or deceptive practices and fraud that alleged herein, but whose identity and addresses are unknown at this time, therefore, upon complete identification and location the complaint will be amended to add the specific agents.

PARTIES

4. Plaintiffs are, or at the time of the transaction complained of were, adult resident citizens of the State of Mississippi. Plaintiff, Herman Tomlin, is an adult resident citizen of Monroe County, Mississippi, residing at 505 9th Street North in Amory, Mississippi. Plaintiff

Gary Harrison, is an adult resident citizen of Tippah County, Mississippi, residing at 1060 CR 727, Blue Mountain, Mississippi 38610.

5. Defendant Mega Life is a foreign insurance company organized and existing under the laws of the state of Oklahoma. At all times alleged herein, Mega Life was registered to do and actually doing business in the state of Mississippi. Mega Life's registered agent for service of process in the State of Mississippi is as follows:

C.T. Corporation Systems
631 Lakeland East Drive
Flowood, MS 39232

6. Process may be served on the Defendant Mega Life by service on its registered agent at said address or by service on the Mississippi Commissioner of Insurance.

7. The Defendant NASE Group Insurance Trust is a purported "trust" organized and existing under the laws of a state as yet undetermined. At all times alleged herein, NASE Group was doing business in the State of Mississippi. This entity does not maintain a registered agent in Mississippi and the complaint will be amended when the information can be ascertained.

8. Defendant National Association for the Self Employed a/k/a NASE is a foreign corporation organized and existing under the laws of the State of Texas. At all times alleged herein, NASE was registered to do and actually doing business in the State of Mississippi. NASE's registered agent for service of process in the State of Mississippi is as follows:

C.T. Corporation Systems
631 Lakeland East Drive
Flowood, MS 39232

9. Defendant, William L. Phelps, is an adult resident citizen of Lee County, Mississippi and may be served with process at his business address of National Association for

the Self-Employed, 304 South Spring Street, Suite A, Tupelo, MS 38804, Telephone Number (662)842-0084.

JURISDICTION AND VENUE

10. Defendants include a foreign insurance company and other corporate entities doing business in the State of Mississippi and an adult resident citizen of the State of Mississippi. One of the two Plaintiffs resides in Monroe County, Mississippi and some or all of the tortious actions which give rise to this Complaint occurred and/or accrued in Monroe County, Mississippi. This Court has jurisdiction over this matter and the parties herein and Monroe County is the proper venue for this cause of action pursuant to Mississippi Code Annotated § 11-11-3; 11-11-7 and 11-11-11, and Rule 82 of the Mississippi Rules of Civil Procedure. Each claim herein includes a tort which was committed in whole or in part in the State of Mississippi.

NO FEDERAL JURISDICTION

11. Each claim for relief stated in this Complaint is based exclusively on state law and no federal causes of action are alleged. Plaintiffs unequivocally stipulate that no claim is being made or will be made pursuant to any federal law. Plaintiffs are making specific factual nonclusory allegations directed at the individual Defendants. The individual Defendants are the persons who made initial contact with Plaintiffs on behalf of the Defendants, verbally stated the misrepresentations alleged below, and are not the employees of any corporate Defendants. Defendants are adult resident citizens of the State of Mississippi and are alleged in this Complaint to have had personal knowledge that the representations which Defendants made to Plaintiffs were not true and that Defendants intended thereby to deceive the Plaintiffs into purchasing the insurance and association memberships sold by Mega Life and NASE and the

161

Defendants personally profited from making the misrepresentations by reason of receiving a commission on the sale of the insurance and association membership to Plaintiffs. If the factual allegations made in this Complaint against Defendants are found by the trier of fact to be true, Plaintiffs will be entitled under the laws of Mississippi to recover a judgment personally and individually against each Defendant for the causes of action alleged. For this reason, there is no federal diversity jurisdiction existing and removal to federal court by the Defendants will be improper.

**RELATIONSHIP OF THE PARTIES**

12. The agent Defendants are sales agents for Mega Life/NASE. These Defendants represented to Plaintiffs that NASE was an independent, not for profit association of the self employed and small business owners formed and operated for the specific purpose of providing various benefits to its members, the principal benefit being "group insurance" at "group rates". These Defendants further intentionally concealed from Plaintiffs many material facts, including, but not limited to: 1) all Defendants are under common ownership and control; 2) NASE is merely a marketing tool and profit center for Mega Life; 3) the association "benefits" consist of nothing more than discounts and "information services" of negligible value which can commonly be obtained free of charge in connection with many purchases and services such as credit card ownership and travel club memberships; 4) the "benefits package" is purchased by NASE from a fulfillment company for approximately $2.00 per month per member but NASE collects $15 or more per month from each member for these benefits; and, 5) each member signs a "proxy" in connection with the application process and thereby inadvertently relinquishes his right to be informed of association meetings and to vote on matters affecting the association's operations.

