
IN THE CIRCUIT COURT OF THE SECOND JUDICIAL DISTRICT
OF PANOLA COUNTY, MISSISSIPPI

ROBERT PRIDE, EFFIE D. PRIDE,
ETHELDRA D. HAYNIE, BRANDON A.                          **PLAINTIFFS**
MAYO, THOMAS A. MILLS, JOHNNY
MOORE, GARY NANNEY, ROYCE SPEARS,
AND HUDSON WILLIAMS

VS.

                                                            CAUSE NO. CV2002-349BP2

MEGA LIFE AND HEALTH INSURANCE COMPANY,
NASE GROUP INSURANCE TRUST, NATIONAL
ASSOCIATION FOR THE SELF-EMPLOYED aka NASE
CHAD MILLS, ROBERT WESLEY PITTMAN,
BARRY LEE, AND JOHN DOES 1-20
                                                    **DEFENDANTS**

### SECOND AMENDED COMPLAINT

#### (JURY TRIAL REQUESTED)

COME NOW Plaintiffs, Robert Pride, Effie D. Pride, Etheldra D. Haynie, Brandon A.

Mayo, Thomas A. Mills, Johnny Moore, Gary Nanney, Royce Spears and Hudson Williams, by

and through their attorneys, and bring this civil complaint against Defendants, Mega Life and

Health Insurance Company (hereinafter "Mega Life"), NASE Group Insurance Trust (hereinafter

"NASE Group") and National Association for the Self-Employed a/k/a NASE (hereinafter

"NASE"), Chad Mills, Robert Wesley Pittman, Barry Lee [hereinafter "Agents"] and John Does

1-20, and in support of the same would show the following:

#### INTRODUCTION

1.     The Plaintiffs are, or at the time of the sale giving rise to this cause of action were,

adult resident citizens of the State of Mississippi. The Defendant Mega Life is an insurance

company licensed to do business, and actually doing business, in the State of Mississippi. The

APR 2 1 2003

**EXHIBIT 6**

W. JOE RUD
CIRCUIT CLERK

186

Plaintiffs were sold what was represented to be a health insurance policy in the State of Mississippi, Panola County, by the Defendant Mega Life through Defendants= agents, Chad Mills, Robert Wesley Pittman and Barry Lee, pursuant to a scheme of deceptive sales practices developed by, supported by, and conducted with the knowledge of and to the benefit of the Defendants Mega Life, NASE Group and NASE.

2.    Mega Life, NASE Group and NASE are under common control and ownership and operate as a unified business arrangement. However, the arrangement is designed to create the impression that each entity operates independently. NASE purports to be a "non-profit" association formed by the "self employed" for the purpose of advancing the interest of small business owners. In fact, though, it was formed, and is operated, by Mega Life Insurance Company as a marketing tool and profit center. The "association" arrangement is used solely for the purpose of generating profits through "association dues" and avoiding state insurance regulations by the use of "group trust" and "association" insurance certificates which Mega Life contends can be altered, modified or cancelled by an "agreement" between Mega Life and NASE Group. Consumers are deceived by this arrangement into believing that NASE is an independent entity which evaluates various insurance policies in order to obtain the best available "group insurance" when, in fact, the association, trust and insurance company are jointly owned and controlled and the only insurance made available to NASE members are Mega Life products.

3.    Defendants fraudulently induced Plaintiffs and other Mississippi citizens to purchase policies of health insurance in reliance on deceptive and misleading representations by the Defendants and each of them. Defendants knowingly misled Plaintiffs through the establishment and use of deceptive entities and concealment of material information regarding

2

187

the Mega Life insurance products sold in Mississippi, including specifically the product sold to the Plaintiffs herein through NASE. Defendants fraudulently induced the Plaintiffs to rely on the Defendants' false assertions of good faith dealings to the detriment of the Plaintiffs as hereinafter stated.

4.    John Does 1-20 are insurance agents who may have aided to some degree in the sale or deceptive practices and fraud that alleged herein, but whose identity and addresses are unknown at this time, therefore, upon complete identification and location the complaint will be amended to add the specific agents.

<u>PARTIES</u>

5.    Plaintiffs are, and at the time of the transactions complained of were, adult resident citizens of the State of Mississippi.

6.    Plaintiffs Robert and Effie D. Pride are adult resident citizens of the Second Judicial District of Panola County, Mississippi, living on Curtis Road in Batesville, Mississippi.

7.    Plaintiff Etheldra D. Haynie is an adult resident citizen of the Second Judicial District of Panola County, Mississippi, living at 2349 Macedonia Road, Batesville, Mississippi 38606.

8.    Plaintiff Brandon A. Mayo is an adult resident citizen of Yalobusha County, Mississippi, living at 453 CR 99, Water Valley, Mississippi.

9.    Plaintiff Thomas A. Mills is an adult resident citizen of Yalobusha County, Mississippi, living at 3837 Highway 315, Water Valley, Mississippi.

10.    Plaintiff Johnny Moore is an adult resident citizen of Pontotoc County, Mississippi, living at 439 Highway 9 South, Pontotoc, Mississippi.

3

188



11.  Plaintiff Gary Nanney is an adult resident citizen of Pontotoc County, Mississippi, living at 217 Clark Street, Pontotoc, Mississippi.

12.  Plaintiff Royce Spears is an adult resident citizen of Pontotoc County, Mississippi, living at 3191 Highway 6 East, Pontotoc, Mississippi.

13.  Plaintiff Hudson Williams is an adult resident citizen of Monroe County, Mississippi, living in Okolona, Mississippi.

14.  Defendant Mega Life is a foreign insurance company organized and existing under the laws of the state of Oklahoma. At all times alleged herein, Mega Life was registered to do and actually doing business in the State of Mississippi. Mega Life's registered agent for service of process in the State of Mississippi is as follows:

> CT Corp. Systems of Mississippi
> 631 Lakeland East Drive
> Flowood, MS 39232

Process may be served on the Defendant Mega Life by service on its registered agent at said address or by service on the Mississippi Commissioner of Insurance.

15.  The Defendant NASE Group Insurance Trust Fund is a purported "trust" organized and existing under the laws of a state as yet undetermined. At all times alleged herein, NASE Group was doing business in the State of Mississippi. This entity does not maintain a registered agent in Mississippi but may be served with process upon Ralph Wolfe, c/o National Association for the Self-Employed, 2121 Precinct Line Road, Hurst, Texas  76054.

16.  Defendant National Association for the Self Employed a/k/a NASE is a foreign corporation organized and existing under the laws of the State of Texas. At all times alleged

4

189

herein, NASE was registered to do and actually doing business in the State of Mississippi. NASE's registered agent for service of process in the State of Mississippi is as follows:

CT Corp. Systems of Mississippi
631 Lakeland East Drive
Flowood, MS 39232

17.    Defendant, Barry Lee, is an adult resident citizen of Yalobusha County, Mississippi and may be served with process at 186 County Road 371, Water Valley, Mississippi 38965.

18.    Defendant, Robert Wesley Pittman, is an adult resident citizen of DeSoto County, Mississippi and may be served with process at his residence address of 5996 South Bend Lane, Olive Branch, Mississippi 38654-3227.

19.    Defendant Chad Mills, is an adult resident citizen of Pontotoc County, Mississippi and may be served with process at his principal place of employment with Wal-Mart Distribution Center, 973 State Highway 30 West, New Albany, Mississippi 38652.

20.    Defendants John Does 1-20 are entities, businesses, and/or individual Defendants which/who conspired with Defendants, and/or who acted as agents and/or employees of Defendants. At all relevant times, the individual Defendants John Does 1-20 were acting within the course and scope of their agency and employment with Defendants, as well as in their individual capacities, and they personally participated in the commission of the wrongful and tortious conduct alleged herein. Plaintiffs expressly incorporate the John Doe Defendants into each of the allegations set out herein, and where the term "Defendant" is used, this term expressly includes the John Doe Defendants.

190



## JURISDICTION AND VENUE

21.     Defendants include foreign insurance companies doing business in the State of Mississippi and resident citizen(s) of the State of Mississippi. One or more Plaintiffs reside in the Second Judicial District of Panola County, Mississippi, and some of the tortious actions which give rise to this Complaint occurred and/or accrued in the Second Judicial District of Panola County, Mississippi. This Court has jurisdiction over this matter and the parties herein, and is the proper Venue for this cause of action pursuant to Miss. Code Ann. §§ 11-11-3; 11-11-7 and 11-11-11, and Rule 82 of the Mississippi Rules of Civil Procedure. Each claim herein includes a tort which was committed in whole or in part in the State of Mississippi.

