1  LAW OFFICES OF JAMES B. KROPFF
   JAMES B. KROPFF (SBN 94056)
2  283 South Lake Ave., Suite 200
   Pasadena, California 91101
3  Telephone: (626) 796-4070
   Facsimile: (626) 796-4073
4
   Attorneys for Plaintiffs
5  MICHAEL JOYCE AND TRUDY JOYCE

**CONFORMED COPY**
OF ORIGINAL FILED
Los Angeles Superior Court

**MAY 1 4 2004**

John A. Clarke, Executive Officer/Clerk
By _____, Deputy
        SUE GABB

6

7

8        SUPERIOR COURT OF THE STATE OF CALIFORNIA FOR

9              THE COUNTY OF LOS ANGELES

10                                    BC 315580

11                          Case No.

12  MICHAEL JOYCE and TRUDY JOYCE,         **COMPLAINT FOR DAMAGES AND**
    individually, on behalf of the general public,        **OTHER RELIEF**
13  and on behalf of others similarly situated,

14                                        1.   Breach of Implied Covenant of Good
              Plaintiffs,                           Faith and Fair Dealing
15                                        2.   Fraud
        vs.                               3.   Violation of California Business and
16                                              Professions Code Section 17200 *et*
    UICI, THE MEGA LIFE AND HEALTH              *seq.*[Class Action]
17  INSURANCE COMPANY, NATIONAL         4.   Professional Negligence
    ASSOCIATION FOR THE SELF          5.   Negligent Misrepresentation
18  EMPLOYED, PAUL YATES and DOES 1
    through 50, inclusive,
19                                             **JURY TRIAL DEMAND**
              Defendants.
20

21

22

23        Plaintiff, Michael Joyce and Trudy Joyce complain against defendants UICI, The Mega

24  Life and Health Insurance Company, National Association for the Self Employed, Paul Yates,

25  and Does 1 through 50, and each of them, as follows:

26

27  1.    The true names and/or capacities, whether individual, corporate, associate or

28

---

**COMPLAINT FOR DAMAGES AND OTHER RELIEF**

otherwise, of defendants Does 1 through 50, inclusive, are unknown to plaintiff, who therefore sues said defendants by such fictitious names. Plaintiffs are informed and believes, and upon such information and belief alleges that each of the defendants fictitiously named herein as a Doe is legally responsible, by negligence, strict liability, or in some other actionable manner, for the events and happenings hereinafter referred to, and thereby legally caused the injuries and damages to plaintiff as hereinafter alleged. Plaintiff will ask leave of Court to amend the Complaint, if necessary, to insert the true names and/or capacities of such fictitiously named defendants when the same have been ascertained.

2.      Plaintiffs are informed and believes, and thereupon alleges, that at all times mentioned herein, defendants, and each of them, including Does 1 through 50, and each of them, were the agents, servants, employees, joint venturers, and/or alter egos of their co-defendants, and were, as such, acting within the course, scope and authority of said agency, employment, venture, and alter ego relationship, and that each and every defendant, as aforesaid, when acting as a principal, was negligent in the selection, hiring, acquiring, and/or creating of each and every other defendant as an agent, employee, joint venturer, and/or alter ego.

3.      At all times mentioned herein, plaintiff, Michael Joyce, was and now is a resident of the County of Orange, State of California.

4.      Plaintiff Trudy Joyce, is, and at all relevant times was, the spouse of plaintiff Michael Joyce and was and now is a resident of the County of Orange, State of California.

5.      At all times mentioned herein, defendant, The Mega Life and Health Insurance

Company ("MEGA LIFE"), was and is a corporation organized under and existing by virtue of the laws of the State of Oklahoma, authorized and qualified to do business in the State of California and has not filed a statement designating the county in which it maintains its principal local office pursuant to Corporations Code section 2105(a)(3). MEGA LIFE is and was regularly conducting business in the County of Los Angeles, State of California.

6.    At all times mentioned herein, defendant UICI, was and is incorporated in Delaware, with its principle executive office in Texas, authorized and qualified to do business in the State of California and has not filed a statement designating the county in which it maintains its principal local office pursuant to Corporations Code section 2105(a)(3). UICI is and was regularly conducting business in the County of Los Angeles, State of California.

7.    At all times mentioned herein, defendant MEGA LIFE was and is the wholly owned insurance company subsidiary of UICI.

8.    Plaintiffs are informed and believes, and upon such information and belief alleges at all times mentioned herein, defendant, National Association for the Self Employed ("NASE"), was and is a corporation organized under and existing by virtue of the laws of the state of Texas, authorized to do business and was regularly conducting business in the County of Los Angeles, State of California.

9.    At all times mentioned herein, defendant, Paul Yates ("Yates"), was and is an employee or agent of MEGA LIFE and UICI and was and is a resident of the State of California.

**COMPLAINT FOR DAMAGES AND OTHER RELIEF**

10.    Plaintiffs are informed and believes, and upon such information and belief alleges that UICI was set up by Ronald Jensen in 1984.  One year later Mr. Jensen took over control of the National Association for the Self-Employed ("NASE").

## FACTS COMMON TO ALL CLAIMS

11.    Plaintiffs are informed and believes, and upon such information and belief alleges that defendants UICI, NASE and MEGA LIFE were and are at all times herein mentioned under common control and ownership and operate as a unified business arrangement.

