William M. Shernoff, #38856
Evangeline F. Garris, #176014
SHERNOFF BIDART DARRAS
600 South Indian Hill Boulevard
Claremont, California 91711
Telephone: (909) 621-4935
Facsimile: (909) 625-6915

Randy D. Curry, #119636
LAW OFFICES OF RANDY D. CURRY
2901 West Coast Highway, Suite 200
Newport Beach, California 92663
Telephone: (949) 258-4381
Facsimile: (949) 258-4382

Attorneys for Plaintiffs

FILED
SUPERIOR COURT
COUNTY OF SAN BERNARDINO
RANCHO CUCAMONGA DISTRICT

MAY 0 6 2004

BY _____ DEPUTY

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF SAN BERNARDINO, RANCHO 080379

RCV

| | |
|---|---|
| JOSEPH DIAZ and PEGGY DIAZ, individually, and on behalf of the class of all others similarly situated, and on behalf of the General Public,<br><br>Plaintiffs,<br><br>vs.<br><br>UICI, THE MEGA LIFE AND HEALTH INSURANCE COMPANY, NATIONAL ASSOCIATION FOR THE SELF-EMPLOYED, NASE GROUP INSURANCE TRUST, UGA-ASSOCIATION FIELD SERVICES, SPECIALIZED ASSOCIATION SERVICES, CHUCK MC LAUGHLIN<br><br>Defendants | Case No.: RCV<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL**<br><br>**CLASS ACTION**<br><br>1. Marketing Fraud<br><br>2. Injunctive and Restitutionary Relief under California Business & Professions Code, section 17200 et seq. |

- 1 -

Complaint Class Action

## NATURE OF ACTION

1. This action relates to individuals who are victims of Defendants' elaborate and fraudulent nationwide marketing scheme developed by Defendants to sell medical insurance. Defendants prey on individual insurance consumers and small business owners who work hard to make ends meet and who cope with difficulties in obtaining quality medical insurance at affordable prices.

2. Defendants illegally avoid state regulation by maintaining phony group insurance. UICI maintains a phony group in violation of California *Insurance Code* § 10270.97. In California, group health insurance premium rates, and premium increases, do not require pre-approval by the Department of Insurance. (California Insurance Code sections 102909(a) and 10270.95. Premium rates and premium increases for individual health insurance policies, on the other hand, require pre-approval by the Department of Insurance. (California Insurance Code section 10290(a)).

3. Departments of Insurance do not regulate group health insurance premiums stringently because the groups are required to protect the interests of their members. By maintaining a phony group, UICI can set premium rates and increase premium rates without pre-approval by the California Department of Insurance. Defendants fail to advise California insurance consumers including plaintiffs that NASE is maintained in violation of California law to avoid premium rate regulations.

4. Defendants illegally fail to issue policies on a guaranteed issue basis. Defendants fail to provide health insurance on a guaranteed issue basis to all members of NASE applying for health insurance. This conduct violates California *Insurance Code* § 10270.5(a)(3). All NASE members are eligible for health insurance with UICI and MEGA its wholly owned subsidiary. UICI and MEGA cannot legally decline coverage to any NASE member, cannot rescind coverage of any NASE member, and cannot cancel coverage of any NASE member. All such conduct is in direct violation of California *Insurance Code* § 10270.5(a)(3). Defendants fail to advise California insurance consumers, including plaintiffs, that NASE is maintained, to obtain group insurance, yet

