# IN THE CIRCUIT COURT FOR BARBOUR COUNTY, ALABAMA
## EUFAULA DIVISION



DAVID P. NOAKES AND CYNTHIA M. NOAKES,    )
                                               )

      Plaintiffs,    )
                                               )

v.    )    Case No. _____
                                               )

MEGA LIFE AND HEALTH INSURANCE    )
COMPANY; UNITED INSURANCE    )
COMPANIES, INC. (d/b/a THE INSURANCE    )
CENTER, UGA - ASSOCIATION FIELD    )
SERVICES); UNITED GROUP SERVICE    )
CENTERS, INC.; UICI MARKETING, INC.;    )
SPECIALIZED ASSOCIATION SERVICES, INC.;    )
NASE GROUP INSURANCE TRUST FUND;    )
NATIONAL ASSOCIATION FOR THE    )
SELF-EMPLOYED; STEPHANIE    )
TRANCHINA and FICTITIOUS    )
DEFENDANTS 1-20,    )
                                             )

      Defendants.    )

---

## COMPLAINT

COME NOW Plaintiffs David P. Noakes and Cynthia M. Noakes and for their causes of action against the Defendants, MEGA Life and Health Insurance Company ("MEGA"); United Insurance Companies, Inc. ("UICI") (d/b/a The Insurance Center, UGA - Association Field Services); United Group Service Centers, Inc.; UICI Marketing, Inc.; Specialized Association Services, Inc. ("SAS"); NASE Group Insurance Trust Fund; National Association for the Self-Employed; Stephanie Tranchina and Fictitious Defendants 1-20, state as follows:

### I - PARTIES

1.    Plaintiffs David P. Noakes and Cynthia M. Noakes are adult residents of Barbour County, Alabama. Plaintiffs are the purchasers and former holders of a health insurance


EXHIBIT
1

certificate issued by Defendant MEGA. Said certificate was issued under a purported "group association policy" issued to and "endorsed" by the NASE.

2.      Defendant MEGA is a foreign insurance company organized and existing under the laws of the State of Oklahoma. MEGA's principal place of business is located in the State of Texas. At all times alleged herein, MEGA was registered to do and actually doing business in the State of Alabama.

3.      Defendant UICI is a foreign corporation organized and existing under the laws of the State of Delaware. UICI does business as The Insurance Center and UGA - Association Field Services. The principal place of business of UICI is in the State of Texas.

4.      Defendant United Group Service Centers, Inc. is a foreign corporation organized and existing under the laws of the State of Texas. United Group Service Centers' principal place of business is in the State of Texas.

5.      Defendant UICI Marketing, Inc. is a foreign corporation organized and existing under the laws of the State of Delaware. UICI Marketing's principal place of business is in the State of Texas.

6.      Defendant Specialized Association Services, Inc. is a foreign corporation organized and existing under the laws of the State of Texas. Specialized Association Services' principal place of business is in the State of Texas.

7.      Defendant NASE Group Insurance Trust Fund is a purported "trust" organized and existing under the laws of a yet-to-be-determined state. At all times herein, NASE Group Insurance Trust Fund was conducting business in the State of Alabama.

8.      Defendant NASE is a foreign corporation organized and existing under the laws of the State of Texas. NASE's principal place of business is in the State of Texas.

- 2 -

9.    Defendant Stephanie Tranchina is a resident and citizen of the State of Alabama. Tranchina is sued individually and in her representative capacity as the agent and/or representative of the named corporate defendants who "enrolled" Plaintiffs in NASE and procured the subject MEGA health insurance.

10.    Fictitious Defendants 1-20 are unknown individuals, partnerships, corporations, trusts or other legal entities which are subject to the jurisdiction of this Court and who have participated and/or are continuing to participate in the scheme, fraud and other tortious acts alleged herein. All named and fictitious defendants are sometimes collectively referred to herein as "Defendants."

## II - JURISDICTION AND VENUE

11.    This court has jurisdiction over the instant matter pursuant to Ala. Code § 12-11-30. Venue of this action is proper in this court pursuant to Ala. Code § 6-3-7 and Ala. R. Civ. P. 82.

12.    Plaintiffs state they are not asserting any causes of action which were released as a result of the class settlement reached in MDL 1578; *In Re UICI "Association Group" Insurance Litigation.*

## III - BACKGROUND

13.    This lawsuit arises from an "association/group trust" mass marketing and administration scheme devised and employed by the Defendants to sell health insurance coverage to the Plaintiffs. Pursuant to said scheme, the Defendants reap windfall profits from the sale and administration of health insurance sold through the NASE at the expense of, and without the knowledge of, the Plaintiffs. Said scheme involves (1) the illegal concealment and non-disclosure by the Defendants of incestuous relationships among the corporate Defendants, as

- 3 -

well as mutual and intertwined ownership, establishment and control of the Defendant entities, including NASE and MEGA, the insurance carrier whose products the supposed "independent" "association" "endorses"; (2) the undisclosed transfer and application by the Defendants of NASE "membership dues" and "initiation fees" to the insurance company whose products the NASE "endorses," and application of "association fees" to premiums and the costs of insurance in breach and violation of the terms of the contracts between the Defendants and Plaintiffs; (3) the establishment and administration of illusory or "dry" "trusts" and violation of trust duties to the Plaintiffs; and (4) use of deceitful, fraudulent and illegal rating and pooling practices as well as the "group/association" and "trust" relationships so established to reap ill-gotten gains for the Defendants at the expense of the Plaintiffs and to avoid effective regulation of Defendants' activities by various state departments of insurance throughout the nation; and (5) use of deceitful, fraudulent and illegal rating and pooling practices to single out sick individuals and/or create and exploit insurance "death spiral" situations under which the Defendants continually profit at the expense of, and cause direct damage to, an ongoing influx and turnover of health insurance purchasers including the Plaintiffs.

14.    Plaintiffs are the former holders of a health insurance certificate issued by MEGA through the combined sales and marketing efforts of UICI, UICI Marketing, MEGA, United Group Service Centers, Specialized Association Services and NASE.  The Plaintiffs' health insurance certificate was purported as "group association insurance" with a master policy being held in "trust" by a yet to be determined trustee and trust.

## IV - INTER-RELATION OF THE DEFENDANTS

15.    UICI is the parent and sole shareholder of both MEGA and UICI Marketing, Inc. UICI is principally owned and controlled by its Chairman, Ronald Jensen, and members of his

- 4 -

immediate family, through ownership of Onward and Upward, Inc. UICI is the ultimate surviving corporation of United Group Agencies, Inc., United Group Associates, Inc., United Group Trade Association, United Group Insurance Company and United Group Companies.

16.    According to documents filed with the Securities and Exchange Commission, UICI was established to provide a vehicle for insurance agents to accumulate wealth. This was initially accomplished through a series of reinsurance agreements between UICI with AEGON whereby UICI coinsured health insurance policies issued by AEGON. In 1997, UICI assumed all policies of health insurance previously issued by AEGON and UICI began selling its own policies through its two principal subsidiaries, MEGA and Mid-West National Life Insurance Company of Tennessee.

17.    At the time of the transactions giving rise to this lawsuit, UICI "group association" certificates issued through MEGA were administered by a centralized unincorporated division of UICI known as the Insurance Center. The Insurance Center handles the operational aspects of UICI's "group association" certificates including the design, underwriting, customer service, compliance, actuarial and risk management.

18.    Through its Self-Employed Agency Division, the UICI insurance operations concentrate on the sale of health insurance policies to self-employed individuals and small business people. The Self-Employed Agency Division includes the unincorporated UGA - Association Field Services, which markets MEGA policies to certain "association groups" established by officers and employees of UICI. NASE is an association through which UICI and MEGA market their policies.

19.    NASE purports to be an independent, not-for-profit association formed by and for the benefit of self-employed individuals, small business owners and other "entrepreneurs."

NASE represents itself as independently researching, negotiating for, and endorsing unaffiliated health insurance carriers for the benefit of its association members.

