IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| DAVID P. NOAKES and CYNTHIA M. NOAKES, | ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | Case No.: CV-05-64 |
| MEGA LIFE AND HEALTH INSURANCE COMPANY, et al., | ) ) ) | |
| Defendants. | ) ) | |

## AFFIDAVIT OF FORREST S. LATTA

**STATE OF ALABAMA**
**COUNTY OF MOBILE**

Before me, the undersigned authority, appeared FORREST S. LATTA who, first having been duly sworn, deposes and states as follows:

1.      I am over the age of twenty-one years, and all statements made herein are based on my personal knowledge and research of source materials, such as case reports, that are deemed reliable and authoritative.

2.      I am an attorney and a member of the law firm of Bowron, Latta & Wasden, P.C. in Mobile, Alabama.  I have been a member of the Alabama State Bar since 1983 and have practiced law in Alabama and other jurisdictions in the United States since 1983.  A copy of my biographical sketch is attached hereto and made a part of this Affidavit.

3.      My practice includes, but is not limited to, civil litigation in which insurance policyholders sue insurance companies seeking damages for alleged breach of contract, fraud, and/or



bad faith arising from the insurer's alleged misconduct at the time of sale of the insurance policy or its failure to provide insurance contract benefits.

4.    For over twenty (20) years, I personally have collected and studied information relating to Alabama cases in which punitive damage verdicts have been awarded for insurance fraud or bad faith. In my research and study of jury awards in Alabama, I have reviewed trial court verdicts in both state and federal courts throughout the State of Alabama since 1981, as well as decisions from the United States Supreme Court, the Eleventh Circuit Court of Appeals, and the Alabama Supreme Court spanning the same period. From a study of those verdicts, I have published lists and compilations which I have maintained, such as *Large Punitive Damages Verdicts in Alabama 1994-95*, ALABAMA DEFENSE LAWYERS JOURNAL 19 (Oct. 1996) and *Large Punitive Damages Verdicts in Alabama 1982-1992*, ALABAMA DEFENSE LAWYERS JOURNAL 26 (Apr. 1993). In the course of my studies of damage awards in Alabama over the past 20 years, I have become familiar with the size of awards assessed against insurance companies in cases alleging fraud or bad faith.

5.    I have testified many times in federal courts as an expert witness on the subject of the amount in controversy. *See, e.g., Jackson v. American Bankers Ins. of Florida*, 976 F. Supp. 1450 (S.D. Ala. 1997). *See also attached list*. I have testified in Alabama state courts as an expert witness on the subject of punitive damages in fraud cases. *See, e.g., Hoots v. Duck Head Apparel Co.*, (Circuit Court of Montgomery County, Alabama, Civil Action No. 92-561-PR) and *Stryker v. Phillips Petroleum Co.*, (Circuit Court of Washington County, Alabama, Civil Action No. CV-92-00025). I have testified before the Alabama Legislature on the subject of punitive damages, given numerous professional bar presentations, and written published articles on issues relating to

2

punitive damage and jury awards.  Some of these include *Observations on Appellate Challenges to Punitive Damage Awards After Campbell*, 54 FDCC QUARTERLY 69 (Fall 2003); *Redefining the Jury's Role in Punitive Damages Cases*, 43 FOR THE DEFENSE 10 (Defense Research Institute, November 2001); *The Changing Role of Juries in Punitive Damages Cases*, ADLA JOURNAL (November 2001); *Punitive Damages in Alabama: Where Are We Now?* (December 2000); *A New Day in Alabama for Insurers? (Alabama reduces punitive damages, but expands bad faith tort)* (December 2000); *Defending Insurers From Punitive Damages Claims*, FOR THE DEFENSE (Defense Research Institute, Vol. 40 No. 5, May 1998) (*Winner of the 1998 G. Duffield Smith Outstanding Publication Award, Defense Research Institute*); *Will Alabama Ever Change Its Punishing Ways?*, LEGAL OPINION NEWSLETTER (Washington Legal Foundation, Vol. 8, No. 10, May 1998); *Punitive Damages: Anger, Frustration & Change*, 4 ALABAMA DEFENSE LAWYERS JOURNAL 12 (October 1988).

