## IN THE CIRCUIT COURT FOR MOBILE COUNTY, ALABAMA

LARRY AND CHERYL NICHOLS,    )
    )
    Plaintiffs,    )
    )
v.    )    Case No. CV04-4715
    )
MEGA LIFE AND HEALTH INSURANCE    )
COMPANY; UNITED INSURANCE    )
COMPANIES, INC. (d/b/a THE INSURANCE    )
CENTER, UGA - ASSOCIATION FIELD    )
SERVICES); UNITED GROUP SERVICE    )
CENTERS, INC.; UICI MARKETING, INC.;    )
SPECIALIZED ASSOCIATION SERVICES, INC.;    )
AMERICANS FOR FINANCIAL SECURITY;    )
GLENDA B. WOODALL; and FICTITIOUS    )
DEFENDANTS 1-20,    )
    )
    Defendants.    )

### COMPLAINT

COME NOW Plaintiffs Marilyn and Harris Wade and for their causes of action against the Defendants, MEGA Life and Health Insurance Company ("MEGA"); United Insurance Companies, Inc. ("UICI") (d/b/a The Insurance Center, UGA - Association Field Services); United Group Service Centers, Inc.; UICI Marketing, Inc.; Specialized Association Services, Inc. ("SAS"); Americans for Financial Security ("AFS"); Glenda B. Woodall and Fictitious Defendants 1-20, state as follows:

### I - PARTIES

1.    Plaintiffs Larry and Cheryl Nichols are adult residents of Mobile County, Alabama. Plaintiffs are the purchasers and holders of a health insurance certificate issued by

Defendant MEGA. Said certificate was issued under a purported "group association policy" issued to and "endorsed" by the AFS.

2.    Defendant MEGA is a foreign insurance company organized and existing under the laws of the State of Oklahoma. MEGA's principal place of business is located in the State of Texas. At all times alleged herein, MEGA was registered to do and actually doing business in the State of Alabama.

3.    Defendant UICI is a foreign corporation organized and existing under the laws of the State of Delaware. UICI does business as The Insurance Center and UGA - Association Field Services. The principal place of business of UICI is in the State of Texas.

4.    Defendant United Group Service Centers, Inc. is a foreign corporation organized and existing under the laws of the State of Texas. United Group Service Centers' principal place of business is in the State of Texas.

5.    Defendant UICI Marketing, Inc. is a foreign corporation organized and existing under the laws of the State of Delaware. UICI Marketing's principal place of business is in the State of Texas.

6.    Defendant Specialized Association Services, Inc. is a foreign corporation organized and existing under the laws of the State of Texas. Specialized Association Services' principal place of business is in the State of Texas.

7.    Defendant AFS is a foreign corporation organized and existing under the laws of the State of Delaware. AFS' principal place of business is in the State of Texas.

8.    Defendant Glenda B. Woodall is a resident and citizen of the State of Alabama. Woodall is sued individually and in her representative capacity as the agent and/or representative

- 2 -

of the named corporate defendants who "enrolled" Plaintiffs in AFS and procured the subject

MEGA health insurance.

9.      Fictitious Defendants 1-20 are unknown individuals, partnerships, corporations,

trusts or other legal entities which are subject to the jurisdiction of this Court and who have

participated and/or are continuing to participate in the scheme, fraud and other tortious acts

alleged herein. All named and fictitious defendants are sometimes collectively referred to herein

as "Defendants."

## II - JURISDICTION AND VENUE

10.      This court has jurisdiction over the instant matter pursuant to Ala. Code § 12-11-

30. Venue of this action is proper in this court pursuant to Ala. Code § 6-3-7 and Ala. R. Civ. P.

82.

