## IN THE CIRCUIT COURT FOR WALKER COUNTY, ALABAMA

| | |
|---|---|
| PATRICIA M. JACKSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CV·05·50 |
| | ) |
| MEGA LIFE AND HEALTH INSURANCE | ) |
| COMPANY; UNITED INSURANCE | ) |
| COMPANIES, INC. (d/b/a THE INSURANCE | ) |
| CENTER, UGA - ASSOCIATION FIELD | ) |
| SERVICES and ENROLLERS FOR THE | ) |
| NATIONAL ASSOCIATION FOR THE | ) |
| SELF-EMPLOYED); UNITED GROUP SERVICE | ) |
| CENTERS, INC.; UICI MARKETING, INC.; | ) |
| SPECIALIZED ASSOCIATION SERVICES, INC.; | ) |
| NASE GROUP INSURANCE TRUST FUND; | ) |
| NATIONAL ASSOCIATION FOR THE | ) |
| SELF-EMPLOYED; MARK HARDIN, | ) |
| FICTITIOUS DEFENDANTS 1-20, | ) |
| | ) |
| Defendants. | ) |

**FILED**

**JAN 2 0 2005**

*Annette B. Hampton*
CIRCUIT CLERK - WALKER COUNTY, AL

### <u>COMPLAINT</u>

COMES NOW Plaintiff Patricia M. Jackson and for her cause of action against the Defendants, MEGA Life and Health Insurance Company ("MEGA"); United Insurance Companies, Inc. ("UICI") (d/b/a The Insurance Center, UGA - Association Field Services and Enrollers For The National Association For The Self-Employed); United Group Service Centers, Inc.; UICI Marketing, Inc.; Specialized Association Services, Inc. ("SAS"); NASE Group Insurance Trust Fund; National Association For The Self-Employed ("NASE"); and Fictitious Defendants 1-20, state as follows:

## I - **PARTIES**

1.      Plaintiff Patricia M. Jackson is an adult resident of Walker County, Alabama. Plaintiff is the purchaser and former holder of a health insurance certificate issued by Defendant MEGA. Said certificate was issued under a purported "group association policy" issued to and "endorsed" by the NASE.

2.      Defendant MEGA is a foreign insurance company organized and existing under the laws of the State of Oklahoma.   MEGA's principal place of business is located in the State of Texas.  At all times alleged herein, MEGA was registered to do and actually doing business in the State of Alabama.

3.      Defendant UICI is a foreign corporation organized and existing under the laws of the State of Delaware.  UICI does business as The Insurance Center, UGA - Association Field Services, and Enrollers for the National Association for the Self-Employed.  The principal place of business of UICI is in the State of Texas.

4.      Defendant United Group Service Centers, Inc. is a foreign corporation organized and existing under the laws of the State of Texas.  United Group Service Centers' principal place of business is in the State of Texas.

5.      Defendant UICI Marketing, Inc. is a foreign corporation organized and existing under the laws of the State of Delaware.  UICI Marketing's principal place of business is in the State of Texas.

6.      Defendant Specialized Association Services, Inc. is a foreign corporation organized and existing under the laws of the State of Texas.  Specialized Association Services' principal place of business is in the State of Texas.

2

7.    Defendant NASE Group Insurance Trust Fund is a purported "trust" organized and existing under the laws of a yet-to-be-determined state.  At all times herein, NASE Group Insurance Trust Fund was conducting business in the State of Alabama.

8.    Defendant NASE is a foreign corporation organized and existing under the laws of the State of Texas.  NASE's principal place of business is in the State of Texas.

9.    Defendant Mark Hardin is an individual and resident of Alabama.  Mark Hardin is sued individually and in his representative capacity as the agent and/or representative of the named corporate defendants who "enrolled" plaintiff in NASE and procured the subject MEGA health insurance.

10.    Fictitious Defendants 1-20 are unknown individuals, partnerships, corporations or other legal entities which are subject to the jurisdiction of this Court and who have participated and/or are continuing to participate in the scheme, fraud and other tortious acts alleged herein. All named and fictitious defendants are sometimes collectively referred to herein as "Defendants."

## II - JURISDICTION AND VENUE

11.    This court has jurisdiction over the instant matter pursuant to Ala. Code § 12-11-30.  Venue of this action is proper in this court pursuant to Ala. Code § 6-3-7 and Ala. R. Civ. P. 82.

