## IN THE CIRCUIT COURT FOR SUMTER COUNTY, ALABAMA

| | |
|---|---|
| **MARILYN AND HARRIS WADE,** | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| **v.** | ) **Case No.** _CV-05-14_ |
| | ) |
| **MEGA LIFE AND HEALTH INSURANCE** | ) |
| **COMPANY; UNITED INSURANCE** | ) |
| **COMPANIES, INC. (d/b/a THE INSURANCE** | ) |
| **CENTER, UGA - ASSOCIATION FIELD** | ) |
| **SERVICES and ENROLLERS FOR THE** | ) |
| **NATIONAL ASSOCIATION FOR THE** | ) |
| **SELF-EMPLOYED); UNITED GROUP SERVICE** | ) |
| **CENTERS, INC.; UICI MARKETING, INC.;** | ) |
| **SPECIALIZED ASSOCIATION SERVICES, INC.;** | ) |
| **NASE GROUP INSURANCE TRUST FUND;** | ) |
| **NATIONAL ASSOCIATION FOR THE** | ) |
| **SELF-EMPLOYED; FICTITIOUS** | ) |
| **DEFENDANTS 1-20,** | ) |
| | ) |
| **Defendants.** | ) |

FILED

FEB 9 2005

ODESSA B. MACK
CIRCUIT CLERK
SUMTER COUNTY, AL

## **COMPLAINT**

COME NOW Plaintiffs Marilyn and Harris Wade, individually and on behalf of all others similarly situated, and bring this Complaint against the Defendants, MEGA Life and Health Insurance Company ("MEGA"); United Insurance Companies, Inc. ("UICI") (d/b/a The Insurance Center, UGA - Association Field Services and Enrollers For The National Association For The Self-Employed); United Group Service Centers, Inc.; UICI Marketing, Inc.; Specialized Association Services, Inc. ("SAS"); NASE Group Insurance Trust Fund; National Association For The Self-Employed ("NASE"); and Fictitious Defendants 1-20, state as follows:

## I - PRELIMINARY STATEMENT

1.      This action is brought individually and as a putative class action on behalf of the named plaintiffs, Marilyn and Harris Wade, and all individuals in the United States who, within the last ten years purchased a "group" health insurance certificate from Defendant MEGA.

2.      Plaintiffs and putative Class Members, by and through their attorneys, allege facts herein upon information and belief, except as to allegations specifically pertaining to Plaintiffs and their counsel, which allegations are based upon personal knowledge, and except as to allegations based upon documents, and based upon the facts alleged below, which are predicated upon Plaintiffs' counsel's investigation.

## II - PARTIES

3.      Plaintiffs Marilyn and Harris Wade are adult residents of Sumter County, Alabama. Plaintiffs are the purchasers and former holders of a health insurance certificate issued by Defendant MEGA. Said certificate was issued under a purported "group association policy" issued to and "endorsed" by the NASE.

4.      Defendant MEGA is a foreign insurance company organized and existing under the laws of the State of Oklahoma. MEGA's principal place of business is located in the State of Texas. At all times alleged herein, MEGA was registered to do and actually doing business in the State of Alabama.

5.      Defendant UICI is a foreign corporation organized and existing under the laws of the State of Delaware. UICI is the holding company of MEGA and does business as The Insurance Center, UGA - Association Field Services, and Enrollers for the National Association for the Self-Employed. The principal place of business of UICI is in the State of Texas.

2

6.    Defendant United Group Service Centers, Inc. is a foreign corporation organized and existing under the laws of the State of Texas. United Group Service Centers' principal place of business is in the State of Texas.

7.    Defendant UICI Marketing, Inc. is a foreign corporation organized and existing under the laws of the State of Delaware. UICI Marketing's principal place of business is in the State of Texas.

8.    Defendant Specialized Association Services, Inc. is a foreign corporation organized and existing under the laws of the State of Texas. Specialized Association Services' principal place of business is in the State of Texas.

9.    Defendant NASE Group Insurance Trust Fund is a purported "trust" organized and existing under the laws of a yet-to-be-determined state. At all times herein, NASE Group Insurance Trust Fund was conducting business in the State of Alabama.

10.    Defendant NASE is a foreign corporation organized and existing under the laws of the State of Texas. NASE's principal place of business is in the State of Texas.

11.    There may be other entities whose true names and identities are unknown to Plaintiffs at this time who may be legally responsible for the claim(s) set forth herein who may be added by amendment by the Plaintiffs when their true names and identities are accurately ascertained by further discovery. Until that time, the Plaintiffs will designate these parties in accordance with Rule 9(h) of the Alabama Rules of Civil Procedure. The word "entity" as used herein is intended to refer to and include all legal entities, including individual persons, any and all forms of partnerships, and any and all types of corporations and unincorporated associations. The symbol by which these party defendants are designated is intended to include more than one entity in the event that discovery reveals that the descriptive characterization of the symbol

3

applies to more than one "entity." Defendants as set out in the complaint, refers not only to named defendants but also to fictitious party defendants. In the present action, the party defendants which the Plaintiffs must include by descriptive characterization are as follows:

(a)    Defendant "A" whether singular or plural, being the correct legal name of defendants;

(b)    Defendant "B" whether singular or plural, being that individual or entity who or which conspired to defraud Plaintiffs, and/or who entered in a scheme to defraud Plaintiffs and/or who or which became unjustly enriched at the expense of Plaintiffs;

(c)    Defendant "C" whether singular or plural, being that individual or entity whose wrongful conduct caused the Plaintiffs to incur damages and sustain injuries and/or mental anguish as a result thereof;

(d)    Defendant "D" being the corporation, firm, association or other entity who entered into any and all agreements with Defendant MEGA, both named and fictitious, regarding the selling and purchasing of group health insurance;

(e)    Defendant "E" whether singular or plural, being that person, firm, agency, association, partnership, corporation or other legal entity which committed the misrepresentations of material facts, fraud, suppression, failure to disclose, deceit, fraudulent deceit and/or other acts alleged in Plaintiffs' Complaint;

(f)    Defendant "F" whether singular or plural, being that individual or entity whose breach of contract proximately caused the Plaintiffs to incur economic losses which resulted in substantial damages pursuant to said contractual breach;

(g)    Defendant "G" whether singular or plural, being that person, firm, agency, association, partnership, corporation or other legal entity who or which participated in the fraudulent conduct complained of, thereby causing Plaintiffs' injuries and damages;

(h)    Defendant "H" whether singular or plural, being that person, firm, agency, association, partnership, corporation or other legal entity who ratified, confirmed or adopted the actions of above named defendants and/or fictitiously described party defendants as described herein the transactions culminating in the fraudulent and/or wrongful acts which made the basis of Plaintiffs' Complaint;

(i)    Defendant "I" whether singular or plural, being that entity or those entities, other than those entities previously described herein which is the predecessor in interest of any of the entities described above;

(j)    Defendant "J" whether singular or plural, being that entity or those entities, other than those entities previously described herein which is the successor in interest of

4

any of the entities described above;

      (k)   Defendant "K" whether singular or plural, being that person, firm, or entity whose names are unknown to the Plaintiffs at this time but will be added by amendment when ascertained;

      (l)   Defendant "L" an individual or corporation, whether singular or plural, being that person, firm, or entity who is the alter ego or the predecessor or successor in interest to any of the above-named fictitious defendants;

      (m)   Defendant "M" whether singular or plural, being that person, firm, agency association, partnership, corporation or other legal entity whose negligent acts and/or omissions caused and/or contributed to the Plaintiffs' damages.