162

13. Mega Life Insurance Company is solely or principally owned by Ron Jensen who is one of the original developers of the "association/group trust" method of marketing individually underwritten health insurance. This marketing arrangement was developed for three principal reasons: 1) by issuing a master "group policy" to a "trust" and issuing only "certificates" to the individual insureds, the insurance company seeks to insulate the insured/insurer relationship from the "certificate holder" so that the insurance company and the "trust" (which is an entity created by and under the exclusive control of the insurance company) can modify the policy at will without obtaining the consent of the individual insureds; 2) designating insurance as "group insurance" bypasses the more stringent regulations applicable (in most states) to individually underwritten health insurance; and, 3) the insurance company insures the association will be "not for profit" because the insurance company has "management agreements" by which the insurance company removes all the profit from the association. These "management agreements" give the insurance company (or a "management company" controlled by the insurance company) complete control over the association's accounts. The association typically generates millions of dollars in profits monthly and this money is funneled to the insurance company and its owners under the terms of the "management agreements". Consumers, such as Plaintiffs, are never informed of the existence of these agreements and never have occasion to discover them because under the terms of the proxy they relinquish their right to obtain information about the association's finances. Members of a *legitimate* association are notified of, and given the opportunity to participate in, regularly scheduled meetings where the membership votes to elect officers and are informed of executive decisions. However, in sham arrangements, such as the one organized by the Defendants, every effort is made to insure the

163

association "members" never have access to accurate information which would reveal the true nature of the arrangement.

14. NASE Group was formed by Mega Life for the sole purpose of being the "named insured" under the NASE "group policy". This "trust" is deceptively named for the purpose of creating the impression that it acts in the capacity of "trustee" for the association members in connection with the "group insurance policy". In fact, the "trust" is nothing more than a token entity formed solely for the purpose of acting as the "insured" under the "group policy" and thereby allowing Mega Life to completely control the insurer/insured relationship.

15. NASE purports to be an "independent, not for profit" association formed by and for the benefit of the self employed and small business owners. In fact though, NASE originated as a "shelf corporation" formed to be held two years and then transformed into an "association". NASE originated in Texas where state law prohibits the formation of an association solely for the purpose of marketing insurance, prohibits an association from marketing insurance unless it has been in existence for two years and requires that the consumer be informed of any relationships between the association and any insurance company endorsed by the association. Because of these statutes, the corporate Defendants devised the arrangement described above solely for the purpose of circumventing the law.

16. Plaintiffs purchased the Mega Life policy based upon the misrepresentations made by the agent Defendants and by the corporate Defendants in the marketing and policy/membership information provided to Plaintiffs which:

a. Represented NASE was an independent, non-profit association of similarly interested self employed persons, the purpose of which was to obtain benefits for its members based on the objective criteria of cost/value when, in fact, NASE is


solely a marketing tool of Mega Life and does not evaluate, compare or consider any other insurance for its members;

b. Failed to disclose the common ownership/control among the corporate Defendants and deceptively represented the Defendants were separate and independent;

c. Failed to disclose the cost of the association "benefits" and implied those benefits were unique to NASE when, in fact, they are commonly obtainable and of negligible value;

d. Failed to disclose the amount and character of the "association dues", administrative fees and other costs of obtaining insurance from Mega Life;

e. Failed to disclose that the initial premium rates offered to consumers were below the amount actuarially calculated for the purpose of inducing purchases of the Mega Life policy (referred to in the industry as "teaser rates") when all Defendants knew significant premium increases were routinely scheduled and implemented for the purpose of eliminating insureds from the policyholder population over a predetermined time period so that insureds with health problems would remain in a consistently diminishing premium pool and as the premium rates were raised to exorbitant levels, these insureds would be eliminated form the insured population. Mega Life, and virtually all insurers, continually sift the insured population by issuing a "new" or reclassified policy after a predetermined number of policies are insured so that a block of policies can be "closed" and the rates raised to exorbitant levels which forces all the well

165

policy holders into different policies and eliminates insureds with health problems when the premiums reach unaffordable levels.