## NO FEDERAL JURISDICTION

22.     Each claim for relief stated in this Complaint is based exclusively on state law and no federal causes of action are alleged. Plaintiff unequivocally stipulates that no claim is being made or will be made pursuant to any federal law. Plaintiff is making specific factual nonclusory allegations directed at the individual Defendants. The individual Defendants are the persons who made initial contact with Plaintiffs on behalf of the Defendants, verbally stated the misrepresentations alleged below, and are not the employees of any corporate Defendants. Defendants are adult resident citizens of the State of Mississippi and are alleged in this Complaint to have had personal knowledge that the representations which Defendants made to Plaintiffs were not true and that Defendants intended thereby to deceive the Plaintiffs into purchasing the insurance and association memberships sold by Mega Life and NASE and that Defendants personally profited from making the misrepresentations by reason of receiving a commission on the sale of the insurance and association membership to Plaintiffs. If the factual

6

191

allegations made in this Complaint against Defendants are found by the trier of fact to be true, Plaintiffs will be entitled under the laws of Mississippi to recover a judgment personally and individually against each Defendant for the causes of action alleged. For this reason, there is no federal diversity jurisdiction existing and removal to Federal court by the Defendants will be improper.

## RELATIONSHIP OF THE PARTIES

23.    The agent Defendants, BARRY LEE [hereinafter "Lee"], CHAD MILLS [hereinafter "Mills"] and ROBERT WESLEY PITTMAN [hereinafter "Pittman"], are sales agents for Mega Life/NASE. These Defendants also served as independent representatives of the Plaintiffs in seeking to obtain for them the best possible insurance for the best price. Said Defendants represented to Plaintiffs that NASE was an independent, not for profit association of the self employed and small business owners formed and operated for the specific purpose of providing various benefits to its members, the principal benefit being "group insurance" at "group rates." These Defendants intentionally concealed from Plaintiffs many material facts including but not limited to: 1) all Defendants are under common ownership and control; 2) NASE is merely a marketing tool and profit center for Mega Life; 3) the association "benefits" consist of nothing more than discounts and "information services" of negligible value which can commonly be obtained free of charge in connection with many purchases and services such as credit card ownership and travel club memberships; 4) the "benefits package" is purchased by NASE from a fulfillment company for a fixed price per month per member but NASE collects more per month from each member for these benefits; and, 5) each member signs a "proxy" in connection with the application process and thereby inadvertently relinquishes his right to be

7

192

informed of association meetings and to vote on matters affecting the association's operations.

24.    Mega Life Insurance Company is solely or principally owned by Ron Jensen who is one of the original developers of the "association/group trust" method of marketing individually underwritten health insurance. This marketing arrangement was developed for three principal reasons: 1) by issuing a master "group policy" to a "trust" and issuing only "certificates" to the individual insureds, the insurance company seeks to insulate the insured/insurer relationship from the "certificate holder" so that the insurance company and the "trust" (which is an entity created by and under the exclusive control of the insurance company) can modify the policy at will without obtaining the consent of the individual insureds; 2) designating insurance as "group insurance" bypasses the more stringent regulations applicable (in most states) to individually underwritten health insurance; and, 3) the insurance company insures the association will be "not for profit" because the insurance company has "management agreements" by which the insurance company removes all the profit from the association. These "management agreements" give the insurance company (or a "management company" controlled by the insurance company) complete control over the association's accounts. The association's typically generate millions of dollars in profits monthly and this money is funneled to the insurance company and its owners under the terms of the "management agreements." Consumers, such as Plaintiffs, are never informed of the existence of these agreements and never have occasion to discover them because under the terms of the proxy they relinquish their right to obtain information about the association's finances. Members of a *legitimate* association are notified of, and given the opportunity to participate in, regularly scheduled meetings where the membership votes to elect officers and are informed of executive decisions. However, in sham

8

.193

arrangements, such as the one organized by the Defendants, every effort is made to insure the association "members" never have access to accurate information which would reveal the true nature of the arrangement.

25.    NASE Group was formed by Mega Life for the sole purpose of being the "named insured" under the NASE "group policy." This "trust" is deceptively named for the purpose of creating the impression that it acts in the capacity of "trustee" for the association members in connection with the "group insurance policy." In fact, the "trust" is nothing more than a token entity formed solely for the purpose of acting as the "insured" under the "group policy" and thereby allowing Mega Life to completely control the insurer/insured relationship.

.26.    NASE purports to be an "independent, not for profit" association formed by and for the benefit of the self employed and small business owners. In fact though, NASE originated as a "shelf corporation" formed to be held two years and then transformed into an "association." NASE originated in Texas where state law prohibits the formation of an association solely for the purpose of marketing insurance, prohibits an association from marketing insurance unless it has been in existence for two years and requires that the consumer be informed of any relationships between the association and any insurance company endorsed by the association. Because of these statutes, the corporate Defendants devised the arrangement described above solely for the purpose of circumventing the law.

27.    Plaintiffs purchased the Mega Life policy based upon the misrepresentations made by the agent Defendants and by the corporate Defendants in the marketing and policy/membership information provided to Plaintiffs which:

9

194

a.   Represented NASE was an independent, non-profit association of similarly interested self employed persons, the purpose of which was to obtain benefits for its members based on the objective criteria of cost/value when, in fact, NASE is solely a marketing tool of Mega Life and does not evaluate, compare or consider any other insurance for its members;

b.   Failed to disclose the common ownership/control among the corporate Defendants and deceptively represented the Defendants were separate and independent;

c.   Failed to disclose the cost of the association "benefits" and implied those benefits were unique to NASE when, in fact, they are commonly obtainable and of negligible value;

d.   Failed to disclose the amount and character of the "association dues", administrative fees and other costs of obtaining insurance from Mega Life;

e.   Failed to disclose that the initial premium rates offered to consumers were below the amount actuarially calculated for the purpose of inducing purchases of the Mega Life policy (referred to in the industry as "teaser rates") when all Defendants knew significant premium increases were routinely scheduled and implemented for the purpose of eliminating insureds from the policyholder population over a predetermined time period so that insureds with health problems would remain in a consistently diminishing premium pool and as the premium rates were raised to exorbitant levels, these insureds would be eliminated form the insured population. Mega Life, and virtually all insurers, continually sift the insured population by issuing a "new" or reclassified policy after a predetermined

10

195

number of policies are insured so that a block of policies can be "closed" and the rates raised to exorbitant levels which forces all the well policy holders into different policies and eliminates insureds with health problems when the premiums reach unaffordable levels.

## STATEMENT OF FACTS AND CAUSES OF ACTION

28.    The facts stated above are incorporated herein.

29.    The corporate Defendants maintain a nationwide sales force of solicitors who contact consumers by phone or mail and arrange appointments for Defendants' sales agents. The agents misrepresent the Mega Life policy as being "group insurance" available only to NASE members and obtained by the association at significant savings because of the associations "group buying power." In fact, association "members" paid more for their insurance than they would have for comparable "non association" individually underwritten health insurance.

30.    The marketing scheme implemented by Mega Life is employed both in the presentation of its sales agents, the companies marketing materials and on its internet sites. NASE maintains a web page at www.nase.org which contains links for "affordable health insurance for the self employed" and invites viewers to "click here to request a free quote." When those links are highlighted, a page appears captioned "NASE. Affordable Health Insurance" and states that "the group negotiating power of NASE makes it possible to offer valuable benefits to our members. One of these benefits is access to health insurance coverage. The NASE endorses several financially strong insurance carriers that offer a variety of products and plans customized to meet the special needs of the self employed individual or small business owners."

11

196

31.    Users of the web page are never informed that the only insurance company offered to NASE members is Mega Life which is a financially related insurance company and jointly controlled with the association. On this same page, there is a link to "NASE's endorsement standards" and upon clicking that link a page appears which list several purported "criteria" for endorsement of insurance. Again, the web page viewers are never informed that Mega Life is the only health insurance company offered to NASE "members." From the home page, there is a link to a page captioned "member benefits" and, again, at the top of this page is a banner link to "affordable health insurance for the self employed." Another link captioned "full listing of benefits" contains a statement "Endorsed health coverage. The NASE is continually searching quality benefit programs for you. Your membership in the NASE makes it possible for us to negotiate valuable benefits and competitive rates." It then states that "because of the different products available in each state across the Nation, and the unique needs of each individual, we are not able to post general information about endorsed health coverage."