12.    Plaintiffs are informed and believes, and upon such information and belief alleges as follows: A marketing scheme was and is designed to create the impression that UICI, MEGA LIFE and NASE operate independently, and that NASE is and was a non-profit association existing for the benefit of its members and providing various benefits to its members, including affordable, comprehensive health insurance coverage. In reality, UICI, NASE and MEGA LIFE are jointly owned and/or controlled, NASE does not exist for the benefit of its members, and the only insurance made available to NASE members are policies issued and underwritten by MEGA LIFE and UICI, the real beneficiaries of NASE.  NASE is contractually bound to "endorse" UICI's insurance policies to NASE's members and can only cease such endorsements upon, at a minimum, one full year notice.  Members of NASE receive little , if anything, of value for their fees for joining NASE. On the other hand, the fees for joining NASE go directly from NASE to MEGA LIFE and UICI. UICI receives numerous fees directly from NASE. NASE pays UICI fees for the enrollment of new NASE members. NASE pays UICI fees for the marketing of NASE. NASE pays UICI fees for administrative services provided by UICI to NASE. NASE pays UICI fees for UICI providing to NASE its "membership benefits". UICI,

**COMPLAINT FOR DAMAGES AND OTHER RELIEF**

through a subsidiary, sells new membership sales leads to the NASE "enrollers" (who are really UICI agents). UICI, through a subsidiary, sells and receives compensation for video and print services to NASE. UICI's two sales agencies, UGA Association Field Services and Cornerstone America, act as "enrollers" of new members for NASE for which the UICI agents receive compensation. A company (called Specialized Association Services, Inc. ["SASI"] ) controlled by the adult children of the Chairman of the Board of UICI provides and is paid by NASE for additional administrative and benefit procurement services to NASE beyond those provided by UICI.

13.    Recognition of the privilege of separate existence of UICI, NASE and MEGA LIFE would promote injustice because defendants UICI and MEGA LIFE in bad faith dominated and controlled defendant NASE as a mere shell, instrumentality, and conduit for the purpose of committing a continuing fraud against consumers through their use of Defendant NASE to enroll consumers in their health insurance plans.

14.    From before 2002 to the present, UICI, MEGA LIFE and NASE advertised by radio, television, internet and print that NASE was an independent nonprofit organization the represented the interests of self-employed people and sought out the best and most affordable group health insurance policies at an affordable and negotiated group rate. Plaintiffs responded to an advertisement by calling the telephone number given in an advertisement.

15.    Plaintiffs were contacted by Paul Yates ("Yates") who introduced himself as a licensed MEGA LIFE agent and said he was referred by NASE. On or about March 7, 2002, defendant Paul Yates came to Plaintiff's residence and told Plaintiff that he represented MEGA LIFE.

COMPLAINT FOR DAMAGES AND OTHER RELIEF

16.    On March 7, 2002, Plaintiff met with Yates.  During this meeting, Yates stated that he was MEGA LIFE's agent and that NASE endorsed the health insurance he was selling. Yates proceeded to discuss the health insurance policy which he was offering.  Specifically, during the March 7, 2002 meeting, Yates made the following statements, representations, and omissions to plaintiff regarding the health insurance policy with MEGA LIFE and NASE (hereinafter, "the Policy"):

a.    Yates stated that the Policy was a good policy for major medical and comprehensive health insurance coverage in response to Plaintiff's statement that their health insurance needs were to obtain a major medical insurance policy;

b.    Yates stated that the MEGA LIFE policy was a good health insurance policy, competitive with other major medical insurance policies such as those offered by Blue Cross and Kaiser.;

c.    Yates stated that in order to purchase the MEGA LIFE policy, Plaintiffs were required to pay to become a members of NASE;

d.    Yates stated that charges for services provided by doctors listed in a book of approved or participating physicians that he brought to the meeting would be covered by the policy;

e.    Yates stated the  MEGA LIFE policy was a group medical insurance policy and came with the benefits of group medical insurance;

f.    Yates stated that NASE was an independent nonprofit organization the represented the interests of self-employed people and sought out the best and most affordable group health insurance policies at an affordable and negotiated group rate;

g.    Yates stated once plaintiffs decide to purchase a policy, their monthly payments will not be raised unless they are raised everyone in the group.

COMPLAINT FOR DAMAGES AND OTHER RELIEF

h.      Yates also stated that the Policy would cover 80% of all hospitalizations.  Moreover, Yates produced a presentation binder that demonstrated how MEGA LIFE and NASE paid for 80% of a person's significant hospitalization expenses;

i.      Yates failed to inform plaintiff that the Policy he was selling had "Maximum Benefit" limitations for each "Period of Confinement"

k.      Yates failed to inform plaintiff that, under the Policy he was selling, "Physician Visits while Hospital Confined" would be "limited to one visit per day;"

l.      Finally, Yates failed to inform plaintiff that the policy was a ". . . limited benefit insurance plan," it did ". . . not contain medical expense benefits. . .," and that it was not "health insurance or major medical insurance."

17.     Based on the aforementioned statements, representations, and omissions made by Yates on behalf of UICI, MEGA LIFE and NASE, plaintiffs  agreed to purchase the Policy on behalf of Plaintiffs and their son and to join NASE.  Throughout the entire presentation for the sale and purchase of the Policy, plaintiff  were never provided with a copy, or sample copy, of the proposed Policy.

18.     After agreeing to purchase, and actually paying for the Policy, plaintiff received the Policy which stated "GROUP POLICY NO. 00384 ISSUED TO GROUP POLICY HOLDER: NASE Group Insurance Trust."

19.     In December of  2002, Plaintiff Michael Joyce became ill and required several surgeries. Following MEGA LIFE's  and UICI's refusal to pay benefits under the policy, it became clear that the MEGA LIFE  policy was not major health insurance as represented.