- 2 -

Complaint Class Action

SHERNOFF BIDART & DARRAS, LLP
600 SOUTH INDIAN HILL BOULEVARD
CLAREMONT, CALIFORNIA 91711-5498
TELEPHONE (909) 621-4935

1  defendants fail to issue health insurance on a guaranteed basis as is required for group
2  insurance under California law.
3      5.    Defendants' actions as described above constitute marketing fraud and
4  unfair and deceptive acts and practices in violation of California Business and
5  Professions Coe section 17200, et seq.
6      6.    By this class action plaintiffs act on their own behalf and as
7  representatives of the class of all other policyholders under the health policies involved.
8  On behalf of themselves and the class, plaintiffs seek appropriate relief including: (1) an
9  order requiring defendants to disband their phony group and write policies on an
10 individual basis or in the alternative establish a legitimate group and issue policies on a
11 guaranteed issue basis; (2) an order enjoining defendants from collecting enrollment
12 fees on behalf of the phony group; (3) compensatory damages for all loss, damage,
13 expense, and harm suffered by plaintiff and other class members as a result of
14 defendants' actions; and (4) emotional distress, punitive damages and/or exemplary
15 damages as provided by law to punish the defendants for their blatant and egregious
16 effort to defraud and cheat policyholders required to join NASE in order to obtain group
17 health insurance.
18
19 **THE PARTIES**
20     7.    Plaintiff, Joseph Diaz, is and at all relevant times was a resident of the
21 State of California, City of Chino.
22     8.    Plaintiff, Peggy Diaz, is and at all relevant times was a resident of the
23 State of California, City of Chino.
24     9.    Defendant, UICI is, and at all relevant times was, a publicly traded
25 corporation, a holding company whose assets include THE MEGA LIFE AND HEALTH
26 INSURANCE COMPANY. UICI is, and at all relevant times was a corporation
27 organized and existing by virtue of the laws of the State of Texas and authorized,
28

through its wholly owned subsidiaries, including THE MEGA LIFE AND HEALTH INSURANCE COMPANY, to transact the business of insurance in this State.

10. Defendant, THE MEGA LIFE AND HEALTH INSURANCE COMPANY ("MEGA") is, and at all relevant times herein was, a corporation duly organized and existing under and by virtue of the laws of the State of Oklahoma, authorized to transact and is transacting the business of insurance in this State.

11. Plaintiffs are informed and believe and on such information and belief allege, that Defendant MEGA is a wholly owned subsidiary of Defendant UICI. Upon such information and belief, Plaintiffs allege that there exists, and at all relevant times herein mentioned there existed, a unity of interest and ownership between Defendants, MEGA and UICI such that any individuality and separateness between Defendants have ceased, and Defendant MEGA is the alter ego of Defendant UICI. Plaintiffs allege that MEGA is, and at all relevant times herein mentioned was, a mere shell, instrumentality and conduit through which Defendant UICI carried on its business, exercising complete control and dominance of such business that any individuality or separateness of Defendants does not and did not exist.

12. Defendant, NATIONAL ASSOCIATION FOR THE SELF-EMPLOYED ("NASE") is, and at all relevant times was, a corporation duly organized and existing under and by virtue of the laws of Texas. California Insurance consumers are required to join NASE to obtain group health insurance.

13. Defendant, NASE GROUP INSURANCE TRUST ("NASE GROUP") is, and at all relevant times was, a corporation duly organized and existing under and by virtue of the laws of Texas and authorized to transact and transacting the business of insurance in this State. NASE GROUP is the policy holder under this insurance.

14. Defendant, UGA-ASSOCIATION FIELD SERVICES ("UGA") is, and at all relevant times was, a nationwide insurance agency that markets memberships in NASE and sells MEGA policies. UGA is, and at all relevant times was, a corporation duly organized and existing under and by virtue of the laws of Texas, authorized to transact

- 4 -

Complaint Class Action

and is transacting the business of insurance in this State. UGA maintains offices and agents in the State of California.

15. Defendant, SPECIALIZED ASSOCIATED SERVICES ("SAS") is, and at all relevant times was, a corporation duly organized and existing under and by virtue of the laws of Texas, which administers NASE memberships and all insurance sold to members of Defendant NASE.

16. Defendant, CHUCK MC LAUGHLIN is and at all relevant times was, a resident and citizen of the state of California, County of San Bernardino. Mc Laughlin was an enroller in NASE and an undisclosed agent of MEGA.

17. At all times herein mentioned, unless otherwise indicated, defendants were the agents and employees of each of the remaining defendants, and were at all times acting within the purpose and scope of said agency and employment, and each defendant has ratified and approved the acts of his agent.