20.    UICI and MEGA have formed a number of "trusts" for the sole purpose of being the named insured under NASE "group policies." Plaintiffs have not yet been able to determine the exact name of the "trust" which held the master policy from which they were issued a "certificate" of coverage. Whatever its legal name or designation, the "trust" is deceptively named to create the impression that it acts in a fiduciary or "trustee" capacity for the benefit of association members in connection with the "group insurance policy." In fact, the "trust" either is a mere token entity formed solely for the purpose of acting as the "insured" under the "group policy," or exists solely to allow UICI and MEGA to completely control the insurance/insured relationship as to policyholders who purchase through NASE.

21.    It is believed that at the time of the transactions giving rise to this lawsuit, NASE was "managed" by Defendant Special Association Services, Inc. ("SAS") (between 1996 and July 1998, SAS was known as CORE Marketing, Inc.). SAS is wholly owned and controlled by Ronald Jensen and other members of his family through Onward and Upward, Inc. Onward and Upward, Inc. is a substantial stockholder in UICI and is considered a "related party" of UICI under SEC guidelines. SAS is operated by Jeff Jensen, Ronald Jensen's son, and Vernon R. Wolfe, a former officer and director of UICI and MEGA.

22.    Defendant United Group Service Centers, Inc. is the entity responsible for training UICI agents. The officers of United Group Service Centers are the same as the officers of SAS.

23.    UICI, MEGA and NASE are under the common control and/or ownership and operate as a unified business arrangement. The arrangement is designed to create the impression

that each entity operates independently. The NASE purports to be a non-profit association formed for the "self-employed" for the purpose of advancing the interests of the "entrepreneur" and small business owners. In fact, NASE was formed, and is operated, by UICI and MEGA as a marketing tool and profit center for the insurance company defendants and their affiliated entities.

24.    UICI and MEGA maintain control over all health insurance products and benefits offered by the NASE. UICI and MEGA exert complete control or significant influence over the NASE's decisions regarding these products through their relationship with Specialized Association Services and the strategic placement of individuals associated with the UICI, MEGA and entities owned and controlled but the Jensen family on NASE's board of directors and in officer level positions.

V - <u>THE DEFENDANTS' DECEPTIVE SCHEMES</u>

**A.    The Marketing Scam**

25.    UICI's wholly owned subsidiary, UICI Marketing, Inc., is the lead generation and advertising arm of the Defendants' nationwide sales scheme. UICI Marketing generates leads by using the NASE's supposedly independent endorsement of MEGA in internet advertising, print ads, signs, direct mail, and telemarketing. NASE's webpage conceals the fact that the only insurance company offered to NASE members is MEGA, which is a financially related insurance carrier and is jointly controlled along with the association.

26.    Once leads are generated, UICI Marketing provides the leads to UICI agents and bills NASE for generating the leads. At various times, UICI agents operated as "Representatives" of UGA – Association Field Services. UICI agents are trained to approach

- 7 -

potential leads as "association enrollers" and fellow self-employed individuals, rather than as insurance agents.

27.    The UICI agent "enrollment applications" are actually insurance application forms. The agents collect the first month's payment, including an "association initiation fee" (also known as an association registration fee), and "association dues," in addition to the first month's premium payment. The "initiation fee" is represented to be a one time payment for joining NASE. In fact, the initiation or registration fee, as well as portions of the NASE "association dues," were treated by the Defendants as undisclosed premium payments. Said "association fees" or "dues" were, in fact, a cost of insurance assessed to premium payments by the Defendant insurance entities.

28.    Defendants' association/group trust arrangements are designed to conceal the true nature of the business relationship between the supposedly independent association and the insurance carrier. The arrangement represents NASE as an independent entity that evaluates various insurance policies in order to obtain the best available "group insurance." In fact, the association, trust and insurance carrier are jointly owned and/or controlled and the only health insurance made available to NASE members are MEGA products.

29.    The Defendants conceal and do not disclose to purchasers like Plaintiffs the true relationship between the endorsing association (NASE) and the other Defendants in this case, including the insurance carrier whose products are being "endorsed." Defendants represent that the MEGA health insurance coverage is "endorsed" by NASE, which is presented by the Defendants as an independent association. Defendants, however, conceal and fail to disclose to the Plaintiffs the proprietary and control relationship existing between the "endorsing" association and the other Defendant entities that formed and control the association. Defendants

- 8 -

also conceal and fail to disclose the transfer among the Defendant entities of association "fees" and funds paid by Plaintiffs and other members.

**B.    Misappropriation of "Association Fees"**

30.    NASE and other Defendants represent that NASE is an independent, not for profit association formed by and for the benefit of self-employed individuals, entrepreneurs and small business owners. In fact, NASE generates millions of dollars in profits which are funneled to the insurance-related Defendants and UICI-owned entities through (1) the payment of service fees on management agreements and (2) fraudulently concealed premium payments.

31.    The Defendants ensure that the association will be "not for profit" by transferring association funds to and among the other Defendants, which maintain control over the association's accounts. All profits are removed from the association, thereby generating income for MEGA and UICI. The existence of such agreements among the Defendants is concealment from consumers like Plaintiffs. Said consumers are affirmatively denied the opportunity to discover the agreements by the terms of proxies drafted by the Defendants pursuant to which association members relinquish their right to obtain information about the association's finances.

32.    UICI and MEGA's collection of association dues and initiation fees as concealed premium payments is in direct conflict with the language of the health insurance certificate issued to Plaintiffs. The certificate includes a "Certificate Schedule." The certificate states that premiums are based on "applicable table of premium rates." There is no provision in the certificate for inclusion of the initiation/registration fee or "association dues," or any part thereof, as premium payments. The Defendants' wrongful application of association fees and dues

constitutes a breach by MEGA and UICI of the contracts of insurance between MEGA and Plaintiffs.

### C.    Violation of Trust Duties

33.    Pursuant to Defendants' "Association/Group Trust" marketing and administration scheme, MEGA issues master "group policies" to a trust which then issues certificates of coverage to participating individuals, like Plaintiffs. This procedure enables the insurance company to insulate the insurer/insured relationship from the certificate holders (such as Plaintiffs here) so that MEGA and the "trust" may modify the coverage and otherwise bypass more stringent regulations applicable to individual health insurance policies.

34.    Plaintiffs here are the former holders of a health insurance certificate to a purported "group association policy" held by a yet to be determined trustee and trust. MEGA, UICI and the other corporate Defendants have assumed the trustee's discretionary, fiduciary duties, including responsibilities for providing the management and administration of the insurance programs for the NASE membership and performance of such functions as may be necessary for the maintenance of said programs. MEGA, UICI and the other corporate Defendants misused and abused the trust relationship by charging additional premiums, improperly transferring and applying association fees and dues, thereby preventing NASE participating members from gaining access to more beneficial and competitive insurance products.

35.    All of the Defendants have vastly superior knowledge and expertise regarding the terms and conditions of the insurance they were offering to Plaintiffs. Defendants also have vastly superior knowledge and expertise regarding the underlying facts relating to the premium charged, the methods for calculating premium increases for the "group," the compensation

- 10 -

arrangements between and among the Defendants relating to coverage participants, the terms and conditions of the trust agreement, the duties and responsibilities as trustee, and the duties and obligations owed to trust beneficiaries like Plaintiffs.

36.    This course of conduct, and the acts described in the preceding paragraphs of this Complaint, breached fiduciary duties owed by MEGA, UICI and the other corporate Defendants. Said Defendants have assumed discretionary, fiduciary duties of a trustee and the trust by the acts alleged herein.

**D.    Fraudulent Rating and Pooling**

37.    The Defendants created the association "group" trust products and materially suppressed and affirmatively concealed true and accurate information regarding the transactions between the Defendants and the Plaintiffs, as described above, for the intentional and specific purposes of (a) inducing the Plaintiffs to purchase an association membership and health insurance certificate and continue to renew said membership and certificate, and (b) providing Defendants with a mechanism which they believed would allow them to avoid insurance regulations in implementing fraudulent rating and pooling practices. Said actions were part of a calculated and conscious "death spiral" scheme on the part of the Defendants.