6.    I have reviewed the Complaint in this action which contains ten individual claims, some of which would entitle a successful plaintiff to seek an award of tort damages including mental anguish and/or punitive damages.  Those claims include fraudulent suppression (Count Three), fraud (Count Five), wantonness (Count Seven), bad faith refusal to pay (Count Nine), and bad faith refusal to investigate (Count Ten).  The factual theory of the Complaint is that the Defendants independently and collectively acted to create a fraudulent and illegal scheme to mass market and administer a group health insurance plan through alleged "incestuous" relationships among the Defendants which were intended to cheat and defraud policyholders and which was affirmatively concealed from the Plaintiffs.  *See generally Compl*.  It contains over twenty-two paragraphs of specific factual allegations of a an alleged scheme to defraud the Plaintiffs and others through the design and sale

3

of this group health insurance product, its marketing, underwriting, rating, and claims practices. *See id*. The main practical consequence to consumers of this insurance program, according to the complaint, is that certain consumers eventually were required to pay higher than expected premiums to maintain their coverage in force.

7.    The Complaint demands judgment against the Defendants for compensatory and punitive damages but does not state the amount of damages sought. *Compl. at Prayer for Relief*. Alabama cases involving allegations of fraud involving such an insurance program routinely involve more than $75,000.00 in controversy, especially those involving consumer complaints against an insurer such as contained in the present case.

8.    For example, in *Skilstaf, Inc. v. American Medical Security*, (M.D. Ala., Civil Action No. 3:98-cv-00064-VPM), the plaintiffs sued a health insurer on a complaint that included many factual and legal theories that are similar or identical to the present case, including allegations of fraud and deception in the manner in which the group insurance program was designed, underwritten, rated, and sold. A federal court jury awarded a verdict in the total amount of $6,902,576.00, which was entered as the judgment of the trial court and affirmed by the Eleventh Circuit Court of Appeals without a published opinion. *Skilstaf, Inc. v. Am. Med. Sec.*, 254 F.3d 77 (11th Cir. 2001), *cert. denied*, 534 U.S. 894 (2001). I have personal knowledge of two other lawsuits involving similar or identical allegations to the present case which were settled for an amount that was confidential but substantially in excess of $75,000.00. *Long v. Congress Life Ins. Co.* (Circuit Court of Washington County, Alabama, Civil Action No. CV-99-008); *Ruffin v. Congress Life Ins. Co.* (Circuit Court of Choctaw County, Alabama, Civil Action No. CV-00-10). I also have personal knowledge of two lawsuits involving similar or identical allegations to the present case – one

4

resulting in a $15,000,000.00 jury award to a husband and wife. *Clark v. Security Life Ins. Co.* (Superior Court of Early County, Georgia, Civil Action No. 95V-261). Another case resulted in a settlement that was confidential but substantially in excess of $75,000.00. *Robinson v. Security Life Ins. Co.*, (M.D. Ga., Civil Action No. 1:95-cv-212 (WLS)).

9.    I am aware of several reported cases in which the Alabama Supreme Court has upheld jury verdicts in excess of $75,000.00 involving claims of sales fraud against insurance companies and agents involving similar legal theories. For example, in *Mattiace v. Loyal American Life Insurance Company, Inc.*, (Circuit Court of Lauderdale County, Alabama, Civil Action No. CV-91-315), the plaintiff sued for alleged breach of contract, fraud, and bad faith refusal to pay a life insurance claim. The insurer refused to pay after the insured was killed in an automobile accident. The plaintiff theorized, as in the present case, that the claim denial was the product of a bad faith application of unlawful underwriting standards. *Loyal American Life Ins. Co. v. Mattiace*, 679 So. 2d 229, 236-37 (Ala. 1996). A Lauderdale County jury awarded the plaintiff $32,200.00 for breach of contract, plus $100,000.00 in compensatory and punitive damages for the defendant's bad faith. That judgment was affirmed on appeal. *Id.*

10.    In *Foremost Insurance Company v. Parham*, 693 So. 2d 409 (Ala. 1997), on an appeal of a judgment entered against the insurer by the Circuit Court of Bullock County, Alabama, the plaintiffs sued an insurer for fraud, misrepresentation, and suppression in connection with the sale of homeowner's insurance. The trial court entered judgment for the plaintiffs on jury verdicts totaling over $10,500,000.00. On appeal, the Alabama Supreme Court, pursuant to *BMW of North America, Inc. v. Gore*, 517 U.S. 559 (1996) and other considerations, remitted the awards to each plaintiff to $175,000.00.