## III - BACKGROUND

11.      This lawsuit arises from an "association/group trust" mass marketing and

administration scheme devised and employed by the Defendants to sell health insurance

coverage to the Plaintiffs. Pursuant to said scheme, the Defendants reap windfall profits from

the sale and administration of health insurance sold through the AFS at the expense of, and

without the knowledge of, the Plaintiffs. Said scheme involves (1) the illegal concealment and

non-disclosure by the Defendants if incestuous relationships among the corporate Defendants, as

well as mutual and intertwined ownership, establishment and control of the Defendant entities,

including AFS and MEGA, the insurance carrier whose products the supposed "independent"

"association" "endorses"; (2) the undisclosed transfer and application by the Defendants of AFS

"membership dues" and "initiation fees" to the insurance company whose products the AFS

"endorses," and application of "association fees" to premiums and the costs of insurance in

- 3 -

breach and violation of the terms of the contracts between the Defendants and Plaintiffs; (3) the establishment and administration of illusory or "dry" "trusts" and violation of trust duties to the Plaintiffs; and (4) use of deceitful, fraudulent and illegal rating and pooling practices as well as the "group/association" and "trust" relationships so established to reap ill-gotten gains for the Defendants at the expense of the Plaintiffs and to avoid effective regulation of Defendants' activities by various state departments of insurance throughout the nation; and (5) use of deceitful, fraudulent and illegal rating and pooling practices to single out sick individuals and/or create and exploit insurance "death spiral" situations under which the Defendants continually profit at the expense of, and direct damage to, an ongoing influx and turnover of health insurance purchasers including the Plaintiffs.

12.    Plaintiffs are the holders of a health insurance certificate issued by MEGA through the combined sales and marketing efforts of UICI, UICI Marketing, MEGA, United Group Service Centers, Specialized Association Services and AFS. The Plaintiffs' health insurance certificate was purported as "group association insurance" with a master policy being held in "trust" by a yet to be determined trustee and trust.

### IV - INTER-RELATION OF THE DEFENDANTS

13.    UICI is the parent and sole shareholder of both MEGA and UICI Marketing, Inc. UICI is principally owned and controlled by its Chairman, Ronald Jensen, and members of his immediate family, through ownership of Onward and Upward, Inc.  UICI is the ultimate surviving corporation of United Group Agencies, Inc., United Group Associates, Inc., United Group Trade Association, United Group Insurance Company and United Group Companies.

14.    According to documents filed with the Securities and Exchange Commission, UICI was established to provide a vehicle for insurance agents to accumulate wealth. This was

- 4 -

initially accomplished through a series of reinsurance agreements between UICI with AEGON whereby UICI coinsured health insurance policies issued by AEGON. In 1997, UICI assumed all policies of health insurance previously issued by AEGON and UICI began selling its own policies through its two principal subsidiaries, MEGA and MEGA National Life Insurance Company.

15.     At the time of the transactions giving rise to this lawsuit, UICI "group association" certificates issued through MEGA were administered by a centralized unincorporated division of UICI known as the Insurance Center. The Insurance Center handles the operational aspects of UICI's "group association" certificates including the design, underwriting, customer service, compliance, actuarial and risk management.

16.     Through its Self-Employed Agency Division, the UICI insurance operations concentrate on the sale of health insurance policies to self-employed individuals and small business people. The Self-Employed Agency Division includes the unincorporated UGA - Association Field Services which markets MEGA policies through a filed force to certain "association groups" established by officers and employees of UICI. AFS is an association through which UICI and MEGA market their policies.

17.     AFS purports to be an independent, not-for-profit association formed by and for the benefit of self-employed individuals, small business owners and other "entrepreneurs." AFS represents itself as independently researching, negotiating for, and endorsing unaffiliated health insurance carriers for the benefit of its association members.

18.     UICI and MEGA have formed a number of "trusts" for the sole purpose of being the named insured under AFS "group policies." Plaintiffs have not yet been able to determine the exact name of the "trust" which held the master policy from which they were issued a

- 5 -

"certificate" of coverage. Whatever its legal name or designation, the "trust" is deceptively named to create the impression that it acts in a fiduciary or "trustee" capacity for the benefit of association members in connection with the "group insurance policy." In fact, the "trust" either is a mere token entity formed solely for the purpose of acting as the "insured" under the "group policy," or exists solely to allow UICI and MEGA to completely control the insurance/insured relationship as to policyholders who purchase through AFS.

19.    It is believed that at the time of the transactions giving rise to this lawsuit, AFS was "managed" by Defendant Special Association Services, Inc. ("SAS") (between 1996 and July 1998, SAS was known as CORE Marketing, Inc.). SAS is wholly owned and controlled by Ronald Jensen and other members of his family through Onward and Upward, Inc. Onward and Upward, Inc. is a substantial stockholder in UICI and is considered a "related party" of UICI under SEC guidelines. SAS is operated by Jeff Jensen, Ronald Jensen's son, and Vernon R. Wolfe, a former office and director of UICI and MEGA.