## III - BACKGROUND

12.    This lawsuit arises from an "association/group trust" mass marketing and administration scheme devised and employed by the Defendants to sell health insurance coverage to the Plaintiff.  Pursuant to said scheme, the Defendants reap windfall profits from the sale and administration of health insurance sold through the NASE at the expense of, and without

3

the knowledge of, the Plaintiff.  Said scheme involves (1) the illegal concealment and non-disclosure by the Defendants if incestuous relationships among the corporate Defendants, as well as mutual and intertwined ownership, establishment and control of the Defendant entities, including NASE and MEGA, the insurance carrier whose products the supposed "independent" "association" "endorses"; (2) the undisclosed transfer and application by the Defendants of NASE "membership dues" and "initiation fees" to the insurance company whose products the NASE "endorses," and application of "association fees" to premiums and the costs of insurance in breach and violation of the terms of the contracts between the Defendants and Plaintiff; (3) the establishment and administration of illusory or "dry" "trusts" and violation of trust duties to the Plaintiff; and (4) use of deceitful, fraudulent and illegal rating and pooling practices as well as the "group/association" and "trust" relationships so established to reap real millions of dollars of ill-gotten gains for the Defendants at the expense of the Plaintiff and to avoid effective regulation of Defendants' activities by various state departments of insurance throughout the nation; and (5) use of deceitful, fraudulent and illegal rating and pooling practices to single out sick individuals and/or create and exploit insurance "death spiral" situations  under which the Defendants continually profit at the expense of, and direct damage to, an ongoing influx and turnover of health insurance purchasers including the Plaintiff.

13.    Plaintiff is, or has been, the holder of a health insurance certificate issued by MEGA through the combined sales and marketing efforts of UICI, UICI Marketing, MEGA, United Group Service Centers, Specialized Association Services and the NASE. The Plaintiff's health insurance certificate was purported as "group association insurance" with a master policy being held in "trust" by the NASE Group Insurance Trust.

4

## IV - INTER-RELATION OF THE DEFENDANTS

14.     UICI is the parent and sole shareholder of both MEGA and UICI Marketing, Inc.

UICI is principally owned and controlled by its Chairman, Ronald Jensen, and members of his

immediate family, through ownership of Onward and Upward, Inc.   UICI is the ultimate

surviving corporation of United Group Agencies, Inc., United Group Associates, Inc., United

Group Trade Association, United Group Insurance Company and United Group Companies.

15.     According to documents filed with the Securities and Exchange Commission,

UICI was established to provide a vehicle for insurance agents to accumulate wealth.  This was

initially accomplished through a series of reinsurance agreements between UICI with AEGON

whereby UICI coinsured health insurance policies issued by AEGON.  In 1997, UICI assumed

all policies of health insurance previously issued by AEGON and UICI began selling its own

policies through its two principal subsidiaries, MEGA and MEGA National Life Insurance

Company.

16.     At the time of the transactions giving rise to this lawsuit, UICI "group

association" certificates issued through MEGA were administered by a centralized

unincorporated division of UICI known as the Insurance Center.  The Insurance Center handles

the operational aspects of UICI's "group association" certificates including the design,

underwriting, customer service, compliance, actuarial and risk management.

17.     Through its Self-Employed Agency Division, the UICI insurance operations

concentrate on the sale of health insurance policies to self-employed individuals and small

business people.  The Self-Employed Agency Division includes the unincorporated UGA -

Association Field Services which markets MEGA policies through a filed force to certain

"association groups" established by officers and employees of UICI. The principal association through which UICI and MEGA market their policies is the NASE.

18.    The NASE purports to be an independent, not-for-profit association formed by and for the benefit of self-employed individuals and small business owners. NASE represents itself as independently researching, negotiating for, and endorsing unaffiliated health insurance carriers for the benefit of its association members.

19.    The NASE was established in 1981 by insurance agent Keith Wood. Wood was Ronald Jensen's former business partner and co-owner of UICI. The NASE has remained since its formation under the control of UICI, its predecessors, and Jensen family owned businesses. The only health insurance policies ever endorsed by the NASE since its establishment have been products offered by or through Jensen-owned businesses.

20.    The NASE originated in Texas where state law prohibits the formation of an association solely for the purpose of marketing insurance, prohibits an association form marketing insurance unless it has been in existence for two years and requires that the consumer be informed of any relationships between the association and any insurance company endorsed by the association. The NASE was formed as a "shelf corporation" to be held two years and then transformed into an "Association" for the purpose of enrolling prospective purchasers "endorsed" health insurance products offered by UICI and Jensen-owned insurance sales entities.

21.    The NASE Group Trust was formed by UICI and MEGA for the sole purpose of being the named insured under the NASE "group policies." The "trust" is deceptively named to create the impression that it acts in a fiduciary or "trustee" capacity for the benefit of association members in connection with the "group insurance policy." In fact, the "trust" either is a mere token entity formed solely for the purpose of acting as the "insured" under the "group policy," or

6

exists solely to allow UICI and MEGA to completely control the insurance/insured relationship as to policyholders who purchase through the NASE.