### III - JURISDICTION AND VENUE

12.    This court has jurisdiction over the instant matter pursuant to Ala. Code § 12-11-30. Venue of this action is proper in this court pursuant to Ala. Code § 6-3-7 and Ala. R. Civ. P. 82.

### IV – CLASS CLAIMS BACKGROUND

13.    This Class Action lawsuit arises from Defendants' fraudulent rating and pooling practices on purportedly "association/group trust" health insurance coverage. The Defendants created the association "group" trust products and materially suppressed and affirmatively concealed true and accurate information regarding the transactions between the Defendants and the Plaintiffs, as described above, for the intentional and specific purposes of (a) inducing the Plaintiffs to purchase an association membership and health insurance certificate and continue to renew said membership and certificate, and (b) providing Defendants with a mechanism which they believed would allow them to avoid insurance regulations in implementing fraudulent rating and pooling practices. Said actions were part of a calculated and conscious "death spiral" scheme on the part of the Defendants.

14.     The undisclosed application by the Defendants of the Plaintiffs' "association dues and fees" to offset premiums and costs of insurance in Plaintiffs' coverage helped enable the Defendants to illustrate and charge "teaser rates" which were artificially low and set at an amount below that which would be actuarially recommended. These "teaser rates" were utilized by the Defendants to induce customers into believing that the offered insurance was actually bargain priced as a result of NASE's "group negotiating power." Defendants knew at the time of sale that the premiums were artificially low and were less than those that would be required to carry the Plaintiffs' coverage over time.

15.     The "death spiral" sales methods employed by Defendants caused insureds with health problems to become isolated and eventually eliminated from the Defendants' book of business. Defendants designed their premiums such that they would escalate over time causing the coverage to become oppressively expensive and initiating the "death spiral." This was accomplished by isolating unhealthy insureds in a group or class which was closed to new members. Isolation of unhealthy insureds is an inappropriate and illegal pooling practice which leads to exorbitant premium rates for the isolated insureds as a result of their health conditions and resulting medical claims.

16.     Prior to raising premiums, Defendants also had a pattern and practice of failing to inform insureds that the increases were planned, intended and for the specific purpose of raising the monthly payment to a point the unhealthy insureds could no longer afford and would be forced to let the policy lapse.

17.     Also prior to raising premiums, Defendants failed to inform Plaintiffs, and other insureds, that Defendants' had collectively decided to constructively cancel all coverages under which insureds had made significant claims.

6

18.    In the end, each of Defendants intentionally and willfully concealed from Plaintiffs the true nature of the "group" trust health insurance that he purchased and such acts could not be determined by Plaintiffs' exercise of due diligence until shortly before filing this action.

### IV – INDIVIDUAL CLAIMS BACKGROUND

19.    The individual claims at issue in this lawsuit arise from an "association/group trust" mass marketing and administration scheme devised and employed by the Defendants to sell health insurance coverage to the Plaintiffs. Pursuant to said scheme, the Defendants reap windfall profits from the sale and administration of health insurance sold through the NASE at the expense of, and without the knowledge of, the Plaintiffs. Said scheme involves (1) the illegal concealment and non-disclosure by the Defendants if incestuous relationships among the corporate Defendants, as well as mutual and intertwined ownership, establishment and control of the Defendant entities, including NASE and MEGA, the insurance carrier whose products the supposed "independent" "association" "endorses"; (2) the undisclosed transfer and application by the Defendants of NASE "membership dues" and "initiation fees" to the insurance company whose products the NASE "endorses," and application of "association fees" to premiums and the costs of insurance in breach and violation of the terms of the contracts between the Defendants and Plaintiffs; and (3) the establishment and administration of illusory or "dry" "trusts" and violation of trust duties to the Plaintiffs.

20.    Plaintiffs are, or have been, the holder of a health insurance certificate issued by MEGA through the combined sales and marketing efforts of UICI, UICI Marketing, MEGA, United Group Service Centers, Specialized Association Services and the NASE. The Plaintiffs'

7

health insurance certificate was purported as "group association insurance" with a master policy being held in "trust" by the NASE Group Insurance Trust.

21.    UICI is the parent and sole shareholder of both MEGA and UICI Marketing, Inc. UICI is principally owned and controlled by its Chairman, Ronald Jensen, and members of his immediate family, through ownership of Onward and Upward, Inc.  UICI is the ultimate surviving corporation of United Group Agencies, Inc., United Group Associates, Inc., United Group Trade Association, United Group Insurance Company and United Group Companies.

22.    According to documents filed with the Securities and Exchange Commission, UICI was established to provide a vehicle for insurance agents to accumulate wealth.  This was initially accomplished through a series of reinsurance agreements between UICI with AEGON whereby UICI coinsured health insurance policies issued by AEGON.  In 1997, UICI assumed all policies of health insurance previously issued by AEGON and UICI began selling its own policies through its two principal subsidiaries, MEGA and MEGA National Life Insurance Company.

23.    At the time of the transactions giving rise to this lawsuit, UICI "group association" certificates issued through MEGA were administered by a centralized unincorporated division of UICI known as the Insurance Center.  The Insurance Center handles the operational aspects of UICI's "group association" certificates including the design, underwriting, customer service, compliance, actuarial and risk management.

24.    Through its Self-Employed Agency Division, the UICI insurance operations concentrate on the sale of health insurance policies to self-employed individuals and small business people.  The Self-Employed Agency Division includes the unincorporated UGA - Association Field Services which markets MEGA policies through a filed force to certain

"association groups" established by officers and employees of UICI. The principal association through which UICI and MEGA market their policies is the NASE.

25.    The NASE purports to be an independent, not-for-profit association formed by and for the benefit of self-employed individuals and small business owners. NASE represents itself as independently researching, negotiating for, and endorsing unaffiliated health insurance carriers for the benefit of its association members.

26.    The NASE was established in 1981 by insurance agent Keith Wood. Wood was Ronald Jensen's former business partner and co-owner of UICI. The NASE has remained since its formation under the control of UICI, its predecessors, and Jensen family owned businesses. The only health insurance policies ever endorsed by the NASE since its establishment have been products offered by or through Jensen-owned businesses.