## STATEMENT OF FACTS AND CAUSES OF ACTION

17. The facts stated above are incorporated herein.

18. The corporate Defendants maintain a nationwide sales force of solicitors who contact consumers by phone or mail and arrange appointments for Defendants' sales agents. The agents misrepresent the Mega Life policy as being "group insurance" available only to NASE members and obtained by the association at significant savings because of the associations "group buying power". In fact, association "members" paid more for their insurance than they would have for comparable "non association" individually underwritten health insurance.

19. The marketing scheme implemented by Mega Life is employed both in the presentation of its sales agents, the companies marketing materials and on its internet sites. NASE maintains a web page at www.nase.org which contains links for "affordable health insurance for the self employed" and invites viewers to "click here to request a free quote." When those links are highlighted, a page appears captioned "NASE. Affordable Health Insurance" and states that "the group negotiating power of NASE makes it possible to offer valuable benefits to our members. One of these benefits is access to health insurance coverage. The NASE endorses several financially strong insurance carriers that offer a variety of products and plans customized to meet the special needs of the self employed individual or small business owners."

20. Users of the web page are never informed that the only insurance company offered to NASE members is Mega Life which is a financially related insurance company and jointly controlled with the association. On this same page, there is a link to "NASE's

166

endorsement standards" and upon clicking that link a page appears which lists several purported "criteria" for endorsement of insurance. Again, the web page viewers are never informed that Mega Life is the only health insurance company offered to NASE "members". From the home page, there is a link to a page captioned "member benefits" and, again, at the top of this page is a banner link to "affordable health insurance for the self employed". Another link captioned "full listing of benefits" contains a statement "Endorsed health coverage. The NASE is continually searching quality benefit programs for you. Your membership in the NASE makes it possible for us to negotiate valuable benefits and competitive rates". It then states that "because of the different products available in each state across the Nation, and the unique needs of each individual, we are not able to post general information about endorsed health coverage".

21. This statement is made so that the web page does not conspicuously link to Mega Life Health Insurance Company in order to create the impression that there is not a connection between Mega Life and NASE. This type of deception is typical of the Defendants' advertisement and creation of the false impression that Mega Life and NASE are not jointly owned and commonly controlled. The Defendants' written marketing materials provided to Plaintiffs create the same mis-impressions and deceptions. Defendants' brochure and outline of coverage fail to disclose the Defendants' relationships and misrepresent that NASE has no connection to Mega Life. Defendants intended that the Plaintiffs act upon the representations in the manner reasonably contemplated which was by purchasing association membership and insurance, and thereby incurring unnecessary and hidden expenses in the form of membership dues, administrative fees, set up fees, and, ultimately, inflated health insurance premiums. Such conduct constitutes intentional misrepresentation.

167

22. At the time of the sale of the insurance and association membership to the Plaintiffs, each Defendant knew that the initial premium rate charged for the health insurance was a "teaser rate" which was artificially low and set at an amount below that which had been actuarially recommended. These "teaser rates" were utilized to induce consumers into believing that the offered insurance was actually bargain priced as a result of the association's "group buying power". However, at the time of the sale, all Defendants knew that the premiums were artificially low and would be exorbitantly raised over time. At the time of the sale of the insurance and association membership to the Plaintiffs, each Defendant knew that Mega Life intended to engage in a scheduled series of premium increases over a period of thirty-six to forty-eight months designed to price the insurance at such an amount that no ordinary consumer could afford to pay the premiums. This is done specifically for the purpose of putting the book of business into a "death spiral" so that any insureds with health problems would be isolated and eventually eliminated from the insured population.

23. All misrepresentations complained of were made by the Defendants knowingly and intentionally specifically for the purpose of inducing Plaintiffs to purchase the association membership and the health insurance policy. Such conduct constitutes intentional fraud.

24. Further, the Defendants made false and material misrepresentations to Plaintiffs with the intention that Plaintiffs act upon the representations in the manner reasonably contemplated and Plaintiffs were unaware that the representations were false. Plaintiffs had a right to rely on the representations and the Plaintiffs' damages were proximately caused by the false representations and their reliance thereon.

25. Defendants made material misrepresentations to the Plaintiffs with the willful intent of inducing the Plaintiffs to purchase and to maintain a policy of health insurance and

association membership through Mega Life and NASE. Plaintiffs relied upon the Defendants misrepresentations in making the decision to purchase the insurance and association membership and the conduct of Defendants as herein described constitutes fraud, fraudulent inducement and/or fraudulent misrepresentation. Further, the Defendants materially suppressed, concealed and failed to disclose true and accurate information regarding the transactions between the Defendants and the Plaintiffs as described above and such conduct constitutes suppression/concealment and/or failure to disclose.