32.    This statement is made so that the web page does not conspicuously link to Mega Life Health Insurance Company in order to create the impression that there is not a connection between Mega Life and NASE. This type of deception is typical of the Defendants= advertisement and creation of the false impression that Mega Life and NASE are not jointly owned and commonly controlled. The Defendants written marketing materials provided to Plaintiffs create the same mis-impressions and deceptions. Defendant=s brochure and outline of coverage fail to disclose the Defendant=s relationships and misrepresent that NASE has no connection to Mega Life. Defendants intended that the Plaintiffs act upon the representations in the manner reasonably contemplated which was by purchasing association membership and

12

197


insurance, and thereby incurring unnecessary and hidden expenses in the form of membership dues, administrative fees, set up fees, and, ultimately, inflated health insurance premiums. Such conduct constitutes intentional misrepresentation.

33.    At the time of the sale of the insurance and association membership to the Plaintiffs, each Defendant knew that the initial premium rate charged for the health insurance was a "teaser rate" which was artificially low and set at an amount below that which had been actuarially recommended. These "teaser rates" were utilized to induce consumers into believing that the offered insurance was actually bargain priced as a result of the association's "group buying power." However, at the time of the sale, all Defendants knew that the premiums were artificially low and would be exorbitantly raised over time. At the time of the sale of the insurance and association membership to the Plaintiffs, each Defendant knew that Mega Life intended to engage in a scheduled series of premium increases over a period of thirty-six to forty-eight months designed to price the insurance at such an amount that no ordinary consumer could afford to pay the premiums. This is done specifically for the purpose of putting the book of business into a "death spiral." A death spiral is an insurance company decision to stop issuing certain policies which is known in the insurance industry as closing a block of business. The closing of a block of insurance eliminates new sales, new premiums and creates an ever dwindling block of insureds to share the risks which in turn causes additional rate increases. Any insureds with health problems are then isolated and are eventually eliminated from the insured population.

34.    All misrepresentations complained of were made by the Defendants knowingly and intentionally specifically for the purpose of inducing Plaintiffs to purchase the association

13

198

membership and the health insurance policy. Such conduct constitutes intentional fraud.

35.    Further, the Defendants made false and material misrepresentations to Plaintiffs with the intention that Plaintiffs act upon the representations in the manner reasonably contemplated and Plaintiffs was unaware that the representations were false. Plaintiffs had a right to rely on the representations and the Plaintiffs=s damages were proximately caused by the false representations and their reliance thereon.

36.    Defendants made material misrepresentations to the Plaintiffs with the willful intent of inducing the Plaintiffs to purchase and to maintain a policy of health insurance and association membership through Mega Life and NASE. Plaintiffs relied upon the Defendants misrepresentations in making the decision to purchase the insurance and association membership and the conduct of Defendants as herein described constitutes fraud, fraudulent inducement and/or fraudulent misrepresentation. Further, the Defendants materially suppressed, concealed and failed to disclose true and accurate information regarding the transactions between the Defendants and the Plaintiffs as described above and such conduct constitutes suppression/concealment and/or failure to disclose.

37.    Once the Plaintiffs purchased the insurance based on the above and foregoing misrepresentations and fraudulent concealment, the defendants in this case engaged in subsequent affirmative acts of fraudulent concealment which were designed to, and did, conceal the fraudulent manner in which the policy and parties had been sold and represented. The Defendant Mega Life also engaged in bad faith practices in the handling of claims under the policy of insurance, refusing to pay for the Plaintiffs' medical treatment by doctors whose services were supposed to be covered by the Mega Life plan.

199

## FRAUDULENT SALES SCHEME

38.    The sale of the policies of insurance to each of the Plaintiffs by Defendants, was part of an intentional scheme designed, engineered and implemented by the Defendants to enhance the sale of health insurance policies in Mississippi and elsewhere through deceptive means.

39.    Plaintiffs were sold what was represented to be a health insurance policy in the State of Mississippi by the Defendants Mega Life, NASE Group and NASE through the combined sales efforts of Defendants, pursuant to a scheme of deceptive sales practices developed by, supported by, and conducted with the knowledge of and to the benefit of Defendants, Mega Life, NASE Group and NASE.

40.    Defendants Mega Life, NASE Group and NASE are under the common control and operated as a unified business arrangement. However, the arrangement is designed to create the impression that each entity operates independently. NASE purports to be a "non-profit" association formed to serve the needs and act as a spokesperson for small businesses or self employed individuals. In fact, though, it was formed, and is operated, as a marketing tool and profit center for Mega Life. The "association" arrangement is used solely for the purpose of generating profits through "association dues" and avoiding state insurance regulations by the use of "group trust" and "association" insurance certificates. Consumers are deceived by this arrangement into believing that the NASE is an independent entity which evaluates various insurance policies in order to obtain the best available "group insurance" when, in fact, the association, trust and insurance company are jointly controlled by a series of agreements and the only health insurance policies made available to NASE members are Mega Life products.

200

41.   Pursuant to the Defendants' scheme, the health insurance policies that Defendants sold in Mississippi were fraudulently underpriced to produce a marketing advantage for the Defendants and their sales agents, for the ultimate financial gain of Defendants.  By offering these policies at unrealistically low prices, the Defendants induced Mississippi citizens in need of health insurance, including the Plaintiffs herein, to purchase said policies, thereby increasing Defendants' market share in Mississippi.  Defendants knew, but concealed from purchasers, the fact that the initial premiums were priced so as to be insufficient to pay normally anticipated claims without exorbitant premium increases.  This information was affirmatively concealed from and never disclosed to the Plaintiffs or other Mississippi consumers who purchased said policies.

42.   Defendants utilized false and misleading advertising, representations, and omissions designed to induce the sale of health insurance policies, thereby engaging in consumer fraud in the sale of the policies, including the misrepresentation and/or the concealment of material information about the cost of the policies.  Defendants adopted, implemented, and carried out a strategic plan that induced the sale of its health insurance policies at unreasonably low initial rates, with the present undisclosed intention to implement substantial increases in premium rates thereafter.  The purpose of said scheme was to increase Defendant's financial gain from the contracts; Defendants engaged in subsequent concealment and non-disclosure of material information about the insurance policies, about the reasons for the rate increases, and about the scheme by which the policies were sold.

43.   Defendants acted with the intent to deceive the Plaintiffs and other Mississippi purchasers in regard to the purchasing and retaining the subject health insurance policies.

16

201

Defendants, acting intentionally and in concert with each other, through a "top-down" management scheme did effectuate the practices and procedures that were calculated to defraud the consumers of Mississippi. Defendants' deliberate and deceptive scheme consisted of a cycle of higher premium rates and a diminishing pool of policyholders to share the increased costs, known as a "death spiral" situation. Pursuant to said scheme, premiums eventually become so exorbitant that most insureds are unable to pay the premiums and are forced to permit their policies to lapse, thereby increasing Defendants' profits at the expense of the Plaintiffs and other Mississippi policyholders.

44.    Having induced Plaintiffs to purchase the aforesaid policies, Mega Life, NASE Group and NASE thereupon embarked upon its intentional and calculated course of increasing the premiums on said policies. The aforementioned acts of the Defendants were done intentionally and as part of a scheme reasonably calculated to deceive and defraud Mississippi consumers for the financial benefit and gain of the Defendants.

## FRAUDULENT CONCEALMENT

45.    The actions of Defendants were designed to, and did in fact, fraudulently conceal from Plaintiffs the deceptive misrepresentations and fraudulent concealment upon which the sale had been made. Plaintiffs did not discover, and could not through the exercise of reasonable diligence have discovered, that they had been misled by the deceptive sales tactics and intricate scheme of fraud and concealment employed by Defendants to fraudulently induce these sales, and to fraudulently induce Plaintiffs to retain membership in . In addition to any claims for relief based on such fraudulent activities, these actions by Defendants tolled any applicable statute of limitations because of Defendants' affirmative acts of fraudulent concealment prior to and after

17

202



the sale.