**COMPLAINT FOR DAMAGES AND OTHER RELIEF**

20.    Plaintiffs were forced to make advanced payments to some health care providers in order to receive treatment for illnesses and surgeries. MEGA LIFE refused to make payments to the health care providers and, in many instances, the medical bills will were sent to collection agencies by providers.

21.    From March 2002 to the present, the amount of the premium payments for the Policy for the Plaintiffs were substantially raised.

## FIRST CAUSE OF ACTION

(Breach of Implied Covenant of Good Faith and Fair Dealing against

defendants UICI, MEGA LIFE, NASE and DOES 1 through 50, inclusive)

22.    Plaintiffs reallege and incorporates herein by reference each and every allegation and statement contained in Paragraphs 1 through 21 of this Complaint as though fully set forth herein.

23.    At all timed mentioned herein, defendants UICI, MEGA LIFE, NASE and DOES 1 through 50, inclusive, agreed to act in good faith and deal fairly with plaintiff. Such an agreement is consistent with the covenant of good faith and fair dealing implied in all insurance policies, including the Policy issued by defendants UICI, MEGA LIFE, NASE and DOES 1 through 50, inclusive, where Plaintiff Michael Joyce, as a policyholder, was entitled to receive

— 8 —

**COMPLAINT FOR DAMAGES AND OTHER RELIEF**

all of the benefits of the bargain struck by purchase of the Policy, including, but not limited to the peace of mind conferred by the protection of the Policy.

24.     Included within the benefit of the bargain to which plaintiffs were entitled was the peace of mind that defendants UICI, MEGA LIFE, NASE and DOES 1 through 50, inclusive, would deal fairly with plaintiff and apply the terms of the Policy consistently with the way the Policy was sold and written.

25.     Another benefit of the bargain to which plaintiffs were entitled was the peace of mind that defendants UICI, MEGA LIFE, NASE and DOES 1 through 50, inclusive, would resolve all doubts of coverage in favor of Plaintiffs and would not misapply and/or misrepresent the terms of the Policy and/or the law in an effort to support a decision to deny or reject Plaintiffs' claims under his Policy.

26.     Another benefit of the bargain to which plaintiffs were entitled was the peace of mind that defendants UICI, MEGA LIFE, NASE and DOES 1 through 50, inclusive, would give at least as much consideration to plaintiff's interests as defendants UICI, MEGA LIFE, NASE and DOES 1 through 50, inclusive, gave consideration to their own interests.

27.     Defendants UICI, MEGA LIFE, NASE and DOES 1 through 50, inclusive, have failed and refused, and continue to fail and refuse to act in good faith and deal fairly with Plaintiff Michael Joyce and plaintiffs by, among other things:

    a.     Delaying full payment of Plaintiff's insurance claims;

COMPLAINT FOR DAMAGES AND OTHER RELIEF

b.    Basing their coverage decision and denials on their desire to reduce or avoid their obligations to plaintiffs ;

c.    Failing and continuously refusing to make payments as required by the clear terms of the Policy;

d.    Refusing to treat plaintiffs fairly;

e.    Forcing plaintiffs to commence this litigation on Plaintiff's behalf and incur attorneys' fees to obtain the benefits to which Plaintiffs were and/or are entitled under the Policy;

f.    Failing to acknowledge and act reasonably and promptly upon communications with respect to Plaintiff's claims;

g.    Refusing to give plaintiff's interests as much consideration as their own interests;

h.    Making coverage determinations and denying Plaintiff's claims based on an unreasonable interpretation of the Policy and thereafter refusing to correct such determinations;

i.    Misrepresenting pertinent facts and the terms, conditions and provisions of the Policy in an attempt to persuade Plaintiffs to accept the denial of coverage which is contrary to the contractual obligations of defendants UICI, MEGA LIFE, NASE and DOES 1 through 50, inclusive;

j.    Not attempting in good faith to effectuate prompt, fair, and equitable settlements of Plaintiffs' claims in which liability has become reasonably clear;

k.    Implementing and maintaining a fraudulent marketing program and on ein violation of Title 10 of the California Code of Regulations, Sections 2695.1 et seq.; and

l.    Plaintiffs are informed and believes, and thereon alleges, that defendants UICI, MEGA LIFE, NASE and DOES 1 through 50, inclusive, breached their duty of good faith and fair dealing owed to Plaintiff Michael Joyce by other acts or omissions of which Plaintiffs are

COMPLAINT FOR DAMAGES AND OTHER RELIEF

presently unaware.  Plaintiff reserves the right to allege other acts or omissions of bad faith as they are discovered.

28.    Defendants UICI, MEGA LIFE, NASE and DOES 1 through 50, inclusive, have engaged and continue to engage in the conduct described herein, and wrongful, unfair, improper, unreasonable, fraudulent and unlawful conduct to be shown according to proof at trial, solely to further their economic interests and in violation of their contractual, implied, and quasi-fiduciary obligations owed to plaintiff.

29.    As a direct and legal result of the above-described wrongful conduct of defendants UICI,  MEGA LIFE, NASE and DOES 1 through 50, inclusive, plaintiff has incurred attorney's fees and costs in seeking all benefits owed to Plaintiffs under the Policy.  The total amount of these damages exceeds the jurisdictional minimum of this Court and will be established in accordance with proof at the time of trial.