18. The plaintiffs were solicited to join NASE which promised quality group health insurance at affordable group rates. NASE enrollers have a convincing sales pitch. By joining NASE, insurance consumers, including plaintiffs, are told they become members of a large group that enjoys true buying power. The major benefit promised by NASE is the ability to purchase NASE endorsed medical insurance at affordable group rates. NASE endorses MEGA medical insurance and promises NASE members that it has negotiated the medical insurance plans on behalf of NASE members. NASE enrollers, including Chuck Mc Laughlin the enroller soliciting plaintiffs, are, unbeknownst to potential NASE members, agents appointed by MEGA to sell MEGA policies to the newly-solicited NASE members. These same agents have no ability to sell any medical policy other than MEGA as they are appointed agents of only MEGA.

19. Based on this solicitation and the sales pitch that took place in California, plaintiff agreed to join NASE and pay NASE membership fees in order to obtain MEGA health insurance that promised $1,000,000 in coverage. On December 12, 2002, MEGA issued plaintiffs group policy number 00382, certificate number 043547584.

- 5 -

20. The sales pitch that plaintiffs fell for is the same sales pitch more than 300,000 insurance consumers have fallen for in joining NASE, and paying membership fees, in order to obtain so-called affordable group rates on medical insurance issued by MEGA, a wholly owned subsidiary of UICI.

This illegal and fraudulent marketing scheme works as follows:

NASE enrollers and benefit consultants receive leads resulting from a multi-million dollar marketing campaign paid for by UGA, a nationwide insurance agency that exclusively sells NASE memberships and MEGA policies to insurance consumers through a network of agency offices throughout the United States. UGA is owned and controlled by defendant, UICI. Currently, there are more than 300,000 NASE members. NASE members are never told of the relationship between UICI, MEGA, SAS, UGA and the NASE enrollers and benefits consultants, including Chuck Mc Laughlin, who receive UICI stock options as part of their compensation package as UGA agents selling NASE memberships and MEGA policies such as the policy purchased by CORREA.

Plaintiffs, like the more than 300,000 other NASE members, were promised affordable group rates for health insurance. NASE members are promised that NASE negotiates with various insurance companies on their behalf and, based on those negotiations, endorses MEGA to its members. NASE members are never told that the only health insurance company endorsed by NASE is MEGA. NASE members are also never told that NASE does not negotiate health insurance premiums on their behalf, with MEGA or any other insurance company. NASE members are never told there is no attempt to obtain affordable group rates. NASE members are never told NASE is maintained to avoid premium rate regulation. NASE members are never told that California law guarantees issuance of policies to NASE members and that their policies can never be rescinded.

NASE is controlled by UICI and its wholly-owned subsidiary, MEGA, which benefit from a not for profit tax status currently enjoyed by NASE in operating as a

marketing conduit for UICI and MEGA. NASE has no physical office address and operates with only a post office box and a toll free phone number.

Defendant SAS administers NASE memberships and answers the toll free NASE phone number. SAS operates across the street from the UICI building in Hurst, Texas. SAS is owned by Jeffrey Jensen. Jeffrey Jensen's father, Ronald Jensen, is the founder and Chairman of the Board of UICI.

In order to maintain an appearance of propriety, NASE has a board of directors. The NASE board of directors, despite having fiduciary duties to NASE members, have no involvement in the day-to-day operations of NASE and have no physical offices at NASE, because NASE operates through a post office box and has no physical location. These board members meet for the purpose of endorsing MEGA medical insurance policies to the NASE membership and rubberstamping business decisions presented by Defendants. SAS representatives, including Jeffrey Jensen, commonly attend NASE board of directors meetings.

Over 300,000 NASE members are never advised of these facts. The NASE members are defrauded by Defendants in this elaborate and fraudulent nationwide marketing scheme designed by Defendants to line their own pockets.

21. At all relevant times, the MEGA insurance coverage was in full force and effect.

22. At no time did the Defendants ever advise plaintiffs of the following:

A.) NASE is an organization formed and incorporated to maintain an association for the purpose of obtaining insurance in violation of California law, including, but not limited to, *Insurance Code* Section 10270.97.