38.    The undisclosed application by the Defendants of the Plaintiffs' "association dues and fees" to offset premiums and costs of insurance in Plaintiffs' coverage helped enable the Defendants to illustrate and charge "teaser rates" which were artificially low and set at an amount below that which would be actuarially recommended. These "teaser rates" were utilized by the Defendants to induce customers into believing that the offered insurance was actually bargain priced as a result of NASE's "group negotiating power." Defendants knew at the time of sale

- 11 -

that the premiums were artificially low and were less than those that would be required to carry the Plaintiffs' coverage over time.

39.    The "death spiral" sales methods employed by Defendants caused insureds with health problems to become isolated and eventually eliminated from the Defendants' book of business. Defendants designed their premiums such that they would escalate over time causing the coverage to become oppressively expensive and initiating the "death spiral." This was accomplished by isolating unhealthy insureds in a group or class which was closed to new members. Isolation of unhealthy insureds is an inappropriate and illegal pooling practice which leads to exorbitant premium rates for the isolated insureds as a result of their health conditions and resulting medical claims.

40.    Prior to raising premiums, Defendants also had a pattern and practice of failing to inform insureds that the increases were planned, intended and for the specific purpose of raising the monthly payment to a point the unhealthy insureds could no longer afford and would be forced to let the policy lapse.

41.    Also prior to raising premiums, Defendants failed to inform Plaintiffs, and other insureds, that Defendants' had collectively decided to constructively cancel all coverages under which insureds had made significant claims.

42.    In the end, each of Defendants intentionally and willfully concealed from Plaintiffs the true nature of the "group" trust health insurance that they purchased and such acts could not be determined by Plaintiffs' exercise of due diligence until shortly before filing this action.

43.    Plaintiffs "enrolled" in NASE on or around July 29, 2003. Plaintiffs' enroller was UGA – Association Field Services "Representative" Stephanie Tranchina.

- 12 -

44.     At the time of Plaintiffs' enrollment in NASE, which was also the date Plaintiffs applied for coverage with MEGA (because Plaintiffs were informed they were required to join and remain members of NASE before they could obtain the MEGA "group" health coverage), Tranchina collected hundreds of dollars for the "initial insurance premium, one-time association administration fee and current association dues...."

45.     Plaintiffs even terminated prior existing coverage to "enroll" with MEGA.  The replaced coverage was provided at a lower rate, but because Defendants represented the coverage to be of the very best quality, broad in scope and better than the existing coverage, Plaintiffs were induced to switch.  Indeed, the MEGA coverage was purportedly designed "for the self-employed" to offer excellent benefits.

46.     Plaintiffs made significant claims on the coverage in 2003 and 2004.  As a result, the premiums increased.  Most of the claims submitted for payment were inexplicably denied.  The minuscule payment of claims by MEGA was in direct contravention of the representations of Tranchina and the "pyramid brochure" provided to Plaintiffs at the time of "enrollment" which purported to identify the "broad coverage" afforded.

## VI - CAUSES OF ACTION

47.     Plaintiffs assert only state law claims in this Complaint and make no claims herein under the United States Constitution or any federal law.  Additionally, none of the claims at issue are subject to federal preemption.

## COUNT ONE - BREACH OF FIDUCIARY AND TRUST DUTIES

48.     Plaintiffs hereby adopt and incorporate by reference all preceding paragraphs and further allege:

- 13 -

49.    Plaintiffs stand in a relationship of trust and confidence with NASE and MEGA, as well as the trust holding the master policy from which Plaintiffs were issued a "certificate." The above-described actions of the Defendants constitute a breach and violation of the fiduciary duties owed by Defendants to Plaintiffs.

50.    MEGA assumed management and control of the discretionary and fiduciary functions of NASE, including responsibilities for management and administration of the Plaintiffs' insurance coverage, thereby stepping into the shoes of fiduciaries and assuming fiduciary duties as to the Plaintiffs.

51.    MEGA misused and abused the relationship to charge additional premiums, improperly transfer and apply association fees and dues, and prevent NASE participating members from gaining access to competitive insurance products.

52.    Moreover, in light of the special relationship and fiduciary duties owed by Defendants to Plaintiffs, Plaintiffs were legally entitled to honest advice and full disclosure from Defendants and placed their trust in Defendants to, among other things: (a) select adequate and appropriate health insurance for them, (b) fully inform them of all material facts necessary to make a decision regarding health insurance, (c) to fully inform them of how Defendants would calculate their insurance premiums and premium adjustments, (d) to disclose the true nature of the purported "group" trust insurance in which they were to participate and (e) to fully inform Plaintiffs of the true relationship, including agreements, between and among the Defendants. In short, Plaintiffs placed their trust in Defendants to help them make an important decision regarding their security, health and financial condition.

53.    To the extent that NASE may have lacked knowledge and information sufficient to disclose to Plaintiffs the facts described above, NASE had a fiduciary duty to inquire,

- 14 -

investigate and determine, among other things: (a) the full and true nature of the relationship between the Defendants; (b) the full and true nature of Defendants' "group" trust health insurance policy, (c) the full and true nature and manner in which premiums and premium increases would be determined and/or calculated for Plaintiffs, (d) the facts that the health insurance policy they were marketing and selling to Plaintiffs was not a true group policy, and (e) the fact that once claims were made on the policy, premiums increases would begin to escalate, with the Defendants' intent, purpose and goal to make the policy so expensive that insureds would be no longer be able to afford the premiums and would be forced to let the policy lapse.

54.    In addition to the duties outlined above, NASE also had a fiduciary duty to (a) procure, hold, administer (whether directly or through an administrator), and manage the best, most suitable, health insurance possible for and on behalf of trust beneficiaries, including Plaintiffs, and (b) to select and appoint a trust administrator that would protect and serve the best interests of the trust beneficiaries and which would act exclusively for and on behalf of the trust beneficiaries, including Plaintiffs.  NASE, as a fiduciary to Plaintiffs, also owed Plaintiffs a duty:

a.    to be active in the performance of the trust;

b.    to use reasonable care in instructing and supervising its co-fiduciaries, to whom fiduciary duties were delegated;

c.    to make a reasonable investigation as to the honesty and efficiency of MEGA;

d.    to adequately instruct, supervise and check the performance of the fiduciary duties and work delegated to MEGA;

- 15 -

      e.    to prevent MEGA from placing itself in a position where it could commit a breach of fiduciary duty and/or trust;

      f.    to act solely in the interest of the trust beneficiaries, including Plaintiffs, (i.e. to exercise a duty of loyalty);

      g.    to take measures, by suit or otherwise, to protect the trust beneficiaries from a breach of trust by the administrator and/or co-trustee;

      h.    to exercise reasonable prudence and care in employing, appointing, and supervising a trust administrator and/or co-trustee; and

      i.    to use ordinary skill and prudence.

55.    NASE and the other Defendants breached the above-described duties and obligations. Such conduct and breaches were willful, wanton, negligent and/or reckless.

56.    As a direct, foreseeable and proximate result thereof, Plaintiffs were caused to suffer actual damages and will suffer such damages in the future.

## COUNT TWO - BREACH OF CONTRACT

57.    Plaintiffs hereby adopt and incorporate by reference all preceding paragraphs and further allege:

58.    Defendants entered into a contract with Plaintiffs whereby Defendants agreed to provide group health insurance coverage in consideration for the payment made by Plaintiffs of quoted monthly premiums. Said premiums were to be fairly calculated and determined on the basis of group experience and in accordance with the representations made to Plaintiffs throughout the insurance selection, procurement, application, provision, administration and management process.

59.    Plaintiffs preformed by paying the quoted monthly premiums.

60.     Defendants breached their contract with Plaintiffs by failing to perform as represented in the insurance certificate.