5

Other reported fraud cases include: *Life Insurance Company of Georgia v. Johnson*, 701 So. 2d 524 (Ala. 1997) (original $15,000,000.00 verdict remitted to $3,000,000.00); *Smith v. Crown Life Insurance Company*, 657 So. 2d 821 (Ala. 1994) (original $4,000,000.00 verdict remitted to $2,250,000.00); *Foster v. Life Insurance Company of Georgia*, 656 So. 2d 333 (Ala. 1994) (punitive award of $1,000,000.00 affirmed); *Northwestern Mutual Life Ins. Co. v. Sheridan*, 630 So. 2d 384 (Ala. 1993) (original $25,000,000.00 verdict remitted to $12,800,000.00).

11.    In addition to the above-mentioned cases, my research has revealed several awards involving claims of sales fraud and/or bad faith against an insurance company and in which the jury verdict exceeded $75,000.00.  Some of those verdicts include:

> *Whittaker v. Southwestern Life Ins. Co.*  An insurance agent, who was later discovered to be a convicted felon, pocketed the customer's premiums.  This resulted in cancellation of the plaintiff's policy.  Total verdict $1,620,000,000.00, consisting of $10,000,000.00 compensatory and $800,000,000.00 punitive against each of the two defendants. (Circuit Court of Macon County Alabama, CV-02-41, February 4, 2004).

> *Ingram v. Liberty Nat'l Life Ins. Co.*  Plaintiff accused an insurer and its agent of a fraudulent scheme involving misrepresentation of a so-called vanishing premium policy.  Total verdict $3,200,000.00. (Circuit Court of Chambers County, Alabama, CV-96-0062, September 12, 2002).  Reversed on liability grounds.  *Liberty Nat'l Life Ins. Co. v. Ingram*, 887 So. 2d 222 (Ala. 2004).

> *Green v. Alfa Life Ins. Corp.*  Alleged sales fraud of a life insurance policy by an agent and company which represented that premiums would unconditionally vanish within nine years.  Total verdict $3,300,000.00. (Circuit Court of Bullock County, Alabama, CV-99-0183, December 14, 2001).  Reversed on liability grounds.  *Alfa Life Ins. Corp. v. Green*, 881 So. 2d 987 (Ala. 2003).

> *Barstow v. Congress Life Ins. Co.*  Plaintiff sued her health insurer for bad faith breach of contract over the refusal to pay a claim for her daughter's jaw surgery.  Allegations of unfair claims practices and post-claim underwriting due to insurer's denial of claim based on misstatements in insurance application.  Total verdict $1,000,000.00. (Circuit Court of Mobile, County, Alabama, CV-3238-BLK, October

1, 1999). Reversed on liability grounds. *Congress Life Ins. Co. v. Barstow*, 799 So. 2d 931 (Ala. 2001).

*McQuiston v. Liberty Nat'l Life Ins. Co.* Insurance agent allegedly changed an applicant's prior medical history on application for life insurance and forged applicants name on altered application. Total verdict $17,530,000.00. (Circuit Court of Chambers County, Alabama, CV-94-234, June 10, 1996).

*Barnes v. American General Life Assurance Co.* Insurance agent allegedly collected insurance premiums but allowed disabled insured's life insurance policy to lapse and forged documents to replace the policy. Total verdict $35,000,000.00. (Circuit Court of Mobile County, Alabama, CV-94-3571-RLB, April 19, 1996).