20.    Defendant United Group Service Centers, Inc. is the entity responsible for training UICI agents. The offices of United Group Service Centers are the same as the officers of SAS.

21.    UICI, MEGA and AFS are under the common control and/or ownership and operate as a unified business argument. The arrangement is designed to create the impression that each entity operates independently. The AFS purports to be a non-profit association formed for the "self-employed" for the purpose of advancing the interests of "entrepreneur" and small business owners. In fact, AFS was formed, and is operated, by UICI and MEGA as a marketing tool and profit center for the insurance company defendants and their affiliated entities.

- 6 -

22.    UICI and MEGA maintain control over all health insurance products and benefits offered by the AFS. UICI and MEGA exert complete control or significant influence over the AFS' decisions regarding these products through their relationship with Specialized Association Management and the strategic placement of individuals associated with the UICI, MEGA and entities owned and controlled but the Jensen family on AFS board of directors and in officer level positions.

## V - THE DEFENDANTS' DECEPTIVE SCHEMES

### A.    The Marketing Scam

23.    UICI's wholly owned subsidiary, UICI Marketing, Inc., is the lead generation and advertising arm of the Defendants' nationwide sales scheme. UICI Marketing generates leads by using the AFS' supposedly independent endorsement of MEGA in internet advertising, print adds, signs, direct mail, and telemarketing. AFS' webpage conceals the fact that the only insurance company offered to AFS members is MEGA which is a financially related insurance carrier and jointly controlled along with the association.

24.    Once leads are generated, UICI Marketing provides them to UICI agents and bills AFS for generating the leads. At various times, UICI agents operated under as "Representatives" of UGA   Association Field Services. UICI agents are trained to approach potential leads as "association enrollers" and fellow self-employed individuals, not as insurance agents they in fact are.

25.    The UICI agent "enrollment applications" are actually insurance application forms. The agents collect the frost month's payment, including an "association initiation fee" (also known as an association registration fee), and "association dues," in additional to the first

- 7 -

month's premium payment. The "initiation fee" is represented to be a one time payment for joining AFS. In fact, the initiation or registration fee, as well as portions of the AFS "association dues," were treated by the Defendants as undisclosed premium payments. Said "association fees" or "dues" were, in fact, a cost of insurance assed by the Defendant insurance entities to premium payments.

26.     Defendants' association/group trust arrangements are designed to conceal the true nature of the business relationship between the supposedly independent association and the insurance carrier. The arrangement represents AFS as an independent entity that evaluates various insurance policies in order to obtain the best available "group insurance." In fact, the association, trust and insurance carrier are jointly owned and/or controlled and the only health insurance made available to AFS members are MEGA products.

27.     The Defendants conceal and do not disclose to purchasers like Plaintiffs the true relationship between the endorsing association (AFS) and the other Defendants in this case, including the insurance carrier whose products are being "endorsed." Defendants represent that the MEGA health insurance coverage is "endorsed" by AFS, which is presented by the Defendants as an independent association. Defendants, however, conceal and fail to disclose to the Plaintiffs the proprietary and control relationship existing between the "endorsing" association and the other Defendant entities that had formed and control the association. Defendants also conceal and fail to disclose the transfer among the Defendant entities of association "fees" and funds paid by Plaintiffs and other members.

**B.     Misappropriation of "Association Fees"**

28.     AFS and other Defendants represent that AFS is an independent, not for profit association formed by and for the benefit of self-employed individuals, entrepreneurs and small

- 8 -

business owners. In fact, AFS generates millions of dollars in profits which are funneled to the insurance-related Defendants and UICI-owned entities through (1) the payment of service fees on management agreements and (2) fraudulently concealed premium payments.

29.    The Defendants ensure that the association will be "not for profit" by transferring association funds to and among the other Defendants which maintain control over the association's accounts. All profits are removed from the association, thereby generating income for MEGA and UICI. The existence of such agreements among the Defendants is concealment from consumers like Plaintiffs. Said consumers are affirmatively denied the opportunity to discover the agreements by the terms of proxies drafted by the Defendants pursuant to which association members relinquish their right to obtain about the association's finances.