22.    At the time of the transactions giving rise to this lawsuit, the NASE was "managed" by Defendant Special Association Services, Inc. ("SAS") (between 1996 and July 1998, SAS was known as CORE Marketing, Inc.). SAS is wholly owned and controlled by Ronald Jensen and other members of his family through Onward and Upward, Inc. Onward and Upward, Inc. is a substantial stockholder in UICI and is considered a "related party" of UICI under SEC guidelines. SAS is operated by Jeff Jensen, Ronald Jensen's son, and Vernon R. Wolfe, a former office and director of UICI and MEGA. Wolfe also currently serves as an undisclosed member of the NASE Board of Directors under the title of Assistant Treasurer and Secretary.

23.    Defendant United Group Service Centers, Inc. is the entity responsible for training UICI agents. The offices of United Group Service Centers are the same as the officers of SAS.

24.    UICI, MEGA and the NASE are under the common control and ownership and operate as a unified business argument. The arrangement is designed to create the impression that each entity operates independently. The NASE purports to be a non-profit association formed for the "self-employed" for the purpose of advancing the interests of small business owners. In fact, the NASE was formed, and is operated, by UICI and MEGA as a marketing tool and profit center for the insurance company defendants and their affiliated entities.

25.    UICI and MEGA maintain control over all health insurance products and benefits offered by the NASE. UICI and MEGA exert complete control or significant influence over the NASE's decisions regarding these products through their relationship with Specialized

Association Management and the strategic placement of individuals associated with the UICI, MEGA and entities owned and controlled but the Jensen family on the NASE board of directors and in officer level positions.

## V - <u>THE DEFENDANTS' DECEPTIVE SCHEMES</u>

### A.    The Marketing Scam

26.    UICI's wholly owned subsidiary, UICI Marketing, Inc., is the lead generation and advertising arm of the Defendants' nationwide sales scheme. UICI Marketing generates leads by using the NASE's supposedly independent endorsement of MEGA in internet advertising, print adds, signs, direct mail, and telemarketing.[1] Defendants' web advertising include the NASE web page at www.nase.org which invites viewers to "click here to request a free quote." When those links are initiated, a page appears captioned "NASE, Affordable Health Insurance" that states "the group negotiating power of NASE makes it possible to offer valuable benefits to our members. One of these benefits is access to health insurance. The NASE endorses several financially strong insurance carriers that offer a variety of products and plans customized to meet the special needs of the self-employed individual or small business owners." The NASE webpage conceals the fact that the only insurance company offered to NASE members is MEGA which is a financially related insurance carrier and jointly controlled along with the association.

27.    Once leads are generated, UICI Marketing provides them to UICI agents and bills NASE for generating the leads. At various times, UICI agents operated under the fictitious business name of "Enrollers of the National Association for the Self-Employed." This name

---

[1] The Defendants' print advertisements and direct mailings typically state "At Last Affordable Health & Life Insurance for the Self-Employed" though the NASE, and further provide 1-800 numbers to call. When the number is dialed, the caller is routed by UICI Marketing's telephone center to a local NASE Field Office and UICI agent.

appeared prominently throughout UICI filed offices across the country. These field offices are in fact, manned by insurance agents employed under contracts with UICI through its unincorporated sales division, UGA - Association Field Services. UICI agents are trained to approach potential leads as NASE Enrollers and fellow self-employed individuals, not as insurance agents they in fact are. Training sessions and agent newsletters by the Defendants emphasis the importance of NASE in the marketing of insurance, identifying the NASE as the "greatest selling machine on earth." Defendants' sales training tapes emphasize that "the NASE approach increases sakes and increases persistency."[2]

28.    The UICI agent "enrollment applications" are actually insurance application forms. The agents collect the frost month's payment, including an "association initiation fee" (also known as an association registration fee), and "association dues," in additional to the first month's premium payment. The "initiation fee" is represented to be a one time payment for joining the NASE. In fact, the initiation or registration fee, as well as portions of the NASE "association dues," were treated by the Defendants as undisclosed premium payments. Said "association fees" or "dues" were, in fact, a cost of insurance assed by the Defendant insurance entities to premium payments.

29.    Defendants' association/group trust arrangements are designed to conceal the true nature of the business relationship between the supposedly independent association and the insurance carrier. The arrangement represents the NASE as an independent entity that evaluates

---

[2] Defendants' training materials state: "If you position yourself properly, and again we've learned as a fellow self-employed person and NASE enroller, you're a lot more empathetic with them. You're an assistant buyer. You're a consultant to them and they appreciate that. And, you know, it feels like much lower pressure presentation. The whole temperature of a presentation is different, isn't it, if we're in there as a NASE enroller as opposed to an insurance agent." UICI agents are also furnished with brochures which emphasize NASE membership and its "endorsement" of MEGA.