27.    The NASE originated in Texas where state law prohibits the formation of an association solely for the purpose of marketing insurance, prohibits an association form marketing insurance unless it has been in existence for two years and requires that the consumer be informed of any relationships between the association and any insurance company endorsed by the association. The NASE was formed as a "shelf corporation" to be held two years and then transformed into an "Association" for the purpose of enrolling prospective purchasers "endorsed" health insurance products offered by UICI and Jensen-owned insurance sales entities.

28.    The NASE Group Trust was formed by UICI and MEGA for the sole purpose of being the named insured under the NASE "group policies." The "trust" is deceptively named to create the impression that it acts in a fiduciary or "trustee" capacity for the benefit of association members in connection with the "group insurance policy." In fact, the "trust" either is a mere token entity formed solely for the purpose of acting as the "insured" under the "group policy," or

9

exists solely to allow UICI and MEGA to completely control the insurance/insured relationship as to policyholders who purchase through the NASE.

29.    At the time of the transactions giving rise to this lawsuit, the NASE was "managed" by Defendant Special Association Services, Inc. ("SAS") (between 1996 and July 1998, SAS was known as CORE Marketing, Inc.). SAS is wholly owned and controlled by Ronald Jensen and other members of his family through Onward and Upward, Inc. Onward and Upward, Inc. is a substantial stockholder in UICI and is considered a "related party" of UICI under SEC guidelines. SAS is operated by Jeff Jensen, Ronald Jensen's son, and Vernon R. Wolfe, a former office and director of UICI and MEGA. Wolfe also currently serves as an undisclosed member of the NASE Board of Directors under the title of Assistant Treasurer and Secretary.

30.    Defendant United Group Service Centers, Inc. is the entity responsible for training UICI agents. The offices of United Group Service Centers are the same as the officers of SAS.

31.    UICI, MEGA and the NASE are under the common control and ownership and operate as a unified business argument. The arrangement is designed to create the impression that each entity operates independently. The NASE purports to be a non-profit association formed for the "self-employed" for the purpose of advancing the interests of small business owners. In fact, the NASE was formed, and is operated, by UICI and MEGA as a marketing tool and profit center for the insurance company defendants and their affiliated entities.

32.    UICI and MEGA maintain control over all health insurance products and benefits offered by the NASE. UICI and MEGA exert complete control or significant influence over the NASE's decisions regarding these products through their relationship with Specialized

Association Management and the strategic placement of individuals associated with the UICI, MEGA and entities owned and controlled but the Jensen family on the NASE board of directors and in officer level positions.

## VI - THE DEFENDANTS' DECEPTIVE SCHEMES AT ISSUE IN THE INDIVIDUAL CLAIMS

### A.    The Marketing Scam

33.    UICI's wholly owned subsidiary, UICI Marketing, Inc., is the lead generation and advertising arm of the Defendants' nationwide sales scheme. UICI Marketing generates leads by using the NASE's supposedly independent endorsement of MEGA in internet advertising, print adds, signs, direct mail, and telemarketing.[1] Defendants' web advertising include the NASE web page at www.nase.org which invites viewers to "click here to request a free quote." When those links are initiated, a page appears captioned "NASE, Affordable Health Insurance" that states "the group negotiating power of NASE makes it possible to offer valuable benefits to our members. One of these benefits is access to health insurance. The NASE endorses several financially strong insurance carriers that offer a variety of products and plans customized to meet the special needs of the self-employed individual or small business owners." The NASE webpage conceals the fact that the only insurance company offered to NASE members is MEGA which is a financially related insurance carrier and jointly controlled along with the association.

34.    Once leads are generated, UICI Marketing provides them to UICI agents and bills NASE for generating the leads. At various times, UICI agents operated under the fictitious business name of "Enrollers of the National Association for the Self-Employed." This name

---

[1] The Defendants' print advertisements and direct mailings typically state "At Last Affordable Health & Life Insurance for the Self-Employed" though the NASE, and further provide 1-800 numbers to call. When the number is dialed, the caller is routed by UICI Marketing's telephone center to a local NASE Field Office and UICI agent.

11

appeared prominently throughout UICI filed offices across the country. These field offices are in fact, manned by insurance agents employed under contracts with UICI through its unincorporated sales division, UGA - Association Field Services. UICI agents are trained to approach potential leads as NASE Enrollers and fellow self-employed individuals, not as insurance agents they in fact are. Training sessions and agent newsletters by the Defendants emphasis the importance of NASE in the marketing of insurance, identifying the NASE as the "greatest selling machine on earth." Defendants' sales training tapes emphasize that "the NASE approach increases sakes and increases persistency."[2]

35.    The UICI agent "enrollment applications" are actually insurance application forms. The agents collect the frost month's payment, including an "association initiation fee" (also known as an association registration fee), and "association dues," in additional to the first month's premium payment. The "initiation fee" is represented to be a one time payment for joining the NASE. In fact, the initiation or registration fee, as well as portions of the NASE "association dues," were treated by the Defendants as undisclosed premium payments. Said "association fees" or "dues" were, in fact, a cost of insurance assed by the Defendant insurance entities to premium payments.

36.    Defendants' association/group trust arrangements are designed to conceal the true nature of the business relationship between the supposedly independent association and the insurance carrier. The arrangement represents the NASE as an independent entity that evaluates

---

[2] Defendants' training materials state: "If you position yourself properly, and again we've learned as a fellow self-employed person and NASE enroller, you're a lot more empathetic with them. You're an assistant buyer. You're consultant to them and they appreciate that. And, you know, it feels like much lower pressure presentation. The whole temperature of a presentation is different, isn't it, if we're in there as a NASE enroller as opposed to an insurance agent." UICI agents are also furnished with brochures which emphasize NASE membership and its "endorsement" of MEGA.

various insurance policies in order to obtain the best available "group insurance." In fact, the association, trust and insurance carrier are jointly owned and/or controlled and the only health insurance made available to the NASE members are MEGA products.

37.    The Defendants conceal and do not disclose to purchasers like Plaintiffs the true relationship between the endorsing association (NASE) and the other Defendants in this case, including the insurance carrier whose products are being "endorsed." Defendants represent that the MEGA health insurance coverage is "endorsed" by the NASE, which is presented by the Defendants as an independent association. Defendant, however, conceal and fail to disclose to the Plaintiffs the proprietary and control relationship existing between the "endorsing" association and the other Defendant entities that had formed and control the association. Defendants also conceal and fail to disclose the transfer among the Defendant entities of association "fees" and funds paid by Plaintiffs and other members.

**B.    Misappropriation of "Association Fees"**

38.    The NASE and other Defendants represent that the NASE is an independent, not for profit association formed by and for the benefit of self-employed individuals and small business owners. In fact, the NASE generates millions of dollars in profits which are funneled to the insurance-related Defendants and UICI-owned entities through (1) the payment of service fees on management agreements and (2) fraudulently concealed premium payments.