## DAMAGES

26. The conduct of the Defendants as described above was intentional, deceptive, grossly negligent, willful, wanton, and in reckless disregard of Plaintiffs' rights, entitling Plaintiffs to the recovery of punitive damages.

27. Further, the Defendants Mega Life and NASE breached their duty of good faith and fair dealing to the Plaintiffs which is implied in the contracts between those Defendants and Plaintiffs.

28. As a direct and proximate result of each and all of the acts and omissions of the Defendants complained of herein, Plaintiffs have suffered economic damages for which Defendants are liable, jointly and severally, to the Plaintiffs. Among the damages suffered by Plaintiffs are excess premiums, association dues and charges, administrative fees and scheduled increased premiums, plus accrued interest on each excess charge or fee imposed upon the transaction by fraud on the Plaintiffs.

29. All Defendants are jointly and severally liable by reason of their joint enterprise/civil conspiracy by which all Defendants engaged in common plan or scheme to

commit a fraud upon Plaintiffs as above described. Each corporate Defendant is a separate entity and the individual Defendant is not employed by any of the corporate entities.

## PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Plaintiffs demand trial by jury and a judgment of and from the Defendants, jointly and severally, in an amount to be determined by the jury in this matter for the Plaintiffs' actual damages and punitive damages assessed against the Defendants together with all costs of court , prejudgment interest, and interest at the highest lawful rate from and after the date of judgment.

Respectfully submitted,

GREER, PIPKIN & RUSSELL
P.O. Box 907
117 N. Broadway Street
Tupelo, MS 38802-0907
Telephone: (662) 842-5345
Telecopier: (662) 842-6870

By: [signature]
MICHAEL D. GREER
MS Bar No.: 5002

MALESOVAS & MARTIN, L.L.P.
David H. Martin
Texas State Bar No. 13057850
P. O. Box 1709
Waco, Texas 76703
Telephone: (254) 753-1777
Telecopier: (254) 755-6400

ATTORNEY FOR PLAINTIFFS

Filed
Judy K. Butler
JAN 2 8 2003
Circuit Clerk
By [signature]

IN THE CIRCUIT COURT OF MONROE COUNTY, MISSISSIPPI

HERMAN TOMLIN and GARY HARRISON PLAINTIFFS

VS. CAUSE NO. CV03-029-PCM

MEGA LIFE AND HEALTH INSURANCE COMPANY, NASE GROUP INSURANCE TRUST, NATIONAL ASSOCIATION FOR THE SELF-EMPLOYED, a/k/a NASE, WILLIAM L. PHELPS, AND JOHN DOES 1-20 DEFENDANTS

SUMMONS

TO: WILLIAM L. PHELPS
c/o NATIONAL ASSOCIATION FOR THE SELF-EMPLOYED
304 SOUTH SPRING STREET, SUITE A
TUPELO, MS 38804

You are hereby summoned and required to serve upon Michael D. Greer, plaintiff's attorney, whose address is 117 N. Broadway Street, Post Office Box 907, Tupelo, MS 38802-0907, an answer to the Complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

Judy K. Butler
Clerk of Court
By Carol Rivers, DC.

[Seal of Court]

Dated 1/28/03

(This summons is issued pursuant to Rule 4 of the Mississippi Rules of Civil Procedure).

171

MAR.28.2003 1:29PM MITCH MCNUTT & SAMS PA NO.932 P.2

IN THE CIRCUIT COURT OF THE SECOND JUDICIAL DISTRICT OF CHICKASAW COUNTY, MISSISSIPPI

WILLIAM E. BAILEY, MIKE ELLIS,
WINDELL E. POUNDS and CLARA MAE POUNDS PLAINTIFFS

COPY

VS. CAUSE NO. 2003-16

MEGA LIFE AND HEALTH INSURANCE COMPANY, NASE GROUP INSURANCE TRUST, NATIONAL ASSOCIATION FOR THE SELF-EMPLOYED a.k.a. NASE BARRY LEE, CHAD MILLS, WILLIAM L. PHIPPS, AND JOHN DOES 1-20 DEFENDANTS

COMPLAINT

(JURY TRIAL REQUESTED)

COME NOW Plaintiffs, William E. Bailey, Mike Ellis, Windell E. Pounds and Clara Mae Pounds, by and through their attorneys, and bring this civil complaint against Defendants, Mega Life and Health Insurance Company (hereinafter "Mega Life"), NASE Group Insurance Trust (hereinafter "NASE Group") and National Association for the Self Employed a/k/a NASE (hereinafter "NASE") and Barry Lee, Chad Mills, and William L. Phipps (hereinafter "Agents"), and John Does 1-20, and in support of the same would show the following:

I.