46.     Defendants knew at the time each policy was sold that they would implement substantial rate increases; would or had already taken measures to eliminate benefits under the policy; and would close the block of business.  Instead of informing the Plaintiffs of these decisions at the time of the sale this information was concealed.  Mega Life further concealed this information at the time of each subsequent rate increase through letters stating only that the increases were due to higher medical costs or more frequent use than expected.

47.     Each soliciting agent was responsible for the continued collection of NASE membership dues after the sale of these policies.  The agents maintained contact with the individual insureds and continued to represent that each insured was required to maintain their membership in NASE in order to maintain their health insurance policy.

48.     Plaintiffs could not have learned and did not learn that they had been misled by Defendants, and that they had been fraudulently induced to purchase and retain the subject policy and NASE Membership until sometime after November 21, 2002, when Wall Street Journal published an article titled "Nonprofit Groups that Tout Insurance Have Hidden Links."  In addition to tolling of the applicable limitations period because of this fraudulent concealment, Defendants should be equitably estopped from asserting any limitations defense in this case.

## DAMAGES

49.     The conduct of the Defendants as described above was intentional, deceptive, grossly negligent, willful, wanton, and in reckless disregard of Plaintiffs's rights, entitling Plaintiffs to the recovery of punitive damages.

18

203

50.    Further, the Defendants Mega Life and NASE breached their duty of good faith and fair dealing to the Plaintiffs which is implied in the contracts between those Defendants and Plaintiffs.

51.    Plaintiffs relied on the Defendants' representations and concealment and as a result thereof, Plaintiffs have also suffered damages in the loss of peace of mind that they thought they were purchasing when they purchased the Defendants' policy for the protection and benefit of themselves and their family.

52.    The misrepresentations, omissions and concealment of material facts by the Defendants as aforesaid were intentional and deliberate acts, and were part of a willful scheme or course of conduct whereby the Defendants sought to and did induce the Plaintiffs and others to purchase and retain health policies on the basis of and in reliance upon Defendants' fraudulent misrepresentations and omissions. Said acts on the part of the Defendants constitute intentional, willful and fraudulent conduct rendering Defendants liable for punitive damages, as well as for attorneys fees and other expenses incurred in pursuing this litigation. Defendants should be assessed with punitive damages in an amount sufficient to punish the Defendants, to deter like conduct by the Defendants in the future, and to serve as an example and deter others from engaging in similar fraudulent and deceptive conduct.

53.    In addition, Plaintiff respectfully requests that this Court grant such additional relief as the Court deems just and proper, including such extraordinary equitable and/or injunctive relief as permitted by law, equity or statutory provisions, to prevent unjust enrichment of the Defendants, to ensure that Defendants do not profit from their own wrongdoing, and to ensure that Plaintiffs have an effective remedy for the damages sustained as a result of the

204

Defendants' wrongful and fraudulent misrepresentations and concealment in the sale of health insurance policies, including attaching, impounding or imposing a constructive trust upon or otherwise restricting the proceeds of Defendants to ensure that Plaintiffs have an effective remedy.

54.     As a direct and proximate result of each and all of the acts and omissions of the Defendants complained of herein, Plaintiffs has suffered economic damages for which Defendants are liable, jointly and severally, to the Plaintiffs.  Among the damages suffered by Plaintiffs are excess premiums, association dues and charges, administrative fees and scheduled increased premiums, plus accrued interest on each excess charge or fee imposed upon the transaction by fraud on the Plaintiffs.

55.     All Defendants are jointly and severally liable by reason of their joint enterprise/civil conspiracy by which all Defendants engaged in common plan or scheme to commit a fraud upon Plaintiffs as above described.  Each corporate Defendant is a separate entity and the individual Defendant is not employed by any of the corporate entities.

### PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Plaintiffs demand trial by jury and a judgment of and from the Defendants, jointly and severally, in an amount to be determined by the jury in this matter for the Plaintiffs's actual damages and punitive damages assessed against the Defendants together with all costs of court, prejudgment interest, and interest at the highest lawful rate from and after the date of judgment.

THIS the 21st day of April, 2003.

20

205

Respectfully submitted,

JUSTIN S. CLUCK - Bar No. 100733
One of the Attorneys for the Plaintiffs

RICHARD T. PHILLIPS – Bar No. 4170
JUSTIN S. CLUCK - Bar No. 100733
SMITH, PHILLIPS, MITCHELL & SCOTT
P.O. Box 1586
Batesville, MS 38606
Telephone: (662) 563-4613
Fax: (662) 563-1546

MICHAEL D. GREER – Bar No. 5002
GREER, PIPKIN & RUSSELL
P.O. Box 907
117 N. Broadway Street
Tupelo, MS 38802-0907
Telephone: (662) 842-5345
Telecopier: (662) 842-6870

ATTORNEY FOR PLAINTIFFS

21

206




## IN THE CIRCUIT COURT OF TATE COUNTY, MISSISSIPPI

ROBERT CLARK and DONNA R. CLARK                                          PLAINTIFFS

VS.                                                      CAUSE NO. CV-2003-121-5T

MEGA LIFE AND HEALTH INSURANCE COMPANY,
NASE GROUP INSURANCE TRUST FUND, NATIONAL
ASSOCIATION FOR THE SELF-EMPLOYED aka NASE,
WILLIAM L. PHIPPS, ROBERT WESLEY PITTMAN,
AND JOHN DOES 1-20                                                       DEFENDANTS

### COMPLAINT

#### (JURY TRIAL REQUESTED)

COME NOW Plaintiffs, Robert Clark and Donna R. Clark, by and through their
attorneys, and bring this civil complaint against Defendants, Mega Life and Health Insurance
Company (hereinafter "Mega Life"), NASE Group Insurance Trust Fund (hereinafter "NASE
Group") and National Association for the Self Employed a/k/a NASE (hereinafter "NASE"),
William L. Phipps, Robert Wesley Pittman, and John Does 1-20, and in support of the same
would show the following:

### I.

### INTRODUCTION

1.      The Plaintiffs are, or at the time of the sale giving rise to this cause of action
were, adult resident citizens of the State of Mississippi.  The Defendant Mega Life is an
insurance company licensed to do business, and actually doing business, in the State of
Mississippi.  The Plaintiffs were sold what was represented to be a health insurance policy in the
State of Mississippi, Tate County, by the Defendant Mega Life through Defendants' agents,
Robert Wesley Pittman, and William L. Phipps, pursuant to a scheme of deceptive sales

Complaint                                                               Page 1

FILED 4-16-2003
EDW:..

BY: _____

EXHIBIT 7

207



practices developed by, supported by, and conducted with the knowledge of and to the benefit of the Defendants Mega Life, NASE Group and NASE.

2.  Mega Life, NASE Group and NASE are under common control and ownership and operate as a unified business arrangement. However, the arrangement is designed to create the impression that each entity operates independently. NASE purports to be a "non-profit" association formed by the "self employed" for the purpose of advancing the interest of small business owners. In fact, though, it was formed, and is operated, by Mega Life Insurance Company as a marketing tool and profit center. The "association" arrangement is used solely for the purpose of generating profits through "association dues" and avoiding state insurance regulations by the use of "group trust" and "association" insurance certificates which Mega Life contends can be altered, modified or cancelled by an "agreement" between Mega Life and NASE Group. Consumers are deceived by this arrangement into believing that NASE is an independent entity which evaluates various insurance policies in order to obtain the best available "group insurance" when, in fact, the association, trust and insurance company are jointly owned and controlled and the only insurance made available to NASE members are Mega Life products.

3. John Does 1-20 are insurance agents who may have aided to some degree in the sale or deceptive practices and fraud that alleged herein, but whose identity and addresses are unknown at this time, therefore, upon complete identification and location the complaint will be amended to add the specific agents.

Complaint                                                                Page 2

208



## PARTIES

4.    Plaintiffs are, and at the time of the transactions complained of were, adult resident citizens of Tate County, Mississippi, residing at 743 Second Street in Coldwater, Mississippi.

5.    Defendant Mega Life is a foreign insurance company organized and existing under the laws of the state of Oklahoma. At all times alleged herein, Mega Life was registered to do and actually doing business in the state of Mississippi. Mega Life's registered agent for service of process in the State of Mississippi is as follows:

> CT Corp. Systems of Mississippi
> 631 Lakeland East Drive
> Flowood, MS 39232

Process may be served on the Defendant Mega Life by service on its registered agent at said address or by service on the Mississippi Commissioner of Insurance.