30.    As a direct and legal result of the above-described defendants UICI, MEGA LIFE, NASE's and DOES 1 through 50, inclusive, breach of their contractual obligations, plaintiffs have sustained general damages for emotional distress and discomfort, including but not limited to, shock, grief, shame, humiliation, embarrassment, disappointment, worry, anxiety, great mental suffering, and emotional distress, all in an amount greater than the minimal jurisdictional amount of the Superior Court and to be determined according to proof.

31.    As a direct and legal result of the above-described conduct of defendants UICI,

**COMPLAINT FOR DAMAGES AND OTHER RELIEF**

MEGALIFE, NASE and DOES 1 through 50, inclusive, plaintiffs have sustained damages in an amount to be proved at the time of trial. These damages include, but are not limited to, general, special, economic, consequential and incidental losses, fees, judgments and settlements, and interest thereon, in an amount which exceeds the jurisdictional minimum of this Court.

32.     The conduct of defendants UICI, MEGA LIFE, NASE and DOES 1 through 50, inclusive, as hereinbefore and hereinafter alleged, was committed with fraud, malice, and oppression as defined in California Civil Code § 3294, in that said conduct was intended to annoy, harass, and injure plaintiffs , and said conduct was despicable, and was carried out with a willful and conscious disregard for the rights of plaintiffs , thereby subjecting plaintiffs to cruel and unjust hardship. Plaintiffs are informed and believes, and thereon alleges that the acts of fraud, malice, and oppression on the part of defendants UICI, MEGA LIFE, NASE and DOES 1 through 50, inclusive, were on the part of their officers, directors, alter egos, or managers and agents and/or were ratified by defendants UICI, MEGA LIFE, NASE and DOES 1 through 50, inclusive. In addition, while defendants UICI, MEGA LIFE, NASE and DOES 1 through 50, inclusive, conduct toward plaintiff is egregious, Plaintiffs are informed and believes, and thereon alleges, that such conduct is in keeping with defendants' actions in dealing with claims by other policyholders of defendants UICI, MEGA LIFE, NASE and DOES 1 through 50, inclusive, who are in similar situations. Therefore, plaintiffs are entitled to recovery of exemplary damages from defendants UICI, MEGA LIFE, NASE and DOES 1 through 50, inclusive, pursuant to California Civil Code § 3294, in an amount to be shown according to proof at the time of trial which is sufficient to punish and deter defendants UICI, MEGA LIFE, NASE and DOES 1 through 50, inclusive, from engaging in continued acts as exhibited toward plaintiffs and others similarly situated.

COMPLAINT FOR DAMAGES AND OTHER RELIEF

## SECOND CAUSE OF ACTION

(Fraud against defendants UICI, MEGA LIFE, NASE, YATES

and DOES 1 through 50, inclusive)

33.     Plaintiffs reallege and incorporates herein by reference each and every allegation

and statement contained in Paragraphs 1 through 32 of this Complaint as though fully set forth

herein.

34.     On or about March 7, 2002, defendants and each of them, through their agent Paul Yates

stated and represented to Plaintiffs:

        a.      Yates stated that the Policy was a good policy for major medical and

comprehensive health insurance coverage in response to Plaintiff's statement that their health

insurance needs were to obtain a major medical insurance policy;

        b.      Yates stated that the MEGA LIFE policy was a good health insurance policy,

competitive with other major medical insurance policies such as those offered by Blue Cross and

Kaiser.;

        c.      Yates stated that in order to purchase the MEGA LIFE policy, Plaintiffs were

required to pay to become a member of NASE;

        d.      Yates stated that charges for services provided by doctors listed in a book of

approved or participating physicians that he brought to the meeting would be covered by the

policy;

        e.      Yates stated the MEGA LIFE policy was a group medical insurance policy and

came with the benefits of group medical insurance;

— 13 —

**COMPLAINT FOR DAMAGES AND OTHER RELIEF**

f.      Yates stated that NASE was an independent nonprofit organization that represented the interests of self-employed people and sought out the best and most affordable group health insurance policies at an affordable and negotiated group rate;

g.      Yates stated once plaintiffs decide to purchase a policy, their monthly payments will not be raised unless they are raised everyone in the group.

h.      Yates also stated that the Policy would cover 80% of all hospitalizations." Moreover, Yates produced a presentation binder that demonstrated how MEGA LIFE and NASE paid for 80% of a person's significant hospitalization expenses;

i.      Yates failed to inform plaintiff that the Policy he was selling had "Maximum Benefit" limitations for each "Period of Confinement"

k.      Yates failed to inform plaintiff that, under the Policy he was selling, "Physician Visits while Hospital Confined" would be "limited to one visit per day;"

l.      Finally, Yates failed to inform plaintiff that the policy was a "… limited benefit insurance plan," it did  "… not contain medical expense benefits. . ." and that it was not "health insurance or major medical insurance."