B.) UICI and its wholly-owned subsidiaries, including MEGA, were aware of the NASE marketing scheme, supported the scheme and profited by it.

C.) The NASE endorsement of MEGA was designed to create monetary profits for Defendants.

23. Plaintiffs, Joseph Diaz and Peggy Diaz, made medical claims under the MEGA policy. MEGA has failed to pay plaintiffs' claims.

24. Adherence to the fiction of the separate existence of the parent UICI as an entity distinct from the other defendants would permit an abuse of the corporate privilege and would promote injustice by protecting UICI the parent from liability for punitive damages for the wrongful acts committed by it under the name of the other defendants.

25. UICI owned, operated, managed, joint ventured, maintained and/or controlled the activities of the other defendants. Therefore, the activities, acts and omissions of the other defendants were and are, in reality, the activities, acts and omissions of the parent UICI.

26. Plaintiffs believe and thereon allege that at all times mentioned herein, each of the defendants were the agents, employees and partners of each of the remaining defendants, and were acting within the scope and authority of such agency, employment and partnership, and with the knowledge, consent, approval, and ratification of the remaining defendants.

27. Whenever this complaint references acts of any defendant or defendants, such allegation shall be deemed to mean the act of those defendants named in the particular cause of action and each of them acting, individually, jointly, and severally.

## CLASS ACTION ALLEGATIONS

28. In accordance with *Code of Civil Procedure* § 382, this action is brought by the named plaintiffs, individually, and as representatives of all other policyholders of MEGA wherever located in California who own or purchased health insurance policies that were wrongfully and fraudulently coerced into enrolling in a phony group in order to obtain health insurance through Defendants and have been defrauded as set forth herein.

29. Plaintiffs, and the class of policyholders, are so numerous that joinder of

all members individually, in one action or otherwise, would be impractical. The class members are readily identifiable through defendants' records. On information and belief, the number of persons qualifying for class membership approximates 300,000 policyholders of defendants.

30.  Judicial determination of the common legal and factual issues essential to this case would be far more efficient and economical than piecemeal individual determinations.

31.  This action involves questions of law and fact common to plaintiffs and all members of the class involving the marketing fraud by defendants and these questions predominate over any claims affecting individual members of the class. Any questions affecting individual members of the class, such as the dollar amount of unlawful cost of insurance charges collected from each class member, should be easy to resolve once the common questions of law and fact have been adjudicated.

32.  The damages for plaintiff and each class member can easily be computed by computer from the computer records and computer data possessed by the defendants. There is no need for any manual computation of damages because, a,ong other things, the precise amount of unlawful insurance charges wrongfully taken from plaintiff and each class member can be easily computed through the data processing system possessed by defendants.

33.  There is no plain, speedy or adequate remedy other than by maintenance of this representative action because damage to each member is relatively small making it economically infeasible for class members to pursue remedies individually. The prosecution of separate actions by individual class members, even if theoretically possible, would create a risk of inconsistent or varying adjudications with respect to individual class members against defendants and would establish impractical standards of conduct for defendant.

34.  The claims of the plaintiffs named as class representatives in this action are typical claims of the members of the class of policyholders of MEGA. Defendants

used basically the same fraudulent marketing techniques and materials for all policyholders in the class.

35. The named plaintiffs in this action will fairly and adequately act to protect the interests of all members of the class, the named plaintiffs have retained experienced counsel in this area of the law. Plaintiffs' counsel have successfully prosecuted other class actions against major insurance companies involving issues very similar to those involved herein.

36. The prosecution of separate actions by individual members of the class would create a risk of inconsistent or varying adjudications with respect to different class members, which would establish incompatible standards of conduct for the defendants.

37. Defendants have acted on grounds generally applicable to the class as stated above, thereby making appropriate final injunctive relief or corresponding declaratory relief and damages with respect to the class as a whole.

### FIRST CAUSE OF ACTION

**(Marketing Fraud)**

**(Against all Defendants)**

38. Plaintiffs refers to each and every preceding paragraph and incorporate those paragraphs as though set forth in full in this cause of action.