61.     Defendants further breached their contract with Plaintiffs by charging premiums substantially in excess of what the premiums would have been if they had been fairly calculated under the terms of the insurance certificate and in accordance with the representations made to Plaintiffs. Such dramatic premium increases deprived Plaintiffs of the benefit of their bargain and also constitute a constructive termination, or an attempt at the same, of the insurance contract without just cause as well as a breach of Defendants' contractual obligations of good faith and fair dealing.

62.     The transfer and misappropriation of association dues and fees to premiums also constitutes breach of contract.

63.     As a direct, foreseeable, and proximate result thereof, Plaintiffs were caused to suffer injuries and incur damages.

## COUNT THREE - FRAUDULENT SUPPRESSION

64.     Plaintiffs hereby adopt and incorporate by reference all preceding paragraphs and further allege:

65.     Throughout the insurance selection, procurement, and application process, Defendants willfully, wantonly, intentionally, recklessly, maliciously, negligently and/or innocently omitted the material facts described above to Plaintiffs.

66.     The facts were material and omitted by Defendants despite such knowledge or with a reckless disregard for whether such facts were material.

67.    Furthermore, Defendants had a duty of full disclosure to the Plaintiffs. As stated herein, Defendants failed to disclose material facts to Plaintiffs. Such non-disclosure constitutes fraudulent suppression.

68.    In reasonable reliance upon Defendants' representations, Plaintiffs acted as described above, purchased the "group" health insurance described above, and paid monthly premiums as agreed, joined NASE and continued to renew the NASE membership and the health insurance coverage.

69.    As a part of the Defendants' scheme, said facts were concealed from the Plaintiffs and not disclosed by the Defendants to the Plaintiffs at the time of sale or thereafter, although Defendants knew that said facts could justifiably and/or reasonably induce the Plaintiffs to refrain from purchasing the insurance coverage.

70.    The Defendants were under a duty to disclose said matters and the failures of the Defendants to disclose said facts to the Plaintiffs were wrongful.

71.    As a direct, foreseeable and proximate result thereof, Plaintiffs were caused to suffer actual damages and will suffer such damages in the future.

## COUNT FOUR - CIVIL CONSPIRACY

72.    Plaintiffs hereby adopt and incorporate by reference all preceding paragraphs and further allege:

73.    Defendants have engaged in an unlawful conspiracy to breach fiduciary duties, breach contracts and to mislead Plaintiffs regarding, among other things, (a) the full and true nature of the relationship between the Defendants, (b) the full and true nature of Defendants trust "group" health coverage, (c) the full and true nature and manner in which premiums and premium increases would be determined and/or calculated for Plaintiffs, (d) the fact that the

- 18 -

health insurance coverage marketed by Defendants was not a true group policy; (e) the fact that premium increases could be affected by individual claims experience, and (f) the fact that once premium increases began, the Defendants' intent, purpose and goal was to make the coverage so expensive that Plaintiffs and other insureds would no longer be able to afford the premiums and thus be forced to let the policy lapse.

74.    Defendants also combined and joined in a concerted effort to formulate a fraudulent and deceitful marketing scheme which prevented Plaintiffs and others from discovering the true relationship of the related Defendants and their plans to extort and later share exorbitant fees and charges passed on to NASE participants.

75.    As a direct, foreseeable and proximate result thereof, Plaintiffs were caused to suffer actual damages and will suffer such damages in the future.

### COUNT FIVE - FRAUD

76.    Plaintiffs hereby adopt and incorporate by reference all preceding paragraphs and further allege:

77.    Throughout the insurance selection, procurement, and application process, Defendants willfully, wantonly, intentionally, recklessly, maliciously, negligently and/or innocently misrepresented the material facts described above to Plaintiffs.

78.    The material misrepresentations described above and made by Defendants were false and were made with knowledge of their falsity or with a reckless disregard for whether such misrepresentations were true.

79.    Furthermore, Defendants had a duty of full disclosure to the Plaintiffs. As stated herein, Defendants failed to disclose material facts to Plaintiffs. Such non-disclosure constitutes material misrepresentation.

80.    In reasonable reliance upon Defendants' representations, Plaintiffs acted as described above, purchased the "group" health insurance described above, and paid monthly premiums as agreed.

81.    As a direct, foreseeable and proximate result thereof, Plaintiffs were caused to suffer actual damages and will suffer such damages in the future.

## COUNT SIX - BREACH OF IMPLIED CONTRACT TO PROCURE INSURANCE

82.    Plaintiffs hereby adopt and incorporate by reference all preceding paragraphs and further allege:

83.    Tranchina and NASE had obligations to procure suitable, appropriate health insurance coverage for Plaintiffs.

84.    Tranchina and NASE breached said duties evidenced by the above-described actions.

85.    As a direct and proximate result of Defendants' negligent acts and/or omissions, Plaintiffs have suffered damages.

## COUNT SEVEN – NEGLIGENCE/WANTONNESS

86.    Plaintiffs hereby adopt and incorporate by reference all preceding paragraphs and further allege:

87.    Defendants owed duties of diligence, due care, and fair dealings to Plaintiffs.

88.    Defendants breached such duties by engaging in the above-described tortious actions.

89.    As a direct and proximate result of Defendants' negligent and/or wanton acts and/or omissions, Plaintiffs have suffered damages.

## COUNT EIGHT - NEGLIGENCE PER SE

- 20 -

90.    Plaintiffs hereby adopt and incorporate by reference all preceding paragraphs and further allege:

91.    Defendants' actions constitute violations of Alabama insurance statutes and regulations governing rating and pooling practices for group health insurance. The statutes and regulations are designed to protect consumers like Plaintiffs from the rating and pooling practices employed by Defendants. As a result, Defendants are liable for negligence per se.

92.    As a direct and proximate result of Defendants' negligent acts and/or omissions, Plaintiffs have suffered damages.

## COUNT NINE – BAD FAITH REFUSAL TO PAY

93.    Plaintiffs hereby adopt and incorporate by reference all preceding paragraphs and further allege:

94.    MEGA refused to pay Plaintiffs the full amount owed under the health insurance coverage at issue.

95.    MEGA has no legitimate or arguable reason for refusing to pay Plaintiffs the full amount owed under the health insurance coverage at issue.

96.    MEGA has actual knowledge of the absence of any legitimate or arguable reason for refusing to pay Plaintiffs the full amount owed under the health insurance coverage at issue.

97.    MEGA acted and is acting in bad faith in refusing to pay Plaintiffs the full amount owed under the health insurance coverage at issue.

98.    MEGA has a pattern and practice of refusing to pay similar claims that are properly payable.

- 21 -

99.     As a proximate cause of MEGA's bad faith refusal to pay the full amount owed under the health insurance coverage at issue, Plaintiffs have suffered damages, including economic damages and severe mental and emotional distress.

## COUNT TEN – BAD FAITH REFUSAL TO INVESTIGATE

100.    Plaintiffs hereby adopt and incorporate by reference all preceding paragraphs and further allege:

101.    MEGA had a duty to diligently, fairly and properly investigate Plaintiffs' insurance claim before refusing to pay the full amount owed under the coverage.

102.    MEGA breached this duty and failed to diligently, fairly and properly investigate Plaintiffs' insurance claim before denying the benefits owed under the coverage.

103.    MEGA's failure to diligently, fairly and properly investigate was intentional and in bad faith.

104.    MEGA has a pattern and practice of intentionally refusing and failing to diligently, fairly and properly investigate similar insurance claims before denying benefits under identical and/or similar coverages.

105.    As a proximate cause of MEGA's bad faith failure and refusal to diligently, fairly and properly investigate Plaintiffs' health insurance claims, Plaintiffs have suffered damages, including economic damages and severe mental and emotional distress.

106.

## VII – PRAYER FOR RELIEF

**WHEREFORE,** premises considered, Plaintiffs respectfully demand relief against Defendants, jointly, separately and severally, for compensatory and punitive damages.