*Green v. Life of Georgia* - Insurance agent allegedly sold life insurance policies to five plaintiffs representing that it was a retirement fund. Total verdict $1,000,000.00. (Circuit Court of Baldwin County, Alabama, CV-94-476-PB, February 15, 1996).

*Gibson v. Life Insurance Co. of Georgia.* Plaintiff sued the defendant insurance company for failure to pay a claim submitted under a medical insurance policy. The plaintiff had been injured in an automobile accident and asserted claims against the insurer for alleged misrepresentation in the sale of the insurance policy and bad faith refusal to pay the claim. The jury returned a verdict of $100,000.00: $20,401.37 in compensatory damages and an additional amount of $79,598.63 in punitive damages. (Circuit Court of Perry County, Alabama, Civil Action No. CV-93-68).

*Strickland v. Liberty Nat'l Life Insurance Co.* Plaintiffs sued an insurer for fraudulently inducing plaintiffs to "switch" or "roll over" various insurance policies which they owned into other insurance products to their detriment. A jury awarded compensatory and punitive damages in excess of $5,000,000.00. (Circuit Court of Mobile County, Alabama, Civil Action No. CV-95-001399).

*Crocker v. Union Sec. Life Ins. Co.* Plaintiff sued an insurer for fraudulent sales practices involving a credit life insurance policy. After her husband's death, the plaintiff alleged the insurance company failed to pay the benefits due under the policy. A jury awarded $5,000,000.00, which was reduced by the trial court to $3,000,000.00 in remittitur. (Circuit Court of Choctaw County, Alabama, Civil Action No. CV-92-064 K). Affirmed. *Union Sec. Life Ins. Co. v. Crocker*, 709 So. 2d 1118, (Ala. 1997).

12.    In the Third Judicial Circuit particularly, consisting of Bullock County and Barbour

County where this case is pending, there have been many verdicts in excess of $75,000 in cases

involving similar fraud claims. For example, in *Cayton et al. v. Assurance Company of America et al.* (Circuit Court of Bullock County, Alabama, Civil Action No. CV-2001-0058) a jury on April 30, 2003, awarded $1.5 compensatory and $2 million punitive damages against an insurer stemming from an alleged bad faith and fraudulent scheme to get an insured to accept less insurance coverage by threatening to report him to the IRS for alleged tax violations. In *Green v. Alfa Life Insurance Company* (Circuit Court of Bullock County, Alabama, Civil Action No. CV-99-0183), a jury on December 14, 2001, awarded $3.3 million against a domestic insurer that allegedly defrauded its customers through a pattern or scheme of selling life insurance policies that it knew would cost more in future premiums than was represented. The policies were interest-sensitive policies that the insurer allegedly knew at the time of sale would not produce "vanishing" premiums. *Reversed on liability grounds, see Alfa Life Ins. Co. v. Green*, 881 So. 2d 987 (Ala. 2003). That alleged activity and the alleged culpability of the insurer in the present case -- misleading a consumer about the future cost of health insurance premiums -- is very similar. There likewise have been other examples of large verdicts involving alleged misrepresentations regarding future premiums, such as *Gallant v. Prudential Insurance Co.* (Circuit Court of Barbour County, Alabama, Civil Action No. CV-93-50, April 6, 1994) awarding $25 million for alleged misrepresentation of future premiums; and *Fenn v. Liberty Life Ins. Co.* (Circuit Court of Barbour County, Alabama, Civil Action No. CV-93-49, August 13, 1994), awarding $1 million over alleged misrepresentation of future interest rates on a universal life policy premium. It is noteworthy that Barbour/Bullock Counties of all state jurisdictions in the nation has earned a reputation for consistently returning some of the highest trial court jury awards. See attached articles. Recent verdicts in the Third Circuit have included $122 million; $3.5 million; $3.3 million; $3 million; and $180,000.

8

13.    As these authorities demonstrate, plaintiffs in Alabama may be awarded substantial damages for mental anguish and punitive damages even when their actual economic losses are relatively small. Accordingly, even where a plaintiff's actual economic loss may be relatively small, one may receive substantial awards from a jury for alleged mental anguish and punitive damages, which together may easily exceed this Court's jurisdictional threshold of $75,000.00. *See First Nat'l Bank of Boaz v. Fielder*, 590 So. 2d 893 (Ala. 1992), *overruled on other grounds by Life Ins. Co. of Georgia v. Smith*, 719 So. 2d 797 (Ala. 1998).