30.    UICI and MEGA's collection of association dues and initiation fees as concealed premium payments is in direct conflict with the language of the health insurance certificate issued to Plaintiffs. The certificate includes a "Certificate Schedule." The certificate states that premiums are based on "applicable table of premium rates." There is no provision in the certificate for inclusion of the initiation/registration fee or "association dues," of any part thereof, as premium payments. The Defendants' wrongfully application of association fees and dues constitutes a breach by MEGA and UICI of the contracts of insurance between MEGA and Plaintiffs.

C.    **Violation of Trust Duties**

31.    Pursuant to Defendants' "Association/Group Trust" marketing and administration scheme, MEGA issues master "group policies" to a trust which then issues certificates of coverage to participating individuals, like Plaintiffs. This procedure enables the insurance

company to insulate the insurer/insured relationship from the certificate holders (such as Plaintiffs here) so that MEGA and the "trust" may modify the coverage and otherwise bypass more stringent regulations applicable to individual health insurance policies.

32.    Plaintiffs here are the holders of a health insurance certificate to a purported "group association policy" held by a yet to be determined trustee and trust. MEGA, UICI and the other corporate Defendant have assumed the trustee's discretionary, fiduciary duties, including responsibilities for providing the management administration of the insurance programs for the AFS membership and performance such functions as may be necessary for the maintenance of said programs. MEGA, UICI and the other corporate Defendants misused and abuses the trust relationship by charging additional premiums, improperly transferring and applying association fees and dues, thereby preventing AFS participating members from gaining access to more beneficial and competitive insurance products.

33.    All of the Defendants have vastly superior knowledge and expertise regarding the terms and conditions of the insurance they were offering to Plaintiffs. Defendants also have vastly superior knowledge and expertise regarding the underlying facts relating to the premium charged, the methods for calculating premium increases for the "group," the compensation arrangements between and among the Defendants relating to coverage participants, the terms and conditions of the trust agreement, the duties and responsibilities as trustee, and the duties and obligations owed to trust beneficiaries like Plaintiffs.

34.    This course of conduct and the acts described in the preceding paragraphs of this Complaint, breached fiduciary duties owed by MEGA, UICI and the other corporate Defendants, said Defendants have assumed discretionary, fiduciary duties of a trustee and the trust by the acts alleged herein.

- 10 -

### D.    Fraudulent Rating and Pooling

35.    The Defendants created the association "group" trust products and materially suppressed and affirmatively concealed true and accurate information regarding the transactions between the Defendants and the Plaintiffs, as described above, for the intentional and specific purposes of (a) inducing the Plaintiffs to purchase an association membership and health insurance certificate and continue to renew said membership and certificate, and (b) providing Defendants with a mechanism which they believed would allow them to avoid insurance regulations in implementing fraudulent rating and pooling practices. Said actions were part of a calculated and conscious "death spiral" scheme on the part of the Defendants.

36.    The undisclosed application by the Defendants of the Plaintiffs' "association dues and fees" to offset premiums and costs of insurance in Plaintiffs' coverage helped enable the Defendants to illustrate and charge "teaser rates" which were artificially low and set at an amount below that which would be actuarially recommended. These "teaser rates" were utilized by the Defendants to induce customers into believing that the offered insurance was actually bargain priced as a result of AFS' "group negotiating power." Defendants knew at the time of sale that the premiums were artificially low and were less than those that would be required to carry the Plaintiffs' coverage over time.

37.    The "death spiral" sales methods employed by Defendants caused insureds with health problems to become isolated and eventually eliminated from the Defendants' book of business. Defendants designed their premiums such that they would escalate over time causing the coverage to become oppressively expensive and initiating the "death spiral." This was accomplished by isolating unhealthy insureds in a group or class which was closed to new members. Isolation of unhealthy insureds is an inappropriate and illegal pooling practice which

- 11 -

leads to exorbitant premium rates for the isolated insureds as a result of their health conditions and resulting medical claims.

38.    Prior to raising premiums, Defendants also had a pattern and practice of failing to inform insureds that the increases were planned, intended and for the specific purpose of raising the monthly payment to a point the unhealthy insureds could no longer afford and would be forced to let the policy lapse

39.    Also prior to raising premiums, Defendants failed to inform Plaintiffs, and other insureds, that Defendants' had collectively decided to constructively cancel all coverages under which insureds had made significant claims.