9

various insurance policies in order to obtain the best available "group insurance." In fact, the association, trust and insurance carrier are jointly owned and/or controlled and the only health insurance made available to the NASE members are MEGA products.

30.    The Defendants conceal and do not disclose to purchasers like Plaintiff the true relationship between the endorsing association (NASE) and the other Defendants in this case, including the insurance carrier whose products are being "endorsed." Defendants represent that the MEGA health insurance coverage is "endorsed" by the NASE, which is presented by the Defendants as an independent association. Defendants, however, conceal and fail to disclose to the Plaintiff the proprietary and control relationship existing between the "endorsing" association and the other Defendant entities that had formed and control the association. Defendants also conceal and fail to disclose the transfer among the Defendant entities of association "fees" and funds paid by Plaintiff and other members.

**B.    Misappropriation of "Association Fees"**

31.    The NASE and other Defendants represent that the NASE is an independent, not for profit association formed by and for the benefit of self- employed individuals and small business owners. In fact, the NASE generates millions of dollars in profits which are funneled to the insurance-related Defendants and UICI-owned entities through (1) the payment of service fees on management agreements and (2) fraudulently concealed premium payments.

32.    The Defendants ensure that the association will be "not for profit" by transferring association funds to and among the other Defendants which maintain control over the association's accounts. All profits are removed from the association, thereby generating income for MEGA and UICI. The existence of such agreements among the Defendants is concealment from consumers like Plaintiff. Said consumers are affirmatively denied the opportunity to

10

discover the agreements by the terms of proxies drafted by the Defendants pursuant to which association members relinquish their right to obtain about the association's finances.[3]

33.    UICI and MEGA's collection of association dues and initiation fees as concealed premium payments is in direct conflict with the language of the health insurance certificate issued to Plaintiff. The certificate includes a "Certificate Schedule." The certificate states that premiums are based on "applicable table of premium rates." There is no provision in the certificate for inclusion of the initiation/registration fee or "association dues," of any part thereof, as premium payments. The Defendants' wrongfully application of association fees and dues constitutes a breach by MEGA and UICI of the contracts of insurance between MEGA and Plaintiff.

### C.    Violation of Trust Duties

34.    Pursuant to Defendants' "Association/Group Trust" marketing and administration scheme, MEGA issues master "group policies" to the NASE Group Trust which then issues certificates of coverage to participating individuals, like Plaintiff. This procedure enables the insurance company to insulate the insurer/insured relationship from the certificate holders (such as Plaintiff here) so that MEGA and the "trust" may modify the coverage and otherwise bypass more stringent regulations applicable to individual health insurance policies.

35.    Plaintiff here is, or has been, the holder of a health insurance certificate to a purported "group association policy" held by the NASE Group Trust. All NASE participating members, including Plaintiff, are trust beneficiaries under the NASE Group Trust. MEGA, UICI and the other corporate Defendants have assumed the trustee's discretionary, fiduciary duties,

---

[3] Unlike members of a legitimate associations, NASE members are not given notice or the opportunity to appear at regularly scheduled meetings or membership votes to elect leaders, or nor are they allowed to weigh-in on executive decisions.

including responsibilities for providing the management administration of the insurance programs for the NASE membership and performance such functions as may be necessary for the maintenance of said programs. MEGA, UICI and the other corporate Defendants misused and abuses the trust relationship by charging additional premiums, improperly transferring and applying association fees and dues, thereby preventing NASE participating members from gaining access to more beneficial and competitive insurance products.

36.     All of the Defendants have vastly superior knowledge and expertise regarding the terms and conditions of the insurance they were offering to Plaintiff. Defendants also have vastly superior knowledge and expertise regarding the underlying facts relating to the premium charged, the methods for calculating premium increases for the "group," the compensation arrangements between and among the Defendants relating to coverage participants, the terms and conditions of the trust agreement, the duties and responsibilities of NASE as trustee, and the duties and obligations owed to trust beneficiaries like Plaintiff.

37.     This course of conduct and the acts described in the preceding paragraphs of this Complaint, breached fiduciary duties owed by MEGA, UICI and the other corporate Defendants, said Defendants have assumed discretionary, fiduciary duties of a trustee and the trust by the acts alleged herein.

**D.      Fraudulent Rating and Pooling**

38.     The Defendants created the association "group" trust products and materially suppressed and affirmatively concealed true and accurate information regarding the transactions between the Defendants and the Plaintiff, as described above, for the intentional and specific purposes of (a) inducing the Plaintiff to purchase an association membership and health insurance certificate and continue to renew said membership and certificate, and (b) providing

12

Defendants with a mechanism which they believed would allow them to avoid insurance regulations in implementing fraudulent rating and pooling practices. Said actions were part of a calculated and conscious "death spiral" scheme on the part of the Defendants.