39.    The Defendants ensure that the association will be "not for profit" by transferring association funds to and among the other Defendants which maintain control over the association's accounts. All profits are removed from the association, thereby generating income for MEGA and UICI. The existence of such agreements among the Defendants is concealment from consumers like Plaintiffs. Said consumers are affirmatively denied the opportunity to

13

discover the agreements by the terms of proxies drafted by the Defendants pursuant to which association members relinquish their right to obtain about the association's finances.[3]

40.    UICI and MEGA's collection of association dues and initiation fees as concealed premium payments is in direct conflict with the language of the health insurance certificate issued to Plaintiffs. The certificate includes a "Certificate Schedule." The certificate states that premiums are based on "applicable table of premium rates." There is no provision in the certificate for inclusion of the initiation/registration fee or "association dues," of any part thereof, as premium payments. The Defendants' wrongfully application of association fees and dues constitutes a breach by MEGA and UICI of the contracts of insurance between MEGA and Plaintiffs.

### C.    Violation of Trust Duties

41.    Pursuant to Defendants' "Association/Group Trust" marketing and administration scheme, MEGA issues master "group policies" to the NASE Group Trust which then issues certificates of coverage to participating individuals, like Plaintiffs. This procedure enables the insurance company to insulate the insurer/insured relationship from the certificate holders (such as Plaintiffs here) so that MEGA and the "trust" may modify the coverage and otherwise bypass more stringent regulations applicable to individual health insurance policies.

42.    Plaintiffs here are, or have been, the holders of a health insurance certificate to a purported "group association policy" held by the NASE Group Trust. All NASE participating members, including Plaintiffs, are trust beneficiaries under the NASE Group Trust. MEGA, UICI and the other corporate Defendant have assumed the trustee's discretionary, fiduciary

---

[3] Unlike members of a legitimate associations, NASE members are not given notice or the opportunity to appear at regularly scheduled meetings or membership votes to elect leaders, or nor are they allowed to weigh-in on executive decisions.

14

duties, including responsibilities for providing the management administration of the insurance programs for the NASE membership and performance such functions as may be necessary for the maintenance of said programs. MEGA, UICI and the other corporate Defendants misused and abuses the trust relationship by charging additional premiums, improperly transferring and applying association fees and dues, thereby preventing NASE participating members from gaining access to more beneficial and competitive insurance products.

43.    All of the Defendants have vastly superior knowledge and expertise regarding the terms and conditions of the insurance they were offering to Plaintiffs. Defendants also have vastly superior knowledge and expertise regarding the underlying facts relating to the premium charged, the methods for calculating premium increases for the "group," the compensation arrangements between and among the Defendants relating to coverage participants, the terms and conditions of the trust agreement, the duties and responsibilities of NASE as trustee, and the duties and obligations owed to trust beneficiaries like Plaintiffs.

44.    This course of conduct and the acts described in the preceding paragraphs of this Complaint, breached fiduciary duties owed by MEGA, UICI and the other corporate Defendants, said Defendants have assumed discretionary, fiduciary duties of a trustee and the trust by the acts alleged herein.

45.    Plaintiffs enrolled in NASE in or around April 2002. Plaintiffs "Enroller" was a representative and/or agent of the Defendants named herein.

46.    At the time of Plaintiffs enrollment in NASE, which was also the date Plaintiffs applied for coverage with MEGA (because Plaintiffs were informed they were required to join and remain members of NASE before they could obtain the MEGA "Group" health coverage),

15

the enroller/agent collected up front fees purportedly representing the initial insurance premium association fees, association dues and other administration fees.

47.    Soon after the health coverage was procured, the premiums began to rise. The timing and amount of the premium increases contradicted the representations made by the agent/enroller concerning the same.

48.    Plaintiffs began to make claims on the coverage. As a result, the premiums continued to increase. A number of the claims submitted for payment were inexplicably denied.

49.    The Defendants also routinely changed the amounts of co-pays and deductibles, in contravention with the provisions of the certificate issued to Plaintiffs, as well as the representations of the agent/enroller.

## VII - <u>CAUSES OF ACTION</u>

### A.    *THE CLASS CLAIMS AND CAUSES OF ACTION*

50.    In the Class Action claims, Plaintiffs assert only state law claims in this Complaint and make no claims herein under the United States Constitution or any federal law. Additionally, none of the class claims at issue are subject to federal preemption.

51.    Alabama law expressly provides for the maintenance of class actions. <u>See</u> <u>Alabama Rules of Civil Procedure</u> Rule 23. Plaintiffs bring this action individually and as a class action pursuant to <u>Alabama Rules of Civil Procedure</u> Rule 23 (a) and (b)(3) on behalf of an opt-out class ("Class") defined as follows:

> (a)    All persons in the United States who, from ten (10) years prior to the filing of this action to the date of final judgment in this action, have purchased from Defendant MEGA a "group" health insurance certificate.

16

(b)        Excluded from the class definition are:

- All judicial officers in the United States and their families through the third degree of relationship;

- Defendant MEGA's officers, directors, and employees, and any person or entities who has already settled or otherwise compromised their claims against Defendant MEGA;

- Any person who has filed before final judgment any bankruptcy proceeding; and

- Anyone who has pending against Defendant MEGA on the date of the Court's class certification order any individual action wherein the recovery sought is based in whole or in part on the type of claims asserted herein; namely fraudulent pooling and rating practices.

52.    Defendant MEGA's business practices and violations of the law are uniform. Indeed, Defendant MEGA employed identical behavior in terms of fraudulent pooling and rating its "group" health insurance certificate to Plaintiffs and Class Members alike.

53.    The requirements of Ala.R.Civ.P. Rule 23(a), are satisfied because: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims of Plaintiffs are typical of the claims of the class; and (4) Plaintiffs will fairly and adequately protect the interests of the class, and they have hired counsel experienced in the prosecution of class actions.

54.     On information and belief, Plaintiffs allege that the Class consists of hundreds of thousands of persons who have purchased the "group" health insurance certificates from Defendant MEGA.

55.     Common questions of law and fact exist. The questions of law and fact common to the Class predominate over questions which may affect individual class members. These common questions include but are not limited to the following:

(a)     Whether Defendant MEGA's conduct caused injury to the Plaintiffs and Class Members and, if so, the appropriate class-wide measure of damages;

(b)     Whether Defendant MEGA is liable for punitive damages;

(c)     If Defendant MEGA is found liable for punitive damages, the appropriate measure of such damages;

(d)     Whether Defendant MEGA materially and willfully misrepresented or suppressed any information concerning the nature of its "group" health insurance certificates to Plaintiffs and the Class Members.