INTRODUCTION

1. The Plaintiffs are, or at the time of the sale giving rise to this cause of action were, adult resident citizens of the State of Mississippi. The Defendant Mega Life is an insurance company licensed to do business, and actually doing business, in the State of Mississippi. The Plaintiffs were sold what was represented to be a health insurance policy in the State of Mississippi, Chickasaw County, by the Defendant Mega Life through Defendants'

FILED
SANDRA N. WILLIS
FEB 13 2003
CIRCUIT CLERK
CHICKASAW COUNTY
BOOK PAGE
BY ... D.C.

EXHIBIT 5

agents, Barry Lee, Chad Mills and William L. Phipps, pursuant to a scheme of deceptive sales practices developed by, supported by, and conducted with the knowledge of and to the benefit of the Defendants Mega Life, NASE Group and NASE.

2. Mega Life, NASE Group and NASE are under common control and ownership and operate as a unified business arrangement. However, the arrangement is designed to create the impression that each entity operates independently. NASE purports to be a "non-profit" association formed by the "self employed" for the purpose of advancing the interest of small business owners. In fact, though, it was formed, and is operated, by Mega Life Insurance Company as a marketing tool and profit center. The "association" arrangement is used solely for the purpose of generating profits through "association dues" and avoiding state insurance regulations by the use of "group trust" and "association" insurance certificates which Mega Life contends can be altered, modified or cancelled by an "agreement" between Mega Life and NASE Group. Consumers are deceived by this arrangement into believing that NASE is an independent entity which evaluates various insurance policies in order to obtain the best available "group insurance" when, in fact, the association, trust and insurance company are jointly owned and controlled and the only insurance made available to NASE members are Mega Life products.

3. John Does 1-20 are insurance agents who may have aided to some degree in the sale or deceptive practices and fraud that alleged herein, but whose identity and addresses are unknown at this time, therefore, upon complete identification and location the complaint will be amended to add the specific agents.

PARTIES

4. Plaintiffs are, or at the time of the transaction complained of were, adult resident citizens of the State of Mississippi. Plaintiff, William E. Bailey, is an adult resident citizen of the Second Judicial District of Chickasaw County, Mississippi, living in Okolona, Mississippi. Plaintiffs, Windell E. Pounds and Clara Mae Pounds, are adult resident citizens of the Second Judicial District of Chickasaw County, Mississippi, living at 1356 County Road 70 in Woodland, Mississippi.

5. Defendant Mega Life is a foreign insurance company organized and existing under the laws of the state of Oklahoma. At all times alleged herein, Mega Life was registered to do and actually doing business in the state of Mississippi. Mega Life's registered agent for service of process in the State of Mississippi is as follows:

CT Corp. Systems of Mississippi
631 Lakeland East Drive
Flowood, MS 39232

5. Process may be served on the Defendant Mega Life by service on its registered agent at said address or by service on the Mississippi Commissioner of Insurance.

6. The Defendant NASE Group Insurance Trust is a purported "trust" organized and existing under the laws of a state as yet undetermined. At all times alleged herein, NASE Group was doing business in the State of Mississippi. This entity does not maintain a registered agent in Mississippi and the complaint will be amended when the information can be ascertained.

7. Defendant National Association for the Self Employed a/k/a NASE is a foreign corporation organized and existing under the laws of the State of Texas. At all times alleged

174

herein, NASE was registered to do and actually doing business in the State of Mississippi. NASE's registered agent for service of process in the State of Mississippi is as follows:

CT Corp. Systems of Mississippi
631 Lakeland East Drive
Flowood, MS 39232

8. Defendant, Barry Lee, is an adult resident citizen of Yalobusha County, Mississippi and may be served with process at 186 County Road 371, Water Valley, Mississippi 38965.

9. Defendant, Chad Mills, is an adult resident citizen of Pontotoc County, Mississippi and may be served with process at his principal place of employment with Wal-Mart Distribution Center, 973 State Highway 30 West, New Albany, Mississippi 38652.

10. Defendant, William L. Phipps, is an adult resident citizen of Lee County, Mississippi and may be served with process at his business address of National Association for the Self-Employed, 304 South Spring Street, Suite A, Tupelo, Mississippi 38804, Telephone Number (662) 842-0084.