6.    The Defendant NASE Group Insurance Trust Fund is a purported "trust" organized and existing under the laws of a state as yet undetermined. At all times alleged herein, NASE Group was doing business in the State of Mississippi. This entity does not maintain a registered agent in Mississippi but may be served with process upon Ralph Wolfe, c/o National Association for the Self-Employed, 2121 Precinct Line Road, Hurst, Texas 76054.

7.    Defendant National Association for the Self Employed a/k/a NASE is a foreign corporation organized and existing under the laws of the State of Texas. At all times alleged herein, NASE was registered to do and actually doing business in the State of Mississippi. NASE's registered agent for service of process in the State of Mississippi is as follows:

Complaint                                                                              Page 3

209




CT Corp. Systems of Mississippi
631 Lakeland East Drive
Flowood, MS 39232

8.    Defendant William L. Phipps, is an adult resident citizen of Lee County, Mississippi, and may be served with process at his business address of National Association for the Self Employed, 304 Spring Street, Suite A, Tupelo, MS 38804, Telephone Number (662) 842-0084.

9.    Defendant, Robert Wesley Pittman, is an adult resident citizen of DeSoto County, Mississippi and may be served with process at his residence address of 5996 South Bend Lane, Olive Branch, Mississippi  38654-3227.

## JURISDICTION AND VENUE

10.    Defendants include a foreign insurance company and other corporate entities doing business in the State of Mississippi and adult resident citizens of the State of Mississippi. Plaintiff resides in Tate County, Mississippi and the tortious actions which give rise to this Complaint occurred and/or accrued in Tate County, Mississippi. This Court has jurisdiction over this matter and the parties herein and Tate County is the proper venue for this cause of action pursuant to the Mississippi Code Annotated, as amended, and Rule 82 of the Mississippi Rules of Civil Procedure. Each claim herein includes a tort which was committed in whole or in part in the State of Mississippi.

## NO FEDERAL JURISDICTION

11.    Each claim for relief stated in this Complaint is based exclusively on state law and no federal causes of action are alleged. Plaintiff unequivocally stipulates that no claim is being made or will be made pursuant to any federal law. Plaintiff is making specific factual

Complaint                                                                                    Page 4

210

nonclusory allegations directed at the individual Defendants. The individual Defendants are the persons who made initial contact with Plaintiffs on behalf of the Defendants, verbally stated the misrepresentations alleged below, and are not the employees of any corporate Defendants. Defendants are adult resident citizens of the State of Mississippi and are alleged in this Complaint to have had personal knowledge that the representations which Defendants made to Plaintiffs were not true and that Defendants intended thereby to deceive the Plaintiffs into purchasing the insurance and association memberships sold by Mega Life and NASE and that Defendants personally profited from making the misrepresentations by reason of receiving a commission on the sale of the insurance and association membership to Plaintiffs. If the factual allegations made in this Complaint against Defendants are found by the trier of fact to be true, Plaintiffs will be entitled under the laws of Mississippi to recover a judgment personally and individually against each Defendant for the causes of action alleged. For this reason, there is no federal diversity jurisdiction existing and removal to Federal court by the Defendants will be improper.

## RELATIONSHIP OF THE PARTIES

12.    The agent Defendants, WILLIAM L. PHIPPS [herinafter "Phipps"], and ROBERT WESLEY PITTMAN [hereinafter "Pittman"], are sales agents for Mega Life/NASE. These Defendants also served as independent representatives of the Plaintiffs in seeking to obtain for them the best possible insurance for the best price. Said Defendants represented to Plaintiffs that NASE was an independent, not for profit association of the self employed and small business owners formed and operated for the specific purpose of providing various benefits to its members, the principal benefit being "group insurance" at "group rates". These

Complaint                                                                                         Page 5

211



Defendants intentionally concealed from Plaintiffs many material facts including but not limited to: 1) all Defendants are under common ownership and control; 2) NASE is merely a marketing tool and profit center for Mega Life; 3) the association "benefits" consist of nothing more than discounts and "information services" of negligible value which can commonly be obtained free of charge in connection with many purchases and services such as credit card ownership and travel club memberships; 4) the "benefits package" is purchased by NASE from a fulfillment company for a fixed price per month per member but NASE collects more per month from each member for these benefits; and, 5) each member signs a "proxy" in connection with the application process and thereby inadvertently relinquishes his right to be informed of association meetings and to vote on matters affecting the association's operations.

13.    Mega Life Insurance Company is solely or principally owned by Ron Jensen who is one of the original developers of the "association/group trust" method of marketing individually underwritten health insurance. This marketing arrangement was developed for three principal reasons: 1) by issuing a master "group policy" to a "trust" and issuing only "certificates" to the individual insureds, the insurance company seeks to insulate the insured/insurer relationship from the "certificate holder" so that the insurance company and the "trust" (which is an entity created by and under the exclusive control of the insurance company) can modify the policy at will without obtaining the consent of the individual insureds; 2) designating insurance as "group insurance" bypasses the more stringent regulations applicable (in most states) to individually underwritten health insurance; and, 3) the insurance company insures the association will be "not for profit" because the insurance company has "management agreements" by which the insurance company removes all the profit from the association. These

Complaint                                                                                          Page 6

212

 

"management agreements" give the insurance company (or a "management company" controlled by the insurance company) complete control over the association's accounts. The association's typically generate millions of dollars in profits monthly and this money is funneled to the insurance company and its owners under the terms of the "management agreements". Consumers, such as Plaintiffs, are never informed of the existence of these agreements and never have occasion to discover them because under the terms of the proxy they relinquish their right to obtain information about the association's finances. Members of a *legitimate* association are notified of, and given the opportunity to participate in, regularly scheduled meetings where the membership votes to elect officers and are informed of executive decisions. However, in sham arrangements, such as the one organized by the Defendants, every effort is made to insure the association "members" never have access to accurate information which would reveal the true nature of the arrangement.

14.    NASE Group was formed by Mega Life for the sole purpose of being the "named insured" under the NASE "group policy". This "trust" is deceptively named for the purpose of creating the impression that it acts in the capacity of "trustee" for the association members in connection with the "group insurance policy". In fact, the "trust" is nothing more than a token entity formed solely for the purpose of acting as the "insured" under the "group policy" and thereby allowing Mega Life to completely control the insurer/insured relationship.

15.    NASE purports to be an "independent, not for profit" association formed by and for the benefit of the self employed and small business owners. In fact though, NASE originated as a "shelf corporation" formed to be held two years and then transformed into an "association". NASE originated in Texas where state law prohibits the formation of an association solely for

Complaint                                                                    Page 7

213



the purpose of marketing insurance, prohibits an association from marketing insurance unless it has been in existence for two years and requires that the consumer be informed of any relationships between the association and any insurance company endorsed by the association. Because of these statutes, the corporate Defendants devised the arrangement described above solely for the purpose of circumventing the law.

16.    Plaintiffs purchased the Mega Life policy based upon the misrepresentations made by the agent Defendants and by the corporate Defendants in the marketing and policy/membership information provided to Plaintiffs which:

a.    Represented NASE was an independent, non-profit association of similarly interested self employed persons, the purpose of which was to obtain benefits for its members based on the objective criteria of cost/value when, in fact, NASE is solely a marketing tool of Mega Life and does not evaluate, compare or consider any other insurance for its members;

b.    Failed to disclose the common ownership/control among the corporate Defendants and deceptively represented the Defendants were separate and independent;

c.    Failed to disclose the cost of the association "benefits" and implied those benefits were unique to NASE when, in fact, they are commonly obtainable and of negligible value;

d.    Failed to disclose the amount and character of the "association dues", administrative fees and other costs of obtaining insurance from Mega Life;

Complaint                                                                        Page 8

214



e.    Failed to disclose that the initial premium rates offered to consumers were below the amount actuarially calculated for the purpose of inducing purchases of the Mega Life policy (referred to in the industry as "teaser rates") when all Defendants knew significant premium increases were routinely scheduled and implemented for the purpose of eliminating insureds from the policyholder population over a predetermined time period so that insureds with health problems would remain in a consistently diminishing premium pool and as the premium rates were raised to exorbitant levels, these insureds would be eliminated form the insured population. Mega Life, and virtually all insurers, continually sift the insured population by issuing a "new" or reclassified policy after a predetermined number of policies are insured so that a block of policies can be "closed" and the rates raised to exorbitant levels which forces all the well policy holders into different policies and eliminates insureds with health problems when the premiums reach unaffordable levels.