35.    The above representations made by defendants, and each of them, regarding the adequacy and/or sufficiency of the Policy's coverage were in fact false.  The true facts were:

a.      The Policy was not a good policy for major medical and comprehensive health insurance coverage and was not a major medical insurance policy;

b.      The MEGA LIFE policy was not a good health insurance policy, was not a major medical policy and was not competitive with  major medical insurance policies such as those offered by Blue Cross and Kaiser.;

— 14 —

**COMPLAINT FOR DAMAGES AND OTHER RELIEF**

c.       In order to purchase the MEGA LIFE policy, Plaintiffs were not or should not have been required to pay to become a member of NASE;

d.       The charges for services provided by doctors listed in the book of approved or participating physicians that Yates brought to the meeting would not be covered by the policy;

e.       The  MEGA LIFE policy was not a group medical insurance policy and  did not come with the benefits of group medical insurance;

f.       NASE was not an independent nonprofit organization that represented the interests of self-employed people and did not seek out the best and most affordable group health insurance policies at an affordable or a negotiated group rate;

g.       After a policyholder  purchases a policy, the premium payments are  raised for the same policy;

h.       The Policy does not cover "80% of all hospitalizations."  Moreover, MEGA LIFE and NASE do not pay for 80% of a person's significant hospitalization expenses;

i.       In fact, the Policy Yates was selling had "Maximum Benefit" limitations for each "Period of Confinement"

k.       In fact, under the Policy Yates was selling,  "Physician Visits while Hospital Confined" would be "limited to one visit per day;"

l.       The policy was a ". . . limited benefit insurance plan," it did ". . . not contain medical expense benefits. . .," and that it was not "health insurance or major medical insurance."

36.    Defendants failed to advise Plaintiff that Defendants created NASE as a marketing arm or tool in order to market and sell their own insurance policies.

---

— 15 —

**COMPLAINT FOR DAMAGES AND OTHER RELIEF**

37.    Defendants failed to advise Plaintiff that NASE was formed for the purpose of obtaining and marketing health insurance in violation of California law including Insurance Code section 10270.97 and 10 Calif. Code of Regulations sec. 2695.1 et seq.

38.    Defendants' representations were false, knowingly false and made with the intent to defraud and deceive Plaintiffs and to induce them into joining and paying the NASE and purchasing the policy. Defendants' failure to disclose material facts alleged above were designed and intended to defraud and deceive Plaintiffs and to induce them into joining and paying the NASE and purchasing the policy.

39.    At the time defendants and each of them made their willful and intentional misrepresentations and concealments of the above material facts, defendants, and each of them, knew that their representations were false, knew that had plaintiffs known the truth, plaintiffs would never have purchased the Policy.

40.    Defendants, and each of them, made the above-described misrepresentations and concealments with the intention to deceive and defraud plaintiffs and to induce plaintiffs to purchase the Policy and/or with the expectation that plaintiffs would purchase the Policy.

41.    At all times when defendants, and each of them, made the above-described misrepresentations and concealments, plaintiffs were ignorant of the true facts. In actual, justifiable, and reasonable reliance on the above-described misrepresentations and concealments of defendants and each of them, plaintiffs were induced to and did purchase the Policy.

COMPLAINT FOR DAMAGES AND OTHER RELIEF

42.   At all times when defendants, and each of them, willfully misrepresented and concealed the above-described material facts, they knew their misrepresentations and concealments involved material information, that they had a duty to disclose, that the misrepresentations and concealments were made with the intention of deceiving and defrauding plaintiffs and to induce plaintiffs to act in the manner previously alleged and/or with the expectations that plaintiffs would so act.

43.   As a direct and legal result of the fraudulent conduct of defendants, and each of them, plaintiffs sustained damages as heretofore described at Paragraphs 30, 31 and 32, and plaintiffs asserts such damages within this cause of action.

44.   The aforementioned conduct of defendants, and each of them, was an intentional fraud, misrepresentation, deceit and/or concealment of material fact known to the defendants, and each of them, thereby depriving Plaintiffs of property or legal rights or otherwise causing injury, and was despicable conduct that subjected Plaintiffs to a cruel and unjust hardship in conscious disregard for Plaintiff's rights, so as to justify an award of exemplary and punitive damages under California Civil Code § 3294.

THIRD CAUSE OF ACTION

(By Plaintiffs, On Behalf Of The California General Public, On Behalf Of Persons In California Similarly Situated To The Plaintiffs [Class Action] And Individually For Violation Of California Business And Professions Code Sections 17200 Et Seq. Against Defendants UICI, MEGA LIFE, NASE, And DOES 1 Through 50, Inclusive)

— 17 —

**COMPLAINT FOR DAMAGES AND OTHER RELIEF**

45.    Plaintiffs reallege and incorporate herein by reference each and every allegation and statement contained in Paragraphs 1 through 44 of this Complaint as though fully set forth herein.

46.    As used in this Complaint and in section 17200, "unfair competition" means (1) an unlawful, unfair or fraudulent business act or practice; (2) unfair, deceptive, untrue or misleading advertising; and/or (3) an act prohibited by Chapter 1 (commencing with section 17500) of Part 3 of Division 7 of the Business and Professions Code.  This conduct is actionable pursuant to Business and Professions Code sections 17200, 17203. Plaintiffs are informed and believes, and thereon alleges that defendants UICI, MEGA LIFE, NASE and DOES 1 through 50, inclusive, have a business practice of engaging in a marketing scheme that was and is designed to create the impression that UICI, MEGA LIFE and NASE operate independently, and that NASE is and was a non-profit association existing for the benefit of its members and providing various benefits to its members, including affordable, comprehensive health insurance coverage. In reality, UICI, NASE and MEGA LIFE are jointly owned and/or controlled, NASE does not exist for the benefit of its members, and the only insurance made available to NASE members are policies issued and underwritten by MEGA LIFE and UICI, the real beneficiaries of NASE.