39. Defendants represented that by joining the NASE, plaintiff would receive quality group health insurance without paying expensive individual rates. Defendants represented that they selected UICI and MEGA to provide group insurance through negotiations to avoid high individual rates. Defendants failed to advise Plaintiff that NASE was organized to maintain an association for the purpose of obtaining insurance in violation of California law, including, but not limited to, *Insurance Code* Section 10270.97. Further, Defendants failed to advise plaintiffs that UICI and its wholly-owned

- 10 -

Complaint Class Action

1  subsidiaries, including MEGA, were aware of the NASE marketing scheme, supported
2  the scheme and profited by it.
3      Defendants failed to advise plaintiffs and other California insurance consumers
4  that NASE is maintained to avoid premium rate regulation by the California Department
5  of Insurance.
6      Defendants failed to advise plaintiffs and other California insurance consumers
7  that California law guarantees issuance of policies to NASE members and that under
8  California law their policies cannot be rescinded.
9      40.   Plaintiffs are informed and believe and thereon allege that Defendants
10 made these representations with no reasonable grounds for believing them to be true,
11 or should have known them not to be true. The omissions were made purposefully to
12 defraud plaintiffs.
13     41.   These misrepresentations and fraudulent omissions were made by
14 Defendants with the intent to induce plaintiffs to join NASE, purchase the policy and to
15 pay premiums thereon. Had plaintiffs known the actual facts, plaintiffs would not have
16 taken such actions.
17     42.   Plaintiffs were justified in relying on the misrepresentations and fraudulent
18 omissions of Defendants who represented themselves as a knowledgeable in the
19 business of insurance. In justifiably relying on the misrepresentations of Defendants,
20 plaintiffs joined NASE, purchased the policy, paid premiums thereon, and did not seek
21 coverage elsewhere.
22     43.   Plaintiff is informed and believes and thereon alleges that Defendants, and
23 each of them, fraudulently misrepresented and fraudulently omitted other matters
24 regarding the MEGA policy by their acts or omissions of which Plaintiffs are presently
25 unaware, but which may be determined through discovery in this action. Plaintiffs will
26 seek leave of court to amend this complaint at such time as Plaintiffs discover the other
27 acts or omissions of Defendants, and each of them, which would constitute further
28 intentional misrepresentation on the part of these Defendants.

44. As a proximate result of Defendants' conduct, Plaintiffs have suffered, and will continue to suffer the future, damages under the policy, plus interest, and other economic and consequential damages, for a total amount to be shown at the time of trial.

45. As a further proximate result of the aforementioned wrongful conduct of Defendants, plaintiffs have suffered anxiety, worry, mental and emotional distress, all to Plaintiffs' general damage in a sum to be determined that the time of trial.

46. Defendants intended to cause injury to Plaintiffs or this despicable conduct was carried on with a willful and conscious disregard of Plaintiffs' rights and subjected Plaintiffs to cruel and unjust hardship. This conduct constitutes an intentional misrepresentation, deceit or concealment of a material fact known to Defendants with the intention to deprive Plaintiffs of property, legal rights or to otherwise cause injury such as to constitute malice, oppression or fraud under *California Civil Code* Section 3294. Therefore, Plaintiffs are entitled to punitive damages in an amount appropriate to punish or set an example of Defendants.

47. Defendants' conduct described herein was undertaken by the corporate Defendants' officers or managing agents who were responsible for advertising, underwriting, claims operations, communications and/or decisions. The aforementioned conduct of said managing agents and individuals was therefore taken on behalf of the corporate Defendants. Said corporate Defendants further had advance knowledge of the actions and conduct of said individuals whose actions and conduct were ratified, authorized, and approved by managing agents.

## SECOND CAUSE OF ACTION
### (Business and Professions Code 17200, et seq.)
### (Against all Defendants)

48. Plaintiffs incorporate by reference each and every preceding paragraph and incorporates those paragraphs as though set forth in full in this cause of action.