- 22 -

*TRIAL BY STRUCK JURY IS HEREBY DEMANDED.*

Dated this 5th day of April , 2005.

Robert G. Methvin, Jr.
Phillip W. McCallum
James M. Terrell
Attorneys for Plaintiffs

**OF COUNSEL:**
McCallum, Methvin & Terrell, P.C.
The Highland Building
2201 Arlington Avenue South
Birmingham, Alabama 35205
(205) 939-0199

James B. Pittman, Jr.
Davis & Fields, P.C.
27180 Pollard Road
Daphne, AL 36526
(251) 621-1555

**PLEASE SERVE DEFENDANTS VIA CERTIFIED MAIL WITH A COPY OF THE
SUMMONS, COMPLAINT AND DISCOVERY MATERIALS, AT:**

MEGA Life and Health Insurance Company
c/o The Corporation Company
2000 Interstate Park Dr.
Suite 204
Montgomery, AL 36109

United Insurance Companies, Inc.
9151 Grapevine Hwy.
North Richland Hills, TX 76180

United Group Service Centers, Inc.
c/o Ralph Wolfe
3801 William D. Tate, Suite 800
Grapevine, TX 76051

- 23 -

UICI Marketing, Inc.
9151 Grapevine Hwy.
North Richland Hills, TX  76180

Specialized Association Services, Inc.
c/o Jeffrey J. Jensen
3801 William D. Tate, Ste 800
Grapevine, TX 76051

NASE Group Insurance Trust Fund
c/o National Association for the Self-Employed
c/o The Corporation Company
2000 Interstate Park Dr.
Suite 204
Montgomery, AL  36109

National Association For The Self-Employed ("NASE")
c/o The Corporation Company
2000 Interstate Park Dr.
Suite 204
Montgomery, AL  36109

Stephanie Tranchina
19475 Liberty Road
Fairhope, AL  36533

IN THE CIRCUIT COURT FOR BARBOUR COUNTY, ALABAMA
EUFAULA DIVISION

DAVID P. NOAKES AND CYNTHIA M. NOAKES,      )
                                             )
       Plaintiffs,                           )
                                             )
v.                                           )      Case No. *CV-05-64*
                                             )
MEGA LIFE AND HEALTH INSURANCE               )
COMPANY; UNITED INSURANCE                    )
COMPANIES, INC. (d/b/a THE INSURANCE         )
CENTER, UGA - ASSOCIATION FIELD              )
SERVICES); UNITED GROUP SERVICE              )
CENTERS, INC.; UICI MARKETING, INC.;         )
SPECIALIZED ASSOCIATION SERVICES, INC.;      )
NASE GROUP INSURANCE TRUST FUND;             )
NATIONAL ASSOCIATION FOR THE                 )
SELF-EMPLOYED; STEPHANIE                     )
TRANCHINA and FICTITIOUS                     )
DEFENDANTS 1-20,                             )
                                             )
       Defendants.                           )



---

## SUMMONS

       To any sheriff or any person authorized by either Rule 4.1(b)(2) or 4.2(b)(2) or 4.4(b)(2) of the Alabama Rules of Civil Procedure to effect service: You are hereby commanded to serve this Summons and a copy of the Complaint in this action upon Defendant:

### PLEASE SERVE BY CERTIFIED MAIL:

UICI Marketing, Inc.
9151 Grapevine Hwy.
North Richland Hills, TX 76180

RECEIVED

APR 1 2 2005

UICI LEGAL

## NOTICE TO DEFENDANT

    The Complaint which is attached to this Summons is important and you must take immediate action to protect your rights. You are required to mail or hand deliver a copy of a written Answer, either admitting or denying each allegation in the Complaint, to Phillip W. McCallum at McCallum, Methvin & Terrell, P.C., the lawyers for the Plaintiffs, whose address is 2201 Arlington Avenue South, Birmingham, Alabama 35205. THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN THIRTY (30) DAYS AFTER THIS SUMMONS AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT. You must also file the original of your Answer with the Clerk of this Court within a reasonable time afterward.

Dated 4/6/05

_____

Clerk of Court

IN THE CIRCUIT COURT FOR BARBOUR COUNTY, ALABAMA
EUFAULA DIVISION

| | | |
|---|---|---|
| DAVID P. NOAKES AND CYNTHIA M. NOAKES, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. CV-05-64 |
| | ) | |
| MEGA LIFE AND HEALTH INSURANCE | ) | |
| COMPANY; UNITED INSURANCE | ) | |
| COMPANIES, INC. (d/b/a THE INSURANCE | ) | |
| CENTER, UGA - ASSOCIATION FIELD | ) | |
| SERVICES); UNITED GROUP SERVICE | ) | |
| CENTERS, INC.; UICI MARKETING, INC.; | ) | |
| SPECIALIZED ASSOCIATION SERVICES, INC.; | ) | |
| NASE GROUP INSURANCE TRUST FUND; | ) | |
| NATIONAL ASSOCIATION FOR THE | ) | |
| SELF-EMPLOYED; STEPHANIE | ) | |
| TRANCHINA and FICTITIOUS | ) | |
| DEFENDANTS 1-20, | ) | |
| | ) | |
| Defendants. | ) | |

FILED
APR - 6 2005
DAVID S. NIX, CLERK
BARBOUR COUNTY, ALABAMA

---

## SUMMONS

To any sheriff or any person authorized by either Rule 4.1(b)(2) or 4.2(b)(2) or 4.4(b)(2) of the Alabama Rules of Civil Procedure to effect service:  You are hereby commanded to serve this Summons and a copy of the Complaint in this action upon Defendant:

### PLEASE SERVE BY CERTIFIED MAIL:

MEGA Life and Health Insurance Company
c/o The Corporation Company
2000 Interstate Park Dr.
Suite 204
Montgomery, AL  36109

## NOTICE TO DEFENDANT

The Complaint which is attached to this Summons is important and you must take immediate action to protect your rights. You are required to mail or hand deliver a copy of a written Answer, either admitting or denying each allegation in the Complaint, to Phillip W. McCallum at McCallum, Methvin & Terrell, P.C., the lawyers for the Plaintiffs, whose address is 2201 Arlington Avenue South, Birmingham, Alabama 35205. THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN THIRTY (30) DAYS AFTER THIS SUMMONS AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT. You must also file the original of your Answer with the Clerk of this Court within a reasonable time afterward.

Dated 4/6/05

Clerk of Court

## IN THE CIRCUIT COURT FOR BARBOUR COUNTY, ALABAMA
### EUFAULA DIVISION

| | |
|---|---|
| DAVID P. NOAKES AND CYNTHIA M. NOAKES, | ) |
| | ) |
|     **Plaintiffs,** | ) |
| | ) |
| **v.** | )   **Case No. _____** |
| | ) |
| MEGA LIFE AND HEALTH INSURANCE | ) |
| COMPANY; UNITED INSURANCE | ) |
| COMPANIES, INC. (d/b/a THE INSURANCE | ) |
| CENTER, UGA - ASSOCIATION FIELD | ) |
| SERVICES); UNITED GROUP SERVICE | ) |
| CENTERS, INC.; UICI MARKETING, INC.; | ) |
| SPECIALIZED ASSOCIATION SERVICES, INC.; | ) |
| NASE GROUP INSURANCE TRUST FUND; | ) |
| NATIONAL ASSOCIATION FOR THE | ) |
| SELF-EMPLOYED; STEPHANIE | ) |
| TRANCHINA and FICTITIOUS | ) |
| DEFENDANTS 1-20, | ) |
| | ) |
|     **Defendants.** | ) |

**FILED APR - 6 2005 DAVID S. ... CLERK BARBOUR CO ... MA**

## FIRST INTERROGATORIES TO DEFENDANT MEGA LIFE AND HEALTH INSURANCE COMPANY

COME NOW Plaintiffs David P. Noakes and Cynthia M. Noakes, by and through their undersigned counsel, and pursuant to the <u>Alabama Rules of Civil Procedure</u>, hereby propound the following interrogatories on MEGA Life and Health Insurance Company and request that responses be provided within thirty (30) days of receipt. Responses must be reasonably supplemented to the maximum extent authorized by the <u>Alabama Rules of Civil Procedure</u>.