14.    Even if Plaintiffs had made a monetary demand in their prayer for relief for less than $75,000.00, a jury is not limited by the prayer for relief in a plaintiff's complaint. As the Supreme Court noted in *Barry v. Edmunds*, 116 U.S. 550 (1886), a case which is on point and still good authority:

> [N]othing is better settled than that, in such cases as the present, and other actions for torts where no precise rule of law fixes the recoverable damages, it is the peculiar function of the jury to determine the amount by their verdict.

The rule in Alabama is identical and *Alabama Rule of Civil Procedure* 54(c) (2005) expressly allows a jury to award damages in excess of the amount which may be stated in the Complaint. Rule 54(c) states in relevant part as follows:

> Except as to a party against whom a judgment is entered by default, every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in the party's pleadings.

Thus, a party's pleadings may not reflect the correct amount in controversy. As the United States Supreme Court set forth more than a hundred years ago, it is the peculiar function of juries to determine the amount of a plaintiff's damages even if the plaintiff has not demanded such relief in

its pleadings. Accordingly, it is by reference to jury awards in similar cases that one may determine the true amount in controversy in a case.

15. In addition to *Schiffer* and *Weatherly*, there are other post-*BMW* decisions by the Alabama Supreme Court which have upheld punitive damages in fraud cases in excess of $75,000.00, with examples such as *Orkin Exterminating Co. v. Jeter*, 832 So. 2d 25 (Ala. 2001) ($2,300,000.00); *Sparks v. Cash American International, Inc.*, 789 So. 2d 231 (Ala. 2000) ($300,000.00); and *Talent Tree Personnel Services, Inc. v. Fleenor*, 703 So. 2d 917 (Ala. 1997) ($1,800,000.00).

16. In light of the controlling case authorities from the United States Supreme Court and the Alabama Supreme Court, it appears that any claim of actual or compensatory damages (including mental anguish) in the amount of $18,750.00 or higher in this case would presumptively support a jury verdict of $75,000.00 or more, if the jury ruled in favor of the Plaintiffs. A recent empirical survey of every fraud case tried to a jury in Alabama during 2002-2004 demonstrates that plaintiffs win 80% of the cases with the "Average Verdict" exceeding $800,000.00. Alabama Jury Verdict Reporter, Year in Review 2004, p. 72 (2005). These data confirm the Rand Corporation's empirical findings about financial injury cases in Alabama as described in paragraph 15 above.

17. Given the factual allegations in this Complaint and based upon my experience as a practicing attorney, my review of the case precedents in Alabama of the last 20 years, and my research and study of United States Supreme Court, Alabama opinions, and other authorities as noted above, it is my opinion that this case certainly involves an amount in controversy greater than $75,000.00, and it clearly meets the "legal certainty" standard for concluding that the amount in controversy exceeds $75,000.00.

18.    My conclusions are limited solely to the amount in controversy in this action.  I offer no conclusions on the merits of Plaintiffs' claims or the defenses available to the Defendants that may ultimately preclude any recovery by Plaintiffs.

Further affiant sayeth not.

_____
FORREST S. LATTA

The foregoing instrument was sworn and subscribed before me by FORREST S. LATTA, who is personally known to me and who executed the foregoing instrument in my presence and acknowledged before me that he executed same.

Witness my hand and official seal in the County and State last aforesaid this _6th_ day of May, 2005.