40.    In the end, each of Defendants intentionally and willfully concealed from Plaintiffs the true nature of the "group" trust health insurance that they purchased and such acts could not be determined by Plaintiffs' exercise of due diligence until shortly before filing this action.

41.    Plaintiffs "enrolled" in AFS on or around December 30, 2002. Plaintiffs' enroller was UGA – Association Field Services "Representative" Glenda B. Woodall.

42.    At the time of Plaintiffs' enrollment in AFS, which was also the date Plaintiffs applied for coverage with MEGA (because Plaintiffs were informed they were required to join and remain members of AFS before they could obtain the MEGA "group" health coverage), Woodall collected $646.00 for the "initial insurance premium, one-time association administration fee and current association dues...."

43.    Soon after the health coverage was procured, the premiums began to rise. The timing and amount of the premium increases contradicted the representations made by Woodall concerning the same.

- 12 -

44.    Plaintiffs made significant claims on the coverage in 2003 and 2004. As a result, the premiums continued to increase. A number of the claims submitted for payment were inexplicably denied.

45.    The Defendants also routinely changed the amounts of co-pays and deductibles, in contravention with the provisions of the "certificate" issued to Plaintiffs, as well as the representations of Woodall.

## VI - CAUSES OF ACTION

46.    Plaintiffs assert only state law claims in this Complaint and make no claims herein under the United States Constitution or any federal law. Additionally, none of the claims at issue are subject to federal preemption.

## COUNT ONE - BREACH OF FIDUCIARY AND TRUST DUTIES

47.    Plaintiffs hereby adopt and incorporate by reference all preceding paragraphs and further allege:

48.    Plaintiffs stand in a relationship of trust and confidence with AFS and MEGA, as well as the trust holding the master policy from which Plaintiffs were issued a "certificate." The above-described actions of the Defendants constitute a breach and violation of the fiduciary duties owed by Defendants to Plaintiffs.

49.    MEGA assumed management and control of the discretionary and fiduciary functions of AFS, including responsibilities for management and administration of the Plaintiffs' insurance coverage, thereby stepping into the shoes of fiduciaries and assuming fiduciary duties as to the Plaintiffs.

50.     MEGA misused and abused the relationship to charge additional premiums, improperly transfer and apply association fees and dues, and prevent AFS participating members from gaining access to competitive insurance products.

51.     Moreover, in light of the special relationship and fiduciary duties owned by Defendants to Plaintiffs, Plaintiffs were legally entitled to honest advice and full disclosure from Defendants and placed their trust in Defendants to, among other things: (a) select adequate and appropriate health insurance for him, (b) fully inform them of all material facts necessary to make a decision regarding health insurance, (c) to fully inform them of how Defendants would calculate their insurance premiums and premium adjustments, (d) to disclose the true nature of the purported "group" trust insurance in which they were to participate and (e) to fully inform Plaintiffs of the true relationship, including agreements, between and among the Defendants.  In short, Plaintiffs placed their trust in Defendants to help them make an important decision regarding their security, health and financial condition.

52.     To the extent that AFS may have lacked knowledge and information sufficient to disclose to Plaintiffs the facts described above, AFS had a fiduciary duty to inquire, investigate and determine, among other things; (a) the full and true nature of the relationship between the Defendants; (b) the full and true nature of Defendants' "group" trust health insurance policy, (c) the full and true nature and manner in which premiums and premium increases would be determined and/or calculated for Plaintiffs, (d) the facts that the health insurance policy they were marketing and selling to Plaintiffs was not a true group policy, and (e) the fact that once claims were made on the policy, premiums increases would begin to escalate, with the Defendants' intent, purpose and goal to make the policy so expensive that insureds would be no longer be able to afford the premiums and would be forced to let the policy lapse.