39.    The undisclosed application by the Defendants of the Plaintiff' "association dues and fees" to offset premiums and costs of insurance in Plaintiff's coverage helped enable the Defendants to illustrate and charge "teaser rates" which were artificially low and set at an amount below that which would be actuarially recommended. These "teaser rates" were utilized by the Defendants to induce customers into believing that the offered insurance was actually bargain priced as a result of NASE's "group negotiating power." Defendants knew at the time of sale that the premiums were artificially low and were less than those that would be required to carry the Plaintiff's coverage over time.

40.    The "death spiral" sales methods employed by Defendants caused insureds with health problems to become isolated and eventually eliminated from the Defendants' book of business. Defendants designed their premiums such that they would escalate over time causing the coverage to become oppressively expensive and initiating the "death spiral." This was accomplished by isolating unhealthy insureds in a group or class which was closed to new members. Isolation of unhealthy insureds is an inappropriate and illegal pooling practice which leads to exorbitant premium rates for the isolated insureds as a result of their health conditions and resulting medical claims.

41.    Prior to raising premiums, Defendants also had a pattern and practice of failing to inform insureds that the increases were planned, intended and for the specific purpose of raising the monthly payment to a point the unhealthy insureds could no longer afford and would be forced to let the policy lapse.

13

42.    Also prior to raising premiums, Defendants failed to inform Plaintiff, and other insureds, that Defendants' had collectively decided to constructively cancel all coverages under which insureds had made significant claims.

43.    In the end, each of Defendants intentionally and willfully concealed from Plaintiff the true nature of the "group" trust health insurance that he purchased and such acts could not be determined by Plaintiff's exercise of due diligence until shortly before filing this action.

44.    Plaintiff "enrolled" in NASE in or around February of 2003. Plaintiff's "enroller" was Mark Hardin.

45.    The time of Plaintiff's enrollment in NASE, which was also the date Plaintiff applied for coverage with MEGA (because Plaintiff was informed that she was required to join and remain a member of NASE before she could obtain the MEGA "group" health coverage), Hardin collected $389 for the base plan premium, riders, ancillary (vision) and association dues including a one time administration fee of $120.

46.    Soon after the health coverage was procured, the premiums began to rise. The timing and amount of the premium increases contradicted the representations made by Hardin concerning the same.

47.    Plaintiff made significant claims from the coverage in 2003 and 2004. As a result, the premiums continued to increase. A number of the claims submitted for payment were inexplicably denied.

48.    The Defendants also routinely changed the amounts of co-pays and deductibles in contravention with the provisions of the "certificate" issued to Plaintiff, as well as the representations of Hardin.

14

## VI - CAUSES OF ACTION

49.    Plaintiff asserts only state law claims in this Complaint and makes no claims
herein under the United States Constitution or any federal law. Additionally, none of the claims
at issue are subject to federal preemption.

### COUNT ONE - BREACH OF FIDUCIARY AND TRUST DUTIES

50.    Plaintiff hereby adopt and incorporate by reference all preceding paragraphs and
further alleges:

51.    Plaintiff stands in a relationship of trust and confidence with the NASE and
MEGA as well as the trust holding the master policy from which Plaintiff was issued a
certificate. The above-described actions of the Defendants constitute a breach and violation of
the fiduciary duties owed by Defendants to Plaintiff.

52.    MEGA assumed management and control of the discretionary and fiduciary
functions of NASE, including responsibilities for management and administration of the
Plaintiff's insurance coverage, thereby stepping into the shoes of fiduciaries and assuming
fiduciary duties as to the Plaintiff.

53.    MEGA misused and abused the relationship to charge additional premiums,
improperly transfer and apply association fees and dues, and prevent NASE participating
members from gaining access to competitive insurance products.

54.    Moreover, in light of the special relationship and fiduciary duties owed by
Defendants to Plaintiff, Plaintiff was legally entitled to honest advice and full disclosure from
Defendants and placed their trust in Defendants to, among other things: (a) select adequate and
appropriate health insurance for her, (b) fully inform her of all material facts necessary to make a
decision regarding health insurance, (c) to fully inform her of how Defendants would calculate

15

their insurance premiums and premium adjustments, (d) to disclose the true nature of the purported "group" trust insurance in which she was to participate and (e) to fully inform Plaintiff of the true relationship, including agreements, between and among the Defendants. In short, Plaintiff placed her trust in Defendants to help them make an important decision regarding their security, health and financial condition.