(e)     Whether Defendant MEGA engaged in a fraudulent scheme to defraud customers by misrepresenting its health insurance certificates to be of a "group" nature when such certificates were, in fact, individual health certificates relying on an illegal rating and pooling scheme;

(f)     Whether equitable principles serve to toll the statute of limitations because Defendant MEGA's efforts to conceal the true nature of its "group" health insurance certificates, or for other reasons;

(g)     Whether Defendant MEGA engaged in an illegal and/or unfair scheme to rate and/or pool insureds based on their individual health status and/or individual claims history;

18

(h)     Whether Defendant MEGA employed an illegal and/or unfairly discriminatory rating and/or pooling scheme for "group" health insurance certificates for the purpose of adjusting renewal premiums;

(i)     Whether Defendant MEGA administered "group" health insurance certificates in a manner incompatible with the concept of a "group" health insurance policy;

(j)     Whether Defendant MEGA had a contractual duty to administer its "group" health insurance plan as a bona fide group health plan and to compute renewal premiums consistent with group health insurance plans;

(k)     Whether Defendant MEGA breached its obligations of good faith and fair dealing through the perpetration of an illegal and/or unfair rating and/or pooling scheme that fundamentally deprived the Plaintiffs and Class Members of the benefit of their bargain;

(l)     Whether any breaches of the contract proximately caused damage to Plaintiffs and the Class;

(m)     Whether Defendant MEGA levied and collected exorbitant renewal premiums under its unlawful and/or unfair rating and/or pooling practices;

(n)     Whether Defendant MEGA received premiums and renewal payments because of misplaced confidence, artifice, deception and Defendants MEGA's uniform written misrepresentations and other fraudulent practices;

(o)     Whether Defendant MEGA breached fiduciary duties owed to the Plaintiffs and Class;

(p)     Whether Defendant MEGA was unjustly enriched at the expense of the Plaintiffs and Class; and

(q)    Whether Plaintiffs and the Class Members are entitled to recover prejudgment interest;

56.    The common issues predominate over any individual issues and represent the most significant issues in the case, and they can be resolved for all members of the class in one action.

57.    The named Plaintiff's claims are typical of the claims of each potential class member in that each claim arose as a consequence of interacting with and purchasing "group" health insurance certificates from Defendant MEGA.

58.    Plaintiffs will fairly and adequately assert and protect the interests of the Class, in that:

(a)    Plaintiffs have no conflicts of interest with absent Class Members in the maintenance of this action, and pursues this action for the benefit of the Class; moreover, Plaintiffs have no present relationships with Defendant MEGA, in either official or unofficial capacities;

(b)    Plaintiffs, taken in conjunction with counsel, have adequate financial and other resources to conduct this litigation in a manner assuring that the interests of the Class will not be harmed; class counsel has agreed and has the ability to advance costs of this litigation; and

(c)    Plaintiffs have retained counsel who are experienced in class action litigation.

59.    The requirements of Ala.R.Civ.P. Rule 23(b)(3) are satisfied in that common issues of law predominate over any individual issues, and a class action is the superior method to address the allegations made herein. A class action will provide a fair and efficient method of adjudicating this controversy, in that:

20

(a)     Common questions of law and fact predominate over any questions affecting only individual class members, as noted above. The common issues are the most significant issues in the case, and can be resolved for all members of the Class in one action;

(b)     Neither the size of the class nor any other factor makes it likely that difficulties will be encountered in the management of this action as a class action;

(c)     The prosecution of separate actions by individual class members, or individual joinder of all class members in this action, would create a massive and unnecessary burden on the resources of the courts; and

(d)     Because of the disparity of resources available to defendant versus those available to individual Class Members, prosecution of separate actions would work a financial hardship on many Class Members.

## CLASS CAUSES OF ACTION

## COUNT ONE - BREACH OF IMPLIED COVENANTS OF GOOD FAITH AND FAIR DEALING

60.     Plaintiffs hereby adopt and incorporate by reference all preceding paragraphs and further allege:

61.     In every contract, there are implied covenants of good faith and fair dealing. These implied covenants prevent one party from exercising judgment in such a manner as to evade the spirit of the transaction or to deny the other party the expected benefits of the contract.

62.     When Plaintiffs entered into the contract with Defendant MEGA for "group" health insurance, Plaintiffs reasonably believed the "group" health insurance would be offered at the prevailing market rate, Defendant MEGA would not grossly overcharge Plaintiffs for such

21

insurance, and that Defendant MEGA would not substantially increase Plaintiffs' premiums after intentionally keeping the original premium at a minimum.

63.    However, Defendant MEGA breached the implied covenants of good faith and fair dealing by evading the spirit of the transaction by offering inadequate insurance for Plaintiffs, charging an exorbitant and grossly unfair renewal premium which was far in excess of the market rate, and by increasing Plaintiffs' premiums as set out herein.

64.    Moreover, by engaging in the misleading and deceptive practices described above, Defendant MEGA has breached the implied covenants of good faith and fair dealing and has successfully taken advantage of the Plaintiffs' lack of knowledge and sophistication regarding the subject transactions as well as the insurance described herein.

65.    As a direct and proximate result of Defendant MEGA' breaches of the implied covenants of good faith and fair dealing, Plaintiffs have been damaged in an amount to be proven at the trial.

66.    Defendant MEGA's misleading and deceptive practices thereby entitle the Plaintiffs to recovery of punitive damages.

**COUNT TWO - BREACH OF CONTRACT**

67.    Plaintiffs hereby adopts and incorporates by reference all preceding paragraphs and further allege:

68.    Defendant MEGA entered into a contract with Plaintiffs whereby Defendant MEGA agreed to provide group health insurance coverage in consideration for the payment made by Plaintiffs of quoted monthly premiums. Said premiums were to be fairly calculated and determined on the basis of group experience and in accordance with the representations made to

22

Plaintiffs throughout the insurance selection, procurement, application, provision, administration and management process.

69.     Plaintiffs preformed by paying the quoted monthly premiums.

70.     Defendant MEGA breached its contract with Plaintiffs by failing to perform as represented in the insurance certificate.

71.     Defendant MEGA further breached its contract with Plaintiffs by charging premiums substantially in excess of what the premiums would have been of they had been fairly calculated under the terms of the insurance certificate and in accordance with the representations made to Plaintiffs. Such dramatic premium increases deprived Plaintiffs of the benefit of their bargain and also constitute a constructive termination, or an attempt at the same, of the insurance contract without just cause as well as a breach of Defendant MEGA's contractual obligations of good faith and fair dealing.

72.     As a direct, foreseeable, and proximate result thereof, Plaintiffs were caused to suffer injuries and incur damages.

## COUNT THREE - FRAUDULENT MISREPRESENTATION AND/OR OMISSION

73.     Plaintiffs hereby adopt and incorporate by reference all preceding paragraphs and further allege:

74.     Defendant MEGA made the above-described and the following false, misleading and deceptive misrepresentations to Plaintiffs and/or failed to disclose material facts in connection with the obtaining, maintenance and continuation of "group" health insurance on behalf of Plaintiffs, in the following respects:

(a)     Defendant MEGA represented to the Plaintiffs that the insurance that Plaintiffs were purchasing was "group insurance";

23

(b)    Defendant MEGA represented to Plaintiffs that by purchasing the group policy, Plaintiffs would receive the benefits of "group" rates;

(c)    Defendant MEGA failed to disclose the true nature of how premium rate increases were derived as set out herein;

(d)    Defendant MEGA concealed material information about the underwriting of the "group" coverage which worked to the detriment of Plaintiffs, and misrepresented the terms, conditions, performance, and structure of the policy as set out herein;

(e)    Defendant MEGA misrepresented and suppressed how premium increases were derived and/or failed to inform Plaintiffs that Defendant MEGA had intentionally kept the initial year's policy premium low, but had the present undisclosed intention to raise premiums as set out herein;

(f)    Defendant MEGA failed to disclose that it had the present intent to illegally and/or unfairly rate and/or pool the "group" certificates after claims were filed;

(g)    Defendant MEGA failed to disclose that it had a financial interest in the denial of claims and/or the raising of premiums;

(h)    Defendant MEGA represented to Plaintiffs that the coverage was competitively priced and any premium increases would only be minor; and

(i)    Defendant MEGA further made misrepresentations and failed to disclose the other facts and information as above set-out.