## JURISDICTION AND VENUE

11. Defendants include a foreign insurance company and other corporate entities doing business in the State of Mississippi and adult resident citizens of the State of Mississippi. Many of the Plaintiffs reside in the Second Judicial District of Panola County, Mississippi and some or all of the tortious actions which give rise to this Complaint occurred and/or accrued in Panola County, Mississippi. This Court has jurisdiction over this matter and the parties herein and Panola County is the proper venue for this cause of action pursuant to Mississippi Code Annotated §§ 11-11-3; 11-11-7 and 11-11-11, and Rule 82 of the Mississippi Rules of Civil

175

Procedure. Each claim herein includes a tort which was committed in whole or in part in the State of Mississippi.

NO FEDERAL JURISDICTION

12. Each claim for relief stated in this Complaint is based exclusively on state law and no federal causes of action are alleged. Plaintiffs unequivocally stipulate that no claim is being made or will be made pursuant to any federal law. Plaintiffs are making specific factual nonclusory allegations directed at the individual Defendants. The individual Defendants are the persons who made initial contact with Plaintiffs on behalf of the Defendants, verbally stated the misrepresentations alleged below, and is not the employee of any corporate Defendants. Defendants are adult resident citizens of the State of Mississippi and is alleged in this Complaint to have had personal knowledge that the representations which Defendants made to Plaintiffs were not true and that Defendants intended thereby to deceive the Plaintiffs into purchasing the insurance and association memberships sold by Mega Life and NASE and that Defendants personally profited from making the misrepresentations by reason of receiving a commission on the sale of the insurance and association membership to Plaintiffs. If the factual allegations made in this Complaint against Defendants are found by the trier of fact to be true, Plaintiffs will be entitled under the laws of Mississippi to recover a judgment personally and individually against each Defendant for the causes of action alleged. For this reason, there is no federal diversity jurisdiction existing and removal to Federal court by the Defendants will be improper.

RELATIONSHIP OF THE PARTIES

13. The agent Defendants are sales agents for Mega Life/NASE. These Defendants represented to Plaintiffs that NASE was an independent, not for profit association of the self

176

employed and small business owners formed and operated for the specific purpose of providing various benefits to its members, the principal benefit being "group insurance" at "group rates". These Defendants further intentionally concealed from Plaintiffs many material facts including but not limited to: 1) all Defendants are under common ownership and control; 2) NASE is merely a marketing tool and profit center for Mega Life; 3) the association "benefits" consist of nothing more than discounts and "information services" of negligible value which can commonly be obtained free of charge in connection with many purchases and services such as credit card ownership and travel club memberships; 4) the "benefits package" is purchased by NASE from a fulfillment company for approximately $2.00 per month per member but NASE collects $15 or more per month from each member for these benefits; and, 5) each member signs a "proxy" in connection with the application process and thereby inadvertently relinquishes his right to be informed of association meetings and to vote on matters affecting the association's operations.

14. Mega Life Insurance Company is solely or principally owned by Ron Jensen who is one of the original developers of the "association/group trust" method of marketing individually underwritten health insurance. This marketing arrangement was developed for three principal reasons: 1) by issuing a master "group policy" to a "trust" and issuing only "certificates" to the individual insureds, the insurance company seeks to insulate the insured/insurer relationship from the "certificate holder" so that the insurance company and the "trust" (which is an entity created by and under the exclusive control of the insurance company) can modify the policy at will without obtaining the consent of the individual insureds; 2) designating insurance as "group insurance" bypasses the more stringent regulations applicable

(in most states) to individually underwritten health insurance; and, 3) the insurance company insures the association will be "not for profit" because the insurance company has "management agreements" by which the insurance company removes all the profit from the association. These "management agreements" give the insurance company (or a "management company" controlled by the insurance company) complete control over the association's accounts. The association's typically generate millions of dollars in profits monthly and this money is funneled to the insurance company and its owners under the terms of the "management agreements". Consumers, such as Plaintiffs, are never informed of the existence of these agreements and never have occasion to discover them because under the terms of the proxy they relinquish their right to obtain information about the association's finances. Members of a *legitimate* association are notified of, and given the opportunity to participate in, regularly scheduled meetings where the membership votes to elect officers and are informed of executive decisions. However, in sham arrangements, such as the one organized by the Defendants, every effort is made to insure the association "members" never have access to accurate information which would reveal the true nature of the arrangement.

15. NASE Group was formed by Mega Life for the sole purpose of being the "named insured" under the NASE "group policy". This "trust" is deceptively named for the purpose of creating the impression that it acts in the capacity of "trustee" for the association members in connection with the "group insurance policy". In fact, the "trust" is nothing more than a token entity formed solely for the purpose of acting as the "insured" under the "group policy" and thereby allowing Mega Life to completely control the insurer/insured relationship.