### STATEMENT OF FACTS AND CAUSES OF ACTION

17.    The facts stated above are incorporated herein.

18.    The corporate Defendants maintain a nationwide sales force of solicitors who contact consumers by phone or mail and arrange appointments for Defendants' sales agents. The agents misrepresent the Mega Life policy as being "group insurance" available only to NASE members and obtained by the association at significant savings because of the associations "group buying power". In fact, association "members" paid more for their insurance than they would have for comparable "non association" individually underwritten health insurance.

Complaint                                                                                          Page 9

215



19.    The marketing scheme implemented by Mega Life is employed both in the presentation of its sales agents, the companies marketing materials and on its internet sites. NASE maintains a web page at www.nase.org which contains links for "affordable health insurance for the self employed" and invites viewers to "click here to request a free quote." When those links are highlighted, a page appears captioned "NASE. Affordable Health Insurance" and states that "the group negotiating power of NASE makes it possible to offer valuable benefits to our members. One of these benefits is access to health insurance coverage. The NASE endorses several financially strong insurance carriers that offer a variety of products and plans customized to meet the special needs of the self employed individual or small business owners."

20.    Users of the web page are never informed that the only insurance company offered to NASE members is Mega Life which is a financially related insurance company and jointly controlled with the association.   On this same page, there is a link to "NASE's endorsement standards" and upon clicking that link a page appears which list several purported "criteria" for endorsement of insurance.  Again, the web page viewers are never informed that Mega Life is the only health insurance company offered to NASE "members".  From the home page, there is a link to a page captioned "member benefits" and, again, at the top of this page is a banner link to "affordable health insurance for the self employed".  Another link captioned "full listing of benefits" contains a statement "Endorsed health coverage. The NASE is continually searching quality benefit programs for you.  Your membership in the NASE makes it possible for us to negotiate valuable benefits and competitive rates".  It then states that "because of the

Complaint

Page 10

216



different products available in each state across the Nation, and the unique needs of each individual, we are not able to post general information about endorsed health coverage".

21.    This statement is made so that the web page does not conspicuously link to Mega Life Health Insurance Company in order to create the impression that there is not a connection between Mega Life and NASE. This type of deception is typical of the Defendants' advertisement and creation of the false impression that Mega Life and NASE are not jointly owned and commonly controlled. The Defendants written marketing materials provided to Plaintiffs create the same mis-impressions and deceptions. Defendant's brochure and outline of coverage fail to disclose the Defendant's relationships and misrepresent that NASE has no connection to Mega Life. Defendants intended that the Plaintiffs act upon the representations in the manner reasonably contemplated which was by purchasing association membership and insurance, and thereby incurring unnecessary and hidden expenses in the form of membership dues, administrative fees, set up fees, and, ultimately, inflated health insurance premiums. Such conduct constitutes intentional misrepresentation.

22.    At the time of the sale of the insurance and association membership to the Plaintiffs, each Defendant knew that the initial premium rate charged for the health insurance was a "teaser rate" which was artificially low and set at an amount below that which had been actuarially recommended. These "teaser rates" were utilized to induce consumers into believing that the offered insurance was actually bargain priced as a result of the association's "group buying power". However, at the time of the sale, all Defendants knew that the premiums were artificially low and would be exorbitantly raised over time. At the time of the sale of the insurance and association membership to the Plaintiffs, each Defendant knew that Mega Life

Complaint                                                                          Page 11

217




intended to engage in a scheduled series of premium increases over a period of thirty-six to forty-eight months designed to price the insurance at such an amount that no ordinary consumer could afford to pay the premiums. This is done specifically for the purpose of putting the book of business into a "death spiral" so that any insureds with health problems would be isolated and eventually eliminated from the insured population.

23.    All misrepresentations complained of were made by the Defendants knowingly and intentionally specifically for the purpose of inducing Plaintiffs to purchase the association membership and the health insurance policy. Such conduct constitutes intentional fraud.

24.    Further, the Defendants made false and material misrepresentations to Plaintiffs with the intention that Plaintiffs act upon the representations in the manner reasonably contemplated and Plaintiffs was unaware that the representations were false. Plaintiffs had a right to rely on the representations and the Plaintiffs's damages were proximately caused by the false representations and their reliance thereon.

25.    Defendants made material misrepresentations to the Plaintiffs with the willful intent of inducing the Plaintiffs to purchase and to maintain a policy of health insurance and association membership through Mega Life and NASE. Plaintiffs relied upon the Defendants misrepresentations in making the decision to purchase the insurance and association membership and the conduct of Defendants as herein described constitutes fraud, fraudulent inducement and/or fraudulent misrepresentation. Further, the Defendants materially suppressed, concealed and failed to disclose true and accurate information regarding the transactions between the Defendants and the Plaintiffs as described above and such conduct constitutes suppression/concealment and/or failure to disclose.

Complaint                                                                 Page 12

218



26.    Once the Plaintiffs purchased the insurance based on the above and foregoing misrepresentations and fraudulent concealment, the defendants in this case engaged in subsequent affirmative acts of fraudulent concealment which were designed to, and did, conceal the fraudulent manner in which the policy and parties had been sold and represented. The Defendant Mega Life also engaged in bad faith practices in the handling of claims under the policy of insurance, refusing to pay for the Plaintiffs' medical treatment by doctors whose services were supposed to be covered by the Mega Life plan.

### DAMAGES

27..    The conduct of the Defendants as described above was intentional, deceptive, grossly negligent, willful, wanton, and in reckless disregard of Plaintiffs's rights, entitling Plaintiffs to the recovery of punitive damages.

27.    Further, the Defendants Mega Life and NASE breached their duty of good faith and fair dealing to the Plaintiffs which is implied in the contracts between those Defendants and Plaintiffs.

28.    As a direct and proximate result of each and all of the acts and omissions of the Defendants complained of herein, Plaintiffs has suffered economic damages for which Defendants are liable, jointly and severally, to the Plaintiffs. Among the damages suffered by Plaintiffs are excess premiums, association dues and charges, administrative fees and scheduled increased premiums, plus accrued interest on each excess charge or fee imposed upon the transaction by fraud on the Plaintiffs.

29.    All Defendants are jointly and severally liable by reason of their joint enterprise/civil conspiracy by which all Defendants engaged in common plan or scheme to

Complaint                                                                    Page 13

219

06-06-2003   11:23am

T-187   P 002/015   F-615

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHER DISTRICT OF MISSISSIPPI
WESTERN DIVISION

BILLY RANDALL BISHOP                                   PLAINTIFF

VS.                                                    No. 3:03CV103-JAD

DAVID S. BARNARD,
MEGA LIFE AND HEALTH
INSURANCE COMPANY, NASE
GROUP INSURANCE TRUST AND
NATIONAL ASSOCIATION FOR THE
SELF-EMPLOYED aka NASE                                 DEFENDANTS



AMENDED COMPLAINT

(JURY TRIAL REQUESTED)

The Plaintiff, through his attorney, files this civil complaint against Defendants, Mega

Life and Health Insurance Company (hereinafter "Mega Life"), NASE Group Insurance Trust

(hereinafter "NASE Group"), and National Association for the Self-Employed a.k.a. NASE

(hereinafter "NASE"), and shows as follows:

I.

INTRODUCTION

1.      The Plaintiff at the time of the sale giving rise to this cause of action was an adult

resident citizen of Lafayette County, Mississippi. The Defendant, Mega Life, is an insurance

EXHIBIT 8

221

company licensed to do business, and actually doing business, in the State of Mississippi. The
Plaintiff was sold what was represented to be a health insurance policy in the State of
Mississippi, Lafayette County, by the Defendant Mega Life through Defendant agent, David S.
Barnard, pursuant to a scheme of deceptive sales practices developed by, supported by, and
conducted with the knowledge of and to the benefit of the Defendant agent Mega Life, NASE
Group and NASE.