47.    Defendants UICI, MEGA LIFE, NASE's and DOES 1 through 50, inclusive, motivation in engaging in the above-described business practices was to give consumers the impression that NASE was an independent nonprofit organization that represented the interests of self-employed people and sought out the best and most affordable group health insurance policies at an affordable and negotiated group rate, that MEGA LIFE and UICI were the NASE endorsed companies for those reasons and that membership in NASE was necessary in order to

— 18 —

**COMPLAINT FOR DAMAGES AND OTHER RELIEF**

purchase the insurance offered by MEGA LIFE. In fact, the Policy was not a good policy for major medical and comprehensive health insurance coverage and was not a major medical insurance policy; in order to purchase the MEGA LIFE policy, Plaintiffs were not or should not have been required to pay to become a member of NASE; the MEGA LIFE policy was not a group medical insurance policy and did not come with the benefits of group medical insurance; NASE was not an independent nonprofit organization that represented the interests of self-employed people and did not seek out the best and most affordable group health insurance policies at an affordable or a negotiated group rate; the policy was a ". . . limited benefit insurance plan" that was not "health insurance or major medical insurance" and after a policyholder purchases a policy, the premium payments are individually raised for the same "group" policy;

48.     Plaintiffs are members of an ascertainable class of MEGA LIFE policyholders and NASE members in California that are similarly situated. Plaintiffs bring this action, on behalf of themselves and all others similarly situated in California, as a class action pursuant to Code of Civil Procedure section 382 and Civil Code section 1781. The class which Plaintiffs are members of, and seek to represent, is well defined and consists of:

> All MEGA LIFE policyholders in California who paid to join the
> NASE in order to purchase MEGA LIFE health insurance
> coverage ("Plaintiff Class"). The Plaintiff Class is limited to the
> UICI and MEGA LIFE policyholders that joined NASE and were
> "enrolled" from May 2000 to the present (the "Class Period").

— 19 —

**COMPLAINT FOR DAMAGES AND OTHER RELIEF**

This action has been brought and may properly be maintained as a class action pursuant to the provisions of Civil Code section 1781 because there is a well-defined community of interest in the litigation and the proposed class is easily ascertainable. Additionally, Plaintiffs allege upon information and belief that the following class action factors exist in this case:

a.    Numerosity:    The Plaintiff Class is so numerous that the individual joinder of all members is impracticable under the circumstances of this case. The exact number of class members is unknown to Plaintiffs at this time. Joinder of all members of the Plaintiff Class is not practicable.

b.    Common Questions Predominate:    Common questions of law and fact exist as to all members of the Plaintiff Class and predominate over any questions which affect only individual members of the class. These common questions of law and fact include, but are not limited to, the following:

(i)    Whether UICI, MEGA LIFE, and NASE have a business practice of engaging in a marketing scheme that was and is designed to create the impression that UICI,

1        (iv)    Whether members of NASE receive little , if anything, of value for

2   their fees for joining NASE and whether the fees for joining NASE go directly to MEGA LIFE

3   and UICI.

4        (v)    Whether NASE has a business practice of engaging in a marketing

5   scheme that was and is designed to create the impression that NASE represented the interests of

6   self-employed people.

7        (vi)    Whether NASE sought out the best and most affordable group

8   
9   health insurance policies at an affordable and negotiated group rate for its members and whether

10  MEGA LIFE and UICI were the NASE endorsed companies for those reasons.

11       (vii)    Whether membership in NASE was or should have been necessary

12  in order to purchase the insurance offered by MEGA LIFE.

13      c.    <u>Typicality:</u>    Plaintiffs' claims are typical of the claims of the members of

14  the Plaintiff Class. Plaintiffs and all members of the Plaintiff Class sustained injuries and

15  damages arising out of Defendants' common course of conduct in violation of law as complained

16  of herein. The injuries and damages of each member of the Plaintiff Class were caused directly

17  by the Defendants' wrongful conduct as alleged herein.

18  
19      d.    <u>Adequacy:</u>    Plaintiffs will fairly and adequately protect the interest of the

20  members of the Plaintiff Class. Plaintiffs reside in the State of California, and are adequate

21  representatives of the Plaintiff Class as they have no interests which are adverse to the interests

22  of absent class members. Plaintiffs have retained counsel, who are both qualified and

23  experienced in the prosecution of class action litigation.

24  
25      c.    <u>Superiority:</u>    A class action is superior to other available means for the

26  fair and efficient adjudication of this controversy because individual joinder of all members of

27  the class is impracticable. Class action treatment will permit a large number of similarly situated

28  

— 21 —

COMPLAINT FOR DAMAGES AND OTHER RELIEF

persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would engender. Furthermore, as the damages suffered by each individual member of the class may be relatively small, the expenses and burden of individual litigation would make it difficult or impossible for individual members of the class to redress the wrongs done to them while an important public interest will be served by addressing the matter as a class action. The cost to the Court system of adjudication of such individualized litigation would be substantial. Individualized litigation would also present the potential for inconsistent or contradictory judgments.

49.    Plaintiffs are informed and believes, and thereon alleges that the unlawful practices alleged above are continuing in nature and are wide-spread practices engaged in by defendants UICI, MEGA LIFE, NASE and DOES 1 through 50, and each of them.

50.    On behalf of the California general public pursuant to Business and Professions Code section 17204. and individually, Plaintiffs request that an injunction against defendants UICI, MEGA LIFE, NASE and DOES 1 through 50, inclusive, be issued precluding said defendants from continuing to engage in these unlawful, unfair, and fraudulent practices as against all California policyholders of defendants UICI, MEGA LIFE, NASE and DOES 1 through 50, inclusive, as well as California members NASE and members of the public in California, and requiring defendants UICI, MEGA LIFE, NASE and DOES 1 through 50, inclusive, to undertake immediate affirmative action to correct the unfair practices engaged in as to all policyholders and NASE members in California.