49. Defendants UICI, MEGA, NASE, UGA, SAS and Mc Laughlin by their conduct, concealed from Plaintiffs and failed to disclose that they have the unfair and illegal practice of requiring potential insureds to join NASE in order to purchase health insurance coverage. Plaintiffs believe and on that basis allege that MEGA is an unlawful group maintained for the purpose of selling insurance and that this is done by Defendants for the purpose of wrongfully obtaining further profits by obtaining membership fees from potential insureds, in addition to the insurance premiums, to the detriment of the insureds.

50. In order to purchase insurance from MEGA, Plaintiffs and many others were required to pay membership fees to join NASE even though they have no desire to utilize the other services purportedly offered by the organization, and the requirement of membership in this group is contrary to the law of California.

51. Defendants, and each of them, have committed acts of unfair competition as defined under California law and by *Business and Professions Code* Section 17200, et. seq., by maintaining a group for the sale of insurance to plaintiffs and many other persons in California.

(a) Defendants maintain NASE to illegally avoid premium rate regulation by the California Department of Insurance;

(b) Defendants fail to issue insurance coverage to all members of NASE applying for insurance coverage on a guaranteed issue basis as is required under California law;

(c) Defendants rescind policies issued to NASE members in violation of California law; and

(d) NASE was formed and has been maintained as a group for the sale of insurance in violation of California law.

52. Plaintiffs are informed and believe and on that basis allege that the unlawful practices alleged above are continuing in nature and are a widespread practice engaged in by Defendants.

53. On behalf of the general public, Plaintiffs respectfully request that an injunction against Defendants, be issued to enjoin them from forming and maintaining groups, including NASE, which require their insureds to join NASE and other groups in order to obtain insurance coverage. Plaintiffs also respectfully request that an injunction against Defendants be issued to enjoin Defendants from requiring potential insureds to join such groups in order to purchase policies of insurance.

54. On behalf of the general public, Plaintiffs respectfully request that an injunction against Defendants be issued to enjoin them from using unfair, deceptive for fraudulent representations in the marketing of their insurance coverage, and to retroactively issue coverage to all NASE members who have applied for insurance.

55. On behalf of the general public, Plaintiffs respectfully request that this court order Defendants, to pay restitutionary relief requiring defendants to disgorge and divest all money received from membership fees, only to the extent that it constitutes restitution, as a result of the scheme of marketing fraud alleged in this complaint.

56. Plaintiffs respectfully request an award of attorneys' fees upon prevailing in their request for injunctive relief.

## PRAYER

WHEREFORE, plaintiffs pray for judgment against defendants, and each of them, as appropriate to each cause of action alleged, as follows:

1. Damages for failure to provide benefits under the policy, plus interest, including prejudgment interest, and other economic and consequential damages, including special damages and general damages, in a sum to be determined at the time of trial;

2. General damages for mental and emotional distress and other incidental damages in a sum to be determined at the time of trial;

3. For punitive and exemplary damages in an amount to be determined at the time of trial;

4. For injunctions against defendants, and each of them, to enjoin them from continuing to engage in the unlawful conduct alleged herein;

5. For any other and further equitable relief deemed necessary by the court, including, without limitation, restitutionary relief;

6. For attorneys' fees upon prevailing in the request for injunctive relief;

7. For costs of suit incurred herein; and

8. For such other and further relief as the Court may deem just and proper.

Dated this 6th day of May, 2004, at Claremont, California.

SHERNOFF BIDART DARRAS

By: _[signature]_
WILLIAM M. SHERNOFF
EVANGELINE F. GARRIS
Attorneys for Plaintiffs

## JURY DEMAND

Plaintiffs hereby demand a trial by jury.

Dated this 6th day of May, 2004, at Claremont, California.

SHERNOFF BIDART DARRAS

By: _[signature]_
WILLIAM M. SHERNOFF
EVANGELINE F. GARRIS
Attorneys for Plaintiffs

SHERNOFF BIDART & DARRAS, LLP
600 SOUTH INDIAN HILL BOULEVARD
CLAREMONT, CALIFORNIA 91711-5498
TELEPHONE (909) 621-4935