### I.      DEFINITIONS AND INSTRUCTIONS

    1.    "Communication" shall mean any contact or act by which any information is transmitted or conveyed between two or more persons, and shall include, without limitation, written contact by such means as letters, memoranda, telegrams, telexes, electronically

transmitted messages, or by any document, and any oral contact by such means as face to face meetings or conversations and telephone conversations which are transcribed, notated or in any other manner memorialized in written, typed or recorded form.

2.      "Documents" is used in its broadest possible sense, and shall mean all writings of any kind, including the originals and all non-identical copies, whether different from the originals by reason of any notation made on such copies or otherwise, and whether printed, recorded, created or reproduced by any mechanical means or process, or written or produced by hand, including, but not limited to: agreements; contracts; drafts of agreements or contracts; written material referencing oral agreements or contracts; confirmatory memoranda; letters of intent; orders; purchase orders; communications; messages; correspondence; personal calendars (whether written, electronic, or computerized); letters; postcards; packages; telegrams; teletypes; telefax; mailgrams; e-mails; tape recordings; memoranda; diaries (whether written, electronic, or computerized); summaries; notes or other recordings of telephone conversations, personal conversations, meetings, actions or statements; corporate charters, by-laws, minutes, amendments, proposals, directives, prospectuses, or documents of any description evidencing action taken by a corporate entity, business entity or association; deeds, leases, mortgages, security agreements; legal documents of any kind and description; agenda of meetings; notices; records; files; intraoffice and interoffice memoranda and communications; personal memoranda; photographs; negatives; photographic slides; pictures; motion picture films; photographic films; microfilms; microfiche; newspapers; magazines; charts; graphs; diagrams; drawings; bookkeeping entries; account summaries or statements; financial statements; balance sheets; financial records; bills; invoices; orders; receipts; bank records of all types; returns; canceled checks; vouchers; ledger sheets; accounting information; computer print-outs; computer memories; word processing memories; software; reports; official papers; papers prepared in the ordinary course of business; instruments; chronicles; vouchers; diplomas; stationary; licenses; bills of exchange; bills of sale; logs; theses; circulars; publications; studies; notes of interviews; statements of witnesses; findings of investigations; audits; files; records of negotiation; reports of experts, whether to be called to trial or not; materials furnished to experts, whether to be called to trial or not; reports of consultants, whether to be called to trial or not; any record of any consultation with an expert or potential expert you have elected not to use; all materials furnished to, or notes of, conversations with any witness or person interviewed in connection with this case; personal notes; papers; books; notebooks; notecards; indices; physical objects; summaries; statistics; regression analysis; demographic analysis; market studies; stenographic materials; tapes; cassettes; phonographic records; microcassettes; discs; compact discs; digital audio tapes; digital optical recordings; videotapes (VHS, Beta, or other); maps; posters; transparencies; pamphlets; bulletins; posters; fliers; plans; blueprints; drawings; sketches; printed matter; reports; and any and every other written, graphic, mechanical or tangible means by which human intelligence is in any way transmitted, reported, recorded or preserved, as well as worksheets, drafts, alterations, modifications, editing, changes, and amendments to any of the foregoing.

3.      "Person" shall mean any natural person, corporation, partnership, company, sole proprietorship, association, institute, joint venture, firm, governmental body, or other legal or business entity, whether privately or publicly owned or controlled, for profit or not-for-profit, or partially or fully government owned or controlled.

4.    "You" and "Your" shall mean MEGA Life and Health Insurance Company, and any employee, agent, attorney, any other person acting for, or on behalf of, or under the authority or control of said defendant or others who are in possession of or who may have obtained information for or on behalf of said defendant.

5.    The terms "and" and "or" as used herein are terms of inclusion and not of exclusion, and shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the request for production of documents any document or information that might otherwise be construed to be outside its scope.

6.    The term "any" means one or more.

7.    The singular form of a noun or pronoun shall be considered to include within its meaning the plural form of the noun or pronoun, and vice versa.  The masculine form of a noun or pronoun shall be considered to include within its meaning the feminine form of the noun or pronoun, and vice versa.

8.    Regardless of the tense employed, all verbs shall be read as applying to the past, present and future as is necessary to make any paragraph more, rather than less, inclusive.

9.    Each interrogatory and request is to be responded to independently.  When an interrogatory or request contains separately numbered or lettered paragraphs, each such paragraph should be treated separately and an individual response should be furnished.

10.    In the event that any answer called for by any interrogatory, or request, or sub-part thereof, is withheld on the basis of privilege or any similar claim, a list is to be furnished identifying each answer so withheld, together with the following information:

a.    The reason for withholding;

b.    A statement of facts constituting the basis for any claim of privilege, work product or other ground of nondisclosure.

11.    If you cannot answer an interrogatory or request in full after exercising due diligence to secure the full information to do so, so state and answer to the extent possible, specifying your inability to answer the remainder, stating whatever information or knowledge you have concerning the unanswered portion and detailing what you did in attempting to secure the unknown information.

12.    If you encounter any ambiguity in construing the discovery, definitions, or instructions, set forth the matter deemed "ambiguous" and answer the question by indicating the construction chosen and used in responding.

13.    If any information requested by this discovery was at one time in existence but is no longer in existence, or made unavailable in any manner, then identify the nature of the information and state:

a.    The date upon which it ceased to exist;

b.    The circumstances under which it ceased to exist;

c.    The identity of all persons having knowledge of the circumstances under which it ceased to exist; and

d.    The identity of all persons having knowledge or who had knowledge of the contents thereof.

## II.    INTERROGATORIES

1.    State this defendant's name correctly and/or the correct way this defendant should be designated as a party in any action at law (at the time of the occurrence made the basis of this suit and at the time these interrogatories are answered).

2.    Identify the person(s) answering these interrogatories giving full names, residences, business address, occupation and title, and state the relationship you hold with any co-defendant.

3.    At any time while insured by this defendant, were the plaintiffs members of any trust associated or affiliated with this defendant? If so, explain.

4.    Is, or has this defendant, within the last seven (7) years, been investigated by any state's Department of Insurance or any other regulatory body? If so, please identify said state, the date this defendant first got notice of any regulatory investigation, and the results of said investigation.

5.    Explain, in detail, any premium increases received by the plaintiffs and all basis for such increases.

6.    Define the plaintiffs' "group" or "class" with respect to the health insurance at issue.

7.    How many individuals were there in plaintiffs' "group" or "class" nationwide at year end for each year from 1995 to present?

8.    Identify all individuals by name and address who were ever in plaintiffs' "group" or "class" and were subsequently in a different "group" or "class" of insureds who had health insurance through MEGA. This includes, but is not limited to, individuals who may have left plaintiffs' "group" or "class" by terminating their coverage and subsequently purchased insurance through another company.

9.    Did this defendant ever utilize a tier rating system for plaintiffs' policies? If so, please describe, in specific detail, each and every tier each plaintiff was in for each year plaintiff owned a policy with this defendant.

-4-

10. Did this defendant market or train licensed agents to market or sell the insurance at issue in this case as "group" insurance? If not, would you consider it to be inappropriate for any of your agents to sell the policies at issue in this case as "group" insurance?

11. Has this defendant altered any of its policies and procedures with respect to the manner in which it markets or trains agents to market and sell policies such as the ones at issue in this case? If so, explain, in detail, any change in this defendant's policies and procedures and when said change took effect.

12. Identify the total number of health insurance certificates sold by this defendant, per year, between 1995.

13. Identify the total amount of premiums this defendant received, per year, from health insurance certificates from 1995.