_____
NOTARY PUBLIC

My Commission Expires:

_08/03/05_

11

Forrest S. Latta
Bowron, Latta & Wasden, P.C.
Colonial Bank Center, Suite 400
41 West I-65 Service Road North
Mobile, Alabama 36608

Mailing Address:    P. O. Box 16046, Mobile, Alabama 36616
Telephone:          251-344-5151
Facsimile:          251-344-9696
Email:          fsl@bowronlatta.com

Martindale Rating:    A-V

**Practice Areas:**    Insurance Litigation; Product Liability Litigation; Business Litigation; Appellate Litigation.

**Admitted:**    Alabama, 1983; U.S. Court of Appeals Eleventh Circuit, 1983; U.S. Supreme Court, 1987.

**Law School:**    Cumberland School of Law of Samford University, J.D., cum laude, 1983.

**College:**    Troy State University, B.S., summa cum laude, 1980.

**Member:**    Mobile and American Bar Associations; Alabama State Bar; American Law Firm Association (Corporate Secretary; Chairman of Insurance Law Practice Group); Alabama Defense Lawyers Association (Member: Board of Directors, 1996-1998; Amicus Curiae Committee); Product Liability Advisory Council; Defense Research Institute (Member, Life, Health and Disability Committee); Federation of Defense and Corporate Counsel.

**Biography:**    Born in Tuscaloosa, Alabama, December 28, 1957. Married to Katherine Morrow of Huntsville, Alabama. Educated in Dothan city schools. Graduate of Dothan High School, 1976. Employed in broadcasting and advertising 1973 - 1980; winner of two Associated Press Awards for news; Omicron Delta Kappa; Phi Kappa Phi. Associate Editor, Cumberland Law Review, 1981-1983. Member, Alabama Supreme Court Standing Committee on Rules of Appellate Procedure, 1991—. Member of Spring Hill Baptist Church (Chairman of Deacons 1995, 2001). Trustee, Baptist Foundation of Alabama.

## Program Speaker

Speaker, Civil Litigation Update, "Top Ten Things to Tell the Appellate Court About an Appeal of a Punitive Damages Verdict After State Farm v. Campbell," Cumberland CLE Seminar, December 19, 2004.

Speaker, "Through the Looking Glass: Trends in the Application and Interpretation of Additional Insured Endorsements," PLRB/LIRB/FDCC Seminar on "Critical Insurance Coverage Issues for Senior Insurance Executives and In-House Counsel", Chicago, IL September 27, 2004

Speaker, "Top Ten Things to Tell the Appellate Court on Appeal from Punitive Damages," Trial Attorneys of America, Chicago, IL, June 6, 2004.

Speaker, "Top Ten Things to Tell the Appellate Court on Appeal from Punitive Damages," Defense Trial Counsel of West Virginia, Roanoke, WV, May 20, 2004

Speaker, "Challenging Punitive Damages after *Campbell v. State Farm*," Federation of Defense and Corporate Counsel, Kona, Hawaii, March 12, 2004

Speaker, "Preventing Punitive Damages for Insurance Bad Faith Liability -- Lessons from *Campbell v. State Farm*," Eastern Claims Conference, New York, NY, March 1, 2004

Speaker, "To Hell and Back -- Update on Alabama's Legal Climate," Alabama Trial Lawyers Association, January 16, 2004

Speaker, "Fighting Plaintiff's Improper Attempts to Defeat Federal Jurisdiction," DRI Life/Health/Disability Litigation Seminar, Chicago, IL, April 11, 2003.

Speaker, "The Changing Role of Juries in Punitive Damages Cases," American Law Firm Association, Product Liability Seminar, Atlanta Ga., October 2002.

Speaker, "Writing to the Standard of Review," Appellate Practice Seminar, Mobile Bar Association CLE, February 15, 2002.

Speaker, "Punitive Damages: Where Are We Now," Cumberland "Hot Topics in Civil Litigation," Adams Mark Hotel, 12/15/2000.

Program Chair, "Addressing the Problems of the 90's," Insurance Law Practice Group, American Law Firm Association, Marriott Financial Center, New York, 1997.

Program Chair, Life, Health and Disability Insurance Litigation, DRI Annual Meeting, Hyatt San Francisco, 1998.

Program Chair, Life, Health and Disability Insurance Litigation, DRI, Hotel Intercontinental, Chicago 1998.

Tort Reform and Punitive Damages: The Defendant's Perspective, ABI/CLE "TRIAL ISSUES SEMINAR" December 7, 1990.