- 14 -

53.    In addition to the duties outlined above, AFS also had a fiduciary duty to (a) procure, hold, administer (whether directly or through an administrator), and manage the best, most suitable, health insurance possible for and on behalf of trust beneficiaries, including Plaintiffs, and (b) to select and appoint a trust administrator that would protect and serve the best interests of the trust beneficiaries and which would act exclusively for and on behalf of the trust beneficiaries, including Plaintiffs. AFS, as a fiduciary to Plaintiffs, also owed Plaintiffs a duty:

      a.    to be active in the performance of the trust;

      b.    to use reasonable care in instructing and supervising its co-fiduciaries, to whom fiduciary duties were delegated;

      c.    to make a reasonable investigation as to the honesty and efficiency of MEGA;

      d.    to adequately instruct, supervise and check the performance of the fiduciary duties and work delegated to MEGA;

      e.    to prevent MEGA from placing itself in a position where it could commit a breach of fiduciary duty and/or trust;

      f.    to act solely in the interest of the trust beneficiaries, including Plaintiffs, (i.e. to exercise a duty of loyalty);

      g.    to take measures, by suit or otherwise, to protect the trust beneficiaries from a breach of trust by the administrator and/or co-trustee;

      h.    to exercise reasonable prudence and care in employing, appointing, and supervising a trust administrator and/or co-trustee; and

      i.    to use ordinary skill and prudence.

54.    AFS and the other Defendants breached the above described duties and obligations. Such conduct and breaches were willful, wanton, negligent and/or reckless.

55.    As a direct, foreseeable and proximate result thereof, Plaintiffs were caused to suffer actual damages and will suffer such damages in the future.

## COUNT TWO - BREACH OF CONTRACT

56.    Plaintiffs hereby adopt and incorporate by reference all preceding paragraphs and further allege:

57.    Defendants entered into a contract with Plaintiffs whereby Defendants agreed to provide group health insurance coverage in consideration for the payment made by Plaintiffs of quoted monthly premiums. Said premiums were to be fairly calculated and determined on the basis of group experience and in accordance with the representations made to Plaintiffs throughout the insurance selection, procurement, application, provision, administration and management process.

58.    Plaintiffs preformed by paying the quoted monthly premiums.

59.    Defendants breached their contract with Plaintiffs by failing to perform as represented in the insurance certificate.

60.    Defendants further breached their contract with Plaintiffs by charging premiums substantially in excess of what the premiums would have been if they had been fairly calculated under the terms of the insurance certificate and in accordance with the representations made to Plaintiffs. Such dramatic premium increases deprived Plaintiffs of the benefit of their bargain and also constitute a constructive termination, or an attempt at the same, of the insurance contract without just cause as well as a breach of Defendants' contractual obligations of good faith and fair dealing.

- 16 -

61.    The transfer and misappropriation of association dues and fees to premiums also constitutes breach of contract.

62.    As a direct, foreseeable, and proximate result thereof, Plaintiffs were caused to suffer injuries and incur damages.

## COUNT THREE - FRAUDULENT SUPPRESSION

63.    Plaintiffs hereby adopt and incorporate by reference all preceding paragraphs and further allege:

64.    Throughout the insurance selection, procurement, and application process, Defendants willfully, wantonly, intentionally, recklessly, maliciously, negligently and/or innocently omitted the material facts described above to Plaintiffs.

65.    The facts were material and omitted by Defendants despite such knowledge or with a reckless disregard for whether such facts were material.

66.    Furthermore, Defendants had a duty of full disclosure to the Plaintiffs. As stated herein, Defendants failed to disclose material facts to Plaintiffs. Such non-disclosure constitutes fraudulent suppression.

67.    In reasonable reliance upon Defendants' representations, Plaintiffs acted as described above, purchased the "group" health insurance described above, and paid monthly premiums as agreed, joined AFS and continued to renew the AFS membership and the health insurance coverage.

68.    As a part of the Defendants' scheme, said facts were concealed from the Plaintiffs and not disclosed by the Defendants to the Plaintiffs at the time of sale or thereafter, although Defendants knew that said facts could justifiably and/or reasonably induce the Plaintiffs to refrain from purchasing the insurance coverage.

69.    The Defendants were under a duty to disclose said matters and the failure of the Defendants to disclose said facts to the Plaintiffs were wrongful.

70.    As a direct, foreseeable and proximate result thereof, Plaintiffs was caused to suffer actual damages and will suffer such damages in the future.

## COUNT FOUR - UNJUST ENRICHMENT

71.    Plaintiffs hereby adopt and incorporate by reference all preceding paragraphs and further allege:

72.    Through the above-described actions, Defendants obtained funds and profits from the Plaintiffs by fraud or other tortious conduct and the taking of undue advantage of the Plaintiffs.