55.    To the extent that the NASE may have lacked knowledge and information sufficient to disclose to Plaintiff the facts described above, the NASE had a fiduciary duty to inquire, investigate and determine, among other things: (a) the full and true nature of the relationship between the Defendants; (b) the full and true nature of Defendants' "group" trust health insurance policy, (c) the full and true nature and manner in which premiums and premium increases would be determined and/or calculated for Plaintiff, (d) the facts that the health insurance policy they were marketing and selling to Plaintiff was not a true group policy, and (e) the fact that once claims were made on the policy, premiums increases would begin to escalate, with the Defendants' intent, purpose and goal to make the policy so expensive that insureds would be no longer be able to afford the premiums and would be forced to let the policy lapse.

56.    In addition to the duties outlined above, NASE also had a fiduciary duty to (a) procure, hold, administer (whether directly or through an administrator), and manage the best, most suitable, health insurance possible for and on behalf of trust beneficiaries, including Plaintiff, and (b) to select and appoint a trust administrator that would protect and serve the best interests of the trust beneficiaries and which would act exclusively for and on behalf of the trust beneficiaries, including Plaintiff. NASE, as a fiduciary to Plaintiff, also owed Plaintiff a duty:

        a.    to be active in the performance of the trust;

16

        b.      to use reasonable care in instructing and supervising its co-fiduciaries, to whom fiduciary duties were delegated;

        c.      to make a reasonable investigation as to the honesty and efficiency of MEGA;

        d.      to adequately instruct, supervise and check the performance of the fiduciary duties and work delegated to MEGA;

        e.      to prevent MEGA from placing itself in a position where it could commit a breach of fiduciary duty and/or trust;

        f.      to act solely in the interest of the trust beneficiaries, including Plaintiff, (i.e. to exercise a duty of loyalty);

        g.      to take measures, by suit or otherwise, to protect the trust beneficiaries from a breach of trust by the administrator and/or co-trustee;

        h.      to exercise reasonable prudence and care in employing, appointing, and supervising a trust administrator and/or co-trustee; and

        i.      to use ordinary skill and prudence.

57.      NASE and the other Defendants breached the above-described duties and obligations. Such conduct and breaches were willful, wanton, negligent and/or reckless.

58.      As a direct, foreseeable and proximate result thereof, Plaintiff was caused to suffer actual damages and will suffer such damages in the future.

## COUNT TWO - BREACH OF CONTRACT

59.      Plaintiff hereby adopts and incorporates by reference all preceding paragraphs and further alleges:

17

60.     Defendants entered into a contract with Plaintiff whereby Defendants agreed to provide group health insurance coverage in consideration for the payment made by Plaintiff of quoted monthly premiums. Said premiums were to be fairly calculated and determined on the basis of group experience and in accordance with the representations made to Plaintiff throughout the insurance selection, procurement, application, provision, administration and management process.

61.     Plaintiff preformed by paying the quoted monthly premiums.

62.     Defendants breached their contract with Plaintiff by failing to perform as represented in the insurance certificate.

63.     Defendants further breached their contract with Plaintiff by charging premiums substantially in excess of what the premiums would have been of they had been fairly calculated under the terms of the insurance certificate and in accordance with the representations made to Plaintiff. Such dramatic premium increases deprived Plaintiff of the benefit of their bargain and also constitute a constructive termination, or an attempt at the same, of the insurance contract without just cause as well as a breach of Defendants' contractual obligations of good faith and fair dealing.

64.     The transfer and misappropriation of association dues and fees to premiums also constitutes breach of contract.

65.     As a direct, foreseeable, and proximate result thereof, Plaintiff was caused to suffer injuries and incur damages.

## COUNT THREE - FRAUDULENT SUPPRESSION

66.     Plaintiff hereby adopts and incorporates by reference all preceding paragraphs and further alleges:

18

67.    Throughout the insurance selection, procurement, and application process, Defendants willfully, wantonly, intentionally, recklessly, maliciously, negligently and/or innocently omitted the material facts described above to Plaintiff.

68.    The facts were material and omitted by Defendants despite such knowledge or with a reckless disregard for whether such facts were material.

69.    Furthermore, Defendants had a duty of full disclosure to the Plaintiff. As stated herein, Defendants failed to disclose material facts to Plaintiff. Such non-disclosure constitutes fraudulent suppression.

70.    In reasonable reliance upon Defendants' representations, Plaintiff acted as described above, purchased the "group" health insurance described above, and paid monthly premiums as agreed, joined the NASE and continued to renew the NASE membership and the health insurance coverage.

71.    As a part of the Defendants' scheme, said facts were concealed from the Plaintiff and not disclosed by the Defendants to the Plaintiff at the time of sale or thereafter, although Defendants knew that said facts could justifiably and/or reasonably induce the Plaintiff to refrain from purchasing the insurance coverage.