75.    The fraudulent misrepresentations, omissions and concealment by Defendant MEGA was known and deliberate and was purposely designed to deceive Plaintiffs into believing that Defendant MEGA was furnishing adequate "group" health insurance for Plaintiffs

24

at a fair price and/or to deceive Plaintiffs into purchasing, maintaining and continuing the coverage.

76.    At the time Defendant MEGA provided the "group" health insurance to Plaintiffs, Plaintiffs were unaware of the fact that the insurance furnished by Defendant MEGA was as described above.    Moreover, Defendant MEGA continued to mislead Plaintiffs through correspondence during the period that Plaintiffs [have] maintained the subject insurance.

77.    The misrepresentations, concealment and omissions by Defendant MEGA were material in that Plaintiffs would not have purchased, maintained and/or renewed the insurance absent the deceptive and misleading statements and omissions of material facts by Defendant MEGA.    Plaintiffs reasonably believed that Defendant MEGA had accurately and adequately disclosed all material facts and that Defendant MEGA had acted in Plaintiffs' best interests with respect to the procurement of the subject insurance.

78.    As a direct and proximate result of Defendant MEGA's fraudulent misrepresentations, concealment and omissions, Plaintiffs have been proximately damaged in an amount presently undetermined.

79.    Defendant MEGA's fraudulent conduct was willful, wanton and malicious, thereby entitling Plaintiffs to the recovery of punitive damages against Defendant MEGA.

### COUNT FOUR - NEGLIGENT MISREPRESENTATION AND/OR OMISSION

80.    Plaintiffs hereby adopt and incorporate by reference all preceding paragraphs and further allege:

81.    Defendant MEGA negligently failed to advise Plaintiffs that it was engaged in illegal and/or unfair insurance rating and/or pooling.

82.    Defendant MEGA negligently represented and/or negligently failed to disclose the manner in which it rated health insurance premiums for Plaintiffs, specifically that Defendant MEGA had intentionally kept the initial premium low while it had the present undisclosed intention of substantially raising the premiums at the time of renewal and had various schemes to effect a "death spiral" as alleged and described above.

83.    Defendant MEGA negligently represented and/or negligently failed to disclose to its insureds the information set-out above.

84.    The representations and omissions made by Defendant MEGA were false and misleading and/or were negligently or recklessly made by Defendant MEGA without regard for their truth or falsity.

85.    Defendant MEGA is guilty of gross negligence as set out herein.

86.    Defendant MEGA made these representations and/or omissions to Plaintiffs intending that Plaintiffs rely upon such representations and/or omissions.

87.    At the time the negligent misrepresentations and omissions were made, Plaintiffs believed they were true and were ignorant of the falsity of the representations. Therefore, Plaintiffs had the right to rely upon, and did reasonably rely upon the representations and/or omissions.

88.    The negligent representations were material in that they induced Plaintiffs to purchase, maintain and renew the insurance and/or to pay inflated premiums and other charges related thereto.

89.    As a consequence of the negligent misrepresentations and omissions, Plaintiffs had incurred actual and compensatory damages in an amount to be proven at trial.

90.     Defendant MEGA's negligent misrepresentations and/or omissions were reckless and were made with complete disregard for the benefit of Plaintiffs, thereby entitling Plaintiffs to the recovery of punitive damages against Defendant MEGA.

## COUNT FIVE - NEGLIGENCE

91.     Plaintiffs hereby adopt and incorporate herein by reference all preceding paragraphs and further alleges:

92.     Defendant MEGA owed a duty to Plaintiffs to exercise reasonable care to ensure that Plaintiffs received "group" health insurance which was both adequate and fairly priced.

93.     Defendant MEGA breached its duty of reasonable care to Plaintiffs by the following acts and/or omissions:

        (a)     Failing to furnish "group" health insurance as agreed;

        (b)     Failing to furnish "group" health insurance at the prevailing market rate;

        (c)     Charging Plaintiffs excessive premiums for "group" health insurance;

        (d)     Wrongfully increasing Plaintiffs' premiums;

        (e)     Failing to furnish the health insurance which was represented to the Plaintiffs; and

        (f)     Engaging in the other alleged wrongs and misconduct as set-out above.

94.     As a direct and proximate result of Defendant MEGA's breaches of the duty of reasonable care, Plaintiffs have suffered damages in an amount to be proven at trial.

95.     Defendant MEGA's conduct as alleged herein constitutes simple negligence or gross negligence.

96.    At all times relevant hereto, Defendant MEGA's conduct was intentional and/or outrageous and beyond the bounds of reasonableness, and was in reckless disregard for the welfare and benefit of Plaintiffs.

97.    Accordingly, Plaintiffs are entitled to recover punitive damages.

### COUNT SIX - UNJUST ENRICHMENT/CONSTRUCTIVE TRUST

98.    Plaintiffs adopt and incorporate herein by reference each of the preceding paragraphs and further allege:

99.    Defendant MEGA has been unjustly enriched at the expense of the Plaintiffs. Defendant MEGA has received commissions, fees, money in excess of the agreed amount, and other monies which in equity and good conscience belong to Plaintiffs.

100.    Defendant MEGA, through the means of fraud and deception, has taken Plaintiffs' money which should be returned to Plaintiffs.

101.    Plaintiffs respectfully request that this Honorable Court impose a Constructive Trust on such monies and require Defendant MEGA to return all monies paid by Plaintiffs.

### COUNT SEVEN - POST-SALE FRAUDULENT CONCEALMENT

102.    Plaintiffs adopt and incorporate herein by reference each of the preceding paragraphs and further allege:

103.    After inducing Plaintiffs to purchase the coverage in question, Defendant MEGA participated and engaged in a deliberate course of individual and corporate conduct which concealed from Plaintiffs the nature and extent of the deceptive sales tactics used to sell the policies.

104.    The concerted actions Defendant MEGA was designed to and did, in fact, conceal from Plaintiffs the deceptive acts and actuarial practices upon which the sales to Plaintiffs had

been made. Plaintiffs did not discover, and could not through the exercise of reasonable diligence, have discovered within the last two years.

105.    Plaintiffs have been misled by Defendant MEGA's deceptive sales tactics and intricate scheme of fraud and concealment.