178

16. NASE purports to be an "independent, not for profit" association formed by and for the benefit of the self employed and small business owners. In fact though, NASE originated as a "shelf corporation" formed to be held two years and then transformed into an "association". NASE originated in Texas where state law prohibits the formation of an association solely for the purpose of marketing insurance, prohibits an association from marketing insurance unless it has been in existence for two years and requires that the consumer be informed of any relationships between the association and any insurance company endorsed by the association. Because of these statutes, the corporate Defendants devised the arrangement described above solely for the purpose of circumventing the law.

17. Plaintiffs purchased the Mega Life policy based upon the misrepresentations made by the agent Defendants and by the corporate Defendants in the marketing and policy/membership information provided to Plaintiffs which:

a. Represented NASE was an independent, non-profit association of similarly interested self employed persons, the purpose of which was to obtain benefits for its members based on the objective criteria of cost/value when, in fact, NASE is solely a marketing tool of Mega Life and does not evaluate, compare or consider any other insurance for its members;

b. Failed to disclose the common ownership/control among the corporate Defendants and deceptively represented the Defendants were separate and independent;

c. Failed to disclose the cost of the association "benefits" and implied those benefits were unique to NASE when, in fact, they are commonly obtainable and of negligible value;

d. Failed to disclose the amount and character of the "association dues", administrative fees and other costs of obtaining insurance from Mega Life;

e. Failed to disclose that the initial premium rates offered to consumers were below the amount actuarially calculated for the purpose of inducing purchases of the Mega Life policy (referred to in the industry as "teaser rates") when all Defendants knew significant premium increases were routinely scheduled and implemented for the purpose of eliminating insureds from the policyholder population over a predetermined time period so that insureds with health problems would remain in a consistently diminishing premium pool and as the premium rates were raised to exorbitant levels, these insureds would be eliminated form the insured population. Mega Life, and virtually all insurers, continually sift the insured population by issuing a "new" or reclassified policy after a predetermined number of policies are insured so that a block of policies can be "closed" and the rates raised to exorbitant levels which forces all the well policy holders into different policies and eliminates insureds with health problems when the premiums reach unaffordable levels.

## STATEMENT OF FACTS AND CAUSES OF ACTION

18. The facts stated above are incorporated herein.

180

19. The corporate Defendants maintain a nationwide sales force of solicitors who contact consumers by phone or mail and arrange appointments for Defendants' sales agents. The agents misrepresent the Mega Life policy as being "group insurance" available only to NASE members and obtained by the association at significant savings because of the association's "group buying power". In fact, association "members" paid more for their insurance than they would have for comparable "non association" individually underwritten health insurance.

20. The marketing scheme implemented by Mega Life is employed both in the presentation of its sales agents, the companies marketing materials and on its internet sites. NASE maintains a web page at www.nase.org which contains links for "affordable health insurance for the self employed" and invites viewers to "click here to request a free quote." When those links are highlighted, a page appears captioned "NASE. Affordable Health Insurance" and states that "the group negotiating power of NASE makes it possible to offer valuable benefits to our members. One of these benefits is access to health insurance coverage. The NASE endorses several financially strong insurance carriers that offer a variety of products and plans customized to meet the special needs of the self employed individual or small business owners."

21. Users of the web page are never informed that the only insurance company offered to NASE members is Mega Life which is a financially related insurance company and jointly controlled with the association. On this same page, there is a link to "NASE's endorsement standards" and upon clicking that link a page appears which list several purported "criteria" for endorsement of insurance. "gain, the web page viewers are never informed that Mega Life is the only health insurance company offered to NASE "members". From the home

181

page, there is a link to a page captioned "member benefits" and, again, at the top of this page is a banner link to "affordable health insurance for the self employed". Another link captioned "full listing of benefits" contains a statement "Endorsed health coverage. The NASE is continually searching quality benefit programs for you. Your membership in the NASE makes it possible for us to negotiate valuable benefits and competitive rates". It then states that "because of the different products available in each state across the Nation, and the unique needs of each individual, we are not able to post general information about endorsed health coverage".