    2.    Mega Life, NASE Group, and NASE are under common control and ownership
and operate as a unified business arrangement. However, the arrangement is designed to create
the impression that each entity operates independently. NASE purports to be a "non-profit"
association formed by the "self-employed" for the purpose of advancing the interest of small
business owners. In fact, though, it was formed, and is operated, by Mega Life Insurance
Company as a marketing tool and profit center. The "association" arrangement is used solely for
the purpose of generating profits through "association dues" and avoiding state insurance
regulations by the use of "group trust" and "association" insurance certificates which Mega Life
contends can be altered, modified, or canceled by an "agreement" between Mega Life and NASE
Group. Consumers are deceived by this arrangement into believing that NASE is an independent
entity which evaluates various insurance policies in order to obtain the best available "group
insurance" when, in fact, the association, trust and, and insurance companies are jointly owned
and controlled, and the only insurance made available to NASE members are Mega Life
products.

**PARTIES**

06-08-2003  11:34    T-107  P 204/015  F-615

3.    Plaintiff is, or at the time of the transaction complained of, was an adult resident citizen of Lafayette County, Mississippi.

4.    Defendant Mega Life is a foreign insurance company organized and existing under the laws of the state of Oklahoma.  At all times alleged herein, Mega Life was registered to do and was actually doing business in the state of Mississippi.  Mega Life's registered agent for service of process in the state of Mississippi is as follows:

> CT Corp. Systems of Mississippi
> 631 Lakeland East Drive
> Flowood, MS 39232

5.    Process may be served on the Defendant Mega Life by service on its registered agent.

6.    The Defendant NASE Group Insurance Trust is a purported "trust" organized and existing under the laws of a state as yet undetermined.  At all times alleged herein, NASE Group was doing business in the State of Mississippi.  This entity does not presently maintain a registered agent in Mississippi and the complaint will be amended when the information can be ascertained.

7.    Defendant National Association for the Self-Employed a/k/a NASE is a foreign corporation organized and existing under the laws of the state of Texas.  At all times alleged herein, NASE was registered to do and was actually doing business in the state of Mississippi.  NASE's registered agent for service of process in the state of Mississippi is:

> CT Corp. Systems of Mississippi
> 631 Lakeland East Drive
> Flowood, MS 39232

8.    Defendant, David S. Barnard, was the agent who sold the policy to the Plaintiff.  On information and belief, the Defendant was a resident citizen of either Saltillo or Mantachie,

223

Mississippi, at the time the Plaintiff purchased the policy. The policy was purchased from David S. Barnard in Oxford, Lafayette County, Mississippi, and that is where the cause of action occurred.

## JURISDICTION AND VENUE

9.     Defendants include a foreign insurance company and other corporate entities doing business in the State of Mississippi and adult resident citizens of the State of Mississippi. Plaintiff resides in Lafayette County, Mississippi, and some or all of the tortious actions which give rise to this Complaint occurred and/or accrued in Lafayette County, Mississippi. This Court has jurisdiction over this matter and the parties herein and Lafayette County is the proper venue for this cause of action pursuant to Mississippi Code Annotated Sections 11-11-3; 11-11-7 and 11-11-11, and Rule 82 of the Mississippi Rules of Civil Procedure. Each claim herein includes a tort which was committed in whole or in part in the State of Mississippi.

## NO FEDERAL JURISDICTION

10.     Each claim for relief stated in this Complaint is based exclusively on state law and and no federal causes of action are alleged. Plaintiff unequivocally stipulates that no claim is being made or will be made pursuant to any federal law. Plaintiff is making specific factual nonclusory allegations directed at the individual Defendant. The individual Defendant is the person who made initial contact with Plaintiff on behalf of the Defendants, verbally stated the misrepresentations alleged below, and is not the employee of any corporate Defendant. David S. Barnard is an adult resident of the State of Mississippi and is alleged in this Complaint to have had personal knowledge that the representations which he made to Plaintiff were not true and that he intended thereby to deceive the Plaintiff into purchasing the insurance and association

224



memberships sold by Mega Life and NASE and that David S. Barnard personally profited from making the misrepresentations by reason of his receiving a commission on the sale of the insurance and association membership to Plaintiff. If the factual allegations made in the Complaint against David S. Barnard are found by the trier of fact to be true, Plaintiff will be entitled under the laws of Mississippi to recover a judgment personally and individually against David S. Barnard for the causes of action alleged. For this reason, there is no federal diversity jurisdiction existing and removal to Federal Court by the Defendants will be improper.

### RELATIONSHIP OF THE PARTIES

11.     David S. Barnard is a sales agent for Mega Life/NASE. This Defendant personally represented to Plaintiff that NASE was an independent, not for profit association of the self-employed and small business owners formed and operated for the specific purpose of providing various benefits to its members, the principal benefit being "group insurance" at "group rates". This Defendant further intentionally concealed from Plaintiff many material facts including but not limited to: 1) all Defendants are under common ownership and control; 2) NASE is merely a marketing tool and profit center for Mega Life; 3) the association "benefits" consist of nothing more than discounts and "information services" of negligible value which can commonly be obtained free of charge in connection with many purchases and services such as credit card ownership and travel club memberships; 4) the "benefits package" is purchased by NASE from a fulfillment company for approximately $2.00 per month per member but NASE collects $15.00 or more per month from each member for these benefits; and 5) each member signs a "proxy" in connection with the application process and thereby inadvertently relinquishes the right to be informed of association meetings and to vote on matters affecting the association's

225

operations.

12. Mega Life Insurance Company is solely or principally owned by Ron Jensen, who is one of the original developers of the "association/group trust" method of marketing individually underwritten health insurance. This marketing arrangement was developed for three principal reasons: 1) by issuing a master "group policy" to a "trust" and issuing only "certificates" to the individual insureds, the insurance company seeks to insulate the insured/insurer relationship from the "certificate holder" so that the insurance company and the "trust" (which is an entity created by and under the exclusive control of the insurance company) can modify the policy at will without obtaining the consent of the individual insureds; 2) designating insurance as "group insurance" bypasses the more stringent regulations applicable (in most states) to individually underwritten health insurance; and 3) the insurance company insures the association will be "not for profit" because the insurance company has "management agreements". Consumers, such as the Plaintiff, are never informed of the existence of these agreements and never have occasion to discover them because under the terms of the proxy they relinquish their right to obtain information about the association's finances. Members of a *legitimate* association are notified of, and given the opportunity to participate in, regularly scheduled meetings where the membership votes to elect officers and are informed of executive decisions. However, in sham arrangements, such as the one organized by the Defendants, every effort is made to insure the association "members" never have access to accurate information which would reveal the true nature of the arrangement.

13. NASE Group was formed by Mega Life for the sole purpose of being the "named insured" under the NASE "group policy". This "trust" is deceptively named for the purpose of creating the impression that it acts in the capacity of "trustee" for the association members in

226

connection with the "group insurance policy". In fact, the "trust" is nothing more than a token entity formed solely for the purpose of acting as the "insured" under the "group policy" and thereby allowing Mega Life to completely control the insurer/insured relationship.

14.     NASE purports to be an "independent, not for profit" association formed by and for the benefit of the self employed and small business owners. In fact though, NASE originated as a "shelf corporation" formed to be held two years and then transformed into an "association". NASE originated in Texas where state law prohibits the formation of an association solely for the purpose of marketing insurance, prohibits an association from marketing insurance unless it has been in existence for two years and requires that the consumer be informed of any relationships between the association and any insurance company endorsed by the association. Because of these statutes, the corporate Defendants devised the arrangement described above solely for the purpose of circumventing the law.

15.     Plaintiff purchased the Mega Life policy based upon the misrepresentations made by David S. Barnard and by the corporate Defendants in the marketing and policy/membership information provided to Plaintiff which:

    a.     Represented NASE was an independent, non-profit association of similarly interested self employed persons, the purpose of which was to obtain benefits for its members based on the objective criteria of cost/value when, in fact, NASE is solely a marketing tool of Mega Life and does not evaluate, compare or consider any other insurance for its members;

    b.     Failed to disclose the common ownership/control among the corporate Defendants and deceptively represented the Defendants were separate and independent;

    c.     Failed to disclose the cost of the association "benefits" and implied those benefits

227

were unique to NASE when, in fact, they are commonly obtainable and of negligible value;

d.    Failed to disclose the amount and character of the "association dues," administrative fees and other costs of obtaining insurance from Mega Life.

e.    Failed to disclose that the initial premium rates offered to consumers were below the amount actuarially calculated for the purpose of inducing purchases of the Mega Life policy (referred to in the industry as "teaser rates") when all Defendants knew significant premium increases were routinely scheduled and implemented for the purpose of eliminating insureds from the policyholder population over a predetermined time period so that insureds with health problems would remain in a consistently diminishing premium pool and as the premium rates were raised to exorbitant levels, these insureds would be eliminated from the insured population. Mega Life, and virtually all insurers, continually sift the insured population by issuing a "new" or reclassified policy after a predetermined number of policies are insured so that a block of policies can be "closed" and the rates raised to exorbitant levels which forces all the well policy holders into different policies and eliminates insureds with health problems when the premiums reach unaffordable levels.