51.     On behalf of the Plaintiff Class, California general public and individually, plaintiffs respectfully request that this Court order defendants UICI, MEGA LIFE, NASE and DOES 1 through 50, inclusive, to refund all payments made by California MEGA LIFE policyholders to join NASE.

52.     On behalf of the Plaintiff Class, California general public and plaintiffs individually, plaintiffs respectfully request that this Court order that defendants UICI, MEGA LIFE, NASE and DOES 1 through 50, inclusive, be required to make restitution to plaintiffs and persons similarly situated to plaintiffs, for funds and monies they have wrongfully obtained through the use of these improper, unfair, and illegal practices.

53.     Plaintiffs respectfully request an award of attorneys' fees upon prevailing in this request for injunctive relief, and such other relief as may be justified under the circumstances. (See Cal. Civil Code § 1021.5.)

FOURTH CAUSE OF ACTION

(Professional Negligence against defendants

UICI, MEGA LIFE, NASE, YATES and DOES 1 through 50, inclusive)

54.     Plaintiffs reallege and incorporates herein by reference each and every allegation and statement contained in Paragraphs 1 through 53 of this Complaint as though fully set forth herein.

**COMPLAINT FOR DAMAGES AND OTHER RELIEF**

55.    Defendant Yates misrepresented that the policy actually included certain qualities, traits and benefits which the Plaintiffs sought to obtain. Defendant was aware that the plaintiffs would rely in good faith upon his expertise, competence and honesty in obtaining health insurance. Yates had a duty to plaintiffs to procure adequate health insurance coverage for plaintiffs as represented and to explain and state the actual benefits provided by the policy.

56.    Defendant Yates was negligent in misrepresenting and failing to disclose facts to the Plaintiffs when in fact:

   a.    The Policy was not a good policy for major medical and comprehensive health insurance coverage and was not a major medical insurance policy;

   b.    The MEGA LIFE policy was not a good health insurance policy, was not a major medical policy and was not competitive with major medical insurance policies such as those offered by Blue Cross and Kaiser.;

   c.    In order to purchase the MEGA LIFE policy, Plaintiffs were not or should not have been required to pay to become a member of NASE;

   d.    The charges for services provided by doctors listed in the book of approved or participating physicians that Yates brought to the meeting would not be covered by the policy;

   e.    The MEGA LIFE policy was not a group medical insurance policy and not come with the benefits of group medical insurance;

   f.    NASE was not an independent nonprofit organization that represented the interests of self-employed people and did not seek out the best and most affordable group health insurance policies at an affordable or a negotiated group rate;

COMPLAINT FOR DAMAGES AND OTHER RELIEF

g.    After a policyholder purchases a policy, the premium payments are routinely raised for the same policy;

h.    The Policy does not cover "80% of all hospitalizations." Moreover, MEGA LIFE and NASE do not pay for 80% of a person's significant hospitalization expenses;

i.    The Policy Yates was selling had "Maximum Benefit" limitations for each "Period of Confinement"

k.    Under the Policy Yates was selling, "Physician Visits while Hospital Confined" would be "limited to one visit per day;"

l.    The policy was a ". . . limited benefit insurance plan," it did ". . . not contain medical expense benefits. . .," and that it was not "health insurance or major medical insurance."

57.    As a direct and legal result of the conduct of defendants, and each of them, plaintiff had suffered continuous and progressive severe mental and emotional distress and discomfort, including but not limited to, shock, grief, shame, humiliation, embarrassment, anger, worry, disappointment, worry, and extreme and substantial anxiety, all in an amount greater than the minimal jurisdictional amount of the Superior Court and to be determined according to proof.

58.    The conduct of defendants, and each of them, as hereinbefore alleged, was committed with fraud, malice, and oppression as defined in California Civil Code § 3294, in that said conduct was intended to annoy, harass, and injure plaintiff, and said conduct was despicable, and was carried out with a willful and conscious disregard for the rights of plaintiff, thereby subjecting plaintiff to cruel and unjust hardship. Plaintiffs are informed and believes, and thereon alleges that the acts of fraud, malice, and oppression on the part of defendants, and each

COMPLAINT FOR DAMAGES AND OTHER RELIEF

of them, were on the part of their officers, directors, alter egos, or managers and agents and/or were ratified by defendants, and each of them. Therefore, plaintiff is entitled to recovery of exemplary damages from defendants, and each of them, pursuant to California Civil Code § 3294, in an amount to be shown according to proof at the time of trial which is sufficient to punish and deter defendants, and each of them, from engaging in continued acts as exhibited toward plaintiffs

## FIFTH CAUSE OF ACTION

(Negligent Misrepresentation against defendants UICI, MEGA LIFE, NASE, YATES and DOES 1 through 50, inclusive)

59.    Plaintiffs reallege and incorporates herein by reference each and every allegation and statement contained in Paragraphs 1 through 58 of this Complaint as though fully set forth herein.