14. Identify the total amount of money, per year, paid in premiums by plaintiffs and also provide, per year, the amount in claims paid on behalf of plaintiffs during that same period and the amount of claims submitted by plaintiffs but not paid by defendants during the same period.

15. Identify all individuals, including name and job title, who had any responsibility for developing, implementing, maintaining, or altering this defendant's rating systems from 1995 to present. For any individuals no longer employed by this defendant, please provide the last known address and phone telephone number.

16. Please state the name and address of each expert witness you expect to call at the trial of this case and state the facts, opinions, and conclusions to which said expert(s) are expected to testify.

17. Has this defendant ever been denied, refused the right to do business, or had its rights to do business suspended or terminated in any state? If so, explain, in detail.

18. Identify all committees, groups, or similar bodies associated or related to this defendant which had any responsibility for or otherwise discussed marketing, rating and/or pooling with respect to health insurance policies from 1995 to present.

19. Identify the total number of policies sold by this defendant, per year, between 1995 to present.

20. State whether or not they have been or are now, lawsuits pending against this defendant and/or it's agent(s) for the last five years claiming injury or damage due to breach of contract, fraudulent, wanton, or intentional misrepresentation, or bad faith failure to pay. If so, for each such lawsuit state: the date of the filing of each lawsuit; the Court in which such lawsuit was filed; the action or Court number of each such suit; the name and address of all parties and their attorneys; the disposition of each lawsuit; and the name and address of each person or entity having possession, control, or custody of any and all records relating to such legal action against this defendant involving such a claim or similar claim.

21.   Identify by name, address, and phone number, each and every certificate holder in the country who has made a complaint or inquiry concerning problems with rate increases, sales representations, coverages, exclusions, or cancellations of the policies at issue in this case between 1995 to present.

22.   List each state in which this defendant has sold policies and/or certificates, such as the ones at issue in this case, since 1995.

Dated this **5th** day of **April**, 2005.


Robert G. Methvin, Jr.
Phillip W. McCallum
James M. Terrell
Attorneys for Plaintiffs

**OF COUNSEL:**
McCallum, Methvin & Terrell, P.C.
The Highland Building
2201 Arlington Avenue South
Birmingham, Alabama 35205
(205) 939-0199

James B. Pittman, Jr.
Davis & Fields, P.C.
27180 Pollard Road
Daphne, AL 36526
(251) 621-1555

- 6 -

IN THE CIRCUIT COURT FOR BARBOUR COUNTY, ALABAMA
EUFAULA DIVISION

| | | |
|---|---|---|
| DAVID P. NOAKES AND CYNTHIA M. NOAKES, | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| v. | ) | Case No. _____ |
| | ) | |
| MEGA LIFE AND HEALTH INSURANCE | ) | |
| COMPANY; UNITED INSURANCE | ) | |
| COMPANIES, INC. (d/b/a THE INSURANCE | ) | |
| CENTER, UGA - ASSOCIATION FIELD | ) | |
| SERVICES); UNITED GROUP SERVICE | ) | |
| CENTERS, INC.; UICI MARKETING, INC.; | ) | |
| SPECIALIZED ASSOCIATION SERVICES, INC.; | ) | |
| NASE GROUP INSURANCE TRUST FUND; | ) | |
| NATIONAL ASSOCIATION FOR THE | ) | |
| SELF-EMPLOYED; STEPHANIE | ) | |
| TRANCHINA and FICTITIOUS | ) | |
| DEFENDANTS 1-20, | ) | |
| | ) | |
| **Defendants.** | ) | |

## FIRST REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANT MEGA LIFE AND HEALTH INSURANCE COMPANY

COME NOW Plaintiff David P. Noakes and Cynthia M. Noakes, by and through their undersigned counsel, and pursuant to the Alabama Rules of Civil Procedure, hereby request MEGA Life and Health Insurance Company to produce all of the below listed documents (including data stored electronically) and request that these documents be produced within thirty (30) days of receipt. This Request is continuing and must be reasonably supplemented to the maximum extent authorized by the Alabama Rules of Civil Procedure.

### I.    DEFINITIONS

The following definitions shall apply to this Request. All terms used but not defined herein shall be interpreted according to the meanings normally and customarily applied to them.

1.    "Communication" shall mean any contact or act by which any information is transmitted or conveyed between two or more persons, and shall include, without limitation, written contact by such means as letters, memoranda, telegrams, telexes, electronically transmitted messages, or by any document, and any oral contact by such means as face to face meetings or conversations and telephone conversations which are transcribed, notated or in any other manner memorialized in written, typed or recorded form.

2.    "Documents" is used in its broadest possible sense, and shall mean all writings of any kind, including the originals and all non-identical copies, whether different from the originals by reason of any notation made on such copies or otherwise, and whether printed, recorded, created or reproduced by any mechanical means or process, or written or produced by hand, including, but not limited to: agreements; contracts; drafts of agreements or contracts; written material referencing oral agreements or contracts; confirmatory memoranda; letters of intent; orders; purchase orders; communications; messages; correspondence; personal calendars (whether written, electronic, or computerized); letters; postcards; packages; telegrams; teletypes; telefax; mailgrams; e-mails; tape recordings; memoranda; diaries (whether written, electronic, or computerized); summaries; notes or other recordings of telephone conversations, personal conversations, meetings, actions or statements; corporate charters, by-laws, minutes, amendments, proposals, directives, prospectuses, or documents of any description evidencing action taken by a corporate entity, business entity or association; deeds, leases, mortgages, security agreements; legal documents of any kind and description; agenda of meetings; notices; records; files; intraoffice and interoffice memoranda and communications; personal memoranda; photographs; negatives; photographic slides; pictures; motion picture films; photographic films; microfilms; microfiche; newspapers; magazines; charts; graphs; diagrams; drawings; bookkeeping entries; account summaries or statements; financial statements; balance sheets; financial records; bills; invoices; orders; receipts; bank records of all types; returns; canceled checks; vouchers; ledger sheets; accounting information; computer print-outs; computer memories; word processing memories; software; reports; official papers; papers prepared in the ordinary course of business; instruments; chronicles; vouchers; diplomas; stationary; licenses; bills of exchange; bills of sale; logs; theses; circulars; publications; studies; notes of interviews; statements of witnesses; findings of investigations; audits; files; records of negotiation; reports of experts, whether to be called to trial or not; materials furnished to experts, whether to be called to trial or not; reports of consultants, whether to be called to trial or not; any record of any consultation with an expert or potential expert you have elected not to use; all materials furnished to, or notes of, conversations with any witness or person interviewed in connection with this case; personal notes; papers; books; notebooks; notecards; indices; physical objects; summaries; statistics; regression analysis; demographic analysis; market studies; stenographic materials; tapes; cassettes; phonographic records; microcassettes; discs; compact discs; digital audio tapes; digital optical recordings; videotapes (VHS, Beta, or other); maps; posters; transparencies; pamphlets; bulletins; posters; fliers; plans; blueprints; drawings; sketches; printed matter; reports; and any and every other written, graphic, mechanical or tangible means by which human intelligence is in any way transmitted, reported, recorded or preserved, as well as worksheets, drafts, alterations, modifications, editing, changes, and amendments to any of the foregoing.

3.    "Person" shall mean any natural person, corporation, partnership, company, sole proprietorship, association, institute, joint venture, firm, governmental body, or other legal or

business entity, whether privately or publicly owned or controlled, for profit or not-for-profit, or partially or fully government owned or controlled.

    4.    "You" and "Your" shall mean MEGA Life and Health Insurance Company, and any employee, agent, attorney, any other person acting for, or on behalf of, or under the authority or control of said defendant or others who are in possession of or who may have obtained information for or on behalf of said defendant.

    5.    The terms "and" and "or" as used herein are terms of inclusion and not of exclusion, and shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the request for production of documents any document or information that might otherwise be construed to be outside its scope.

    6.    The term "any" means one or more.

    7.    The singular form of a noun or pronoun shall be considered to include within its meaning the plural form of the noun or pronoun, and vice versa. The masculine form of a noun or pronoun shall be considered to include within its meaning the feminine form of the noun or pronoun, and vice versa.