Program Chair, Litigating Class Action Issues, Cumberland CLE, 1997.

Program Chair, Litigating Class Action Issues, Cumberland CLE, 1996.

Speaker, "Defending Insurers from Punitive Damages Claims," International Claims Association Annual Convention, Toronto, Canada, 1996.

Speaker, "Defending Insurers from Punitive Damages Claims," DRI ERISA, Life, Health and Disability Litigation, Drake Hotel, Chicago, September 14, 1995.

Program Chair and Moderator, Litigating Insurance Coverage Issues, Cumberland CLE, October, 1994.

Speaker, "Should This Case Be Appealed? Evaluating the Appeal-Worthiness of a Trial Court Verdict," Effective Appellate Advocacy, Cumberland CLE, December 3, 1993.

Speaker, Update on Punitive Damages Law, Birmingham Bar Association "Punitive Damages Seminar," September 24, 1993.

Program Chair and Moderator, Litigating Insurance Coverage Issues, Cumberland CLE, May 1993.

Program Chair and Moderator, "Damages: Cutting-Edge Issues for the Trial Lawyer," Cumberland CLE Program, September 10, 1993.

Speaker, Recent Developments in Civil/Appellate Practice, Cumberland "Annual Recent Developments Seminar," December 17, 1992.

Speaker, Tort Reform Update, ABI/CLE Seminar on "Tort Law in Alabama: Are You Ready for the Changes?," October 22, 1992.

Speaker, Alabama Tort Reform: Is There Anything Left? Alabama Defense Lawyers Association, April 1, 1992.

Speaker, Update on Alabama Tort Reform Laws and Constitutional Challenges to Punitive Damages, Cumberland "Annual Recent Developments Seminar," December 6, 1991.

Speaker, The Status of Punitive Damages, "Fraud Litigation in Alabama," National Business Institute CLE Seminar, October 24, 1991.

Speaker, Alabama Tort Reform Laws and Punitive Damages, "Tort Reform Update" Seminar, Alabama Defense Lawyers Association, October 18, 1991.

M: 201255
SPEAKER

## List of Publications

"Observations on Appellate Challenges to Punitive Damage Awards after Campbell," 54 FDCC Quarterly 69 (Fall 2003)

"Redefining the Jury's Role in Punitive Damages Cases," 43 *For the Defense* 10 (Defense Research Institute, November 2001)

"The Changing Role of Juries in Punitive Damages Cases," ADLA Journal, November, 2001

"Punitive Damages in Alabama: Where are We Now?," December 2000 (published at www.BowronLatta.com).

"A New Day in Alabama for Insurers? (Alabama reduces punitive damages, but expands bad faith tort)" December 2000 (published at www.BowronLatta.com).

"Should This Case Be Appealed?", *The Alabama Lawyer*, Volume 60, No. 2 (March 1999)

"Defending Insurers from Punitive Damages Claims," *For the Defense*, Defense Research Institute, Volume 40, No. 5 (May 1998)(*Winner of the 1998 G. Duffield Smith Outstanding Publication Award, Defense Research Institute*)

"Will Alabama Ever Change Its Punishing Ways?" Legal Opinion Newsletter (Washington Legal Foundation, Vol 8, No. 10, May 1998);

*Large Punitive Damage Verdicts in Alabama 1994-95*, ALABAMA DEFENSE LAWYERS JOURNAL 19 (Oct. 1996)

*Large Punitive Damages Verdicts in Alabama 1982-1992*, ALABAMA DEFENSE LAWYERS JOURNAL 26 (Apr. 1993) .

"Alabama's Wrongful Death Statute -- A Problematic Existence", 40 Alabama Law Review 475 (1989)

"Punitive Damages: Anger, Frustration & Change", 4 Alabama Defense Lawyers Journal 12 (October 1988)

"Comment, Damages -- Future Inflation: The Impact of Culver v. Slater Boat," 13 Cumberland Law Review 517 (1983)

"Disregarding the Entities of Closely Held and Parent-Subsidiary Corporations in Alabama," 12 Cumberland Law Review 155 (1981).