73.    Said conduct and receipt of funds from Plaintiffs resulted in the unjust enrichment of the Defendants.

74.    As a direct, foreseeable and proximate result thereof, Plaintiffs were caused to suffer actual damages and will suffer such damages in the future.

## COUNT FIVE - CIVIL CONSPIRACY

75.    Plaintiffs hereby adopt and incorporate by reference all preceding paragraphs and further allege:

76.    Defendants have engaged in an unlawful conspiracy to breach fiduciary duties, breach contracts and to mislead Plaintiffs regarding, among other things, (a) the full and true nature of the relationship between the Defendants, (b) the full and true nature of Defendants trust "group" health coverage, (c) the full and true nature and manner in which premiums and premium increases would be determined and/or calculated for Plaintiffs, (d) the fact that the health insurance coverage marketed by Defendants was not a true group policy; (e) the fact that

- 18 -

premium increases could be affected by individual claims experience, and (f) the fact that once premium increases began, the Defendants' intent, purpose and goal was to make the coverage so expensive that Plaintiffs and other insureds would no longer be able to afford the premiums and thus be forced to let the policy lapse.

77.    Defendants also combined and joined in a concerted effort to formulate a fraudulent and deceitful marketing scheme which prevented Plaintiffs and others from discovering the true relationship of the related Defendants and their plans to extort and later share exorbitant fees and charges passed on to AFS participants.

78.    As a direct, foreseeable and proximate result thereof, Plaintiffs were caused to suffer actual damages and will suffer such damages in the future.

## COUNT SIX - FRAUD

79.    Plaintiffs hereby adopt and incorporate by reference all preceding paragraphs and further allege:

80.    Throughout the insurance selection, procurement, and application process, Defendants willfully, wantonly, intentionally, recklessly, maliciously, negligently and/or innocently misrepresented the material facts described above to Plaintiffs.

81.    The material misrepresentations described above and made by Defendants were false and were made with knowledge of their falsity or with a reckless disregard for whether such misrepresentations were true.

82.    Furthermore, Defendants had a duty of full disclosure to the Plaintiffs. As stated herein, Defendants failed to disclosure material facts to Plaintiffs. Such non disclosure constitutes material misrepresentation.

- 19 -

83.    In reasonable reliance upon Defendants' representations, Plaintiffs acted as described above, purchased the "group" health insurance described above, and paid monthly premiums as agreed.

84.    As a direct, foreseeable and proximate result thereof, Plaintiffs were caused to suffer actual damages and will suffer such damages in the future.

### COUNT SEVEN - BREACH OF IMPLIED CONTRACT TO PROCURE INSURANCE

85.    Plaintiffs hereby adopt and incorporate by reference all preceding paragraphs and further allege:

86.    Woodall and AFS had obligations to procure suitable, appropriate health insurance coverage for Plaintiffs.

87.    Woodall and AFS breached said duties evidenced by the above-described actions.

88.    As a direct and proximate result of Defendants' negligent acts and/or omissions, Plaintiffs have suffered damages.

### COUNT EIGHT - NEGLIGENCE

89.    Plaintiffs hereby adopt and incorporate by reference all preceding paragraphs and further allege:

90.    Defendants owed duties of diligence, due care, and fair dealings to Plaintiffs.

91.    Defendants breached such duties by engaging in the above-described tortious actions.

92.    As a direct and proximate result of Defendants' negligent acts and/or omissions, Plaintiffs have suffered damages.

### COUNT NINE - NEGLIGENCE PER SE

93.    Plaintiffs hereby adopt and incorporate by reference all preceding paragraphs and further allege:

94.    Defendants' actions constitute violations of Alabama insurance statutes and regulations governing rating and pooling practices for group health insurance. The statutes and regulations are designed to protect consumers like Plaintiffs from the rating and pooling practices employed by Defendants. As a result, Defendants are liable for negligence per se.

95.    As a direct and proximate result of Defendants' negligent acts and/or omissions, Plaintiffs have suffered damages.