72.    The Defendants were under a duty to disclose said matters and the failure of the Defendants to disclose said facts to the Plaintiff was wrongful.

73.    As a direct, foreseeable and proximate result thereof, Plaintiff was caused to suffer actual damages and will suffer such damages in the future.

### COUNT FOUR - UNJUST ENRICHMENT

74.    Plaintiff hereby adopts and incorporates by reference all preceding paragraphs and further alleges:

19

75.    Through the above-described actions, Defendants obtained funds and profits from the Plaintiff by fraud or other tortious conduct and the taking of undue advantage of the Plaintiff.

76.    Said conduct and receipt of funds from Plaintiff resulted in the unjust enrichment of the Defendants.

77.    As a direct, foreseeable and proximate result thereof, Plaintiff was caused to suffer actual damages and will suffer such damages in the future.

### COUNT FIVE - CIVIL CONSPIRACY

78.    Plaintiff hereby adopts and incorporate by reference all preceding paragraphs and further alleges:

79.    Defendants have engaged in an unlawful conspiracy to breach fiduciary duties, breach contracts and to mislead Plaintiff regarding, among other things, (a) the full and true nature of the relationship between the Defendants, (b) the full and true nature of Defendants trust "group" health coverage, (c) the full and true nature and manner in which premiums and premium increases would be determined and/or calculated for Plaintiff, (d) the fact that the health insurance coverage marketed by Defendants was not a true group policy; (e) the fact that premium increases could be affected by individual claims experience, and (f) the fact that once premium increases began, the Defendants' intent, purpose and goal was to make the coverage so expensive that Plaintiff and other insureds would no longer be able to afford the premiums and thus be forced to let the policy lapse.

80.    Defendants also combined and joined in a concerted effort to formulate a fraudulent and deceitful marketing scheme which prevented Plaintiff and others from discovering the true relationship of the related Defendants and their plans to extort and later share exorbitant fees and charges passed on to NASE participants.

20

81.    As a direct, foreseeable and proximate result thereof, Plaintiff was caused to suffer actual damages and will suffer such damages in the future.

## COUNT SIX - FRAUD

82.    Plaintiff hereby adopts and incorporates by reference all preceding paragraphs and further alleges:

83.    Throughout the insurance selection, procurement, and application process, Defendants willfully, wantonly, intentionally, recklessly, maliciously, negligently and/or innocently misrepresented the material facts described above to Plaintiff.

84.    The material misrepresentations described above and made by Defendants were false and were made with knowledge of their falsity or with a reckless disregard for whether such misrepresentations were true.

85.    Furthermore, Defendants had a duty of full disclosure to the Plaintiff. As stated herein, Defendants failed to disclosure material facts to Plaintiff.  Such non-disclosure constitutes material misrepresentation.

86.    In reasonable reliance upon Defendants' representations, Plaintiff acted as described above, purchased the "group" health insurance described above, and paid monthly premiums as agreed.

87.    As a direct, foreseeable and proximate result thereof, Plaintiff was caused to suffer actual damages and will suffer such damages in the future.

## COUNT SEVEN - BREACH OF IMPLIED CONTRACT TO PROCURE INSURANCE

88.    Plaintiff hereby adopts and incorporates by reference all preceding paragraphs and further alleges:

89.     Hardin and the NASE had obligations to procure suitable, appropriate health insurance coverage for Plaintiff.

90.     Harden and the NASE breached said duties evidenced by the above-described actions.

91.     As a direct and proximate result of Defendants' negligent acts and/or omissions, Plaintiff has suffered damages.

### COUNT EIGHT - NEGLIGENCE

92.     Plaintiff hereby adopts and incorporates by reference all preceding paragraphs and further alleges:

93.     Defendants owed duties of diligence, due care, and fair dealings to Plaintiff.

94.     Defendants breached such duties by engaging in the above-described tortious actions.

95.     As a direct and proximate result of Defendants' negligent acts and/or omissions, Plaintiff has suffered damages.

### COUNT NINE - NEGLIGENCE PER SE

96.     Plaintiff hereby adopts and incorporates by reference all preceding paragraphs and further alleges:

97.     Defendants' actions constitute violations of Alabama insurance statutes and regulations governing rating and pooling practices for group health insurance. The statutes and regulations are designed to protect consumers like Plaintiff from the rating and pooling practices employed by Defendants. As a result, Defendants are liable for negligence per se.