### *B.    THE INDIVIDUAL CLAIMS*

106.    In the individual claims, Plaintiffs assert only state law claims and make no claims herein under the United States Constitution or any federal law.  Additionally, none of the individual claims at issue are subject to federal preemption.

### INDIVIDUAL CAUSES OF ACTION

### COUNT ONE - BREACH OF FIDUCIARY AND TRUST DUTIES

107.    Plaintiffs hereby adopt and incorporate by reference all preceding paragraphs and further allege:

108.    Plaintiffs stand in a relationship of trust and confidence with the NASE and MEGA.  The above-described actions of the Defendants constitute a breach and violation of the fiduciary duties owed by Defendants to Plaintiffs.

109.    MEGA assumed management and control of the discretionary and fiduciary functions of NASE, including responsibilities for management and administration of the Plaintiffs' insurance coverage, thereby stepping into the shoes of fiduciaries and assuming fiduciary duties as to the Plaintiffs.

110.    MEGA misused and abused the relationship to charge additional premiums, improperly transfer and apply association fees and dues, and prevent NASE participating members from gaining access to competitive insurance products.

111.    Moreover, in light of the special relationship and fiduciary duties owned by Defendants to Plaintiffs, Plaintiffs were legally entitled to honest advice and full disclosure from Defendants and placed their trust in Defendants to, among other things: (a) select adequate and appropriate health insurance for him, (b) fully inform them of all material facts necessary to make a decision regarding health insurance, and (c) to fully inform Plaintiffs of the true relationship, including agreements, between and among the Defendants.  In short, Plaintiffs placed their trust in Defendants to help them make an important decision regarding their security, health and financial condition.

112.    To the extent that the NASE may have lacked knowledge and information sufficient to disclose to Plaintiffs the facts described above, the NASE had a fiduciary duty to inquire, investigate and determine, among other things: (a) the full and true nature of the relationship between the Defendants; (b) the full and true nature of Defendants' "group" trust health insurance policy, and (c) the facts that the health insurance policy they were marketing and selling to Plaintiffs was not a true group policy.

113.    In addition to the duties outlined above, NASE also had a fiduciary duty to (a) procure, hold, administer (whether directly or through an administrator), and manage the best, most suitable, health insurance possible for and on behalf of trust beneficiaries, including Plaintiffs, and (b) to select and appoint a trust administrator that would protect and serve the best interests of the trust beneficiaries and which would act exclusively for and on behalf of the trust beneficiaries, including Plaintiffs.  NASE, as a fiduciary to Plaintiffs, also owed Plaintiffs a duty:

a.    to be active in the performance of the trust;

b.    to use reasonable care in instructing and supervising its co-fiduciaries, to whom fiduciary duties were delegated;

30

      c.     to make a reasonable investigation as to the honesty and efficiency of MEGA;

      d.     to adequately instruct, supervise and check the performance of the fiduciary duties and work delegated to MEGA;

      e.     to prevent MEGA from placing itself in a position where it could commit a breach of fiduciary duty and/or trust;

      f.     to act solely in the interest of the trust beneficiaries, including Plaintiffs, (i.e. to exercise a duty of loyalty);

      g.     to take measures, by suit or otherwise, to protect the trust beneficiaries from a breach of trust by the administrator and/or co-trustee;

      h.     to exercise reasonable prudence and care in employing, appointing, and supervising a trust administrator and/or co-trustee; and

      i.     to use ordinary skill and prudence.

114.    NASE and the other Defendants breached the above-described duties and obligations. Such conduct and breaches were willful, wanton, negligent and/or reckless.

115.    As a direct, foreseeable and proximate result thereof, Plaintiffs were caused to suffer actual damages and will suffer such damages in the future.

### COUNT TWO - BREACH OF CONTRACT

116.    Plaintiffs hereby adopt and incorporate by reference all preceding paragraphs and further allege:

117.    Defendants entered into a contract with Plaintiffs whereby Defendants agreed to provide group health insurance coverage in consideration for the payment made by Plaintiffs of quoted monthly premiums. Said premiums were to be fairly calculated and determined on the

basis of group experience and in accordance with the representations made to Plaintiffs throughout the insurance selection, procurement, application, provision, administration and management process.

118.    Plaintiffs preformed by paying the quoted monthly premiums.

119.    Defendants breached their contract with Plaintiffs by failing to perform as represented in the insurance certificate.

120.    Defendants further breached their contract with Plaintiffs by charging premiums substantially in excess of what the premiums would have been of they had been fairly calculated under the terms of the insurance certificate and in accordance with the representations made to Plaintiffs.  Such dramatic premium increases deprived Plaintiffs of the benefit of their bargain and also constitute a constructive termination, or an attempt at the same, of the insurance contract without just cause as well as a breach of Defendants' contractual obligations of good faith and fair dealing.

121.    The transfer and misappropriation of association dues and fees to premiums also constitutes breach of contract.

122.    As a direct, foreseeable, and proximate result thereof, Plaintiffs were caused to suffer injuries and incur damages.

### COUNT THREE - FRAUDULENT SUPPRESSION

123.    Plaintiffs hereby adopt and incorporate by reference all preceding paragraphs and further allege:

124.    Throughout the insurance selection, procurement, and application process, Defendants willfully, wantonly, intentionally, recklessly, maliciously, negligently and/or innocently omitted the material facts described above to Plaintiffs.

125.    The facts were material and omitted by Defendants despite such knowledge or with a reckless disregard for whether such facts were material.

126.    Furthermore, Defendants had a duty of full disclosure to the Plaintiffs. As stated herein, Defendants failed to disclose material facts to Plaintiffs. Such non-disclosure constitutes fraudulent suppression.

127.    In reasonable reliance upon Defendants' representations, Plaintiffs acted as described above, purchased the "group" health insurance described above, and paid monthly premiums as agreed, joined the NASE and continued to renew the NASE membership and the health insurance coverage.

128.    As a part of the Defendants' scheme, said facts were concealed from the Plaintiffs and not disclosed by the Defendants to the Plaintiffs at the time of sale or thereafter, although Defendants knew that said facts could justifiably and/or reasonably induce the Plaintiffs to refrain from purchasing the insurance coverage.

129.    The Defendants were under a duty to disclose said matters and the failure of the Defendants to disclose said facts to the Plaintiffs were wrongful.

130.    As a direct, foreseeable and proximate result thereof, Plaintiffs was caused to suffer actual damages and will suffer such damages in the future.

## COUNT FOUR - UNJUST ENRICHMENT

131.    Plaintiffs hereby adopt and incorporate by reference all preceding paragraphs and further allege:

132.    Through the above-described actions, Defendants obtained funds and profits from the Plaintiffs by fraud or other tortious conduct and the taking of undue advantage of the Plaintiffs.

133.   Said conduct and receipt of funds from Plaintiffs resulted in the unjust enrichment of the Defendants.

134.   As a direct, foreseeable and proximate result thereof, Plaintiffs were caused to suffer actual damages and will suffer such damages in the future.