22. This statement is made so that the web page does not conspicuously link to Mega Life Health Insurance Company in order to create the impression that there is not a connection between Mega Life and NASE. This type of deception is typical of the Defendants' advertisement and creation of the false impression that Mega Life and NASE are not jointly owned and commonly controlled. The Defendants written marketing materials provided to Plaintiffs create the same mis-impressions and deceptions. Defendant's brochure and outline of coverage fail to disclose the Defendant's relationships and misrepresent that NASE has no connection to Mega Life. Defendants intended that the Plaintiffs act upon the representations in the manner reasonably contemplated which was by purchasing association membership and insurance, and thereby incurring unnecessary and hidden expenses in the form of membership dues, administrative fees, set up fees, and, ultimately, inflated health insurance premiums. Such conduct constitutes intentional misrepresentation.

23. At the time of the sale of the insurance and association membership to the Plaintiffs, each Defendant knew that the initial premium rate charged for the health insurance was a "teaser rate" which was artificially low and set at an amount below that which had been

182

actuarially recommended. These "teaser rates" were utilized to induce consumers into believing that the offered insurance was actually bargain priced as a result of the association's "group buying power". However, at the time of the sale, all Defendants knew that the premiums were artificially low and would be exorbitantly raised over time. At the time of the sale of the insurance and association membership to the Plaintiffs, each Defendant knew that Mega Life intended to engage in a scheduled series of premium increases over a period of thirty-six to forty-eight months designed to price the insurance at such an amount that no ordinary consumer could afford to pay the premiums. This is done specifically for the purpose of putting the book of business into a "death spiral" so that any insureds with health problems would be isolated and eventually eliminated from the insured population.

24. All misrepresentations complained of were made by the Defendants knowingly and intentionally specifically for the purpose of inducing Plaintiffs to purchase the association membership and the health insurance policy. Such conduct constitutes intentional fraud.

25. Further, the Defendants made false and material misrepresentations to Plaintiffs with the intention that Plaintiffs act upon the representations in the manner reasonably contemplated and Plaintiffs were unaware that the representations were false. Plaintiffs had a right to rely on the representations and the Plaintiffs' damages were proximately caused by the false representations and their reliance thereon.

26. Defendants made material misrepresentations to the Plaintiffs with the willful intent of inducing the Plaintiffs to purchase and to maintain a policy of health insurance and association membership through Mega Life and NASE. Plaintiffs relied upon the Defendants misrepresentations in making the decision to purchase the insurance and association membership

183

and the conduct of Defendants as herein described constitutes fraud, fraudulent inducement and/or fraudulent misrepresentation. Further, the Defendants materially suppressed, concealed and failed to disclose true and accurate information regarding the transactions between the Defendants and the Plaintiffs as described above and such conduct constitutes suppression/concealment and/or failure to disclose.

DAMAGES

27. The conduct of the Defendants as described above was intentional, deceptive, grossly negligent, willful, wanton, and in reckless disregard of Plaintiffs' rights, entitling Plaintiffs to the recovery of punitive damages.

28. Further, the Defendants Mega Life and NASE breached their duty of good faith and fair dealing to the Plaintiffs which is implied in the contracts between those Defendants and Plaintiffs.

29. As a direct and proximate result of each and all of the acts and omissions of the Defendants complained of herein, Plaintiffs have suffered economic damages for which Defendants are liable, jointly and severally, to the Plaintiffs. Among the damages suffered by Plaintiffs are excess premiums, association dues and charges, administrative fees and scheduled increased premiums, plus accrued interest on each excess charge or fee imposed upon the transaction by fraud on the Plaintiffs.

30. All Defendants are jointly and severally liable by reason of their joint enterprise/civil conspiracy by which all Defendants engaged in common plan or scheme to commit a fraud upon Plaintiffs as above described. Each corporate Defendant is a separate entity and the individual Defendant is not employed by any of the corporate entities.

184

PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Plaintiffs demand trial by jury and a judgment of and from the Defendants, jointly and severally, in an amount to be determined by the jury in this matter for the Plaintiffs' actual damages and punitive damages assessed against the Defendants together with all costs of court, prejudgment interest, and interest at the highest lawful rate from and after the date of judgment.

Respectfully submitted,

GREER, PIPKIN & RUSSELL
P.O. Box 907
117 N. Broadway Street
Tupelo, MS 38802-0907
Telephone: (662) 842-5345
Telecopier: (662) 842-6870

By: Michael D. Greer
MICHAEL D. GREER
MS Bar No.: 5002

MALESOVAS & MARTIN, L.L.P.
David H. Martin
Texas State Bar No.: 13057850
P.O. Box 1709
Waco, TX 76703
Telephone: (254) 753-1777
Telecopier: (254) 755-6400

ATTORNEYS FOR PLAINTIFFS