## STATEMENT OF FACTS AND CAUSES OF ACTION

16.    The facts stated above are incorporated herein.

17.    The corporate Defendants maintain a nationwide sales force of solicitors who contact consumers by phone or mail and arrange appointments for Defendant's sales agents.

228

The agents misrepresent the Mega Life policy as being "group insurance" available only to NASE members and obtained by the association at significant savings because of the association's "group buying power". In fact, association "members" paid more for their insurance than they would have for comparable "non association" individually underwritten health insurance.

18.     The marketing scheme implemented by Mega Life is employed both in the presentation of its sales agents, the companies marketing materials, and on its Internet sites. NASE maintains a web page at www.nase.org which contains links for "affordable health insurance for the self employed" and invites viewers to "click here to request a free quote." When those links are highlighted, a page appears captioned "NASE. Affordable Health Insurance" and states that "the group negotiating power of NASE makes it possible to offer valuable benefits to our members. One of these benefits is access to health insurance coverage. The NASE endorses several financially strong insurance carriers that offer a variety of products and plans customized to meet the special needs of the self employed individual or small business owners."

19.     Users of the web page are never informed that the only insurance company offered to NASE members is Mega Life which is a financially related insurance company and jointly controlled with the association. On this same page, there is a link to "NASE's endorsement standards" and upon clicking that link a page appears which lists several purported "criteria" for endorsement of insurance. Again, the web page viewers are never informed that Mega Life is the only health insurance company offered to NASE "members". From the home page, there is a link to a page captioned "member benefits" and, again, at the top of this page is a banner link to "affordable health insurance for the self employed". Another link captioned "full listing of

229

benefits" contains a statement "Endorsed health coverage. The NASE is continually searching quality benefit programs for you. Your membership in the NASE makes it possible for us to negotiate valuable benefits and competitive rates." It then states that "because of the different products available in each state across the Nation, and the unique needs of each individual, we are not able to post general information about endorsed health coverage."

20.    This statement is made so that the web page does not conspicuously link Mega Life Health Insurance Company in order to create the impression that there is not a connection between Mega Life and NASE. This type of deception is typical of the Defendants' advertisement and creation of the false impression that Mega Life and NASE are not jointly owned and commonly controlled. The Defendants' written marketing materials provided to Plaintiff create the same misimpressions and deceptions. Defendant's brochure and outline of coverage fail to disclose the Defendants' relationships and misrepresent that NASE has no connection to Mega Life. Defendants intended that the Plaintiff act upon the representations in the manner reasonably contemplated which was by purchasing association membership and insurance, and thereby incurring unnecessary and hidden expenses in the form of membership dues, administrative fees, set up fees, and, ultimately, inflated health insurance premiums. Such conduct constitutes intentional misrepresentation.

21.    At the time of the sale of the insurance and association membership to the Plaintiff, each Defendant knew that the initial premium rate charged for the health insurance was a "teaser rate" which was artificially low and set at an amount below that which had been actuarially recommended. These "teaser rates" were utilized to induce consumers into believing that the offered insurance was actually bargain priced as a result of the association's "group buying power". However, at the time of the sale, all Defendants knew that the premiums were

230

06-09-2003  11:25am                                    T-187  P.012/015  F-616

artificially low and would be exorbitantly raised over time. At the time of the sale of the insurance and association membership to the Plaintiff, each Defendant knew that Mega Life intended to engage in a scheduled series of premium increases over a period of thirty-six to forty-eight months designed to price the insurance at such an amount that no ordinary consumer could afford to pay the premiums. This is done specifically for the purpose of putting the book of business into a "death spiral" so that any insureds with health problems would be isolated and eventually eliminated from the insured population.

22. All misrepresentations complained of were made by the Defendants, knowingly and intentionally, specifically for the purpose of inducing Plaintiff to purchase the association membership and the health insurance policy. Such conduct constitutes intentional fraud.

23. Further, the Defendants made false and material misrepresentations to Plaintiffs with the intention that Plaintiffs act upon the representations in the manner reasonably contemplated and Plaintiffs were unaware that the representations were false. Plaintiffs had a right to rely on the representations and the Plaintiff's damages were proximately caused by the false representations and their reliance thereon.

24. The Defendants made material misrepresentations to the Plaintiff with the willful intent of inducing the Plaintiff to purchase and to maintain a policy of health insurance and association membership through Mega Life and NASE. Plaintiff relied upon the Defendants' misrepresentations in making the decision to purchase the insurance and association membership and the conduct of Defendants as herein described constitutes fraud, fraudulent inducement and/or fraudulent misrepresentation. Further, the Defendants materially suppressed, concealed, and failed to disclose true and accurate information regarding the transactions between the Defendants and the Plaintiff as described above and such conduct constitutes

231

suppression/concealment and/or failure to disclose.

## DAMAGES

25.    The conduct of the Defendants are described above was intentional, deceptive, grossly negligent, willful, wanton, and in reckless disregard of Plaintiff's rights, entitling Plaintiff to the recovery of punitive damages.

26.    Further, the Defendants Mega Life and NASE breached their duty of good faith and fair dealing to the Plaintiff which is implied in the contracts between those Defendants and Plaintiff.

27.    As a direct and proximate result of each and all of the acts and omissions of the Defendants complained of herein, Plaintiffs have suffered economic damages for which Defendants are liable, jointly and severally, to the Plaintiff. Among the damages suffered by Plaintiff are excess premiums, association dues and charges, administrative fees and scheduled increased premiums, plus accrued interest on each excess charge or fee imposed upon the transaction by fraud on the Plaintiff.

28.    The Plaintiff incurred various medical bills, the sum of which is approximately $3700.00, which should have been paid through his insurance policy, but was not. The Defendants are liable for these non payments.

29.    All Defendants are jointly and severally liable by reason of their joint enterprise/civil conspiracy by which all Defendants engaged in common plan or scheme to commit a fraud upon Plaintiff as above described. Each corporate Defendant is a separate entity and the individual Defendant is not employed by any of the corporate entities.

232



## PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Plaintiff demands trial by jury and a
judgment of and from the Defendants, jointly and severally, in an amount to be determined by the
jury in this matter for the Plaintiff's actual damages and punitive damages assessed against the
Defendants together with all costs of court, prejudgment interest, and interest at the highest
lawful rate from and after the date of judgment.

Respectfully Submitted,

Joe D. Pegram - MSB #4096
1405 Jackson Ave.
P.O. Box 389
Oxford, MS 38655
(662) 234-6736

233

06-09-2003  11:27am   From-                                    T-107   P 015/015   F-616



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHER DISTRICT OF MISSISSIPPI
WESTERN DIVISION

BILLY RANDALL BISHOP                                          PLAINTIFF

VS.                                                  No. 3:03CV103-JAD

DAVID S. BARNARD,
MEGA LIFE AND HEALTH
INSURANCE COMPANY, NASE
GROUP INSURANCE TRUST AND
NATIONAL ASSOCIATION FOR THE
SELF-EMPLOYED aka NASE                                       DEFENDANTS

CERTIFICATE OF SERVICE

I, Joe D. Pegram, hereby certify that a true and correct copy of the foregoing Amended

Complaint has been mailed, postage prepaid, to the following:

> L. Bradley Dillard, Esq.
> Mitchell, McNutt & Sams, P.A.
> P.O. Box 7120
> Tupelo, MS 38802-7120
>
> Thomas A. Wicker, Esq.
> Michael D. Tapscott, Esq.
> Holland, Ray, Upchurch & Hillen, P.A.
> P.O. Drawer 409
> Tupelo, MS 38802-0409
>
> Sheryl Bey
> Baker Donelson
> P.O. Box 14167
> Jackson, MS 39236

This the ___3___ day of June, 2003.

Joe O. Pegram
Joe D. Pegram

234