60.    At the time defendants and each of them, sold the Policy to Plaintiffs, said defendants and each of them, were bound to disclose and/or inform plaintiff that

a.    The Policy was not a good policy for major medical and comprehensive health insurance coverage and was not a major medical insurance policy;

b.    The MEGA LIFE policy was not a good health insurance policy, was not a major medical policy and was not competitive with major medical insurance policies such as those offered by Blue Cross and Kaiser.;

c.    In order to purchase the MEGA LIFE policy, Plaintiffs were not or should not have been required to pay to become a member of NASE;

COMPLAINT FOR DAMAGES AND OTHER RELIEF

d.     The charges for services provided by doctors listed in the book of approved or participating physicians that Yates brought to the meeting would not be covered by the policy;

e.     The MEGA LIFE policy was not a group medical insurance policy and not come with the benefits of group medical insurance;

f.     NASE was not an independent nonprofit organization that represented the interests of self-employed people and did not seek out the best and most affordable group health insurance policies at an affordable or a negotiated group rate;

g.     After a policyholder purchases a policy, the premium payments are raised for the same policy;

h.     The Policy does not cover "80% of all hospitalizations." Moreover, MEGA LIFE and NASE do not pay for 80% of a person's significant hospitalization expenses;

i.     In fact, the Policy Yates was selling had "Maximum Benefit" limitations for each "Period of Confinement"

k.     In fact, under the Policy Yates was selling, "Physician Visits while Hospital Confined" would be "limited to one visit per day;"

l.     The policy was a ". . . limited benefit insurance plan," it did ". . . not contain medical expense benefits. . .," and that it was not "health insurance or major medical insurance."

61.     Defendants, and each of them made numerous representations and omissions regarding the scope and breadth of coverage provided under the Policy. Specifically, defendants, and each of them, failed to disclose and/or inform plaintiff of the following:

**COMPLAINT FOR DAMAGES AND OTHER RELIEF**

a.    The Policy was not a good policy for major medical and comprehensive health insurance coverage and was not a major medical insurance policy;

b.    The MEGA LIFE policy was not a good health insurance policy, was not a major medical policy and was not competitive with major medical insurance policies such as those offered by Blue Cross and Kaiser.;

c.    In order to purchase the MEGA LIFE policy, Plaintiffs were not or should not have been required to pay to become a member of NASE;

d.    The charges for services provided by doctors listed in the book of approved or participating physicians that Yates brought to the meeting would not be covered by the policy;

e.    The MEGA LIFE policy was not a group medical insurance policy and did not come with the benefits of group medical insurance;

f.    NASE was not an independent nonprofit organization that represented the interests of self-employed people and did not seek out the best and most affordable group health insurance policies at an affordable or a negotiated group rate;

g.    After a policyholder purchases a policy, the premium payments are raised for the same policy;

h.    The Policy does not cover "80% of all hospitalizations." Moreover, MEGA LIFE and NASE do not pay for 80% of a person's significant hospitalization expenses;

i.    In fact, the Policy Yates was selling had "Maximum Benefit" limitations for each "Period of Confinement"

k.    In fact, under the Policy Yates was selling, "Physician Visits while Hospital Confined" would be "limited to one visit per day;"

— 28 —

**COMPLAINT FOR DAMAGES AND OTHER RELIEF**

I.    The policy was a ". . . limited benefit insurance plan," it did ". . . not contain medical expense benefits. . .," and that it was not "health insurance or major medical insurance."

62.    At the time these representations were made to plaintiffs , defendants,  and each of them, made the representations without any reasonable ground for believing them to be true.  At the time the omissions were made, defendants and each of them, made the omissions with reasonable grounds for believing that had plaintiff know the true facts, plaintiffs  would not have purchased the Policy.

63.    The representations and omissions made by defendants, and each of them, were made with the intent to induce plaintiffs  to rely on these representations and omissions and to purchase and pay valuable premiums for the Policy.

64.    At the time the representations and omissions were made by defendants and each of them, plaintiffs  were  unaware of the omitted true facts and of the falsity of the representations, and plaintiff justifiably acted in reliance upon the apparent truth of the representations made.

65.    As a direct and legal result of plaintiffs' reliance upon the representations and omissions made by defendants, and each of them, plaintiffs  sustained damages as heretofore described at Paragraphs 30, 31, and 32, and plaintiffs asserts such damages within this cause of action.

WHEREFORE, plaintiffs and Plaintiff Class pray for judgment against defendants as follows:

COMPLAINT FOR DAMAGES AND OTHER RELIEF

1.    For general, special, economic, incidental and consequential damages in excess of the jurisdictional minimum of the Superior Court against defendants, and each of them, according to proof;

2.    For attorneys' fees against defendants, and each of them, as permitted by law;

3.    For prejudgment interest against defendants, and each of them, as permitted by law;

4.    For costs of suit incurred herein against defendants, and each of them;

5.    For punitive damages against defendants, and each of them, in accordance with California Civil Code § 3294;

6.    For a permanent injunction against defendants UICI, MEGA LIFE, NASE and DOES 1 through 50, inclusive, restraining, preventing and enjoining said defendants from engaging in the above-alleged unfair business practices;

7.    For an order requiring defendants UICI, MEGA LIFE, NASE and DOES 1 through 50, inclusive, to make restitution to plaintiffs and Plaintiff Class, for funds and monies they have wrongfully obtained through the use of these improper, unfair, and illegal practices;

8.    For such other, further relief as the Court may deem just and proper.


Dated: May 10, 2004                         LAW OFFICES OF JAMES B. KROPFF


                                            By: _____
                                                James B. Kropff
                                                Attorneys for Plaintiffs

COMPLAINT FOR DAMAGES AND OTHER RELIEF

1
2
3
4

JURY TRIAL DEMANDED

5

Plaintiffs hereby demand a trial by jury on all issues so triable.

6
7

Dated: May 10, 2004

LAW OFFICES OF JAMES B. KROPFF

8
9

By: _____

10

James B. Kropff
Attorneys for Plaintiffs

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

COMPLAINT FOR DAMAGES AND OTHER RELIEF