    8.    Regardless of the tense employed, all verbs shall be read as applying to the past, present and future as is necessary to make any paragraph more, rather than less, inclusive.

## II.    INSTRUCTIONS

    1.    <u>Scope</u>. In responding to this Request, please furnish all such documents which are in your possession, under your control, and/or are available to you, not merely those things as you feel may address the request or which may solely be in your possession. Additionally, this request includes documents in the possession and/or control of your agents, representatives, accountants and attorneys.

    2.    <u>Manner of Production</u>. In responding to this Request, please organize and label the documents requested hereby to correspond with the numbered request to which they are responsive or produce them as they are kept in the usual course of business.

    3.    <u>Transferred Documents</u>. In the event that any document is known which addresses this Request, but which is no longer within your possession, custody or control, please specify what disposition was made of it and identify the person in whose possession, custody or control the document is now.

    4.    <u>Destroyed Documents</u>. In the event that any document referred to in or encompassed by this request has been destroyed, please specify the date of destruction, the manner of destruction, the reason for destruction, the person authorizing destruction and the custodian of the document at the time of its destruction.

    5.    <u>Non-Existence of Requested Documents</u>. In the event that no document exists which is responsive to a particular request, please provide a written response indicating same.

- 3 -

6.    <u>Supplementation of Production</u>.  Pursuant to the provisions of the <u>Ala.R.Civ.P.</u>, you shall supplement your production of documents if subsequent to the date of the production you learn that the production was in some material respect incomplete or incorrect and that the additional or corrective documents have not otherwise been made available to Defendant and its counsel prior to the trial.

7.    <u>Claim of Privilege</u>.  In the event that any Document called for by a request is withheld on the basis of claim of privilege or a claim of privilege will be asserted, please identify that Document by stating:  (a) any author, signatory, addressor or addressee; (b) description (e.g. letter, memorandum, telex, recording, etc.); (c) subject matter, title (if any), date, number of pages, and attachments or appendices; (d) all persons to whom the Document was distributed, shown or explained; (e) its present depository; (f) its present custodian; and (g) a complete statement of the ground for the claim of privilege asserted.

## III.    ITEMS TO BE PRODUCED

1.    Any and all documents in this defendant's possession or control which in any way relate or refer to the plaintiffs.

2.    Any and all documents in this defendant's possession or control which refer to any inquiry, by any state regulatory agency, relating or referring to this defendant's marketing, underwriting, rating or pooling of its "group" coverage certificates.

3.    Any and all documents sent to or received from any state of department of insurance, which in any way relates or refers to that department's market conduct study of this defendant.

4.    Any and all documents which in any way relate or refer to rate increases on plaintiffs' health insurance coverage.

5.    Any and all underwriting manuals utilized by this defendant between 1995 to present.

6.    Any and all "risk manuals" utilized by this defendant's underwriting department between 1995 to present.

7.    Copies of any and all minutes of any board meetings from 1995 to present, which in any way relate or refer to this defendant's marketing, rating and/or pooling practices.

8.    Each and every memorandum from any committee, group or similar body which is in any way related to this defendant's marketing, rating and/or pooling practices.

9.    Each and every internal office note, communication, memorandum, e-mail or other transmitted data regarding the decision to close the "block," "group" or "class" that included plaintiffs.

10.    Each and every internal office note, communication, memorandum, committee meeting minutes, e-mail, or other transmitted data regarding or related to this defendant's practice of closing blocks of business, groups or classes.

11.    Any and all documents that are in any way related to the practice of transferring insureds from one block of business, group or class to another, including but not limited to, the sale of a new policy or certificate.

12.    A list of all insureds in the same block of business, group or class as plaintiff at year end for each year from 1995 to present.

13.    All documents relating to any caps on rate increases for plaintiffs' "block,"

18.    All written procedures regarding or relating to the adjustment of annual renewal premiums for "group" health insurance products.

19.    All actuarial memoranda that are in any way related to the "group" health insurance that plaintiffs purchased.

20.    All written procedures or other documents regarding or relating to the assignment or reassignment of individuals to classes, groups, subgroups, pools, tiers or blocks.

21.    Any and all documents regarding or relating to internal surveys you conducted, or that were conducted on your behalf, that purport to evaluate customer satisfaction with your "group" health insurance products.

22.    Any and all documents containing descriptions or depictions of you organization structure and/or corporate structure.

23.    Produce copies of any and all depositions given by any representative of this defendant in any lawsuit involving "group" health insurance certificates.

24.    Any and all sales or agents manuals which in any way relate or refer to "group" health insurance certificates.

25.    Any and all documents which in any way relate or refer to the any state Department of Insurance's investigation into the sale of "group" health insurance certificates.

26.    Any and all documents in this Defendant's possession which in any way relate or refer to the plaintiffs.

27.    Any and all documents in this defendant's possession which in any way relate or refer to any inquiry, by any state regulatory agency, relating or referring to this defendant's underwriting of its policies.

28.    Any and all documents which in any way relate or refer to this defendant's across the board, general, or policy wide, rate increases between 1995- present for any of the policies at issue in this case.

29.    Any and all underwriting manuals utilized by this defendant between 1995 to present for any policy at issue in this case.

30.    Any and all "risk manuals" utilized by this defendant's underwriting department between 1995 to present.

31.    Copies of any and all minutes of any board meeting from 1995-present, which in any way relate or refer to this defendant's policies.

32.    All agent or "enroller" files for Defendant Stephanie Tranchina.

33.    Each and every internal office note, communication, memorandum, e-mail, or other transmitted data regarding the decision to cap the amount of increases on premiums for policies between 1995 to present.

Dated this 5th day of April, 2005.

Robert G. Methvin, Jr.
Phillip W. McCallum
James M. Terrell
Attorneys for Plaintiffs

**OF COUNSEL:**
McCallum, Methvin & Terrell, P.C.
The Highland Building
2201 Arlington Avenue South
Birmingham, Alabama 35205
(205) 939-0199

James B. Pittman, Jr.
Davis & Fields, P.C.
27180 Pollard Road
Daphne, AL 36526
(251) 621-1555  626 8779

- 7 -

**CT** CORPORATION
A WoltersKluwer Company

**Service of Process
Transmittal**
04/11/2005
Log Number 510118394

RECEIVED

**TO:**    Brenda Johnson
APR 1 2 2005
UICI
9151 Grapevine Hwy
North Richland Hills, TX, 76180
Corp. Legal

**RE:**    **Process Served in Alabama**

**FOR:**    The Mega Life and Health Insurance Company  (Domestic State: OK)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | David P Noakes, et al., Pltf. Vs Mega Life and Health Insurance Company, et al., Dft. |
| **DOCUMENT(S) SERVED:** | Summons, Complaint, Interrogatories, Request for Production. |
| **COURT/AGENCY:** | Barbour County Circuit Court, AL. Case # CV 05 64 |
| **NATURE OF ACTION:** | Complaint alleges breach of fidiary duties and trust duties |
| **ON WHOM PROCESS WAS SERVED:** | The Corporation Company, Montgomery, AL |
| **DATE AND HOUR OF SERVICE:** | By Certified Mail on 04/11/2005 postmarked on 04/11/2005 |
| **APPEARANCE OR ANSWER DUE:** | 30 days |
| **ATTORNEY(S) / SENDER(S):** | Robert G Methvin, Jr. McCallum, Methvin & Terrill, PC The Highland Building 2201 Arlington Ave South Birmingham, Al, 35526 |
| **ACTION ITEMS:** | SOP Papers with Transmittal, via  Fed Ex 2 Day, 790485306931 |
| **SIGNED:** | The Corporation Company |
| **ADDRESS:** | 2000 Interstate Park Drive Suite 204 Montgomery, AL, 36109 |
| **TELEPHONE:** | 334-387-7680 |

Page 1 of  1 / CT

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action.