Expert Testimony

*American Buildings Company v. Northfield Insurance Company, et al*, Circuit Court of Barbour County, Alabama, Case No. CV-00-048 (expert opinion on insurance coverage and bad faith)

*Owners Insurance Company v. Norrell Corporation*, Circuit Court of Mobile County, Alabama, Case No. CV-95-4224 (expert opinion on insurance coverage and bad faith)

*Sarah M. Ballard v. The Hartford, et al*, United States District Court, Middle District of Alabama, Northern Division, Case No. 00-S-1724-N (expert opinion on insurance coverage and bad faith)

*Ken Hoots, Terry Long and Bill Pace v. Duck Head Apparel Company, Inc.*, Circuit Court of Montgomery County, Alabama; Civil Action No. CV 92-561-PR (deposition and live testimony, expert opinion on excessiveness of punitive damages award)

*Stryker v. Phillips Petroleum*, Circuit Court of Washington County, Alabama; Civil Action No. CV-92-25-JRP. (live court testimony; expert opinion on excessive punitive damages award)

*Printella B. Jackson v. American Bankers Insurance Company of Florida, et al*, 976 F. Supp. 1450 (S.D. Ala. 1997) (affidavit; expert opinion on amount in controversy of claims in federal court)

*Evelyn W. Womack v. Magna Mortgage Company, et al*, United States District Court, Southern District of Alabama, Southern Division, Case No. 98-140-BH (affidavit on punitive damages)

*Norma Leggett v. Commercial Credit Corp., et al*, United States District Court, Southern District of Alabama, Southern Division, Case No. 97-1124-AH-M (affidavit on punitive damages)

*Evelyn Green v. The Independent Life and Accident Insurance Company, et al*, United States District Court, Southern District of Alabama, Southern Division, Case No. 98-0180-P-M (affidavit on punitive damages)

*John H. Hughes v. City Finance Company of Alabama, Inc., et al*, United States District Court, Northern District of Alabama, Western Division, Case No. 98-JEO-1630-W (affidavit on punitive damages)

*Carolyn Anderson v. City Finance Company of Alabama, Inc., et al*, United States District Court, Southern District of Alabama, Northern Division, Case No. 98-0504-RV-M (affidavit on punitive damages)

*Melody Frank v. American General Finance, Inc., et al*, United States District Court, Southern District of Alabama, Northern Division, Case No. 98-0489-BH (affidavit on punitive damages)

*Collie Burroughs v. Commercial Credit Corp., et al*, United States District Court, Southern District of Alabama, Southern Division, Case No. 97-1163-CB-M (affidavit on punitive damages)

*Jo Ann Gladney v. Commercial Credit Corp., et al*, United States District Court, Southern District of Alabama, Southern Division, Case No. 97-1164-CB-M (affidavit on punitive damages)

*Mary Lumpkin v. City Finance Company of Alabama, Inc.*, United States District Court, Southern District of Alabama, Northern Division, Case No. 98-0505-BH-C (affidavit on punitive damages)

*Franklin D. Lee v. Columbus Life Insurance Company, et al*, United States District Court, Southern District of Alabama, Southern Division, Case No. 97-1166-BH-C (affidavit on punitive damages)

*Thomas H. Godwin v. Columbus Life Insurance Company*, United States District Court, Southern District of Alabama, Southern Division, Case No. 97-1167-BH-C (affidavit on punitive damages)

*Thomas H. Godwin, as father and next friend of Sabrina Godwin, a minor, v. Columbus Life Insurance Company*, United States District Court, Southern District of Alabama, Southern Division, Case No. 97-1168-BH-C (affidavit on punitive damages)

*Linda S. Godwin v. Columbus Life Insurance Company*, United States District Court, Southern District of Alabama, Southern Division, Case No. 97-1169-BH-C (affidavit on punitive damages)

*Mary Germany, Jennifer Stanley and Joe Germany, Jr. v. The Columbus Mutual Life Insurance Company, et al*, United States District Court, Middle District of Alabama, Case No. 98-A-212-E (affidavit on punitive damages)

m: 201255
271930_1