### COUNT NINE - WANTONNESS

96.    Plaintiffs hereby adopt and incorporate by reference all preceding paragraphs and further allege:

97.    The above-described actions by Defendants constitute wanton behavior.

98.    As a proximate result of the wanton behavior by Defendants, Plaintiffs have suffered damages.

### COUNT TEN - CONVERSION

99.    Plaintiffs hereby adopt and incorporate by reference all preceding paragraphs and further allege:

100.   Through their tortious conduct, Defendants have wrongfully taken and detained money belonging to Plaintiffs.

101.   Such conversion has been committed intentionally, wantonly, and/or maliciously.

102.   As a direct, foreseeable and proximate result thereof, Plaintiffs were caused to suffer actual damages and will suffer such damages in the future.

### COUNT ELEVEN   BAD FAITH REFUSAL TO PAY

- 21 -

103.    Plaintiffs hereby adopt and incorporate by reference all preceding paragraphs and further allege:

104.    MEGA has refused to pay Plaintiffs the full amount owed under the health insurance coverage at issue.

105.    MEGA has no legitimate or arguable reason for refusing to pay Plaintiffs the full amount owed under the health insurance coverage at issue.

106.    MEGA has actual knowledge of the absence of any legitimate or arguable reason for refusing to pay Plaintiffs the full amount owed under the health insurance coverage at issue.

107.    MEGA has acted and is acting in bad faith in refusing to pay Plaintiffs the full amount owed under the health insurance coverage at issue.

108.    MEGA has a pattern and practice of refusing to pay similar claims that are properly payable.

109.    As a proximate cause of MEGA's bad faith refusal to pay the full amount owed under the health insurance coverage at issue, Plaintiffs have suffered damages, including economic damages and severe mental and emotional distress.

### COUNT TWELVE -- BAD FAITH REFUSAL TO INVESTIGATE

110.    Plaintiffs hereby adopt and incorporate by reference all preceding paragraphs and further allege:

111.    MEGA had a duty to diligently, fairly and properly investigate Plaintiffs' insurance claim before refusing to pay the full amount owed under the coverage.

112.    MEGA breached this duty and failed to diligently, fairly and properly investigate Plaintiffs' insurance claim before denying the benefits owed under the coverage.

- 22 -

113.   MEGA's failure to diligently, fairly and properly investigate was intentional and in bad faith.

114.   MEGA has a pattern and practice of intentionally refusing and failing to diligently, fairly and properly investigate similar insurance claims before denying benefits under identical and/or similar coverages.

115.   As a proximate cause of MEGA's bad faith failure and refusal to diligently, fairly and properly investigate Plaintiffs' health insurance claims, Plaintiffs have suffered damages, including economic damages and severe mental and emotional distress.

### VII - PRAYER FOR RELIEF

**WHEREFORE,** premises considered, Plaintiffs respectfully demand relief against Defendants, jointly, separately and severally, for compensatory and punitive damages, not to exceed $74,500, in the aggregate, for all claims under this lawsuit and for costs and interest.

*TRIAL BY STRUCK JURY IS HEREBY DEMANDED.*

Dated this 20th day of December, 2004.

Phillip W. McCallum
Robert G. Methvin, Jr.
James M. Terrell
Attorneys for Plaintiffs

- 23 -

**OF COUNSEL:**
McCallum & Methvin, P.C.
The Highland Building
2201 Arlington Avenue South
Birmingham, Alabama 35205

## PLEASE SERVE DEFENDANTS VIA CERTIFIED MAIL WITH A COPY OF THE SUMMONS, COMPLAINT AND DISCOVERY MATERIALS, AT:

MEGA Life and Health Insurance Company
c/o The Corporation Company
2000 Interstate Park Dr.
Suite 204
Montgomery, AL  36109


United Insurance Companies, Inc.
9151 Grapevine Hwy.
North Richland Hills, TX  76180


United Group Service Centers, Inc.
9151 Grapevine Hwy.
North Richland Hills, TX  76180


UICI Marketing, Inc.
9151 Grapevine Hwy.
North Richland Hills, TX  76180


Specialized Association Services, Inc.
2121 Precinct Line
North Richland Hills, TX  76180

Glenda Barton Woodall
61 11th Avenue
Chickasaw, Alabama 36611

Americans for Financial Security
c/o The Corporation Company
2000 Interstate Park Dr.
Suite 204
Montgomery, AL  36109