98.     As a direct and proximate result of Defendants' negligent acts and/or omissions, Plaintiff has suffered damages.

22

## COUNT NINE - WANTONNESS

99.    Plaintiff hereby adopts and incorporates by reference all preceding paragraphs and further allege:

100.    The above-described actions by Defendants constitute wanton behavior.

101.    As a proximate result of the wanton behavior by Defendants, Plaintiff has suffered damages.

## COUNT TEN - CONVERSION

102.    Plaintiff hereby adopts and incorporates by reference all preceding paragraphs and further alleges:

103.    Through their tortious conduct, Defendants have wrongfully taken and detained money belonging to Plaintiff.

104.    Such conversion has been committed intentionally, wantonly, and/or maliciously.

105.    As a direct, foreseeable and proximate result thereof, Plaintiff was caused to suffer actual damages and will suffer such damages in the future.

## COUNT ELEVEN – BAD FAITH REFUSAL TO PAY

106.    Plaintiff hereby adopts and incorporates by reference all preceding paragraphs and further alleges:

107.    MEGA has refused to pay Plaintiff the full amount owed under the health insurance coverage at issue.

108.    MEGA has no legitimate or arguable reason for refusing to pay Plaintiff the full amount owed under the health insurance coverage at issue.

109.    MEGA has actual knowledge of the absence of any legitimate or arguable reason for refusing to pay Plaintiff the full amount owed under the health insurance coverage at issue.

23

110.    MEGA has acted and was acting in bad faith in refusing to pay Plaintiff the full amount owed under the health insurance coverage at issue.

111.    MEGA has a pattern and practice refusing to pay similar claims that are properly payable.

112.    As a proximate cause of MEGA's bad faith refusal to pay the full amount owed under the health insurance coverage at issue, Plaintiff has suffered damages, including economic damages and severe mental and emotional distress.

## COUNT TWELVE – BAD FAITH REFUSAL TO INVESTIGATE

113.    Plaintiff hereby adopts and incorporates by reference all preceding paragraphs and further alleges:

114.    MEGA has agreed to diligently, fairly and properly investigate Plaintiff's insurance claim before refusing to pay the full amount owed under the coverage.

115.    MEGA breached this duty and failed to fairly and properly investigate Plaintiff's insurance claim before denying the benefits owed under the coverage.

116.    MEGA's failure to diligently, fairly and properly investigate was intentional and in bad faith.

117.    MEGA has a pattern and practice of intentionally refusing and failing to diligently, fairly and properly investigate similar insurance claims before denying benefits under identical or similar coverages.

118.    As a proximate cause of MEGA's bad faith failure and refusal to diligently, fairly and properly investigate Plaintiff's health insurance claims, Plaintiff has suffered damages, including economic damages and severe mental and emotional distress.

24

## VII.- PRAYER FOR RELIEF

**WHEREFORE,** premises considered, Plaintiff respectfully demands relief against Defendants, jointly, separately and severally for compensatory and punitive damages, not to exceed $74,500, in the aggregate for all claims in this lawsuit and for costs and interest.

### *TRIAL BY STRUCK JURY IS HEREBY DEMANDED.*

Dated this ___18th___ day of ___January___, 2005.



Phillip W. McCallum (MCC063)
James M. Terrell (TER015)

Attorneys for Plaintiff

**OF COUNSEL:**

**MCCALLUM & METHVIN, P.C.**
The Highland Building
2201 Arlington Avenue South
Birmingham, Alabama 35205
Telephone: (205) 939-3006
Facsimile: (205) 939-0399

25

**PLEASE SERVE DEFENDANTS WITH A COPY OF THE SUMMONS AND
COMPLAINT, ALONG WITH ALL DISCOVERY MATERIALS, CERTIFIED MAIL
AT:**

MEGA Life and Health Insurance Company
c/o The Corporation Company
2000 Interstate Park Dr.
Suite 204
Montgomery, AL  36109


United Insurance Companies, Inc.
9151 Grapevine Hwy.
North Richland Hills, TX  76180


United Group Service Centers, Inc.
9151 Grapevine Hwy.
North Richland Hills, TX  76180


UICI Marketing, Inc.
9151 Grapevine Hwy.
North Richland Hills, TX  76180


Specialized Association Services, Inc.
2121 Precinct Line
North Richland Hills, TX  76180


NASE Group Insurance Trust Fund
c/o The Corporation Company
2000 Interstate Park Dr.
Suite 204
Montgomery, AL  36109


National Association For The Self-Employed ("NASE")
c/o The Corporation Company
2000 Interstate Park Dr.
Suite 204
Montgomery, AL  36109



CERTIFIED MAIL

Walker County Circuit Court Clerk
Walker
19017
Jasper,

7002 0510 0001 1001 2138

Mega Life & Health Ins. Company
c/o The Corporation Company
2000 Interstate Park Drive, Suite 204
Montgomery, AL 36109

W G & M LLP        16:37     FEB-03-2005