## COUNT FIVE - CIVIL CONSPIRACY

135.   Plaintiffs hereby adopt and incorporate by reference all preceding paragraphs and further allege:

136.   Defendants have engaged in an unlawful conspiracy to breach fiduciary duties, breach contracts and to mislead Plaintiffs regarding, among other things, (a) the full and true nature of the relationship between the Defendants, (b) the full and true nature of Defendants trust "group" health coverage, and (c) the fact that the health insurance coverage marketed by Defendants was not a true group policy.

137.   Defendants also combined and joined in a concerted effort to formulate a fraudulent and deceitful marketing scheme which prevented Plaintiffs and others from discovering the true relationship of the related Defendants and their plans to extort and later share exorbitant fees and charges passed on to NASE participants.

138.   As a direct, foreseeable and proximate result thereof, Plaintiffs were caused to suffer actual damages and will suffer such damages in the future.

## COUNT SIX - FRAUD

139.   Plaintiffs hereby adopt and incorporate by reference all preceding paragraphs and further allege:

34

140.    Throughout the insurance selection, procurement, and application process, Defendants willfully, wantonly, intentionally, recklessly, maliciously, negligently and/or innocently misrepresented the material facts described above to Plaintiffs.

141.    The material misrepresentations described above and made by Defendants were false and were made with knowledge of their falsity or with a reckless disregard for whether such misrepresentations were true.

142.    Furthermore,  Defendants had a duty of full disclosure to the Plaintiffs.  As stated herein, Defendants failed to disclosure material facts to Plaintiffs.   Such non-disclosure constitutes material misrepresentation.

143.    In reasonable reliance upon Defendants' representations, Plaintiffs acted as described above, purchased the "group" health insurance described above, and paid monthly premiums as agreed.

144.    As a direct, foreseeable and proximate result thereof, Plaintiffs were caused to suffer actual damages and will suffer such damages in the future.

## COUNT SEVEN - BREACH OF IMPLIED CONTRACT TO PROCURE INSURANCE

145.    Plaintiffs hereby adopt and incorporate by reference all preceding paragraphs and further allege:

146.    The NASE had obligations to procure suitable, appropriate health insurance coverage for Plaintiffs.

147.    The NASE breached said duties evidenced by the above-described actions.

148.    As a direct and proximate result of Defendants' negligent acts and/or omissions, Plaintiffs have suffered damages.

## COUNT EIGHT - NEGLIGENCE

149.    Plaintiffs hereby adopt and incorporate by reference all preceding paragraphs and further allege:

150.    Defendants owed duties of diligence, due care, and fair dealings to Plaintiffs.

151.    Defendants breached such duties by engaging in the above-described tortious actions.

152.    As a direct and proximate result of Defendants' negligent acts and/or omissions, Plaintiffs have suffered damages.

## COUNT NINE - WANTONNESS

153.    Plaintiffs hereby adopt and incorporate by reference all preceding paragraphs and further allege:

154.    The above-described actions by Defendants constitute wanton behavior.

155.    As a proximate result of the wanton behavior by Defendants, Plaintiffs have suffered damages.

## COUNT TEN - CONVERSION

156.    Plaintiffs hereby adopt and incorporate by reference all preceding paragraphs and further allege:

157.    Through their tortious conduct, Defendants have wrongfully taken and detained money belonging to Plaintiffs.

158.    Such conversion has been committed intentionally, wantonly, and/or maliciously.

159.    As a direct, foreseeable and proximate result thereof, Plaintiffs were caused to suffer actual damages and will suffer such damages in the future.

## IX - PRAYER FOR RELIEF

160.    WHEREFORE, Plaintiffs respectfully pray as follows:

(a)    That the Clerk issue summons to Defendants, and require that the summons and Complaint be served on each defendant as requested below;

(b)    For an Order that this action is properly maintainable as a nationwide class action under Alabama Rules of Civil Procedure Rule 23.

(c)    For an Order tolling all applicable statutes of limitation pursuant to the doctrines of equity and Alabama law;

(d)    For an Order appointing as Class Counsel in this action, the law firm of McCallum & Methvin, P.C.

(e)    For an Order approving the Plaintiffs as Class representatives in this action, along with such other persons who the Court may permit to join as Class representatives;

(f)    For an Order requiring reasonable and adequate notice be given to prospective Class Members following certification;

(g)    For compensatory and punitive damages against Defendants, in an amount to be determined at trial, but not to exceed $74,500;

(h)    Plaintiffs, individually, and on behalf of the Class, prays that judgment be entered in favor of Plaintiffs and against Defendants, in accordance with the aforesaid prayers.

**PLAINTIFFS REQUEST A TRIAL BY JURY ON ALL ISSUES PROPERLY TRIED THERETO.**

Respectfully submitted,

Phillip W. McCallum (MCC063)
James M. Terrell (TER015)
Attorneys for Plaintiffs

**OF COUNSEL:**

McCALLUM & METHVIN, P.C.
2201 Arlington Avenue South
Birmingham, Alabama 35205
Telephone:    (205) 939-3006
Facsimile:    (205) 939-0399

## PLEASE SERVE DEFENDANTS WITH A COPY OF THE SUMMONS AND COMPLAINT, ALONG WITH ALL DISCOVERY MATERIALS, AT:

MEGA Life and Health Insurance Company
c/o The Corporation Company
2000 Interstate Park Dr.
Suite 204
Montgomery, AL  36109


United Insurance Companies, Inc.
9151 Grapevine Hwy.
North Richland Hills, TX  76180


United Group Service Centers, Inc.
9151 Grapevine Hwy.
North Richland Hills, TX  76180


UICI Marketing, Inc.
9151 Grapevine Hwy.
North Richland Hills, TX  76180


Specialized Association Services, Inc.
2121 Precinct Line
North Richland Hills, TX  76180


NASE Group Insurance Trust Fund
c/o National Association for the Self-Employed
c/o The Corporation Company
2000 Interstate Park Dr.
Suite 204
Montgomery, AL  36109

National Association For The Self-Employed ("NASE")
c/o The Corporation Company
2000 Interstate Park Dr.
Suite 204
Montgomery, AL  36109

## NOTICE TO DEFENDANT

The Complaint which is attached to this Summons is important and you must take immediate action to protect your rights. You are required to mail or hand deliver a copy of a written Answer, either admitting or denying each allegation in the Complaint, to Phillip W. McCallum, McCallum & Methvin, P.C., the lawyers for the Plaintiffs, whose address is 2201 Arlington Avenue South, Birmingham, Alabama 35205. THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN THIRTY (30) DAYS AFTER THIS SUMMONS AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT. You must also file the original of your Answer with the Clerk of this Court within a reasonable time afterward.



Dated _____

FILED

FEB 9 2005

ODESSA B. MACK
CIRCUIT CLERK
SUMTER COUNTY, AL

_Odessa B Mock_
Clerk of Court